## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SWISSDIGITAL USA CO., LTD.<br><br>*Plaintiff,*<br><br>v.<br><br>SAMSONITE INTERNATIONAL S.A.;<br>SAMSONITE LLC; SAMSONITE<br>COMPANY STORES, LLC; and DIRECT<br>MARKETING VENTURES, LLC;<br><br>*Defendants.* | Civil Action No. 1:24-cv-11636<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Swissdigital USA Co., Ltd. ("Swissdigital" or "Plaintiff") files this Complaint against Defendants Samsonite International S.A. ("Samsonite Int'l"); Samsonite LLC ("Samsonite LLC"); Samsonite Company Stores, LLC ("Samsonite Co. Stores"); and Direct Marketing Ventures, LLC ("DMV") (collectively, "Defendants") and as claim for relief states as follows:

### NATURE OF THE ACTION

1.    This is an action for patent infringement under the Patent Laws of the United States, Title 35, United States Code, including 35 U.S.C. § 271.

### PARTIES

2.    Plaintiff is a Delaware limited liability company with an address of 50 Fountain Plaza, Suite 1700, Buffalo, New York 14202-2216.

3.      On information and belief, Samsonite Int'l is a Luxembourg limited liability company (a *société anonyme*) with a principal place of business at 575 West Street, Suite 110, Mansfield, Massachusetts 02048.

4.      On information and belief, Samsonite LLC is a Delaware limited liability company with a principal place of business at 575 West Street, Suite 110, Mansfield, Massachusetts 02048.

5.      On information and belief, Samsonite Co. Stores is an Indiana limited liability company with a principal place of business at 575 West Street, Suite 110, Mansfield, Massachusetts 02048.

6.      On information and belief, DMV is a Colorado limited liability company with a principal place of business at 575 West Street, Suite 110, Mansfield, Massachusetts 02048.

## JURISDICTION

7.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*

8.      This Court has personal jurisdiction over Defendants because each Defendant maintains its principal place of business in Massachusetts such that each Defendant is essentially at home in Massachusetts.  Defendants' affiliations with Massachusetts are constant and pervasive, and Defendants' high-level officers direct, control, and coordinate Defendants' activities from within Massachusetts.  In previous litigation, Samsonite Int'l admitted that it is subject to general jurisdiction in Massachusetts because Samsonite Int'l's joint corporate headquarters is located in Mansfield, Massachusetts.[1]  Further, Defendants do business in Massachusetts, market, promote, and advertise their products in Massachusetts, including their infringing products, and commit acts

---

[1] *Swissdigital USA Co., Ltd. v. Samsonite Int'l S.A.*, 6:23-cv-00196-ADA-DTG (W.D. Tex. 2023), ECF No. 63, at 7.

of patent infringement in Massachusetts, both directly and indirectly.  These acts of patent infringement include, but are not limited to: using, offering to sell, and selling the infringing products in Massachusetts; importing the infringing products into Massachusetts; inducing others to commit infringing acts in Massachusetts; and contributing to infringement by providing a staple article to (1) retailers and wholesalers who, in turn, sell and offer for sale the infringing products in Massachusetts; and (2) customers who, in turn, use the infringing products in Massachusetts. Defendants purposefully direct their activities at residents of this forum, and Plaintiff's claims arise out of and relate to these activities.

9.      Venue in this judicial district is proper under 28 U.S.C. §§ 1391 and 1400(b) because Defendants reside in this District, have a regular and established place of business in this District, and have committed acts of infringement in this District.

## FACTUAL BACKGROUND

10.     Plaintiff is in the business of selling high-tech intelligent backpacks and other innovative consumer goods throughout the world, including within the United States and within this District.  Plaintiff is the owner of all rights, title, and interest in and to United States Patent Nos. 10,574,071 ("the '071 Patent"), 10,931,137 ("the '137 Patent"), 10,931,138 ("the '138 Patent"), and 11,601,009 ("the '009 Patent") (collectively, the "Patents-in-Suit").  Plaintiff's products offered for sale and sold in the United States practicing the claims of the Patents-in-Suit are marked with patent numbers in compliance with 35 U.S.C. § 287.  A true and correct copy of the '071 Patent is attached hereto as Exhibit A.  A true and correct copy of the '137 Patent is attached hereto as Exhibit B.  A true and correct copy of the '138 Patent is attached hereto as Exhibit C.  A true and correct copy of the '009 Patent is attached hereto as Exhibit D.

11.     The '071 Patent, titled: "Bag or Luggage with USB Charging Connector," issued on February 25, 2020.  Plaintiff's invention is a bag or luggage for convenient charging of personal devices such as smart phones, tablets, or any device that requires recharging.  The claimed and disclosed bag or luggage provides a space for placing a power storage device inside the bag or luggage body, a power cable outlet on the outer surface of the bag or luggage body, and a USB extension cable that connects to the power storage device inside the bag.

12.     The '137 Patent, titled: "Sheath for USB Charger" issued on February 23, 2021. Plaintiff's invention is a sheath that may be incorporated into luggage, bags, activewear, or other wearables for convenient charging of personal devices such as smart phones, tablets, or any device that requires recharging.  The claimed and disclosed sheath receives a female end of a USB cable wherein the operative end of the female end of a USB cable is provided in a flat position with the operative end being uncovered and above an outer surface of the body and the cord of the female end going through an opening between the inner surface and the outer surface.

13.     The '138 Patent, titled: "Sheath for USB Charger," issued on February 23, 2021. Plaintiff's invention is a sheath that may be incorporated into luggage, bags, activewear, or other wearables for convenient charging of personal devices such as smart phones, tablets, or any device that requires recharging.  The claimed and disclosed sheath receives a female end of a USB cable wherein the operative end of the female end of a USB cable is provided in a flat position with the operative end being uncovered and above an outer surface of the body and the cord of the female end going through an opening between the inner surface and the outer surface.

14.     The '009 Patent, titled: "Sheath for Convenient Charging," issued on March 7, 2023.  Plaintiff's invention is a sheath that may be incorporated into luggage, bags, activewear, or other wearables for convenient charging of personal devices such as smart phones, tablets, or any

device that requires recharging.  The claimed and disclosed sheath receives a female end of a USB cable wherein the operative end of the female end of a USB cable is provided in a flat position with the operative end being uncovered and above an outer surface of the body and the cord of the female end going through an opening between the inner surface and the outer surface.

15.     Samsonite Int'l heads the worldwide group of Samsonite companies (the "Samsonite Group"), which touts being "the world's largest travel luggage company."  The Samsonite Group, which includes Samsonite LLC, Samsonite Co. Stores, and DMV, designs, sources, manufactures, distributes, and sells products, including luggage, business and computer bags, garment bags, outdoor and casual bags, business cases, clothing, and travel accessories, throughout the world under the *Samsonite* brand name, as well as other owned and licensed brand names.  The Samsonite Group sells its products in North America, Asia, Europe, and Latin America through a variety of wholesale distribution channels, including Amazon, and through company-operated retail stores, third-party retailers, and e-commerce.

16.     According to Samsonite Int'l's corporate literature, "[w]ith 1,096 company-owned retail stores in 39 countries by the end of 2020, as well as a variety of wholesale distribution channels and retail websites, Samsonite is truly a global company.  We own and operate three primary manufacturing sites in Belgium, Hungary[,] and India, as well as a small site in Mexico and 19 distribution centers worldwide."

17.     Samsonite Int'l's corporate literature also states that "Samsonite International S.A. (the 'Company'), together with its consolidated subsidiaries (the 'Group'), is principally engaged in the design, manufacture, sourcing and distribution of luggage, business and computer bags, outdoor and casual bags and travel accessories throughout the world, primarily under the

*Samsonite*, *Tumi*, *American Tourister*, *Gregory*, *High Sierra*, *Kamiliant*, *ebags*, *Lipault* and *Hartmann* brand names as well as other owned and licensed brand names."

18.     Samsonite Int'l, through its Board of Directors, directs, controls, and coordinates the activities of the Samsonite Group by, at a minimum, making strategic decisions that affect the group as a whole, providing general oversight, including at the product level, and holding its subsidiary entities accountable for their financial results.

19.     Mr. Kyle Francis Gendreau is the executive director and chief executive officer of Samsonite Int'l.  According to the website corporate.samsonite.com (the "Samsonite Corporate Website"), Mr. Gendreau is responsible for managing the entire Samsonite Group's operations.

20.     Samsonite Int'l's corporate functions are performed by personnel from other Samsonite Group entities, including Samsonite LLC personnel based in Massachusetts.

21.     Samsonite LLC is responsible for the Samsonite Group's U.S. operations. Samsonite LLC and other Samsonite Group affiliates, including Samsonite Co. Stores and DMV, carry out the Samsonite Group's U.S. activities.

22.     On information and belief, Samsonite Co. Stores is a direct, wholly-owned subsidiary of Samsonite LLC.  Samsonite Co. Stores is the U.S. retail division of Samsonite LLC, operating company-owned retail and outlet stores throughout the United States, including within this District.  Samsonite Co. Stores sells Samsonite Group bag and luggage products through its company-owned retail and outlet stores as well as through various authorized third-party retailers, including Best Buy, Kohls, JC Penney, and Macy's.

23.     On information and belief, DMV owns, operates, and provides content for its websites shop.samsonite.com (the "Samsonite.com Website"), www.ebags.com (the "ebags Website"), shop.americantourister.com (the "American Tourister Website"), shop.highsierra.com

(the "High Sierra Website"), and shop.hartmann.com (the "Hartmann Website").  DMV sells Samsonite Group bag and luggage products through e-commerce, including through the Samsonite.com Website, ebags Website, American Tourister Website, High Sierra Website, and Hartmann Website.  Also, DMV is the owner of the various "ebags" U.S. trademarks.

24.    On information and belief, Samsonite IP Holdings SARL ("Samsonite IP") operates as a wholly owned subsidiary of Samsonite Int'l.  Samsonite IP shares the same address as Samsonite Int'l's registered office in Luxembourg: 13-15, avenue de la Liberté, L-1931 Luxembourg.  Samsonite IP is the owner of the various "Samsonite," "American Tourister," "High Sierra," and "Hartmann" U.S. trademarks.

25.    On information and belief, Defendants collectively sell and have sold products, including but not limited to the Quadrion Slim Backpack, the Quadrion Standard Backpack, and the Quadrion Messenger Bag (collectively, the "Accused Quadrion Bags"), through a variety of wholesale distribution channels, company-operated retail and outlet stores, third-party retailers, and e-commerce, including on the Samsonite.com Website.



26.     Samsonite LLC designed the Accused Quadrion Bags and other products infringing the Patents-in-Suit.  Samsonite LLC imports into the United States the Accused Quadrion Bags and most of the Samsonite Group products sold in the United States, including other products infringing the Patents-in-Suit.

27.     Under the direction, control, and coordination of Samsonite Int'l, Samsonite LLC, Samsonite Co. Stores, and DMV import, offer to sell, and sell the Accused Quadrion Bags and other infringing Samsonite Group products in the United States.  Samsonite Int'l, which is listed on the Honk Kong Stock Exchange, benefits significantly from the Samsonite Group's involvement in the U.S. market, deriving substantial profits and soliciting investments based on the U.S. sales of Samsonite Group products, including the Accused Quadrion Bags and other products infringing the Patents-in-Suit.

28.     Other infringing bag and luggage products offered for sale and sold collectively by Defendants include, but are not limited to, the following: various Samsonite SXK products; various

8

Samsonite Pro products; various Samsonite Carrier products; various Samsonite Mobile Solution products; various Samsonite Silhouette products; the Samsonite Tectonic Sweetwater Backpack; the Samsonite Advance Eco Carry-On Spinner; various Samsonite Insignis products; the Samsonite Theorym Underseater Spinner; the Samsonite Agilis Softside Spinner Suitcase; the Samsonite Laser Pro 2 Laptop Backpack; the Samsonite Just Right Standard Backpack; the ebags Pro Slim USB Laptop Backpack; the ebags Kalya Underseat Carry-On; the American Tourister Star Wars R2D2 Underseater; the High Sierra Business ProSlim USB Backpack; the High Sierra Endeavor Elite 2.0 Backpack; various Hartmann Ratio products; the Hartmann Carry-On Spinner; the Hartmann Metropolitan 2 Global Carry-On Expandable Spinner Suitcase; and the Hartmann Herringbone Deluxe Underseater (collectively, "Defendants' Other Infringing Products").

29.    Collectively, Defendants have and continue to directly infringe, contributorily infringe, and/or induce others to infringe at least claims 1 and 9 of the '071 Patent, at least claims 1, 3–4, 6–7, and 18–21 of the '137 Patent, at least claims 1–2, 4–8, 17–21, and 23 of the '138 Patent, and at least claims 1–2, 4–8, 17–21, and 29 of the '009 Patent in the United States.

30.    Collectively, Defendants directly infringe the Patents-in-Suit by importing, offering to sell, and selling, in the United States and this District, their infringing Samsonite Group bag and luggage products through wholesale distribution channels, company-operated retail and outlet stores, third-party retailers, and e-commerce.

31.    Collectively, Defendants contributorily infringe the Patents-in-Suit by providing a staple article—their infringing Samsonite Group bag and luggage products—to (1) U.S. retailers and wholesalers who, in turn, sell and offer for sale the infringing products; and (2) U.S. customers who, in turn, use the infringing products.

32.    Collectively, Defendants induce infringement of the Patents-in-Suit by U.S. retailers and wholesalers by knowingly and actively soliciting their business and providing them with infringing products to offer to sell and sell.  Defendants expend significant time and resources on the design, manufacture, and quality control of their infringing products (which they promote as "premium-quality," "iconic designs," and "the latest design technology" on the Samsonite.com Website), place their trademarks on such products, and maintain goodwill in their marks such that retailers and wholesalers benefit from the sales and popularity of Samsonite Group products.  The goodwill in the products, brands, and marks, including *Samsonite*, *ebags*, *American Tourister*, *High Sierra*, and *Hartmann*, entices retailers and wholesalers to offer to sell and sell infringing products to customers, who purchase the products and infringe.

33.    Collectively, Defendants knowingly and actively encourage customers to use the infringing products to infringe the Patents-in-Suit by advertising the infringing capabilities of the products and providing instructions and technical support to their customers.  The Samsonite.com Website instructs customers that the "[b]uilt in USB port lets you power devices on the go" "to keep you charged and stress-free" and that the "[i]ntegrated charging port allows for easy access to personal portable chargers."

## Details

Sleek yet sophisticated, the water-resistant Slim Backpack is reinforced with Kevlar® fibers for ultimate durability. With a USB port, padded laptop compartment and plenty of organization, there is no doubt that your belongings will be safe and secure.

- Laptop Compartment: Padded laptop compartment fits up to 15.6" laptop

- Organization: Front pocket organization for all of your business needs

- Water Bottle Storage: Dual mesh pockets for water bottle storage

- USB Port: USB power connectivity (integrated USB socket) to keep you charged and stress-free

- SmartSleeve™ fits over most upright luggage handles for easy mobility

- 600D polyester fabric

- Built with Kevlar®: Reinforced with Kevlar® fibers for durability

- Water-resistant coated material

## Specifications

| | |
|---|---|
| Item# | 131700T607 |
| Overall Dimensions ⓘ | 17.32" × 11.42" × 4.33" |
| Internal Dimensions ⓘ | 17.32" × 11.42" × 4.33" |
| Linear Dimensions ⓘ | 33.1" |
| Weight | 1.48 lbs |
| Material | Kevlar® Reinforced Fabric ⓘ |
| Built in USB port lets you power devices on the go. Battery sold separately | Polyester ⓘ |
| USB Port ⓘ | Yes |
| Laptop Size ⓘ | 15.6 in. |
| Smart Sleeve ⓘ | Yes |
| Warranty ⓘ | Limited 3 Year Global Warranty |

| Technology | Integrated charging port allows for easy access to personal portable chargers (portable charger not included) | Tablet Pocket ⓘ | Tablet Pocket ⓘ | Tablet Pocket ⓘ | Tablet Pocket ⓘ |
|---|---|---|---|---|---|
| | USB Port ⓘ | Laptop compartment | Laptop compartment | Laptop compartment | Laptop compartment |
| | | USB Port ⓘ | Perfect Fit Laptop System ⓘ | USB Port ⓘ | USB Port ⓘ |
| | | | | RFID Protection ⓘ | RFID Protection ⓘ |

Shop All Quadrion ›     Laptop Backpacks ›

34.    On information and belief, Defendants collectively perform extensive market research and gather extensive information on their competitors and competing products in the marketplace, including patents relating to such products.    Given the similarities between Defendants' infringing products and the Patents-in-Suit, the similarities between Defendants' infringing products and Plaintiff's competing products that embody the asserted claims of the Patents-in-Suit and are marked with patent numbers in compliance with 35 U.S.C. § 287, and Plaintiff's previous patent infringement litigations, which were newsworthy and publicized by Bloomberg Law and Law360, involving Plaintiff and Defendants' direct competitors Targus International LLC and Wenger S.A. and involving similar products and the '071 Patent and '138

Patent,[2] Defendants were aware of Plaintiff's patented technology and knew or should have known that their own products practiced at least claims 1 and 9 of the '071 Patent, at least claims 1, 3–4, 6–7, and 18–21 of the '137 Patent, at least claims 1–2, 4–8, 17–21, and 23 of the '138 Patent, and at least claims 1–2, 4–8, 17–21, and 29 of the '009 Patent.

35.    On March 14, 2023, Plaintiff filed a complaint in the U.S. District Court for the Western District of Texas against Samsonite Int'l.[3]  The complaint alleged that Samsonite Int'l infringed the same patents asserted in this Complaint (i.e., the Patents-in-Suit) and involved the same accused products (i.e., the Accused Quadrion Bags and Defendants' Other Infringing Products, which were later identified in Plaintiff's preliminary infringement contentions).  On June 20, 2023, Samsonite Int'l moved to dismiss the case, arguing that the Texas court lacked personal jurisdiction, and Plaintiff conducted jurisdictional discovery.  Plaintiff and Samsonite Int'l exchanged preliminary infringement and invalidity contentions and fully briefed the disputed claim terms of the Patents-in-Suit, although the court never held a claim construction hearing.  On June 24, 2024, the court dismissed the case without prejudice, finding that Samsonite Int'l was not subject to personal jurisdiction in Texas.

36.    On information and belief, Defendants had knowledge of the Patents-in-Suit since the date that each of the Patents-in-Suit issued.  At the latest, Defendants had knowledge of the Patents-in-Suit in March 2023, when Plaintiff filed the Texas complaint against Samsonite Int'l on March 14, 2023, and when Plaintiff express mailed with tracking and emailed Plaintiff's amended complaint to Samsonite Int'l on March 30, 2023.  Samsonite LLC, Samsonite Co. Stores, and DMV, as entities involved with making, importing, using, offering to sell, and/or selling the

---

[2] *Swissdigital USA Co., Ltd. v. Wenger S.A.*, 6:21-cv-00453-ADA-DTG (W.D. Tex. 2021); *Targus Int'l LLC v. Swissdigital USA Co., Ltd.*, 8:20-cv-00782-JLS-DFM (C.D. Cal. 2020).
[3] *Swissdigital USA Co., Ltd. v. Samsonite Int'l S.A.*, 6:23-cv-00196-ADA-DTG (W.D. Tex. 2023).

Accused Quadrion Bags and Defendants' Other Infringing Products, had knowledge of the Patents-in-Suit, at the latest, around the same time Samsonite Int'l acquired knowledge of the Patent-in-Suit. Defendants worked collectively to produce evidence in support of Samsonite Int'l and in response to Plaintiff's jurisdictional discovery requests in the Texas case, evidencing Defendants' knowledge of the Patents-in-Suit and the accused products. For example, Mr. John Livingston, the Samsonite Group's executive vice president, general counsel, and joint company secretary, who is an employee of Samsonite LLC, provided a declaration in support of Samsonite Int'l's motion to dismiss.

37.    With full knowledge of the Patents-in-Suit and knowledge that the Accused Quadrion Bags and Defendants' Other Infringing Products infringe the Patents-in-Suit, Defendants continue to collectively make, import, use, offer to sell and/or sell the infringing products and induce others to buy, use, and sell these infringing products.

**COUNT ONE**
**INFRINGEMENT OF U.S. PATENT NO. 10,574,071**

38.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1–37 herein.

39.    Pursuant to 35 U.S.C. § 271(a), Defendants have collectively infringed (literally and/or under the doctrine of equivalents) at least claims 1 and 9 of the '071 Patent directly by making, importing, using, offering to sell, and/or selling in the United States, including in this District, Samsonite Group bag and luggage products, including but not limited to the Accused Quadrion Bags and Defendants' Other Infringing Products, that include a sheath for a USB charger for convenient charging.

40.    In violation of 35 U.S.C. § 271(b), Defendants have collectively infringed (literally and/or under the doctrine of equivalents) at least claims 1 and 9 of the '071 Patent indirectly by

knowingly and intentionally inducing, causing, urging, encouraging, aiding, and abetting the infringement of the '071 Patent claims by third parties, including other Samsonite Group entities (including but not limited to the Samsonite Group entities that are party to this case), retailers, wholesalers, and customers.

41.    Defendants have done so by affirmative acts, including but not limited to selling the infringing products, placing their trademarks on such products, marketing the infringing capabilities of such products, and providing instructions, technical support, and other encouragement for the use of such products.  Defendants induce infringement of the Patents-in-Suit by U.S. retailers and wholesalers by providing them with the infringing products.  Defendants expend significant time and resources on the design, manufacture, and quality control of their infringing products, place their trademarks on such products, and maintain goodwill in their marks such that retailers and wholesalers benefit from the sales and popularity of Samsonite Group products.  The goodwill in the products, brands, and marks, including *Samsonite*, *ebags*, *American Tourister*, *High Sierra*, and *Hartmann*, entices retailers and wholesalers to offer to sell and sell the infringing products to customers, who purchase the products and infringe.

42.    Defendants knowingly and specifically intended third parties to infringe at least claims 1 and 9 of the '071 Patent.  On information and belief, Defendants knew of the '071 Patent, performed affirmative acts that constitute induced infringement, and knew or should have known that those acts would induce actual infringement of one or more of the '071 Patent's claims by third parties.

43.    On information and belief, given the extensive market research that Defendants perform, the similarities between Defendants' infringing products and the '071 Patent, the similarities between Defendants' infringing products and Plaintiff's competing products that

embody the asserted claims of the '071 Patent, and Plaintiff's patent infringement litigations, which were newsworthy and publicized by Bloomberg Law and Law360, involving Plaintiff and Defendants' direct competitors Targus International LLC and Wenger S.A. and involving similar products and the '071 Patent and '138 Patent, Defendants were aware of Plaintiff's patented technology yet continue to import, offer to sell, and sell their infringing products and encourage customers to use such products to infringe.

44.     On information and belief, Defendants had knowledge of the '071 Patent as early as February 2020, when the '071 Patent issued.  At the latest, Defendants had knowledge of the '071 Patent in March 2023, when Plaintiff filed the Texas complaint against Samsonite Int'l and express mailed with tracking and emailed Plaintiff's amended complaint to Samsonite Int'l. Samsonite LLC, Samsonite Co. Stores, and DMV, as entities involved with making, importing, using, offering to sell, and/or selling the Accused Quadrion Bags and Defendants' Other Infringing Products, had knowledge of the '071 Patent, at the latest, around the same time Samsonite Int'l acquired knowledge of the '071 Patent.

45.     In violation of 35 U.S.C. § 271(c), Defendants have collectively infringed (literally and/or under the doctrine of equivalents), at least claims 1 and 9 of the '071 Patent indirectly by contributing to the infringement of at least those claims.  Defendants provide their infringing bag and luggage products—a staple article—to (1) U.S. retailers and wholesalers who, in turn, offer to sell and sell the infringing products; and (2) to U.S. customers who, in turn, use the infringing products.

46.     Defendants have contributed to the infringement of at least claims 1 and 9 of the '071 Patent because they knew that the Accused Quadrion Bags and Defendants' Other Infringing Products they offered for sale, which feature a "[b]uilt in USB port [that] lets you power devices

on the go" "to keep you charged and stress-free," "allow[ing] for easy access to personal portable chargers," were infringing and not suitable for substantial non-infringing use.

47.     On information and belief, Defendants, while fully aware that at least the Accused Quadrion Bags and Defendants' Other Infringing Products infringed one or more of the claims of the '071 Patent, collectively imported, offered to sell, sold, and induced others to buy, use, and sell these infringing products.

48.     As a result of Defendants' infringement of the '071 Patent, Plaintiff has suffered monetary losses for which it is entitled to an award of damages that is adequate to compensate Plaintiff for the infringement under 35 U.S.C. § 284, in no event less than a reasonable royalty.

49.     On information and belief, Defendants' infringement of the '071 Patent has been deliberate, willful, and with full knowledge, or willful blindness to knowledge, of the '071 Patent.

50.     Plaintiff has suffered damages in an amount to be determined at trial by reason of Defendants' willful infringement of the '071 Patent.

51.     To illustrate Defendants' infringement, the Accused Quadrion Bags meet each and every element of at least claim 1 of the '071 Patent.  The Accused Quadrion Bags meet the preamble "a bag or luggage for convenient charging, comprising."  The Accused Quadrion Bags are bags for convenient charging, as they include an "integrated USB socket" that "lets you power devices on the go."  Defendants claim that this feature keeps a user "charged and stress free."

52.     The Accused Quadrion Bags meet the claim element "a bag or luggage body having a placing space for placing a power storage device inside the bag or luggage body and a power cable outlet on the outer surface of the bag or luggage body."  The Accused Quadrion Bags include a place for placing a power storage device inside the bag and a power cable outlet on the outer surface of the bag body.

53.    The Accused Quadrion Bags meet the claim element "a USB extension cable having a male connector and a female connector having four sides and an operative end."  The Accused Quadrion Bags include a USB extension cable with a male connector and a female connector having four sides and an operative end.

54.    The Accused Quadrion Bags meet the claim element "wherein the male connector of the USB extension cable is inside the bag or luggage body and is used to connect to the power storage device in the placing space."  The male connector of the USB extension cable is inside the Accused Quadrion Bags and is used to connect to the power storage device in the placing space.

55.    The Accused Quadrion Bags meet the claim element "wherein the female connector is retained outside and adjacent to the power cable outlet with one side of the four sides of the female connector in communication with the bag or luggage body, and the other three sides of the female connector are covered by a water proof sheath that protects the female connector and provides it in a flat position and wherein the sheath is above and covers the power cable outlet."  The female connector of the Accused Quadrion Bags is retained outside and adjacent to the power cable outlet.  Three sides of the female connector are covered by a water proof sheath and provides it in a flat position and is above and covers the power cable outlet.  The remaining side is in communication with the bag or luggage body.

56.    The Accused Quadrion Bags meet the claim element "wherein the sheath does not cover the operative end of the female connector which is exposed and fixedly attached above the exterior of the bag such that the operative end of the female connector does not need to be moved and the bag or luggage body does not need to be opened to accept a charging interface of a product to be charged."  The operative end of the female connector of the Accused Quadrion Bags is exposed and not covered by the sheath.  The operative end of the female connector is fixedly

attached to the bag, and as it is on the exterior of the bag, the bag does not need to be opened to accept a charging interface of a product to be charged.

<u>**COUNT TWO**</u>
<u>**INFRINGEMENT OF U.S. PATENT NO. 10,931,137**</u>

57.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1–56 herein.

58.    Pursuant to 35 U.S.C. § 271(a), Defendants have collectively infringed (literally and/or under the doctrine of equivalents) at least claims 1, 3–4, 6–7, and 18–21 of the '137 Patent directly by making, importing, using, offering to sell, and/or selling in the United States, including in this District, Samsonite Group bag and luggage products, including but not limited to the Accused Quadrion Bags and Defendants' Other Infringing Products, that include a sheath for a USB charger for convenient charging.

59.    In violation of 35 U.S.C. § 271(b), Defendants have collectively infringed (literally and/or under the doctrine of equivalents) at least claims 1, 3–4, 6–7, and 18–21 of the '137 Patent indirectly by knowingly and intentionally inducing, causing, urging, encouraging, aiding, and abetting the infringement of the '137 Patent claims by third parties, including other Samsonite Group entities (including but not limited to the Samsonite Group entities that are party to this case), retailers, wholesalers, and customers.

60.    Defendants have done so by affirmative acts, including but not limited to selling the infringing products, placing their trademarks on such products, marketing the infringing capabilities of such products, and providing instructions, technical support, and other encouragement for the use of such products.  Defendants induce infringement of the Patents-in-Suit by U.S. retailers and wholesalers by providing them with the infringing products.  Defendants expend significant time and resources on the design, manufacture, and quality control of their

infringing products, place their trademarks on such products, and maintain goodwill in their trademarks such that retailers and wholesalers benefit from the sales and popularity of the Samsonite Group products. The goodwill in the products, brands, and marks, including *Samsonite*, *ebags*, *American Tourister*, *High Sierra*, and *Hartmann*, entices retailers and wholesalers to offer to sell and sell the infringing products to customers, who purchase the products and infringe.

61. Defendants knowingly and specifically intended third parties to infringe at least claims 1, 3–4, 6–7, and 18–21 of the '137 Patent. On information and belief, Defendants knew of the '137 Patent, performed affirmative acts that constitute induced infringement, and knew or should have known that those acts would induce actual infringement of one or more of the '137 Patent's claims by third parties.

62. On information and belief, given the extensive market research that Defendants perform, the similarities between Defendants' infringing products and the '137 Patent, the similarities between Defendants' infringing products and Plaintiff's competing products that embody the asserted claims of the '137 Patent, and Plaintiff's patent infringement litigation, which was newsworthy and publicized by Bloomberg Law and Law360, involving Plaintiff and Defendants' direct competitors Targus International LLC and Wenger S.A. and involving similar products and the '071 Patent and '138 Patent, Defendants were aware of Plaintiff's patented technology yet continue to import, offer to sell, and sell their infringing products and encourage customers to use such products to infringe.

63. On information and belief, Defendants had knowledge of the '137 Patent as early as February 2021, when the '137 Patent issued. At the latest, Defendants had knowledge of the '137 Patent in March 2023, when Plaintiff filed the Texas complaint against Samsonite Int'l and express mailed with tracking and emailed Plaintiff's amended complaint to Samsonite Int'l.

Samsonite LLC, Samsonite Co. Stores, and DMV, as entities involved with making, importing, using, offering to sell, and/or selling the Accused Quadrion Bags and Defendants' Other Infringing Products, had knowledge of the '137 Patent, at the latest, around the same time Samsonite Int'l acquired knowledge of the '137 Patent.

64.     In violation of 35 U.S.C. § 271(c), Defendants have collectively infringed (literally and/or under the doctrine of equivalents), at least claims 1, 3–4, 6–7, and 18–21 of the '137 Patent indirectly by contributing to the infringement of at least those claims.  Defendants provide their infringing bag and luggage products—a staple article—to (1) U.S. retailers and wholesalers who, in turn, offer to sell and sell the infringing products; and (2) to U.S. customers who, in turn, use the infringing products.

65.     Defendants have contributed to the infringement of at least claims 1, 3–4, 6–7, and 18–21 of the '137 Patent because they knew that the Accused Quadrion Bags and Defendants' Other Infringing Products they offered for sale, which feature a "[b]uilt in USB port [that] lets you power devices on the go" "to keep you charged and stress-free," "allow[ing] for easy access to personal portable chargers," were infringing and not suitable for substantial non-infringing use.

66.     On information and belief, Defendants, while fully aware that at least the Accused Quadrion Bags and Defendants' Other Infringing Products infringed one or more of the claims of the '137 Patent, collectively imported, offered to sell, sold, and induced others to buy, use, and sell these infringing products.

67.     As a result of Defendants' infringement of the '137 Patent, Plaintiff has suffered monetary losses for which it is entitled to an award of damages that is adequate to compensate Plaintiff for the infringement under 35 U.S.C. § 284, in no event less than a reasonable royalty.

68.     On information and belief, Defendants' infringement of the '137 Patent has been

deliberate, willful, and with full knowledge, or willful blindness to knowledge, of the '137 Patent.

69.     Plaintiff has suffered damages in an amount to be determined at trial by reason of Defendants' willful infringement of the '137 Patent.

70.     To illustrate Defendants' infringement, the Accused Quadrion Bags meet each and every element of at least claim 1 of the '137 Patent.  The Accused Quadrion Bags meet the preamble "A sheath for convenient charging."  The Accused Quadrion Bags include a sheath for convenient charging, as they include an "integrated USB socket" that "lets you power devices on the go."  Defendants claim that this feature keeps a user "charged and stress free."

71.     The Accused Quadrion Bags meet the claim element "a sheath having a left side, top side and right side, a first tapered closed end, a second open end and a surrounding bottom portion surrounding the left side and the right side, the first tapered closed end and the second open end of the sheath."  The Accused Quadrion Bags include a sheath having a left side, top side and right side, a first tapered closed end, a second open end, which allows for insertion of a USB cord, and a surrounding bottom portion, which forms the base of the sheath.

72.     The Accused Quadrion Bags meet the claim element "wherein at least a portion of the sheath extends above an outer surface of a body, wherein the body has an inner surface, an outer surface and a power cable outlet between the inner surface and the outer surface."  At least a portion of the sheath of the Accused Quadrion Bags extends above the outer surface of the body of the bag.  The Accused Quadrion Bags include a body with an inner and outer surface and a power cable outlet between the inner and outer surfaces.

73.     The Accused Quadrion Bags meet the claim element "wherein the sheath is at the power cable outlet and the sheath receives a female end of a USB cable having four sides, an operative end and a cord end."  The sheath of the Accused Quadrion Bags is located at the power

cable outlet and receives a female end of a USB cable having four sides, an operative end and a cord end.

74.    The Accused Quadrion Bags meet the claim element "wherein the operative end of the female end of the USB cable is removably retained in the second open end of the sheath and the cord end of the female end of the USB cable is retained in the first tapered closed end of the sheath to provide the female end of the USB cable in a flat position with the operative end of the female connector being uncovered and above the outer surface of the body."  The operative end of the female end of the USB cable is uncovered and above the outer surface of the body of the Accused Quadrion Bags, and the USB cord is removably retained and in a flat position.  The operative end is retained in the second opening and the cord end is retained within the first tapered closed end.

75.    The Accused Quadrion Bags meet the claim element "wherein the surrounding bottom portion is attached to the inner surface of the body."  The surrounding bottom portion is attached to the inner surface of the body of the Accused Quadrion Bags, as it is sewn in between the fabric of both the inner and outer surface of the body.

76.    The Accused Quadrion Bags meet the claim element "wherein the sheath has at least one ventilation opening on the top side."  The top side of the sheath of the Accused Quadrion Bags has several ventilation openings.

**COUNT THREE**
**INFRINGEMENT OF U.S. PATENT NO. 10,931,138**

77.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1–76 herein.

78.    Pursuant to 35 U.S.C. § 271(a), Defendants have collectively infringed (literally and/or under the doctrine of equivalents) at least claims 1–2, 4–8, 17–21, and 23 of the '138 Patent

directly by making, importing, using, offering to sell, and/or selling in the United States, including in this District, Samsonite Group bag and luggage products, including but not limited to the Accused Quadrion Bags and Defendants' Other Infringing Products, that include a sheath for a USB charger for convenient charging.

79. In violation of 35 U.S.C. § 271(b), Defendants have collectively infringed (literally and/or under the doctrine of equivalents) at least claims 1–2, 4–8, 17–21, and 23 of the '138 Patent indirectly by knowingly and intentionally inducing, causing, urging, encouraging, aiding, and abetting the infringement of the '138 Patent claims by third parties, including other Samsonite Group entities (including but not limited to the Samsonite Group entities that are party to this case), retailers, wholesalers, and customers.

80. Defendants have done so by affirmative acts, including but not limited to selling the infringing products, placing their trademarks on such products, marketing the infringing capabilities of such products, and providing instructions, technical support, and other encouragement for the use of such products. Defendants induce infringement of the Patents-in-Suit by U.S. retailers and wholesalers by providing them with the infringing products. Defendants expend significant time and resources on the design, manufacture, and quality control of their infringing products, place their trademarks on these infringing products, and maintain goodwill in their trademarks such that retailers and wholesalers benefit from the sales and popularity of the infringing Samsonite Group products. The goodwill in the products, brands, and marks, including *Samsonite*, *ebags*, *American Tourister*, *High Sierra*, and *Hartmann*, entices retailers and wholesalers to offer to sell and sell the infringing products to customers, who purchase the products and infringe.

81. Defendants knowingly and specifically intended third parties to infringe at least

claims 1–2, 4–8, 17–21, and 23 of the '138 Patent.  On information and belief, Defendants knew of the '138 Patent, performed affirmative acts that constitute induced infringement, and knew or should have known that those acts would induce actual infringement of one or more of the '138 Patent's claims by third parties.

82.     On information and belief, given the extensive market research that Defendants perform, the similarities between Defendants' infringing products and the '138 Patent, the similarities between Defendants' infringing products and Plaintiff's competing products that embody the asserted claims of the '138 Patent, and Plaintiff's patent infringement litigations, which were newsworthy and publicized by Bloomberg Law and Law360, involving Plaintiff and Defendants' direct competitors Targus International LLC and Wenger S.A. and involving similar products and the '071 Patent and '138 Patent, Defendants were aware of Plaintiff's patented technology yet continue to import, offer to sell, and sell their infringing products and encourage customers to use such products to infringe.

83.     On information and belief, Defendants had knowledge of the '138 Patent as early as February 2021, when the '138 Patent issued.  At the latest, Defendants had knowledge of the '138 Patent in March 2023, when Plaintiff filed the Texas complaint against Samsonite Int'l and express mailed with tracking and emailed Plaintiff's amended complaint to Samsonite Int'l. Samsonite LLC, Samsonite Co. Stores, and DMV, as entities involved with making, importing, using, offering to sell, and/or selling the Accused Quadrion Bags and Defendants' Other Infringing Products, had knowledge of the '138 Patent, at the latest, around the same time Samsonite Int'l acquired knowledge of the '138 Patent.

84.     In violation of 35 U.S.C. § 271(c), Defendants have collectively infringed (literally and/or under the doctrine of equivalents), at least claims 1–2, 4–8, 17–21, and 23 of the '138 Patent

indirectly by contributing to the infringement of at least those claims.  Defendants provides their infringing bag and luggage products—a staple article—to (1) U.S. retailers and wholesalers who, in turn, sell and offer for sale the infringing products; and (2) to U.S. customers who, in turn, use the infringing products.

85.    Defendants have contributed to the infringement of at least claims 1–2, 4–8, 17–21, and 23 of the '138 Patent because they knew that the Accused Quadrion Bags and Defendants' Other Infringing Products they offered for sale, which feature a "[b]uilt in USB port [that] lets you power devices on the go" "to keep you charged and stress-free," "allow[ing] for easy access to personal portable chargers," were infringing and not suitable for substantial non-infringing use.

86.    On information and belief, Defendants, while fully aware that at least the Accused Quadrion Bags and Defendants' Other Infringing Products infringed one or more of the claims of the '138 Patent, collectively imported, offered to sell, sold, and induced others to buy, use, and sell these infringing products.

87.    As a result of Defendants' infringement of the '138 Patent, Plaintiff has suffered monetary losses for which it is entitled to an award of damages that is adequate to compensate Plaintiff for the infringement under 35 U.S.C. § 284, in no event less than a reasonable royalty.

88.    On information and belief, Defendants' infringement of the '138 Patent has been deliberate, willful, and with full knowledge, or willful blindness to knowledge, of the '138 Patent.

89.    Plaintiff has suffered damages in an amount to be determined at trial by reason of Defendants' willful infringement of the '138 Patent.

90.    To illustrate Defendants' infringement, the Accused Quadrion Bags meet each and every element of at least claim 23 of the '138 Patent.  The Accused Quadrion Bags meet the preamble "A sheath for convenient charging."  The Accused Quadrion Bags include a sheath for

convenient charging, as they include an "integrated USB socket" that "lets you power devices on the go." Defendants claim that this feature keeps a user "charged and stress free."

91.    The Accused Quadrion Bags meet the claim element "a sheath having a raised portion that extends above an outer surface of a body, wherein the raised portion has a USB opening, and a surrounding bottom portion surrounding at least a portion of the raised portion." The Accused Quadrion Bags include a raised integrated USB socket that extends above an outer surface of the body of the bag, wherein the raised portion has a USB opening, and a surrounding bottom portion surrounding at least a portion of the raised portion.

92.    The Accused Quadrion Bags meet the claim element "wherein the body has an inner surface, an outer surface and a body opening between the inner surface and the outer surface." The Accused Quadrion Bags include a body with an inner and outer surface and a body opening between the inner and outer surfaces.

93.    The Accused Quadrion Bags meet the claim element "wherein the sheath is at the body opening with the raised portion above the outer surface and at least a portion of the surrounding bottom portion is in communication with a portion of the body." The sheath is located at the body opening of the Accused Quadrion Bags and has a raised portion above the outer surface of the body, and the bottom portion is in communication with the body.

94.    The Accused Quadrion Bags meet the claim element "wherein the sheath has a female end of a USB cable in the USB opening, wherein the female end of the USB cable has four sides, an operative end and a cord end and the operative end of the female end of the USB cable is retained in the USB opening to provide the female end of the USB cable in a flat position with the operative end of the female connector being uncovered and above the outer surface of the body." The sheath of the Accused Quadrion Bags has a female end of a USB cable in the USB opening,

wherein the female end of the USB cable has four sides, an operative end and a cord end. The operative end of the female end of the USB cable is retained in the USB opening to provide the female end of the USB cable in a flat position with the operative end of the female connector being uncovered and above the outer surface of the body of the Accused Quadrion Bags.

## COUNT FOUR
## INFRINGEMENT OF U.S. PATENT NO. 11,601,009

95.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1–94 herein.

96.    Pursuant to 35 U.S.C. § 271(a), Defendants have collectively infringed (literally and/or under the doctrine of equivalents) at least claims 1–2, 4–8, 17–21, and 29 of the '009 Patent directly by making, importing, using, offering to sell, and/or selling in the United States, including in this District, Samsonite Group bag and luggage products, including but not limited to the Accused Quadrion Bags and Defendants' Other Infringing Products, that include a sheath for a USB charger for convenient charging.

97.    In violation of 35 U.S.C. § 271(b), Defendants have collectively infringed (literally and/or under the doctrine of equivalents) at least claims 1–2, 4–8, 17–21, and 29 of the '009 Patent indirectly by knowingly and intentionally inducing, causing, urging, encouraging, aiding, and abetting the infringement of the '009 Patent claims by third parties, including other Samsonite Group entities (including but not limited to the Samsonite Group entities that are party to this case), retailers, wholesalers, and customers.

98.    Defendants have done so by affirmative acts, including but not limited to selling the infringing products, placing their trademarks on such products, marketing the infringing capabilities of such products, and providing instructions, technical support, and other encouragement for the use of such products. Defendants induce infringement of the Patents-in-

Suit by U.S. retailers and wholesalers by providing them with the infringing products. Defendants expend significant time and resources on the design, manufacture, and quality control of their infringing products, place their trademarks on these infringing products, and maintain goodwill in their trademarks such that retailers and wholesalers benefit from the sales and popularity of the infringing Samsonite Group products. The goodwill in the products, brands, and marks, including *Samsonite*, *ebags*, *American Tourister*, *High Sierra*, and *Hartmann*, entices retailers and wholesalers to offer to sell and sell the infringing products to customers, who purchase the products and infringe.

99.     Defendants knowingly and specifically intended third parties to infringe at least claims 1–2, 4–8, 17–21, and 29 of the '009 Patent. On information and belief, Defendants knew of the '009 Patent, performed affirmative acts that constitute induced infringement, and knew or should have known that those acts would induce actual infringement of one or more of the '009 Patent's claims by third parties.

100.     On information and belief, given the extensive market research that Defendants perform, the similarities between Defendants' infringing products and the '009 Patent, the similarities between Defendants' infringing products and Plaintiff's competing products that embody the asserted claims of the '009 Patent, and Plaintiff's patent infringement litigations, which were newsworthy and publicized by Bloomberg Law and Law360, involving Plaintiff and Defendants' direct competitors Targus International LLC and Wenger S.A. and involving similar products and the '071 Patent and '138 Patent, Defendants were aware of Plaintiff's patented technology yet continue to import, offer to sell, and sell their infringing products and encourage customers to use such products to infringe.

101.     On information and belief, Defendants had knowledge of the '009 Patent as early

as March 2023, when the '009 Patent issued.  At the latest, Defendants had knowledge of the '009

Patent in March 2023, when Plaintiff filed the Texas complaint against Samsonite Int'l and express

mailed with tracking and emailed Plaintiff's amended complaint to Samsonite Int'l.  Samsonite

LLC, Samsonite Co. Stores, and DMV, as entities involved with making, importing, using,

offering to sell, and/or selling the Accused Quadrion Bags and Defendants' Other Infringing

Products, had knowledge of the '009 Patent, at the latest, around the same time Samsonite Int'l

acquired knowledge of the '009 Patent.

102.    In violation of 35 U.S.C. § 271(c), Defendants have collectively infringed (literally

and/or under the doctrine of equivalents), at least claims 1–2, 4–8, 17–21, and 29 of the '009 Patent

indirectly by contributing to the infringement of at least those claims.  Defendants provide their

infringing bag and luggage products—a staple article—to (1) U.S. retailers and wholesalers who,

in turn, offer to sell and sell the infringing products; and (2) to U.S. customers who, in turn, use

the infringing products.

103.    Defendants have contributed to the infringement of at least claims 1–2, 4–8, 17–21,

and 29 of the '009 Patent because they knew that the Accused Quadrion Bags and Defendants'

Other Infringing Products they offered for sale, which feature a "[b]uilt in USB port [that] lets you

power devices on the go" "to keep you charged and stress-free," "allow[ing] for easy access to

personal portable chargers," were infringing and not suitable for substantial non-infringing use.

104.    On information and belief, Defendants, while fully aware that at least the Accused

Quadrion Bags and Defendants' Other Infringing Products infringed one or more of the claims of

the '009 Patent, collectively imported, offered to sell, sold, and induced others to buy, use, and sell

these infringing products.

105.    As a result of Defendants' infringement of the '009 Patent, Plaintiff has suffered

monetary losses for which it is entitled to an award of damages that is adequate to compensate Plaintiff for the infringement under 35 U.S.C. § 284, in no event less than a reasonable royalty.

106.    On information and belief, Defendants' infringement of the '009 Patent has been deliberate, willful, and with full knowledge, or willful blindness to knowledge, of the '009 Patent.

107.    Plaintiff has suffered damages in an amount to be determined at trial by reason of Defendants' willful infringement of the '009 Patent.

108.    To illustrate Defendants' infringement, the Accused Quadrion Bags meet each and every element of at least claim 29 of the '009 Patent.  The Accused Quadrion Bags meet the preamble "A sheath for convenient charging."  The Accused Quadrion Bags include a sheath for convenient, as they include an "integrated USB socket" that "lets you power devices on the go." Defendants claim that this feature keeps a user "charged and stress free."

109.    The Accused Quadrion Bags meet the claim element "a sheath having a raised portion."  The Accused Quadrion Bags include a raised integrated USB socket.

110.    The Accused Quadrion Bags meet the claim element "wherein the sheath is a separate piece that attaches to a body and when the sheath is attached to the body the raised portion extends above an outer surface of the body."  The sheath is a separate piece that attaches to the body of the Accused Quadrion Bags, as it is sewn in between the fabric of both the inner and outer surface of the body, and the sheath extends above the outer surface of the body of the bag.

111.    The Accused Quadrion Bags meet the claim element "wherein the raised portion has an opening, and a surrounding bottom portion surrounding at least a portion of the raised portion."  The sheath of the Accused Quadrion Bags has an opening, which allows for insertion of a USB cord, and a surrounding bottom portion, which forms the base of the sheath.

112.    The Accused Quadrion Bags meet the claim element "wherein the body has an inner

surface, an outer surface and a body opening between the inner surface and the outer surface." The Accused Quadrion Bags include a body with an inner and outer surface and a body opening between the inner and outer surfaces.

113.    The Accused Quadrion Bags meet the claim element "wherein the sheath is at the body opening with the raised portion above the outer surface and at least a portion of the surrounding bottom portion is in communication with a portion of the body." The sheath is located at the body opening of the Accused Quadrion Bags and has a raised portion above the outer surface of the body, and the bottom portion is in communication with the body.

114.    The Accused Quadrion Bags meet the claim element "wherein the sheath has a female end of a cable connector in the opening, wherein the female end of the cable connector has surrounding sides, an operative end and a cord end and the operative end of the female end of the cable connector is retained in the opening to provide the female end of the cable connector in a flat position with the operative end of the female connector being uncovered and above the outer surface of the body." The sheath of the Accused Quadrion Bags has a female end of a cable connector in the opening, wherein the female end of the cable connector has surrounding sides, an operative end and a cord end. The operative end of the female end of the cable connector is retained in the opening to provide the female end of the cable connector in a flat position with the operative end of the female connector being uncovered and above the outer surface of the body of the Accused Quadrion Bags.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays that this Court enter judgment against Defendants and in favor of Plaintiff:

A.    Declaring that Plaintiff is the owner of all right, title, and interest in and to United States Patent No. 10,574,071, together with all rights of recovery under such patent for past

infringement thereof;

B.    Declaring that United States Patent No. 10,574,071 is valid and enforceable in law and that Defendants have infringed said patent;

C.    Awarding to Plaintiff its damages caused by Defendants' infringement of United States Patent No. 10,574,071;

D.    Declaring that Plaintiff is the owner of all right, title, and interest in and to United States Patent No. 10,931,137, together with all rights of recovery under such patent for past infringement thereof;

E.    Declaring that United States Patent No. 10,931,137 is valid and enforceable in law and that Defendants have infringed said patent;

F.    Awarding to Plaintiff its damages caused by Defendants' infringement of United States Patent No. 10,931,137;

G.    Declaring that Plaintiff is the owner of all right, title, and interest in and to United States Patent No. 10,931,138, together with all rights of recovery under such patent for past infringement thereof;

H.    Declaring that United States Patent No. 10,931,138 is valid and enforceable in law and that Defendants have infringed said patent;

I.    Awarding to Plaintiff its damages caused by Defendants' infringement of United States Patent No. 10,931,138;

J.    Declaring that Plaintiff is the owner of all right, title, and interest in and to United States Patent No. 11,601,009, together with all rights of recovery under such patent for past infringement thereof;

K.    Declaring that United States Patent No. 11,601,009 is valid and enforceable in law

and that Defendants have infringed said patent;

L.    Awarding to Plaintiff its damages caused by Defendants' infringement of United States Patent No. 11,601,009;

M.    Entering a preliminary and permanent injunction against Defendants, their officers, employees, attorneys, all parent and subsidiary corporations and affiliates, their assigns and successors in interest, and those persons in active concert or participation with any of them who receive notice of the injunction, enjoining them from continuing acts of infringement of the Patents-in-Suit;

N.    Declaring that Defendants' infringement has been willful and awarding trebled damages pursuant to 35 U.S.C. § 284;

O.    Declaring that this is an exceptional case and awarding to Plaintiff its costs, expenses, and reasonable attorney fees pursuant to 35 U.S.C. § 285; and

P.    Awarding to Plaintiff such other and further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

In accordance with Fed. R. Civ. P. 38(b) Plaintiff hereby demands a trial by jury for all issues triable by jury.

Date: June 25, 2024                          Respectfully submitted,


                                            /s/ *Dariush Keyhani*


                                            Dariush Keyhani (*pro hac vice* forthcoming)
                                                    (District of Columbia Bar No. 1031500)
                                            Frances H. Stephenson (*pro hac vice* forthcoming)
                                                    (New York Reg. No. 5206495)
                                            Scott M. Draffin (*pro hac vice* forthcoming)
                                                    (New York Reg. No. 6095988)
                                            **KEYHANI LLC**
                                            1050 30th Street NW
                                            Washington, DC 20007
                                            Phone: (202) 748-8950
                                            dkeyhani@keyhanillc.com
                                            fstephenson@keyhanillc.com
                                            sdraffin@keyhanillc.com

                                            Lisa M. Tittemore (BBO # 567941)
                                            Kevin R. Mosier (BBO # 703739)
                                            **SUNSTEIN LLP**
                                            100 High Street
                                            Boston, MA 02110
                                            Phone: (617) 443-9292
                                            ltittemore@sunsteinlaw.com
                                            kmosier@sunsteinlaw.com

                                            *ATTORNEYS FOR PLAINTIFF, SWISSDIGITAL USA CO., LTD.*