```
              UNITED STATES DISTRICT
             DISTRICT OF MASSACHUSETTS


SWISSDIGITAL USA CO., LTD.,        )
        Plaintiff,                 )
        vs                         )  No. 1:24-CV-11636
SAMSONITE INTERNATIONAL S.A., ET AL,)
        Defendant.                 )


          BEFORE THE HONORABLE JULIA E. KOBICK
             UNITED STATES DISTRICT JUDGE
                SCHEDULING CONFERENCE



     John Joseph Moakley United States Courthouse
              Via Zoom Conference
              One Courthouse Way
         Boston, Massachusetts  02210

            WEDNESDAY, OCTOBER 2, 2024
                    3:00 P.M.



         Catherine L. Zelinski, RPR, CRC
              Official Court Reporter
     John Joseph Moakley United States Courthouse
          One Courthouse Way, Room 3-205
           Boston, Massachusetts  02210
       Email: CAL.Zelinski.Steno@gmail.com




       Mechanical Steno - Computer-Aided Transcript
```

**APPEARANCES:**

    Dariush Keyhani
    Keyhani, LLC
    1050 30th Street NW
    Washington, DC 20007
    Telephone: 202-903-0326
    Email: Dkeyhani@keyhanillc.com
    for Plaintiff.

    Frances Helen Stephenson
    Keyhani, LLC
    1050 30th Street NW
    Washington, DC 20007
    Telephone: 202-748-8950
    Email: Fstephenson@keyhanillc.com
    for Plaintiff.

    Scott Michael Draffin
    Keyhani, LLC
    1050 30th Street NW
    Washington, DC 20007
    Telephone: 202-748-8950
    Email: Sdraffin@keyhanillc.com
    for Plaintiff.

    Kevin R. Mosier
    Sunstein, LLP
    100 High Street
    Boston, MA 02110
    Telephone: 617-443-9292
    Email: Kmosier@sunsteinlaw.com
    for Plaintiff.

(Appearances Continued on the Following Page)

**APPEARANCES:**   (Continued)

    Adam J. Kessel
    Fish & Richardson, P.C. (Bos)
    One Marina Park Drive
    Boston, MA 02210-1878
    Telephone: 617-542-5070
    Email: Kessel@fr.com
    for Defendant.

    Frances Helen Stephenson
    Keyhani, LLC
    1050 30th Street NW
    Washington, DC 20007
    Telephone: 202-748-8950
    Email: Fstephenson@keyhanillc.com
    for Defendant.

    Scott Michael Draffin
    Keyhani, LLC
    1050 30th Street NW
    Washington, DC 20007
    Telephone: 202-748-8950
    Email: Sdraffin@keyhanillc.com
    for Defendant.

    Ethan Kovar, Esq.

```
 1                    P R O C E E D I N G S
 2            THE CLERK:  This is Civil Matter 24-11636,
 3   Swissdigital USA Co., Ltd. versus Samsonite International S.A.,
 4   et al.
 5            To all participants, pursuant to Local Rule 83.3,
 6   persons granted remote access to these proceedings are reminded
 7   of the general prohibition against photographing, recording,
 8   and rebroadcasting.  Violation of these prohibitions may result
 9   in sanctions.
10            And will counsel, starting with the plaintiff, please
11   state your name for the record.
12            ATTORNEY KEYHANI:  Thank you.
13            This is Dariush Keyhani, and with me I have -- we're
14   representing Swissdigital, U.S.A. Company, Ltd.  And with me I
15   have my partner Frances Stephenson, Scott Draffin, and our
16   Massachusetts counsel Kevin Mosier on this call -- on this Zoom
17   call.
18            THE COURT:  Okay.  All right, good afternoon to you,
19   Mr. Keyhani, and team.
20            ATTORNEY KEYHANI:  Thank you.
21            ATTORNEY KESSEL:  Good afternoon, your Honor.  Adam
22   Kessel from Fish and Richardson.  I'm here in the Boston
23   office.  And with me is Ethan Kovar of our Houston office.
24   We'll be asking for his pro hac admission shortly.
25            THE COURT:  Okay.  All right, good afternoon to you,
```

1  Mr. Kessel, and, Mr. Kovar, as well.

2      All right, so we're here on an initial scheduling
3  conference, and I have the parties' joint statement.  Thank you
4  for working together on that.  I've reviewed it, and I think
5  the things that I'd like to talk about, although I'm interested
6  in hearing what else you'd like to discuss today, are the
7  parties' position on settlement and mediation and when might be
8  an appropriate time for mediation if the parties are
9  interested.  It looks like there's a small dispute about the
10 discovery event limitations and then just the schedule, which
11 I've reviewed, and it largely looks fine from my perspective.

12     So I thought we'd just start with the parties'
13 positions on mediation.  And I saw that Samsonite is interested
14 in early mediation of the case.  Swissdigital thinks it's
15 premature at this point to think about mediation, but might be
16 open to it at some point in the future.

17     So, Mr. Keyhani, I guess maybe I'll start with you and
18 just ask for your view on, you know, would Swissdigital be
19 interested in potentially a referral to mediation after the
20 parties make their initial claim construction disclosures or
21 perhaps after the claim construction order or when in the life
22 of the case do you think it might make sense to sit down?

23     ATTORNEY KEYHANI:  Good afternoon, your Honor, thank
24 you.  We think that discovery, especially in the area of the
25 financial records and some depositions of maybe the 30(b)(6)

1   representatives, they have a number of entities.  If not clear,
2   this case was litigated a bit in Western District Texas, your
3   Honor, you may or may not be aware.  So we think we'd like to
4   get some discovery on some financials and some testimony on the
5   financials so that our client is comfortable with
6   representations being made about financials and about the scope
7   of products that are, that are being accused here.  At that
8   point we would be open -- my client would be open to mediation
9   because it may be a more cost-effective and sufficient way to
10  work things out.  At this point, of course, it's very premature
11  because we don't have anything.
12          THE COURT:  All right, thank you.
13          ATTORNEY KEYHANI:  At least yet.
14          THE COURT:  Sure.
15          So just looking at your schedule, it doesn't look like
16  an initial round of document production is contemplated early
17  in the case, but I wonder if it might make sense and,
18  Mr. Kessel, I'm interested in your views on this, whether the
19  parties might agree to some initial document production to get
20  those documents to each other, take a look, and then think
21  about, you know, does it make sense to sit down at that point?
22          Mr. Kessel, what do you think?
23          ATTORNEY KESSEL:  Yes, your Honor.
24          So, you know, we've been litigating in Waco for more
25  than a year.  In our client's view we've spent more on the case

```
 1   than the amount at stake which is why we're eager to resolve
 2   it.  The accused components, these are like the little USB
 3   plugs in a suitcase, they cost our client a fraction of a
 4   dollar.  It's a really small amount of money.  We have provided
 5   some disclosure of sales information to the plaintiff to try to
 6   get this unstuck.  Apparently they are skeptical.  We're
 7   certainly happy to do whatever we need to do to sort of show
 8   that this is -- the value at stake here is very low.  If we can
 9   do that with document production, that's fine.  It really is,
10   in our view sort of a mountain out of a molehill.  So we're
11   eager to sit down and discuss it.  If we need to produce
12   something first, we can do that.  I've had good experiences
13   with the other magistrates in this district on patent case
14   mediation, so we'd be happy to do that at everybody's earliest
15   convenience.
16           THE COURT:  Okay.
17           Well, Mr. Keyhani, are you envisioning just document
18   requests, is that kind of the universe of things that you're
19   interested in?  Go ahead.
20           ATTORNEY KEYHANI:  Yes.  And submit Interrogatories.
21   I guess what my colleague on the Samsonite side referenced is
22   really, I guess, one of the issues, which I can make a comment
23   about that.
24           From Samsonite's perspective, infringing product or
25   component is a little small piece.  From Plaintiff's
```

1  perspective, respectfully, the claims -- the patents are
2  directed to a bag, not a piece of the bag.  A bag that has
3  various components.  So there's a disconnect in terms of --
4  this is very early introduction about this case.
5          THE COURT:  Sure.
6          ATTORNEY KEYHANI:  There's a disconnect on what the
7  accused product is, not clearly.  And also then the language of
8  the claim and other issues.  And with that disconnect, the
9  issue is also what products fall in the universe that should be
10 the subject of damages.  So I think that's why discovery,
11 obviously from our perspective, would be necessary so that we
12 are comfortable that at least our -- based on our theory and
13 our understanding that we have sufficient information that I
14 can advise the client, hey, this is the time to make an offer,
15 settlement, reasonable.
16         THE COURT:  Okay.
17         ATTORNEY KESSEL:  Your Honor, we did produce all of
18 that data.  We didn't limit -- this was in informal
19 discussions.  We didn't limit what we provided them to just
20 this one piece.  We gave them revenue for everything.  So maybe
21 we're talking past each other, but this shouldn't get stuck for
22 lack of disclosure.
23         Also, I apologize, I neglected to introduce my
24 colleague, Bailey Benedict who's lead also out of our Houston
25 office.  I think that she joined just as we were starting.

1              THE COURT:  Good afternoon, Ms. Benedict.
2              So, you know, I can't force the parties to sit down
3    and, you know, and talk about settlement.  And, Mr. Kessel, I
4    think what I'm hearing is that Swissdigital is interested in
5    more information before they feel like sitting down and talking
6    about settlement's appropriate.  So what I'd propose is,
7    Mr. Keyhani, that you serve an initial round of document
8    requests and a small amount of Interrogatories that gets at the
9    information that you're interested in, that you think would be
10   fruitful for settlement.
11             Mr. Kessel, you can respond to that and, you know, I
12   don't know if the parties each want 30 days.  I think you can
13   work this out.  I'm happy to order some time frame if you'd
14   like, but it seems to me that you've already been talking, you
15   can probably work this out.  I don't think that needs to delay
16   the initial scheduling order, but let me know otherwise.  But
17   my intention is largely to enter the scheduling order that
18   you've proposed today.  And if this initial round of exchange
19   of information can happen parallel to those other actions, I
20   think that would be best.  And then, you know, if the
21   Swissdigital takes a look at what's produced and thinks it's a
22   good time to sit down, then reach out to Ms. Currie, both
23   sides, and we'll put in a referral to the court's mediation
24   program if you'd like to work through that program.  Or, you
25   know, of course, you can privately do it yourselves, that's

1  perfectly fine.  But I'm not going to order the parties to go
2  to mediation until both sides feel like they have what they
3  need to make that a productive use of time.
4          ATTORNEY KESSEL:  Understood, your Honor.  I think it
5  would be helpful to both parties if your Honor ordered a
6  timeline for this exchange to happen.  I think you mentioned 30
7  days.
8          THE COURT:  Okay.
9          ATTORNEY KESSEL:  We're fine with that.  But I think
10 it just would help things move if we had some guidance from the
11 Court.
12         THE COURT:  Sure, okay.
13         So, Mr. Keyhani, how long do you think you'd need to
14 get an initial round of -- you know, I'm not talking huge
15 document requests, just narrowly targeted to what you need for
16 a potential mediation, and, you know, you mentioned a few
17 Interrogatories.
18         ATTORNEY KEYHANI:  I think maybe the -- I do have some
19 other matters on my schedule.  So maybe if we get 40 days if,
20 your Honor, if that's okay with you?
21         ATTORNEY KESSEL:  Your Honor --
22         THE COURT:  Okay.
23         ATTORNEY KESSEL:  -- we've been litigating for well
24 over a year.  40 days, okay.  But, like, we should be able to
25 move a little faster I think.

1          THE COURT:  Yes, why don't we say 30 days on those
2   requests.  30 days to respond, and then -- from today.  That
3   will take it into December in any event.  And I guess in
4   parallel, you'll have already made some disclosures at that
5   point, too.
6          Okay, so we'll say 30 days aside.  And then, you know,
7   if you'd like a status conference after that happens, I'm happy
8   to, you know, scheduled one sometime in December or early
9   January if that's of interest.
10         Okay, all right.  So turning to the discovery event
11  invitations.  I'm interested in hearing from Swissdigital on
12  why you think you need additional requests for admission,
13  requests for production, Interrogatories, and depositions
14  beyond the standard ones.
15         ATTORNEY KEYHANI:  Thank you, your Honor.
16         This case, the claims in this case involve four
17  patents and numerous claims from the various patents.  The
18  reason why just the identical step of one set, if it was one
19  party in this case, of course 25 Interrogatories, request for
20  production of documents, is perfectly fine.  If the parties
21  were all similarly situated, we would agree it's fine.  But
22  what we have here is parent subsidiaries and we have, for
23  example, Derick Marketing Ventures is only online sales.
24  Samsonite Company Stores is brick and mortar stores.  Samsonite
25  International, they claimed in the prior case was a holding

1  company.  The evidence we looked at is that's the mother ship,
2  the parent company that runs everything.
3         We are suing on different statutes:  271a, 271b, 271c.
4  The elements of these various provisions are different, and the
5  culpability in our theories of infringement are not identical.
6  For example, we believe Samsonite International is an inducer
7  of infringement and the contributory infringer on 271b, 271c.
8  So giving us a little bit of flexibility to be able to add --
9  we're not asking for four times at this point, we're just
10 asking ten extra.  And we've also said to the other side, both
11 sides can get it.  We're not trying to just make it unfair.  We
12 just think a little flexibility would be helpful so that we can
13 get the discovery we need in an efficient matter.  And the same
14 thing on the request for documents.  It's because of the
15 different theories, different parties' disposition, and
16 participation and involvement in this case.  And especially on
17 the financials.  And also because we just did depositions,
18 perhaps we're asking for a couple of extra, because there may
19 be different parties.
20         THE COURT:  Okay.
21         Let me just ask you, the financial records that you're
22 interested in initially, would those -- I don't know, would
23 those kind of reveal some of the corporate structure questions
24 that you're, you know, trying to figure out how these
25 subsidiaries relate to each other?

1      ATTORNEY KEYHANI: Possibly. But my esteemed
2 colleague on the other side said we're litigating for a year,
3 we're still not sure.
4      THE COURT: Okay.
5      MR. KEYHANI: They said certain things and but -- the
6 evidence seems to be a little different at least the way we
7 read it. And there are different products, different products
8 sold by different entities potentially, or certainly a
9 variation of participation at least. So we're just not -- the
10 picture is not completely clear to us. And we'd like to get
11 some clarity, and we think we need a little more than 25 from
12 the four different entities, it's not the same theory with
13 respect to all other involvement. It's clearly not the same.
14      THE COURT: Okay.
15      All right, Mr. Kessel, I'll hear your perspective on
16 that.
17      ATTORNEY KESSEL: Yes, your Honor. We've had nine
18 months of venue discovery in Waco and provided corporate
19 structure information. They should have all of that. These
20 four defendants are all commonly owned, commonly controlled.
21 They operate as one company. They really only needed
22 Samsonite, LLC, as a defendant here because that's the main US
23 operating entity. This was disclosed in Texas. Two of the
24 defendants aside from the operating entity are wholly owned
25 subs of that defendant. One does retail, one does online, but

```
 1   they're all under common control with Samsonite, LLC.  This is
 2   just a, you know, an artifact of the corporate form.  We don't
 3   have parties who are differently situated who have different
 4   defenses, who have different theories.  It's just the same
 5   product across the board.  And then the fourth defendant is a
 6   parent holding company.
 7           Now, my friend on the other side says well, there's
 8   different theories of infringement, but there really aren't,
 9   your Honor.  It's the same suitcase.  It's the same patent.
10   What he's saying is, okay, the foreign parent, the holding
11   company, induces the U.S. company to infringe, but you don't
12   get multiple recoveries there, all right.  There's just -- the
13   set of products that we're talking about are the same for all
14   the defendants.  The revenue that is at issue is the same.
15   It's really not four separate companies.  And just because they
16   decided to tack a few more on the complaint, in our view,
17   doesn't mean that we should have a greater discovery burden.
18   It's not like different people are going to be tasked with
19   responding to discovery.  This is all going through the U.S.
20   operating entity.
21           THE COURT:  Okay.
22           Well, here's what I think makes sense.  I'm new to
23   this case.  I certainly don't know -- you know, I'm hearing you
24   both on maybe a different perspective on how the corporate
25   defendants relate to each other or maybe there's a bit of a
```

1   disconnect there.  I think what makes sense is to stick with
2   the standard discovery event limitations, but having already
3   granted the plaintiff's request for an initial round of
4   discovery, we'll have those on top of the standard discovery
5   event limitations and local Rule 6.1(c).  And I guess I should
6   specify, why don't we say no more than five Interrogatories on
7   the initial round and no more than ten requests for production
8   of documents on the initial round.
9           Mr. Keyhani, to the extent that later in the life of
10  the case if you have good cause for requesting additional
11  depositions or, you know, additional Interrogatories or
12  whatnot, you can certainly file a motion at that point and I'll
13  consider it.  But I think for now there's a chance you might
14  not need all of that discovery.
15          ATTORNEY KEYHANI:  Thank you, your Honor.
16          THE COURT:  Sure.
17          ATTORNEY KESSEL:  Your Honor, I just -- my colleagues
18  have let me know, I may have slightly misspoke when I said
19  these entities all have common control, what I meant was common
20  ownership.  They're all owned by the same parent.  The parent
21  is like a holding company.  I just wanted to make sure I didn't
22  misspeak on the record.
23          THE COURT:  Okay, thank you.
24          Okay, all right.  So then turning to the schedule,
25  what the parties have proposed looks fine to me.  The one date

1  that I'd need to change is the claim construction hearing which
2  you've proposed is June 30th.  That date is not available for
3  me.  But I wondered if July 11th might work for the parties.
4  That would be a Friday.
5          ATTORNEY KESSEL:  That looks fine with me, but let me
6  ask my colleague Bailey.
7          If you're able to speak, Bailey, does that work?
8          ATTORNEY BENEDICT:  I believe that works for me as
9  well.
10         ATTORNEY KEYHANI:  Your Honor, that works for the
11 plaintiff.  What time?  Is it the morning?
12         THE COURT:  That was my next question.  I know it's
13 very early in the life of the case.  But how long do you
14 anticipate -- making your best guess, at this point how long do
15 you anticipate the hearing lasting?
16         ATTORNEY KEYHANI:  From our perspective we don't think
17 it should be that long, but defense is going to try to construe
18 a lot of terms, I'm sure.
19         THE COURT:  Mr. Kessel.
20         ATTORNEY KESSEL:  I'm going to defer to Bailey if
21 she's up for answering.
22         ATTORNEY BENEDICT:  Holding back the right to adjust
23 this if needed, but I would estimate maybe a half day.
24         THE COURT:  Okay, all right.  No, that's perfectly
25 fine.

```
 1            So why don't we set it for ten a.m.  We'll go through
 2   till one, and if we need more time, we can take a break for
 3   lunch and then continue into the afternoon.
 4            ATTORNEY BENEDICT:  I think that that sounds fine,
 5   your Honor.  Thank you.
 6            THE COURT:  Yes.
 7            ATTORNEY KEYHANI:  That seems like a lot of time, but
 8   these terms -- many of them were construed in Western District
 9   Texas and the Court decided that no construction was necessary,
10   but that's fine.
11            THE COURT:  All right, we'll see once I have all the
12   filings.  I'm not making any decisions now.
13            ATTORNEY KEYHANI:  Of course not.
14            THE COURT:  Okay.  So those are the matters that I
15   wanted to raise, but I'm happy to hear you if you have anything
16   else you'd like to raise at this point.
17            ATTORNEY KEYHANI:  Your Honor, we don't, not at this
18   time.
19            THE COURT:  Okay.
20            All right, Mr. Kessel?
21            ATTORNEY KESSEL:  Nothing here.  It's a pleasure to be
22   before you for the first time.
23            THE COURT:  Yes, good to meet you all as well.
24            All right, so otherwise I'll enter the scheduling
25   order as you proposed.  And as I said, if you know, come
```

1   December, you think it's a good time to sit down for mediation,
2   please reach out to Ms. Currie.  I'm happy to put in the
3   referral right away.
4           ATTORNEY KESSEL:  Thank you, your Honor.
5           THE COURT:  Okay.
6           Have a good rest of your day, everyone.  We'll stand
7   in recess.
8           (Whereupon, at 3:21 p.m., Court Stood in Recess.)

**C E R T I F I C A T E**

**UNITED STATES DISTRICT COURT )**

**DISTRICT OF MASSACHUSETTS      )**

      I, Catherine L. Zelinski, certify that the foregoing is a true and accurate transcription of my stenographic notes from the record of proceedings taken Wednesday, October 2, 2024, in the above-entitled matter to the best of my skill and ability.

    /s/ Catherine L. Zelinski

Catherine L. Zelinski, RPR, CRC    ___11/13/2024___
Official Court Reporter                     Date