# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

SWISSDIGITAL USA CO., LTD.

    *Plaintiff*,

    v.

SAMSONITE INTERNATIONAL S.A.;
SAMSONITE LLC; SAMSONITE
COMPANY STORES, LLC; and
DIRECT MARKETING VENTURES,
LLC;

    *Defendants*.

Case No. 1:24-cv-11636-JEK

**JURY TRIAL DEMANDED**

# PLAINTIFF SWISSDIGITAL USA CO., LTD.'S
# OPENING CLAIM CONSTRUCTION BRIEF

## TABLE OF CONTENTS

**Page**

I.   BACKGROUND.................................................................................................... 1

    A.   The Asserted Patents........................................................................................1

    B.   Previous Litigation of the '071 and '138 Patents in the
        Western District of Texas.................................................................................1

II.  CLAIM CONSTRUCTION LEGAL STANDARDS.......................................... 2

    A.   Claim Construction.......................................................................................... 2

    B.   Departing from the Ordinary Meaning of a Claim Term..................................4

    C.   General Rule Against Construing a Preamble as a Limitation..........................5

    D.   Indefiniteness .................................................................................................. 7

III. TERMS DISPUTED BY SAMSONITE...............................................................8

    A.   The Preamble of the Asserted Patents..............................................................8

    B.   "the outer surface of the bag or luggage body"...............................................10

    C.   "an outer surface of [the/a] body"...................................................................11

    D.   "fixedly attached"............................................................................................14

    E.   "adjacent to the [power cable outlet/first port]"..............................................16

    F.   "surrounding bottom portion"..........................................................................18

IV.  CONCLUSION.....................................................................................................19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abiomed, Inc. v. Maquet Cardiovascular LLC*, 329 F. Supp. 3d 1 (D. Mass. 2018)...................6, 7

*Advanced Media Networks, LLC v. AT&T Mobility LLC*,
748 F. App'x 308 (Fed. Cir. 2018)..................................................................................15

*Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1346 (Fed. Cir. 2002)............................6

*Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361 (Fed. Cir. 2003)....................................................4

*Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363 (Fed. Cir. 2003)..................................................7, 8

*Am. Med. Sys., Inc. v. Biolitec, Inc.*, 618 F.3d 1354 (Fed. Cir. 2010)...........................................8

*Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286 (Fed. Cir. 2014).........................................................3

*Arrow Int'l, Inc. v. Spire Biomedical, Inc.*,
No. CIV.A. 06-11564-DPW, 2006 WL 3093228 (D. Mass. Oct. 31, 2006).............................5

*Ascion, LLC v. Ruoey Lung Enter. Corp.*, No. CIV.A. 09-10293-GAO,
2010 WL 4183834 (D. Mass. Oct. 25, 2010)..............................................................17

*Athletic Alts., Inc. v. Prince Mfg.*, 73 F.3d 1573 (Fed. Cir. 1996)................................................4

*Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336 (Fed. Cir. 2014)....................................4, 11, 17

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338 (Fed. Cir. 2008).................................12

*Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249 (Fed. Cir. 2010)...............13

*Bd. of Regents v. BENQ Am. Corp.*, 533 F.3d 1362 (Fed. Cir. 2008)................................................13

*Bicon, Inc. v. The Straumann Co.*, 441 F.3d 945 (Fed. Cir. 2006)................................................5

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801 (Fed. Cir. 2002)..................6, 8

*CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359 (Fed. Cir. 2002).........................................15

*ClearOne, Inc. v. Shure Acquisition Holdings, Inc.*, 35 F.4th 1345 (Fed. Cir. 2022).......................7

*Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182 (Fed. Cir. 1998).......................................3

*Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560 (Fed. Cir. 1988)...................................3

*Cordis Corp. v. Bos. Sci. Corp.*, 561 F.3d 1319 (Fed. Cir. 2009)...................................5, 10, 16, 18

*C.R. Bard, Inc. v. United States Surgical Corp.*, 388 F.3d 858 (Fed. Cir. 2004).............................17

*Dow Chem. Co. v. Nova Chems. Corp. (Can.)*, 809 F.3d 1223 (Fed. Cir. 2015).......................7, 9

*Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314 (Fed. Cir. 2016).........................2

*Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323 (Fed. Cir. 2008)...............................................15

*GE Lighting Sols., LLC v. AgiLight, Inc.,* 750 F.3d 1304 (Fed. Cir. 2014)..........................4, 5, 15

*Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229 (Fed. Cir. 2017)..........................6, 9

*Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362 (Fed. Cir. 2014)...............................*passim*

*Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367 (Fed. Cir. 2014)...........................................4

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111 (Fed. Cir. 2004)........3

*Intri-Plex Techs., Inc. v. NHK Int'l Corpoation*, No. 17-CV-01097-EMC,
    2018 WL 659017 (N.D. Cal. Feb. 1, 2018)...........................................................................6, 9

*Iovate Health Scis., Inc. v. Allmax Nutrition, Inc.*, 639 F. Supp. 2d 115 (D. Mass. 2009).......15, 17

*Kenexa BrassRing, Inc. v. HireAbility.com, LLC*, 59 F. Supp. 3d 206 (D. Mass. 2014).................15

*Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898 (Fed. Cir. 2004).......................................3, 19

*Mars, Inc. v. TruRx LLC*,
    No. 6:13-CV-526, 2015 WL 11233455 (E.D. Tex. Feb. 3, 2015)............................................6

*Mars, Inc. v. TruRx LLC*,
    No. 6:13-CV-526, 2015 WL 11232358 (E.D. Tex. Aug. 6, 2015)............................................6

*Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898 (2014)................................................7, 9

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351 (Fed. Cir. 2008)......................2

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005)...........................................................*passim*

*Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243 (Fed. Cir. 1998)..................3, 5, 11

*Rowe v. Dror*, 112 F.3d 473 (Fed. Cir. 1997).................................................................................6

iv

*Schoenhaus v. Genesco, Inc.*, 440 F.3d 1354 (Fed. Cir. 2006).........................................................13

*Schumer v. Lab. Comput. Sys., Inc.*, 308 F.3d 1304 (Fed. Cir. 2002).................................................7

*Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370 (Fed. Cir. 2017).............................................7

*STX, LLC v. Brine, Inc.*, 211 F.3d 588 (Fed. Cir. 2000).....................................................................7

*Swissdigital USA Co., Ltd. v. Wenger S.A.*, No. 6:21-cv-00453-ADA-DTG,
    2022 WL 3567348 (W.D. Tex. Aug. 18, 2022)........................................................1, 2, 14, 17

*Takeda Pharm. Co. Ltd. v. Actavis Lab'ys FL, Inc.*,
    No. CV 15-451-RGA, 2016 WL 3193188 (D. Del. June 6, 2016)...............................................6

*Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362 (Fed. Cir. 2012)......................4, 5, 16

*3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315 (Fed. Cir. 2013)...............................5

*Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313 (Fed. Cir. 2002)...........................................3

*U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554 (Fed. Cir. 1997)..............................................2

*Warner Chilcott Co. LLC v. Mylan Inc.*, No. CIV.A. 11-3262 JAP,
    2013 WL 1410005, at *4 (D.N.J. Apr. 8, 2013).........................................................................6

*Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015)..................................................3

*Woodrow Woods & Marine Exhaust Sys., Inc. v. Deangelo Marine Exhaust, Inc.*,
    692 F.3d 1272 (Fed. Cir. 2012)..................................................................................................10

## Statutes

35 U.S.C. § 112.......................................................................................................................7

## Treatises

*Chisum on Patents* § 8.06 (2005)........................................................................................5

Plaintiff Swissdigital USA Co., Ltd. ("Swissdigital" or "Plaintiff"), files its Opening Claim Construction Brief.  As set forth below, Swissdigital respectfully asserts that none of the claim terms identified by Defendants Samsonite International S.A. ("Samsonite Int'l"), Samsonite LLC ("Samsonite LLC"), Samsonite Company Stores, LLC ("Samsonite Co. Stores"), and Direct Marketing Ventures, LLC ("DMV") (collectively, "Samsonite" or "Defendants"), require construction and requests that they be construed as having their ordinary and customary meaning.

## I.    BACKGROUND

### A.    The Asserted Patents

U.S. Patent Number 10,574,071 (the '071 Patent, **Ex. A**) issued on February 25, 2020, on an application filed on August 26, 2015.  Plaintiff has asserted claims 1 and 9 of the '071 Patent against Defendants.  U.S. Patent Number 10,931,137 (the '137 Patent, **Ex. B**) is a continuation of the application that led to the '071 Patent and issued on February 23, 2021.  Plaintiff has asserted claims 1, 3–4, 6–10, and 18–21 of the '137 Patent against Defendants.  U.S. Patent Number 10,931,138 (the '138 Patent, **Ex. C**) is a continuation-in-part of a continuation of the application that led to the '071 Patent and issued on February 23, 2021.  Plaintiff has asserted claims 1, 2, 4–11, and 16–23 of the '138 Patent against Defendants.  U.S. Patent Number 11,601,009 (the '009 Patent, **Ex. D**) is a continuation of an application that is a continuation-in-part of the application that led to the '138 Patent and issued on March 7, 2023.  Plaintiff has asserted claims 1, 2, 4–11, 16–21, and 29 of the '009 Patent against Defendants.

### B.    Previous Litigation of the '071 and '138 Patents in the Western District of Texas

In April 2021, Swissdigital sued Samsonite competitor Wenger S.A. ("Wenger") in the Western District of Texas for patent infringement of the '071 and '138 Patents  (the "Wenger Case").  During that case, Wenger disputed the construction of eight claim terms.  *See Swissdigital*

*USA Co., Ltd. v. Wenger S.A.*, No. 6:21-cv-00453-ADA-DTG, 2022 WL 3567348 (W.D. Tex. Aug. 18, 2022).  After full briefing by the parties and a claim construction hearing, the Western District of Texas court found that no construction was necessary for any of the challenged claim terms and applied the plain and ordinary meaning to all eight terms.  *Id*. at *6.  The parties settled the case on October 13, 2023.

In the present case, Defendants propose constructions for five claim terms and argue that the preambles of each of the Asserted Patents is limiting and indefinite.  *See* Joint Claim Construction Chart, ECF No. 33.  Samsonite presently attempts to construe two of the terms that were addressed by the Western District of Texas in the Wenger Case: "fixedly attached" and "adjacent to."  *See Swissdigital USA Co. Ltd.*, 2022 WL 3567348 at *3, *5.  In both instances, the Western District of Texas court held that the term "does not fit the exceptions of lexicography or disclaimer requiring departure from plain and ordinary meaning" and "does not constitute one so technical it needs construction for proper understanding of the jury."  *Id*.

## II.    CLAIM CONSTRUCTION LEGAL STANDARDS

### A.    Claim Construction

"Claim construction is a matter of resolution of disputed meanings and technical scope, . . . not an obligatory exercise in redundancy."  *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997); *see also O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("[D]istrict courts are not (and should not be) required to construe *every* limitation present in a patent's asserted claims.").  At the claim construction stage, "courts should not resolve questions that do not go to claim scope, but instead go to infringement, or improper attorney argument."  *Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1319 (Fed. Cir. 2016).

2

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). "The claim construction inquiry . . . begins and ends in all cases with the actual words of the claim." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998). "[I]n all aspects of claim construction, 'the name of the game is the claim.'" *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1298 (Fed. Cir. 2014) (quoting *In re Hiniker Co.*, 150 F.3d 1362, 1369 (Fed. Cir. 1998)), *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015). "[T]he context in which a term is used in the asserted claim can be highly instructive." *Phillips*, 415 F.3d at 1314. "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004). The specification may also resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). But "[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323.

The prosecution history is another tool to supply the proper context for claim construction because, like the specification, the prosecution history provides evidence of how the U.S. Patent

and Trademark Office ("PTO") and the inventor understood the patent.  *Phillips*, 415 F.3d at 1317. However, "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes."  *Id.* at 1318; *see also Athletic Alts., Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1580 (Fed. Cir. 1996) (finding an ambiguous prosecution history "unhelpful as an interpretive resource").

The general rule—subject to certain specific exceptions discussed *infra*—is that each claim term is construed according to its ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the patent.  *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003); *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014), *vacated on other grounds*, 575 U.S. 959 (2015) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time." (internal quotation marks omitted)).  **No construction of a claim term is necessary when a person of ordinary skill in the art could readily ascertain the meaning of the term.**  *See Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014).

### B.    Departing from the Ordinary Meaning of a Claim Term

There are "only two exceptions to [the] general rule" that claim terms are construed according to their plain and ordinary meaning: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution."  *Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1365 (Fed. Cir. 2014) (quoting *Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)); *see also GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed.

4

Cir. 2014) ("[T]he specification and prosecution history only compel departure from the plain meaning in two instances: lexicography and disavowal."). The standards for finding lexicography or disavowal are "exacting." *GE Lighting Sols.*, 750 F.3d at 1309.

To act as his own lexicographer, the patentee must "clearly set forth a definition of the disputed claim term," and "clearly express an intent to define the term." *Id.* (quoting *Thorner*, 669 F.3d at 1365); *see also Renishaw*, 158 F.3d at 1249. The patentee's lexicography must appear "with reasonable clarity, deliberateness, and precision." *Renishaw*, 158 F.3d at 1249.

To disavow or disclaim the full scope of a claim term, the patentee's statements in the specification or prosecution history must amount to a "clear and unmistakable" surrender. *Cordis Corp. v. Bos. Sci. Corp.*, 561 F.3d 1319, 1329 (Fed. Cir. 2009); *see also Thorner*, 669 F.3d at 1366 ("The patentee may demonstrate intent to deviate from the ordinary and accustomed meaning of a claim term by including in the specification expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope."). "Where an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013).

### C.    General Rule Against Construing a Preamble as a Limitation

A patent claim typically consists of three parts: the preamble, the transition, and the body. Donald S. Chisum, *Chisum on Patents* § 8.06[1][b] (2005); *Arrow Int'l, Inc. v. Spire Biomedical, Inc.*, No. CIV.A. 06-11564-DPW, 2006 WL 3093228, at *4 (D. Mass. Oct. 31, 2006). The preamble is an introductory phrase that summarizes "the invention, its relation to the prior art, or its intended use or properties." *Chisum on Patents* § 8.06[1][b][i]; *Arrow Int'l, Inc.*, 2006 WL 3093228, at *4. It is composed of the language preceding the transition phrase "comprising." *See Bicon, Inc. v. The Straumann Co.*, 441 F.3d 945, 949 (Fed. Cir. 2006). "Generally, the preamble

does not limit the claims." *Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229, 1236 (Fed. Cir. 2017) (quoting *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1346 (Fed. Cir. 2002)); *Abiomed, Inc. v. Maquet Cardiovascular LLC*, 329 F. Supp. 3d 1, 49 (D. Mass. 2018). "[P]reamble language merely extolling benefits or features of the claimed invention does not limit the claim scope without clear reliance on those benefits or features as patentably significant." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 809 (Fed. Cir. 2002); *see also STX, LLC v. Brine, Inc.*, 211 F.3d 588, 591 (Fed. Cir. 2000) (preamble stating that invention provides "improved playing and handling characteristics" is not a limitation); *Rowe v. Dror*, 112 F.3d 473, 478 (Fed. Cir. 1997) (explaining that a preamble is not limiting "where a patentee defines a structurally complete invention in the claim body and **uses the preamble only to state a purpose or intended use for the invention**" (emphasis added)); *Warner Chilcott Co. LLC v. Mylan Inc.*, No. CIV.A. 11-3262 JAP, 2013 WL 1410005, at *4 (D.N.J. Apr. 8, 2013) (finding the preamble term "which is characterized by a reduced incidence of breakthrough bleeding" not limiting in a patent directed at female contraception); *Intri-Plex Techs., Inc. v. NHK Int'l Corpoation*, No. 17-CV-01097-EMC, 2018 WL 659017, at *6 (N.D. Cal. Feb. 1, 2018) (declining to find the term "optimized" in the preamble as limiting); *Mars, Inc. v. TruRx LLC*, No. 6:13-CV-526, 2015 WL 11233455, at *6 (E.D. Tex. Feb. 3, 2015), *report and recommendation adopted*, No. 6:13-CV-526, 2015 WL 11232358 (E.D. Tex. Aug. 6, 2015) (finding the preamble "a *breath-freshening* dry or semi-moist pet food composition comprising" not limiting); *Takeda Pharm. Co. Ltd. v. Actavis Lab'ys FL, Inc.*, No. CV 15-451-RGA, 2016 WL 3193188, at *7 (D. Del. June 6, 2016) ("[T]he language 'having reduced adverse effects' in the preamble is merely a statement of the intended result of the method of treatment.").

Indeed, "it is well settled that if the body of the claim sets out the complete invention, and the preamble is not necessary to give life, meaning and vitality to the claim, then the preamble is of no significance to claim construction because it cannot be said to constitute or explain a claim limitation." *Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1371 (Fed. Cir. 2003) (quoting *Schumer v. Lab. Comput. Sys., Inc.*, 308 F.3d 1304, 1310 (Fed. Cir. 2002)); *Abiomed, Inc.*, 329 F. Supp. 3d at 50.

### D.    Indefiniteness

Patent claims must particularly point out and distinctly claim the subject matter regarded as the invention.  35 U.S.C. § 112(b).  "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention."  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).  Whether a claim is indefinite is determined from the perspective of one of ordinary skill in the art as of the time the application for the patent was filed.  *Id.* at 911.  "Indefiniteness must be proven by clear and convincing evidence."  *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017).  "The burden of proving indefiniteness . . . remains at all times on the party challenging the validity of the patent."  *Dow Chem. Co. v. Nova Chems. Corp. (Can.)*, 809 F.3d 1223, 1227 (Fed. Cir. 2015).  "Just because a term is susceptible to more than one meaning does not render it indefinite."  *ClearOne, Inc. v. Shure Acquisition Holdings, Inc.*, 35 F.4th 1345, 1351 (Fed. Cir. 2022).

### III.    TERMS DISPUTED BY SAMSONITE

#### A.    The Preamble of the Asserted Patents

| Claim Term, Clause, or Phrase | Asserted Claims | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|---|
| "A [sheath/bag or luggage] for convenient charging, comprising" | Preamble of all Asserted Patents | Preamble is not limiting, not indefinite | Limiting; indefinite |

Defendants argue not only that the preambles of the Asserted Patents are limiting but also that they are indefinite. Defendants do not provide an alternative construction of the preamble.

Plaintiff asserts that the preambles are not limiting because the body of the Asserted Claims set out the complete invention, and the preambles are not necessary to give life, meaning and vitality to the claim. *See Altiris, Inc.*, 318 F.3d at 1371 ("It is well settled that if the body of the claim sets out the complete invention, and the preamble is not necessary to give life, meaning and vitality to the claim, then the preamble is of no significance to claim construction because it cannot be said to constitute or explain a claim limitation."). The preambles of the Asserted Patents are used to state a purpose of intended use of the sheath/bag or luggage—convenient charging. *See Catalina Mktg.*, 289 F.3d at 809 ("[P]reamble language merely extolling benefits or features of the claimed invention does not limit the claim scope without clear reliance on those benefits or features as patentably significant"). Further, the preambles' references to a benefit of the claimed invention—convenient charging—does not affect the structure of the claimed invention, as defined by the body of the claim. *See Am. Med. Sys., Inc. v. Biolitec, Inc.*, 618 F.3d 1354, 1358–59 (Fed. Cir. 2010) (explaining that a preamble is not limiting where the claim body describes a structurally complete invention such that deletion of the preamble phrase does not affect the structure of the

claimed invention).  The "convenient charging" of the Asserted Patents is akin to terms such as "optimized," which have been held to not be limiting.  *See Intri-Plex Techs., Inc*, 2018 WL 659017, at *6 (declining to find the term "optimized" in the preamble as limiting).

Accordingly, the general rule that the preamble does not limit the claims applies and Defendants' attempt to add an unwarranted limitation to the asserted claims should be rejected. *See Georgetown Rail Equip. Co.*, 867 F.3d at 1236.

Further, even if the preambles were limiting (which they are not), Defendants cannot establish that the language is indefinite by clear and convincing evidence.  "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention."  *Nautilus, Inc.*, 572 U.S. at 901.  "Convenient charging" is a phrase composed of terms commonly used in the English language and would be well understood by a POSITA at the time of the invention.  Additionally, the scope of the convenient charging benefits of the claimed invention would be clear to a POSITA from the claims themselves and the specification.

Defendants cannot meet their burden of proving indefiniteness by clear and convincing evidence.  *See Dow Chem. Co.*, 809 F.3d at 1227 ("The burden of proving indefiniteness . . . remains at all times on the party challenging the validity of the patent.").  Accordingly, even if the preambles were determined to be limiting, they are not indefinite, and the ordinary and customary meaning should be applied.

**B.**     **"the outer surface of the bag or luggage body"**

| Claim Term, Clause, or Phrase | Asserted Claims | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|---|
| "the outer surface of the bag or luggage body" | U.S. Patent No. 10,574,071 claim 1 | No construction necessary; plain and ordinary meaning | "outermost surface of [the/a] [bag or luggage] [body] such that it can be accessed without opening the bag or luggage" |

Plaintiff asserts that no construction is necessary and one of ordinary skill in the art at the time of the invention would understand the ordinary and customary meaning of these terms when read in the context of the claims, specification, and prosecution history of the Asserted Patents. *See Phillips,* 415 F.3d at 1313–14. The two exceptions to the general rule that claims are construed according to their plain and ordinary meaning—when a patentee sets out a definition and acts as his own lexicographer or when a patentee disavows the full scope of the claim term—are not present here. *See Golden Bridge Tech., Inc.*, 758 F.3d at 1365. At no point during the prosecution did Applicant clearly or unmistakably surrender the full scope of the term "outer surface" or engage in lexicography. *See Cordis Corp.*, 561 F.3d at 1329 (stating that to disavow or disclaim the full scope of a claim term, the patentee's statements in the specification or prosecution history must amount to a "clear and unmistakable" surrender).

To the extent Defendants' proposed construction improperly attempts to import limitations from embodiments of the figures and specification, such attempts should be rejected. *See Woodrow Woods & Marine Exhaust Sys., Inc. v. Deangelo Marine Exhaust, Inc*., 692 F.3d 1272, 1283 (Fed. Cir. 2012) ("[C]laims should not be confined to the disclosed embodiments."). There is no support for Defendants' conclusion that the term "outer surface" should be narrowed to exclude any outer surface other than the outermost surface. The examiner allowed the language

as recited, and there is no reason to deviate from that language, which would be well understood by a skilled artisan. *See Renishaw*, 158 F.3d at 1248 ("The claim construction inquiry . . . begins and ends in all cases with the actual words of the claim."). Defendants' attempt to deviate from the ordinary and customary meaning of this claim term falls short of the presumption laid out by the Federal Circuit. *See Azure Networks*, 771 F.3d at 1347 ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time."). Accordingly, no construction is necessary, and the ordinary and customary meaning of this claim term should be applied.

C.     **"an outer surface of [the/a] body"**

| Claim Term, Clause, or Phrase | Asserted Claims | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|---|
| "an outer surface of [the/a] body" | U.S. Patent Nos. 10,931,137 claim 1; 10,931,138 claim 1; and 11,601,009 claim 1 | No construction necessary; plain and ordinary meaning | "outermost surface of [the/a] body such that it can be accessed without opening the bag or luggage" |

The claims of the '137, '138, and '009 Patents (the "Continuation Patents") make clear that the Patentee understood the scope of "an outer surface" to encompass "one or more" outer surfaces such that Defendants' proposed construction limiting the meaning of this language to a singular "outermost surface" is untenable. Indeed, the express claim language of several dependent claims of the Continuation Patents recite various distinct and separate outer surfaces of a bag or luggage body which cannot be a single outer surface (i.e., the "outermost surface"), and Defendants' proposed construction would render all these claims nonsensical and meaningless:

11

| Patent | Claims |
|--------|--------|
| '138 Patent | 5. The sheath as in claim 1, further comprising **a second outer surface that covers the outer surface of the body**.<br><br>18. The sheath as in claim 1, wherein **the outer surface of the body is the inside of a pocket**. |
| '137 Patent | 4. The sheath as in claim 1, further comprising **a second outer surface that covers the outer surface of the body**.<br><br>18. The sheath as in claim 1, wherein **outer surface of the body is the inside of a pocket**. |
| '009 Patent | 5. The sheath as in claim 1, further comprising **a second outer surface that covers the outer surface of the body**.<br><br>18. The sheath as in claim 1, wherein **outer surface of the body is the inside of a pocket**. |

Further, unlike the '071 Patent (which includes the language "*the* outer surface"), the claims of the Continuation Patents include the language "*an* outer surface." The Federal Circuit "has repeatedly emphasized that an indefinite article 'a' or 'an' in patent parlance carries the meaning of 'one or more' in open-ended claims containing the transitional phrase 'comprising.'" *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342 (Fed. Cir. 2008). That "a" or "an" can mean "one or more" is best described as a rule, rather than merely as a presumption or even a convention. *Id*. The exceptions to this rule are extremely limited: a patentee must "evince[ ] a clear intent" to limit "a" or "an" to "one." *Id.*

Defendants' proposed constructions for both "the outer surface..." recited in the '071 Patent and "an outer surface..." recited in the '137, '138, and '009 Patents conspicuously leave out the

articles ("the" and "an"), ignoring the explicit import that "an outer surface" claimed in the Continuation Patents carries the meaning of "one or more" outer surfaces.

The specification also supports this plain and ordinary meaning of "an outer surface of a body." '009 Pat. Col. 6, Ln. 48–53; '138 Pat. Col. 6, Ln. 27–32; '137 Pat. Col. 6, Ln. 39–44 ("There may be a second outer surface (**3300**) that covers the outer surface of the body (**3302**). Similarly, the outer surface of the body may be the inside of a pocket (See FIGS. 28, 29, 30 and 31.  The outer surface onto which the sheath is mounted may have an additional cover or be on the inside of a pocket without departing from the present invention.").

Defendants ask the Court to adopt a claim construction that renders asserted claims of Plaintiff's patents—including claims that explicitly claim an outer surface of the body as being inside of a pocket—facially nonsensical.  *See Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1255 (Fed. Cir. 2010) ("A claim construction that renders asserted claims facially nonsensical 'cannot be correct.'" (quoting *Schoenhaus v. Genesco, Inc.*, 440 F.3d 1354,1357 (Fed. Cir. 2006)); *Bd. of Regents v. BENQ Am. Corp.*, 533 F.3d 1362, 1370 (Fed. Cir. 2008) (refusing to adopt a claim construction that "would effect [a] nonsensical result").

For example, when applied to claim 4 of the '137 Patent ("the sheath as in claim 1, further comprising a **second outer surface that covers the outer surface of the body**"), Defendants' proposed construction would result in a nonsensical claim where an outermost surface must cover a different outermost surface (a "second outermost surface that covers the outermost surface of the body").  Defendants' proposed construction narrows the scope of the claims in direct contradiction to the plain teachings of the Continuation Patents and should therefore be rejected.  As addressed, *supra*, Section III. B., neither exception to the general rule that claims terms are construed according to their plain and ordinary meaning applies with respect to the construction of "outer

surface." *See Golden Bridge Tech., Inc.*, 758 F.3d at 1365. Accordingly, no construction is necessary, and the ordinary and customary meaning of this claim term should be applied.

### D.    "fixedly attached"

| Claim Term, Clause, or Phrase | Asserted Claims | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|---|
| "fixedly attached" | U.S. Patent No. 10,574,071 claim 1 | No construction necessary; plain and ordinary meaning | "fastened to or adjoined such that it does not move and cannot be removed" |

Plaintiff asserts that no construction is necessary and one of ordinary skill in the art at the time of the invention would understand the ordinary and customary meaning of these terms when read in the context of the claims, specification, and prosecution history of the Asserted Patents. *See Phillips,* 415 F.3d at 1313–14. The two exceptions to the general rule that claims are construed according to their plain and ordinary meaning—when a patentee sets out a definition and acts as his own lexicographer or when a patentee disavows the full scope of the claim term during prosecution—are not present here. *See Golden Bridge Tech., Inc.*, 758 F.3d at 1365.

This claim term was previously addressed during claim construction in the Wenger Case. There, the court agreed with Swissdigital, holding that "construction of the term is [not] appropriate" and "neither of the exceptions [to the general rule that claims are construed according to their plain and ordinary meaning] applie[d]." *Swissdigital USA Co. Ltd.*, 2022 WL 3567348, at *5. In rejecting Wenger's proposed construction of "connected to the bag or luggage permanently" and its related arguments, the court explained that "[t]he prosecution history does not mandate permanent attachment" and held that "the term is also not so technical and complex to require construction for jury understanding." *Id.* Accordingly, the court applied the plain and ordinary meaning of "fixedly attached." *Id.*

14

Here, Defendants propose substantially the same construction that Wenger did: synonymously requiring that the sheath "cannot be removed." And although this Court is not bound by the court's interpretation in the Wenger Case, the court's decision to apply the plain and ordinary meaning is nevertheless "entitled to reasoned deference." *Iovate Health Scis., Inc. v. Allmax Nutrition, Inc.*, 639 F. Supp. 2d 115, 124 (D. Mass. 2009) (internal quotation marks omitted); *see also Kenexa BrassRing, Inc. v. HireAbility.com, LLC*, 59 F. Supp. 3d 206, 216 n.4 (D. Mass. 2014) ("While the claim construction of one court is not binding on another, a court may consult 'the claim analysis of different district courts on the identical terms in the context of the same patent' 'in the interest of uniformity and correctness.'" (quoting *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1329 (Fed. Cir. 2008)).

As in the Wenger Case, construction of "fixedly attached" is not warranted, and the Court should reject Defendants' attempt to create a non-infringement argument under the guise of a proposed claim construction. *See GE Lighting Sols.*, 750 F.3d at 1309. Defendants' attempt to deviate from the ordinary and customary meaning of these terms and phrases falls short of the presumption laid out by the Federal Circuit. *See Advanced Media Networks, LLC v. AT&T Mobility LLC*, 748 F. App'x 308, 311 (Fed. Cir. 2018) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time"); *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002). Accordingly, as in the Wenger Case, no construction is necessary, and the ordinary and customary meaning of this claim term should be applied.

E.     "adjacent to the [power cable outlet/first port]"

| Claim Term, Clause, or Phrase | Asserted Claims | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|---|
| "adjacent to the [power cable outlet/first port]" | U.S. Patent Nos. 10,574,071 claim 1; and 11,601,009 claim 1 | No construction necessary; plain and ordinary meaning | "lying near, close, contiguous; adjoining; neighboring the [power cable outlet/first port]" |

Plaintiff asserts that no construction of "adjacent to the [power cable outlet/first port]" is necessary and one of ordinary skill in the art at the time of the invention would understand the ordinary and customary meaning of these terms when read in the context of the claims, specification, and prosecution history of the Asserted Patents. *See Phillips*, 415 F.3d at 1314. The two exceptions to the general rule that claims are construed according to their plain and ordinary meaning—when a patentee sets out a definition and acts as his own lexicographer or when a patentee disavows the full scope of the claim term—are not present here. *See Golden Bridge Tech., Inc.*, 758 F.3d at 1365; *Thorner*, 669 F.3d at 1367 (Fed. Cir. 2012) ("[A] patentee is free to choose a broad term and expect to obtain the full scope of its plain and ordinary meaning unless the patentee explicitly redefines the term or disavows its full scope."). Plaintiff did not explicitly redefine "adjacent to the [power cable outlet/first port]" nor did it relinquish the full scope of the term during prosecution of the Asserted Patents. *See Cordis Corp.*, 561 F.3d at 1329 (explaining that to disavow or disclaim the full scope of a claim term, the patentee's statements in the specification or prosecution history must amount to a "clear and unmistakable" surrender).

In the Wenger Case, the Western District of Texas court rejected Wenger's proposal that "adjacent to" be construed as "adjoining" and applied the plain and ordinary meaning, explaining that "this term does not fit the exceptions of lexicography or disclaimer requiring departure from

plain and ordinary meaning" and "the term does not constitute one so technical it needs construction for proper understanding of the jury." *Swissdigital USA Co., Ltd.*, 2022 WL 3567348, at *3.

As in the Wenger Case, Defendants' proposed construction includes the term "adjoining" (among other similar terms), which was rejected in that case. *See id.* And although this Court is not bound by the court's interpretation in the Wenger Case, the court's decision to apply the plain and ordinary meaning is nevertheless "entitled to reasoned deference." *Iovate Health Scis., Inc.*, 639 F. Supp. 2d at 124 (internal quotation marks omitted). Moreover, even if portions of Defendants' proposed construction may overlap with a POSITA's understanding of the ordinary and customary meaning of this claim term, "merely rephrasing or paraphrasing the plain language of a claim by substituting synonyms does not represent genuine claim construction." *C.R. Bard, Inc. v. United States Surgical Corp.*, 388 F.3d 858, 863 (Fed. Cir. 2004); *Ascion, LLC v. Ruoey Lung Enter. Corp.*, No. CIV.A. 09-10293-GAO, 2010 WL 4183834, at *7 (D. Mass. Oct. 25, 2010).

Defendants' attempt to deviate from the ordinary and customary meaning of this claim term falls short of the presumption laid out by the Federal Circuit. *Azure Networks*, 771 F.3d at 1347 ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time."). Accordingly, as in the Wenger Case, no construction is necessary, and the ordinary and customary meaning of this claim term should be applied.

### F.    "surrounding bottom portion"

| Claim Term, Clause, or Phrase | Asserted Claims | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|---|
| "surrounding bottom portion" | U.S. Patent Nos. 10,931,137 claims 1, 20, and 21; 10,931,138 claims 1, 2, 8, 20, 21, and 23; and 11,601,009 claims 1, 2, 20, 21, and 29 | No construction necessary; plain and ordinary meaning | "a flat portion that extends outward from the bottom of" |

Plaintiffs asserts that no construction of "surrounding bottom portion" is necessary and one of ordinary skill in the art at the time of the invention would understand the ordinary and customary meaning of these terms when read in the context of the claims, specification, and prosecution history of the Asserted Patents. *See Phillips*, 415 F.3d at 1314. The two exceptions to the general rule that claims are construed according to their plain and ordinary meaning—when a patentee sets out a definition and acts as his own lexicographer or when a patentee disavows the full scope of the claim term—are not present here. *See Golden Bridge Tech., Inc.*, 758 F.3d at 1365; *Thorner*, 669 F.3d at 1367 ("[A] patentee is free to choose a broad term and expect to obtain the full scope of its plain and ordinary meaning unless the patentee explicitly redefines the term or disavows its full scope."). Plaintiff did not explicitly redefine "surrounding bottom portion" nor did it relinquish the full scope of the term during prosecution of the Asserted Patents. *See Cordis Corp.*, 561 F.3d at 1329 (explaining that to disavow or disclaim the full scope of a claim term, the patentee's statements in the specification or prosecution history must amount to a "clear and unmistakable" surrender). To the extent Defendants will attempt to rely on the specification or figures of the Asserted Patents to support its narrow construction, "it is improper to read limitations

from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co.*, 358 F.3d at 913. No such "clear indication" that the patentee intended to limit the scope of this claim term exists in this case.

Defendants' attempt to inject additional limitations into this term (i.e., requiring it be "flat" and "extend outwards from the bottom") is a clear attempt to create a non-infringement argument under the guise of a proposed claim construction. *See GE Lighting Sols.*, 750 F.3d at 1309. Additionally, Defendants' proposed construction is overly complicated and would not be helpful to a jury. Accordingly, no construction is necessary, and the ordinary and customary meaning of this claim term should be applied.

## IV.    CONCLUSION

For all of the reasons provided above, Plaintiff respectfully requests that the preamble be construed as not limiting and that all of the terms identified by Defendants be given their ordinary and customary meanings.

Date: February 13, 2025

Respectfully submitted,

/s/ *Dariush Keyhani*

Dariush Keyhani (*pro hac vice*)
Frances H. Stephenson (*pro hac vice*)
Scott M. Draffin (*pro hac vice*)
KEYHANI LLC
1050 30th Street NW
Washington, DC 20007
Phone: (202) 748-8950
dkeyhani@keyhanillc.com
fstephenson@keyhanillc.com
sdraffin@keyhanillc.com

19

Lisa M. Tittemore (BBO # 567941)
Kevin R. Mosier (BBO # 703739)
Katherine W. Soule (BBO #703965)
**SUNSTEIN LLP**
100 High Street
Boston, MA 02110
Phone: (617) 443-9292
ltittemore@sunsteinlaw.com
kmosier@sunsteinlaw.com
ksoule@sunsteinlaw.com

*ATTORNEYS FOR PLAINTIFF,*
*SWISSDIGITAL USA CO., LTD.*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed with the Court through CM/ECF system on February 13, 2025, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing ("NEF").

By: _/s/ Katherine W. Soule_____
Katherine W. Soule (BBO #703965)