**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SWISSDIGITAL USA CO., LTD., <br><br> *Plaintiff*, <br><br> v. <br><br> SAMSONITE INTERNATIONAL S.A.; SAMSONITE LLC; SAMSONITE COMPANY STORES, LLC; and DIRECT MARKETING VENTURES, LLC <br><br> *Defendant*. | Civil No. 1:24-cv-11636-JEK <br><br> **JURY TRIAL DEMANDED** |

## DEFENDANTS' OPENING CLAIM CONSTRUCTION BRIEF

# **TABLE OF CONTENTS**

I.    LEGAL STANDARD.................................................................................. 1

II.   OVERVIEW OF THE ASSERTED PATENTS.......................................... 2

    A.    The '071 Patent ............................................................................... 3

    B.    The '137, '138, and '009 Patents (collectively, the "Continuation Patents")................................................................................................ 4

III.  DISPUTED TERMS ................................................................................. 4

    A.    "A [bag or luggage]/[sheath] for convenient charging" ('071 pat., cl. 1, 9; '137 pat, cl. 1; '138 pat., cl. 1, 23; '009 pat, cl. 1, 29)............................. 4

        1.    The Preambles Are Limiting.................................................. 5

        2.    "Convenient Charging" in the Preambles Is Indefinite.............................. 7

    B.    "the outer surface of the bag or luggage body" ('071 pat., cl. 1)/"an outer surface of [the/a] body" ('137 pat., cl. 1, 4, 18; '138 pat., cl. 1, 2, 5, 18, 23; '009 pat., cl. 5, 18, 29) ................................................... 8

        1.    "Outer Surface" Is an "Outermost Surface" in the '071 Patent............................................................................... 9

        2.    The Prosecution Disclaimer for the '071 Patent Applies to the Continuation Patents. ....................................................... 11

    C.    "fixedly attached" ('071 pat., cl. 1)........................................................ 14

    D.    "surrounding bottom portion" ('137 pat., cl. 1, 20, 21; '138 pat., cl. 1, 2, 20, 21, 23; '009 pat., cl. 1, 2, 20, 21, 29)....................................... 16

IV.   CONCLUSION........................................................................................ 20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aventis Pharms., Inc. v. Barr Labs., Inc.*,
    335 F. Supp. 2d 558 (D.N.J. 2004) ........................................................................12

*Banhazi v. Am. Ceramic Society*,
    No. 16-cv-10791-ADB, 2019 WL 3387722 (D. Mass. July 26, 2019)................................5, 7

*Biogen Idec, Inc. v. GlaxoSmithKline LLC*,
    713 F.3d 1090 (Fed. Cir. 2013).........................................................................9

*CCS Fitness, Inc. v. Brunswick Corp.*,
    288 F.3d 1359 (Fed. Cir. 2002).........................................................................15

*Cordis Corp. v. Boston Sci. Corp.*,
    658 F.3d 1347 (Fed. Cir. 2011).........................................................................11

*Curtiss-Wright Flow Control Corp. v. Velan, Inc.*,
    438 F.3d 1374 (Fed. Cir. 2006).........................................................................14

*Datamize, LLC v. Plumtree Software*,
    417 F.3d 1342 (Fed. Cir. 2005).........................................................................8

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014).........................................................................8

*Eli Lilly and Co. v. Teva Pharms. Int'l GmbH*,
    8 F.4th 1331 (Fed. Cir. 2021) ........................................................................5, 6

*In re Gold*,
    29 F.3d 644, 1994 WL 233115 (Fed. Cir. 1994) ....................................................6

*Hakim v. Cannon Avent Group, PLC*,
    479 F.3d 1313 (Fed. Cir. 2007).........................................................................13

*Implicit LLC v. F5 Networks, Inc.*,
    No. 14-cv-02856-SI, 2015 WL 2194627 (N.D. Cal. May 6, 2015).............................13

*Intell. Ventures I LLC v. T-Mobile USA, Inc.*,
    902 F.3d 1372 (Fed. Cir. 2018).........................................................................5

*Interval Licensing LLC v. AOL, Inc.*,
    766 F.3d 1364 (Fed. Cir. 2014).........................................................................7, 8

*Markman v. Westview Instruments, Inc.*,
517 U.S. 370 (1996).............................................................................1

*Nautilus, Inc. v. BioSig Instruments, Inc.*,
572 U.S. 898 (2014).........................................................................2, 7

*O2 Micro Int'l, Ltd. v. Beyond Innovation Tech. Co.*,
521 F.3d 1351 (Fed. Cir. 2008)...........................................................2

*Omega Eng'g, Inc. v. Raytek Corp.*,
334 F.3d 1314 (Fed. Cir. 2003).......................................................9, 11

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ..........................................1

*Poly-America, L.P. v. GSE Lining Tech., Inc.*,
383 F.3d 1303 (Fed. Cir. 2004)...........................................................6

*Proveris Sci. Corp. v. Innovasystems, Inc.*,
749 F.3d 1349 (Fed. Cir. 2014)....................................................4, 6, 7

*Retractable Techs., Inc. v. Becton, Dickinson & Co.*,
653 F.3d 1296 (Fed. Cir. 2011)..........................................................14

*Seabed Geosolutions (US) Inc. v. Magseis FF LLC*,
8 F.4th 1285 (Fed. Cir. 2021) ............................................................11

*Syntheon, LLC v. Covidien AG*,
No. 16-cv-10244-ADB, 2017 WL 4225994 (D. Mass. Sept. 22, 2017) ...................14

*Teva Pharms., Int'l GmbH v. Eli Lilly and*
Co., No. 18-cv-12029-ADB, 2021 WL 723337 (D. Mass. Feb. 24, 2021)...............6

*Traxcell Techs., LLC v. AT&T Corp.*,
No. 2:17-cv-00718-RWS-RSP, 2019 WL 6037984 (E.D. Tex. Oct. 7, 2019) .................13, 14

*Trs. of Columbia Univ. v. Symantec Corp.*,
811 F.3d 1359 (Fed. Cir. 2016)............................................................1

*Vizio, Inc. v. Int'l Trade Comm'n*,
605 F.3d 1330 (Fed. Cir. 2010)...........................................................6

**Statutes**

35 U.S.C. § 112...............................................................................2

Defendants Samsonite International S.A., Samsonite LLC, Samsonite Company Stores, LLC, and Direct Marketing Ventures, LLC (collectively, "Defendants") submit their opening claim construction brief for the four Asserted Patents: U.S. Patents 10,574,071 (the "'071 patent"), 10,931,137 (the "'137 patent"), 10,931,138 (the "'138 patent"), and 11,601,009 (the "'009 patent") (collectively, "Asserted Patents"). Plaintiff Swissdigital USA Co., Ltd.'s ("Plaintiff") proposal of "plain and ordinary meaning" for every disputed claim term ignores the intrinsic and extrinsic evidence while Defendants' constructions define each term as it would have been understood (or not) by a person of ordinary skill in the art ("POSITA"). Defendants' proposals should be adopted.[1]

## I.     LEGAL STANDARD

Claim construction, often referred to under the shorthand (and Supreme Court authority) *Markman*, is the process of interpreting patent claim language. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 391 (1996). It is long settled law that the judge, not the jury, is charged with resolving disputes over the meaning of claims. *Id.* In resolving such disputes, the Court should generally give the claims the meaning they would have had to a person of ordinary skill in the art ("POSITA") at the time of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (*en banc*). To determine that meaning, courts look both to the intrinsic evidence—"the words of the claims themselves, the remainder of the specification, [and] the prosecution history"—and the "extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Id.* at 1314 (citation omitted). "[T]he only meaning that matters in claim construction is the meaning in the context of the patent." *Trs. of Columbia Univ. v. Symantec Corp.*, 811 F.3d 1359, 1363 (Fed. Cir. 2016).

---

[1] Defendants' claim construction positions are based on Plaintiff's current infringement contentions. Defendants reserve the right to seek supplemental briefing if Swissdigital is permitted to amend its contentions to modify its infringement theories or accused additional products.

The common theme in Plaintiff's proposals is that no term requires construction beyond "plain and ordinary meaning." Dkt. No. 33 (Joint Statement) at 2-3. But the parties disagree regarding what the plain and ordinary meaning is, and "[a] determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute." *O2 Micro Int'l, Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008). In such cases, "claim construction ***requires*** the court to determine what claim scope is appropriate in the context of the patents-in-suit."[2] *Id.* That is the case here.

Patent claims must particularly point out and distinctly claim the subject matter regarded as the invention. 35 U.S.C. § 112, ¶ 2. When read in light of the intrinsic evidence, the claim must "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. BioSig Instruments, Inc.*, 572 U.S. 898, 909-10 (2014). If the claim fails to provide clear notice of what is claimed, there would be a "zone of uncertainty which enterprise and experimentation may enter only at the risk of infringement claims." *Id.* at 909-910 (quoting *United Carbon Co. v. Binney & Smith Co.*, 317 U.S. 228, 236 (1942)). If the claim fails to provide such precision and certainty, the claim is indefinite and invalid. *Id.* at 901.

## II. OVERVIEW OF THE ASSERTED PATENTS

The Asserted Patents relate to integrating a USB charging port on a bag, and specifically a "sheath" that houses the female end of a USB cable for charging an external electronic device. The patent figures below illustrate certain relevant components.

---

[2] All emphasis herein is added unless otherwise specified.

| | |
|---|---|
| USB Cable<br><br>Male Connector/End<br><br>Female Connector/End<br><br>*'071 pat., Fig. 2 (annotated)* |  |
| Bag<br><br>Internal Storage For Battery<br><br>Sheath<br><br>*'071 pat., Fig. 9 (annotated)* | |
| USB Cable Female End<br><br>Sheath<br><br>    Open End<br><br>    Closed End<br><br>    Three Sides<br><br>*'137 pat., Fig. 44 (annotated)* | |

### A.    The '071 Patent

The '071 patent describes a bag for "convenient charging," with an internal storage space for a battery and a port or outlet allowing a USB cable connected to the battery to charge an external device. '071 patent at Abstract. The bag allows a user to charge a device "conveniently at any time or any place during traveling, without necessarily opening the bag or luggage, nor taking out the power source for charging." *Id.* at 1:33-39. The male connector of the USB cable connects to the battery inside to the bag, while the female connector is exposed outside the outlet (*e.g.*, to connect to a charging cable). *Id.* at 1:47-51, 3:20-23. The externally exposed female end of the cable may

have a waterproof "sheath" around its "outer surface." *E.g.*, *id.* at 1:51-54, 3:23-25.

**B.    The '137, '138, and '009 Patents (collectively, the "Continuation Patents")[3]**

The '137 patent is a continuation[4] of the '071 patent and also describes a system used for charging external devices using a USB cable. The '138 patent is a continuation-in-part of the '137 patent; the '009 patent is a continuation-in-part of both the '137 and '138 patents.

While their specifications are not identical, the Continuation Patents all focus on the "sheath" covering the external female connector, with three sides, a closed end, and an open end. *E.g.*, '137 pat. at Abstract, 1:42-46, 5:9-15. The sheath may taper to the closed end to accommodate and retain the cord end of a USB cable female connector. *E.g.*, *id.* at 5:24-29. The sheath receives the female connector end and holds it in place through an opening in the body. *E.g.*, *id.* at 1:49-58.

**III.    DISPUTED TERMS**

**A.    "A [bag or luggage]/[sheath] for convenient charging" ('071 pat., cl. 1, 9; '137 pat, cl. 1; '138 pat., cl. 1, 23; '009 pat, cl. 1, 29).**

| Defendants' Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| Limiting and indefinite | Preamble is not limiting, not indefinite |

The preamble of every independent claim in the Asserted Patents is nearly identical, only varying by whether each recites a "bag or luggage" (the '071 patent) or a "sheath" (the '137, '138, and '009 patents). The phrase "for convenient charging" in all of these preambles is "necessary to give life, meaning, and vitality to the claim" and is therefore limiting. *E.g.*, *Proveris Sci. Corp. v.*

---

[3] Defendants dispute that the '137, '138 and '009 patents are entitled to a priority date of November 18, 2014, based on the alleged priority date of the '071 patent. For purposes of claim construction, however, Defendants assume, as asserted by Plaintiff, that the claims of the Continuation Patents are entitled to the '071 patent's priority date. Regardless, for the terms identified herein, the applied priority date makes no difference for claim construction.

[4] A "continuation" is a later-filed set of patent claims based on an earlier-filed patent disclosure. A "continuation-in-part" is a later-filed set of patent claims based in part on an early-filed patent disclosure, but with additional material added to the disclosure. For purposes of determining what counts as prior art, a patent claim is only entitled to the priority date of the earliest disclosure that shows that the patent applicant was in possession of the claimed invention.

*Innovasystems, Inc.*, 749 F.3d 1349, 1357 (Fed. Cir. 2014). Further, because "for convenient charging" is "entirely subjective and user-defined," the preambles are indefinite. *E.g.*, *Intell. Ventures I LLC v. T-Mobile USA, Inc.*, 902 F.3d 1372, 1381 (Fed. Cir. 2018).

## 1.     The Preambles Are Limiting.

Whether a patent claim preamble is limiting "is determined on the facts of each case in light of the claim as a whole and the invention described in the patent." *Eli Lilly and Co. v. Teva Pharms. Int'l GmbH*, 8 F.4th 1331, 1340 (Fed. Cir. 2021). Here, viewing the claims and specifications as a whole, it is clear that the preambles reciting "for convenient charging" are "central to the inventions" of the patents, and are therefore limiting. *Id.* at 1342.

*First*, the preamble is limiting because it is the "heart" of the alleged inventions, "as described in the specification." *E.g.*, *Banhazi v. Am. Ceramic Society*, No. 16-cv-10791-ADB, 2019 WL 3387722, at *4 (D. Mass. July 26, 2019); *see also Eli Lilly*, 8 F.4th at 1342. The specifications each tout the purported convenience of the invention over the prior art. The '071 patent 1) describes a "backpack for convenient charging" in the Abstract; 2) states the "present invention" is "for convenient charging" of devices in the "Technical Field" section; 3) notes the prior art "caus[ed] a lot of inconvenience" because the need to "open the bag or luggage for charging" is "quite inconvenient" in the "Background of the Invention;" and 4) explains the "present invention" overcomes these disadvantages by "provid[ing] a type of bag or luggage for convenient charging" in the "Summary of the Invention," repeatedly emphasizing convenience in that section and the specification. '071 patent at 1:6-9, 1:22-29, 1:33-39, 1:40-54, 2:19-22, 2:25-42. That the invention is a "bag or luggage ***for convenient charging***" is also present in the preamble of ***every*** claim of the '071 patent. *Id.* at cl. 1-17. The Continuation Patents—all children of the '071 patent—all similarly tout "convenience" throughout their specifications. '137 patent at Abstract, 1:5-8, 1:17-25, 1:29-37, 1:42-58, 2:13-16; 2:17-27, 5:9-16, cl. 1; '138 patent at Abstract.

1:5-7, 1:17-25, 1:29-37, 1:42-58, 2:4-8, 2:12-16, 2:17-22, 5:22-30, 6:52-59, cl. 1, 23; '009 patent at Title, 1:5-7, 1:17-25, 1:29-37, 1:42-64, 2:10-15, 2:19-23, 2:24-34, 5:32-40, 6:61-7:1, cl. 1, 29.

These disclosures express that the heart of the invention is to provide an apparatus not merely for charging, but "***for convenient charging***" as recited in the preambles. *E.g.*, *Eli Lilly*, 8 F.4th at 1342 (finding preamble limiting where written description placed "heavy emphasis" on the feature, in the abstract, field of invention, background, summary, and detailed description sections, then referenced that feature in the preambles); *Proveris*, 739 F.3d at 1373 (similar); *Poly-America, L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1310 (Fed. Cir. 2004) (finding preamble limiting where "[t]he specification is replete with references to the invention" as including feature, "including the title of the patent itself and the Summary of the Invention," and "the entire preamble" was "restated in each" of the claims).

***Second***, the preambles are limiting because they "provide an essential understanding of the claim." *E.g.*, *Teva Pharms., Int'l GmbH v. Eli Lilly and* Co.*,* No. 18-cv-12029-ADB, 2021 WL 723337, at *13 (D. Mass. Feb. 24, 2021). The '071 patent independent claims recite a bag with an outlet and a USB cable running through the outlet with a sheath covering a portion of the cable. '071 patent, cl. 1. But the '071 patent's inventor was not working on "general improvements" to bags, USB cables, or even to covers for USB cables—instead, he was working on "the particular problem" of a ***convenient*** charging mechanism. *In re Gold*, 29 F.3d 644 (Table), 1994 WL 233115, at *3 (Fed. Cir. 1994). The preamble thus "gives life and vitality to the claim by explaining" what the limitations "referenced in the claim [are] meant to accomplish." *Teva*, 2021 WL 723337, at *13. Indeed, the remainder of the claim would have "little meaning without the intended objective" of convenient charging. *Vizio, Inc. v. Int'l Trade Comm'n*, 605 F.3d 1330, 1340-41 (Fed. Cir. 2010); *see also Poly-America,* 383 F.3d at 1310 (Fed. Cir. 2004) (finding preamble limiting where

to the inventor, the preamble "represented an important characteristic of the claimed invention").

That is even more true for the independent claims of the Continuation Patents, each of which recite a "sheath" with a certain structure, intended to retain an end of a USB cable. '137 patent, cl. 1; '138 patent, cl. 1, 23; '009 patent, cl. 1, 29. These claims do not reference charging at all, let alone "convenient" charging. Instead, the "only reference in any independent claim" to this important concept is in the preambles. *Proveris*, 739 F.3d at 1373. Without the preambles to guide the claims, the Continuation Patents' claims "do not inherently include the concept" of convenience or charging, and the preambles are "necessary to complete the claims to reflect what" the inventor "actually invented." *Banhazi*, 2019 WL 3387722, at *4 (citation omitted).

### 2.    "Convenient Charging" in the Preambles Is Indefinite.

Having determined the preamble is limiting, the question becomes whether a POSITA would be able to determine its meaning with reasonable certainty. *Nautilus*, 572 U.S. at 901. Here, "convenient charging" is indefinite because its interpretation depends on an individual's subjective opinion and provides no "objective boundaries" for determining the scope of the term. *See*, *e.g.*, *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014).

When a subjective term such as "convenient charging" is used in a patent claim, the Court "must look to the written description … to provide the clarity that the subjective claim language needs." *Id.* at 1371-72. Each Asserted Patent's specification explains in the background and summary of the inventions that "convenient charging" relates to ***not having to open a bag*** to remove a portable power source for charging. *E.g.*, '071 patent at 1:26-29, 1:33-39; '137 patent at 1:21-25, 1:29-37; '138 patent at 1:21-25, 1:29-37; '009 patent at 1:21-25, 1:29-37. Yet Plaintiff contends that the patents are not limited to situations where a bag does not need to be opened to

be charged. *See* Section III.B, *infra*.[5] Further, although the '071 patent claims a "bag or luggage," the Continuation Patents are broader and claim, for example, "glasses, goggles," and a "belt." *E.g.*, '137 patent, cl. 3; '138 patent, cl. 4; '009 patent, cl. 4. What does it mean to "open" a belt, glasses, or goggles? The specification provides a POSITA with no guidance.

Regardless, for "facially subjective terms" like convenient charging, "the definiteness requirement is not satisfied by merely offering examples that satisfy the term within the specification." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1260 (Fed. Cir. 2014). Plaintiff has offered no construction if the preambles are found to be limiting, thus identifying no "objective boundaries" or standard for determining when the claimed bag or sheath in the Asserted Patents is "for convenient charging." *See Interval Licensing*, 766 F.3d at 1371. The term thus "does not just include a subject element, it is completely dependent on a person's subjective opinion." The term "for convenient charging" is indefinite and each asserted claim thus invalid. *Datamize, LLC v. Plumtree Software*, 417 F.3d 1342, 1371 (Fed. Cir. 2005).

B.     **"the outer surface of the bag or luggage body" ('071 pat., cl. 1)/"an outer surface of [the/a] body" ('137 pat., cl. 1, 4, 18; '138 pat., cl. 1, 2, 5, 18, 23; '009 pat., cl. 5, 18, 29)**

| Defendants' Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| "the outermost surface of the bag or luggage body such that it can be accessed without opening the bag or luggage" ('071 patent")<br><br>"an outer surface of [the/a] body such that it can be accessed without opening the bag or luggage ('137, '138, '009 patents") | No construction necessary; plain and ordinary meaning |

---

[5] If "convenient charging" is determined to not be indefinite, it should alternatively be limited to allowing charging without opening a bag. To the extent the Court does not find the term is wholly subjective, that is its only plausible meaning. *See* '071 patent at 1:26-29, 1:33-39; '137 patent at 1:21-25, 1:29-37; '138 patent at 1:21-25, 1:29-37; '009 patent at 1:21-25, 1:29-37.

Clear prosecution disclaimer limits the scope of "outer surface" in the '071 patent to an "outer*most* surface," accessible without opening the bag or luggage. When, as here, a patentee "disavows a certain meaning to obtain a patent," the doctrine of prosecution disclaimer "narrows the meaning of the claim consistent" with the surrendered scope. *Biogen Idec, Inc. v. GlaxoSmithKline LLC*, 713 F.3d 1090, 1095 (Fed. Cir. 2013). Further, if "the same claim limitation is at issue, prosecution disclaimer made on the same limitation in an ancestor application will attach" to later continuation and continuation-in-part applications. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1333 (Fed. Cir. 2003). Accordingly, the parent '071 patent's disclaimer applies to the Continuation Patents, and the "outer surface" terms should be similarly construed.

### 1. "Outer Surface" Is an "Outermost Surface" in the '071 Patent.

Defendants' proposed construction should be adopted because Plaintiff disclaimed any scope of "outer surface" that is not an "outer*most* surface" during prosecution of the '071 patent. During prosecution, the Examiner rejected the claims of the application that later issued as the '071 patent as anticipated by U.S. Patent Publication 2012/0262117 to Ferber ("Ferber"). Ex. 1 (2019-05-31 Non-Final Rejection) at -163-64. Ferber disclosed a messenger bag (shown at right) with an outlet, with charging connectors 216 (annotated in orange) held inside "pockets" 224 (annotated in green), which were inside "compartments" 212 (annotated in blue), and a flap (annotated) enclosing the entire connector, pocket, and compartment assembly.



Figure 2: Ferber Fig. 21, from '071 pat. prosecution history (annotated)

In response to the rejection, the applicant argued that Ferber "clearly fail[ed] to teach or suggest a power cable outlet on the ***outer surface of the bag or luggage body***":

> [Ferber] Figure 21 is directed to a messenger bag with a flap that must be opened to access the charger. Still further, Ferber provides the connector is removably retained ***inside a connector pocket 224*** that is attached to a compartment 212 that is on the ***interior of the bag*** covered by the messenger flap. . . . This ***clearly fails to teach or suggest, "a power cable outlet on the outer surface of the bag or luggage body"*** . . . Ferber teaches a connector contained in a pocket, attached to another pocket, under a messenger flap. Ferber also teaches that the connector must be removed from the pocket to charge the device. This does not teach or suggest the claims.

Ex. 2 (2019-06-25 Applicant Remarks) at -156-57. In these remarks, Plaintiff disclaimed any scope of the "outer surface" that includes internal surfaces, such as inside a pocket, compartment, or under a flap. Defendants' construction requiring that the "outer surface" be the ***outermost*** surface and accessible without opening the bag thus captures the proper scope in view of this disclaimer.

The claim language also supports Defendants' construction. In support of its disclaimer, Plaintiff amended the claims to add a limitation that the body "does not need to be opened to access a charging interface of a product to be charged." *Id.* at -147; '071 pat., cl. 1, 10. In other words, the "outer surface" is the outermost surface (*e.g.*, not inside of a pocket), such that it is not "inside" the body and can be accessed for charging without opening the body.

The specification eliminates any conceivable doubt as to the meaning of this term. A problem the '071 patent seeks to address is that, in prior art products, "[i]t is necessary to open the bag or luggage for charging, which is quite ***inconvenient***." *Id.*, 1:26-29. Accordingly, the patent repeatedly describes "the present invention" as a "convenient" one, enabling charging a device ***without*** having to open the bag or luggage. *Id.*, 1:33-39 ("The present invention . . . provides a type of bag or luggage for ***convenient*** charging, which enables the user to charge a device or product . . . ***without necessarily opening the bag or luggage***"), 1:55-60, 2:26-31, 3:30-35 (similar).

This idea of "convenience" tied to not needing to open a bag is also reflected in the independent claims' preambles, each of which recites a "bag or luggage for **convenient** charging." *Id.*, cl. 1, 10.

The specification also describes a "sheath" covering the outer surface of the female connector (which is "exposed outside" the outlet at the outer surface) for "water proofing"—a feature needed only if the outer surface on which the connector sits is on the outer**most** surface of the bag, such that it could be exposed to rain. *See id.*, 1:40-54, 3:14-29, 3:47-59, 3:60-4:5, 4:34-45, 4:46-60, 4:65-5:12 (similar). Consistent with this, every figure of the '071 patent depicting an outer surface with the claimed sheath depicts the sheath on the outermost surface. '071 pat., Figs. 1, 3. Meanwhile, the specification and figures do not ever describe or show a sheath **inside** a bag.

Since "the meaning of [the] claim term is clear from the intrinsic evidence, there is no reason to resort to extrinsic evidence." *E.g.*, *Seabed Geosolutions (US) Inc. v. Magseis FF LLC*, 8 F.4th 1285, 1287 (Fed. Cir. 2021). Defendants' construction is consistent with Plaintiff's disclaimer during prosecution, the claims, and the specification, and should thus be adopted.

## 2. The Prosecution Disclaimer for the '071 Patent Applies to the Continuation Patents.[6]

The '071 patent's prosecution disclaimer extends to the Continuation Patents. "[I]t is settled that prosecution disclaimer attaches to progeny continuation in part applications where the same claim limitation is at issue." *Omega Eng'g*, 334 F.3d at 1335; *see also*, *id*. at 1334 ("[W]e presume, unless otherwise compelled, that the same claim term in the same patent or related patents carries the same construed meaning."). "[A] disclaimer in the parent application carries forward into the construction of the same claim term in the child." *Cordis Corp. v. Boston Sci. Corp.*, 658

---

[6] The independent claims of the '071 patent recite an "outlet on the outer surface." '071 pat., cl. 1, 10. The Continuation Patents recite substantively identical limitations. *E.g.*, '137 pat., cl. 1 (reciting "a power cable outlet between the inner surface and the outer surface"); '138 pat., cl. 1 (reciting "an opening between the inner surface and the outer surface"); '009 pat., cl. 1 (reciting "a first port between the inner surface and the outer surface").

F.3d 1347, 1357 n. 5 (Fed. Cir. 2011).[7] The '071 patent's disclaimer of internal surfaces from the scope of "outer surface" thus applies equally to that term in the children Continuation Patents.

The intrinsic evidence of the Continuation Patents does not compel a different result. The specifications of the Continuation Patents contain similar disclosures to the '071 patent regarding the goal of a "convenient" charging mechanism that does ***not require opening the bag or luggage***. *E.g.*, '137 pat., 1:24-25, 1:29-37, 1:59-64, 2:17-22, 3:45-50; '138 pat., 1:24-25, 1:29-37, 1:59-64, 2:17-22, 3:59-64; '009 pat., 1:24-25, 1:29-37, 1:65-2:3, 2:24-29, 4:1-6. Every independent claim's preamble in these patents also recites the same "convenient" charging that the '071 patent preamble does. '137 pat., cl. 1 (reciting "[a] sheath for convenient charging"); '138 pat, cl. 1, 23 (same); '009 pat., cl. 1, 29 (same). The Continuation Patents' specifications also contain the same waterproofing disclosures. *E.g.*, '137 pat., 2:22-24, 3:33-36, 3:66-4:3, 4:14-16, 4:54-56, 4:66-5:4, 5:12-15, 5:19-23, 5:44-47; '138 pat., 2:22-24, 3:48-50, 4:12-15, 4:27-30, 4:67-5:2, 5:11-14, 5:25-28, 5:32-34, 5:46-49, 5:57-65; '009 pat., 2:22-24, 3:56-59, 4:23-25, 4:37-40, 5:10-12, 5:21-24, 5:35-37, 5:42-45, 5:66-6:2. The same disclosures that support Defendants' construction for the '071 patent thus support the same construction for the Continuation Patents.

Plaintiff tried to broaden the scope of the Continuation Patents to reclaim subject matter it ceded to overcome Ferber by adding dependent claims reciting a "second outer surface that covers the outer surface," and the confusing limitation that the "***outer*** surface" is "the ***inside*** of a pocket." '137 pat., cl. 4, 18; '138 pat., cl. 5, 18; '009 pat., cl. 5, 18. The Continuation Patents also contain

---

[7] Though it is unclear whether the '137 patent is in fact a continuation as labeled on its face, or is more properly classified as a continuation-in-part, the distinction is irrelevant to the analysis here. *See*, *e.g.*, *Aventis Pharms., Inc. v. Barr Labs., Inc.*, 335 F. Supp. 2d 558, 573 (D.N.J. 2004) (noting Federal Circuit precedent "manifest[s] an approach that considers the prosecution history of relatedly applications and patents broadly and inclusively, avoiding purely formalistic distinctions such as that between a continuation and a divisional application.").

disclosures not found in the '071 patent, explaining that "[t]here may be a second outer surface (3300) that covers the outer surface of the body," and that the outer surface may be the inside of a pocket. '137 pat., 6:27-32; '138 pat., 6:39-44; '009 pat., 6:48-53.

Nevertheless, the '071 patent's disclaimer applies to the Continuation Patents. Express disclaimer in the Continuation Patents' prosecution is not required for the '071 patent's disclaimer to carry over. *E.g.*, *Implicit LLC v. F5 Networks, Inc.*, No. 14-cv-02856-SI, 2015 WL 2194627, at *13 (N.D. Cal. May 6, 2015) (finding lack of disclaimer in **child** patent's prosecution history "immaterial," because there was "no evidence . . . much less sufficiently clear evidence, that informed the examiner that the disclaimer [Applicant] made during the [**parent**] patent Reexam would need to be revisited"). To rescind a parent patent's disclaimer, "the prosecution history [of the child patent] must be sufficiently clear to inform the examiner that the previous disclaimer, and the prior art that it was made to avoid, may need to be re-visited." *Hakim v. Cannon Avent Group, PLC*, 479 F.3d 1313, 1318 (Fed. Cir. 2007). Requiring clear rescission in a child patent's prosecution ensures a "***patentee may not state during prosecution that the claims do not cover a particular device and then change position and later sue a party who makes that same device for infringement***." *Id.* at 1318 (citation omitted). This is **exactly** what Plaintiff has done here.

A district court's opinion in *Traxcell Techs., LLC v. AT&T Corp.*, No. 2:17-cv-00718-RWS-RSP, 2019 WL 6037984 (E.D. Tex. Oct. 7, 2019) is informative. That court, noting that withdrawing a disclaimer has "exacting requirements," found a parent patent disclaimer had not been rescinded, even though the applicant referenced the prior amendment leading to the disclaimer **and** "revoke[d] any estoppel either express or that may be inferred" in the parent patent's prosecution. *Id.* at *9-10. The disclaimer still carried to the child patents because the Applicant did not "(1) specify what the prior disclaimer was, (2) state the basis of the examiner's

previous rejection, [and] (3) identify the prior art that gave rise to the prior disclaimer." *Id.* at *10. Here, the Plaintiff made ***no attempt to rescind*** the '071 patent's prosecution disclaimer.

The doctrine of claim differentiation does not support a broader construction. Claim differentiation is the presumption that each claim in a patent has a different scope, but ***cannot broaden*** claims beyond their correct scope. *Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1380-81 (Fed. Cir. 2006). While the Continuation Patents' dependent claims recite the "outer surface" being "inside a pocket," implying that the "outer surface" in the independent claims is not limited to the outermost surface, a "construction dictated by the written description or prosecution history" overcomes "[a]ny presumption created by the doctrine of claim differentiation." *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1305 (Fed. Cir. 2011); *Syntheon, LLC v. Covidien AG*, No. 16-cv-10244-ADB, 2017 WL 4225994, at * 5 (D. Mass. Sept. 22, 2017) ("[C]laim differentiation is not a hard and fast rule, and the presumption can be overcome by a contrary construction ***required by the specification or prosecution history***." (quoting *GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1310 (Fed. Cir. 2014))).

Therefore, the '071 patent prosecution disclaimer extends to the Continuation Patents, and Defendants' proposed construction of "outer surface" should be adopted for all patents.

### C. "fixedly attached" ('071 pat., cl. 1)

| Defendants' Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| "fastened to or adjoined such that it does not move and cannot be removed" | No construction necessary; plain and ordinary meaning |

Defendants' proposed construction for the term "fixedly attached" should be adopted because it is drawn directly from Plaintiff's prosecution history disclaimer and manifest lexicography. A "claim term will not receive its ordinary meaning if the patentee ***acted as his own lexicographer*** and ***clearly set forth a definition of the disputed claim term***" in the prosecution

history. *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1367 (Fed. Cir. 2002). In distinguishing the Ferber reference, Plaintiff "highlight[ed] a very important distinction between Ferber and the present invention" and contrasted its invention with Ferber's connectors, which can be "removed from the compartment for use," while ***"[t]he entire purpose of the present invention is to provide the female USB connector that does not move (claimed as "fixedly attached")*** Ex. 2 (2019-06-25 Applicant Remarks) at -155-56. Plaintiff further contrasted Ferber's "removably retained" connector with the claimed connector "which is exposed and ***fixedly attached*** . . . ." *Id.* at -156-57. Defendants' construction best captures this disclaimer and lexicography.

Other intrinsic evidence affirms Defendants' construction. The '071 patent's independent claims recite an "operative end of the female connector" of the USB cable "fixedly attached above the exterior of the bag." '071 pat., cl. 1, 10. This claim language stands in contrast to that of the Continuation Patents, which recite instead that the operative end is "removably retained" or simply "retained" in a sheath "above the outer surface of the body." '137 pat., cl. 1; '138 pat., cl. 1; '009 pat., cl. 1. Being "attached" has a different plain meaning from being simply "retained"— attachment connotes fastening or joinder, while retainment does not. The contrast between "fixed" attachment and "removable" retainment (claimed in the '137 patent) further cements the distinction. The '071 patent claims a female connector attached or adjoined such that it is "fixed," or prevents movement or removal, while the '137 patent claims "removably retain[ing]" the connector, effectively ***requiring*** the ability to remove the connector. Even assuming *arguendo* that the plain meaning of "fixedly attached" does encompass some form of removable retainment (it does not), Plaintiff disclaimed any such scope in distinguishing Ferber. Ex. 2 at -156-57.

The specification of the '071 patent supports the meaning evident from the prosecution history and claims. For example, the '071 patent describes the female connector-sheath assembly

that allows a user to charge external products as a "fixture." *See* '071 pat. at Abstract. Further, the only use of the word "attach" in the entire '071 patent specification is a description of a "dust cap" (highlighted in green, right), "attached" to the side of the female connector (highlighted in orange). *Id.*, 1:63-67, 3:36-41, 5:18-21. The figures show the dust cap is fastened or adjoined to



Figure 4: '071 pat. Fig. 2 (annotated)

the side of the female USB connector, as illustrated in Figure 4 above at right.

Finally, extrinsic evidence showing the meaning of "fixedly attached" at the time of the invention shows Defendants' construction is correct. "Attached" means to "fasten or join one thing to another." Ex. 3 (Longman Dictionary of Am. English (5th Ed., 2014)) at -305; Ex. 4 (The Am. Heritage Desk Dictionary (2014)) at -308 (defining "attach" as "to fasten or become fastened; connect"). Adding "fixedly" reinforces the meaning already apparent from the intrinsic evidence— the connector cannot be moved or removed. Ex. 5 (Longman Dictionary of Am. English (5th Ed., 2014)) at -311 (defining "fixed" as "firmly fastened to something and *in a particular position*"); Ex. 6 (The Chambers Dictionary (13th Ed., 2014)) at -314 (defining "fixed" as "fast, lasting, permanent; *not varying or subject to alteration*"); Ex. 7 (The Am. Heritage Desk Dictionary (2014)) at -317 (defining "fixed" as "*firmly in position; stationary*").

Defendants' proposal, supported by intrinsic and extrinsic evidence, should be adopted.

### D. "surrounding bottom portion" ('137 pat., cl. 1, 20, 21; '138 pat., cl. 1, 2, 20, 21, 23; '009 pat., cl. 1, 2, 20, 21, 29)

| Defendants' Proposed Construction | Plaintiff's Proposed Construction |
| --- | --- |
| "a flat portion that extends outward from the bottom of" | No construction necessary; plain and ordinary meaning |

The specification and prosecution history make clear that Defendants' proposed

construction is correct, and that a "plain and ordinary meaning" construction is insufficient. Each Continuation Patent's claim recites a "surrounding bottom portion" that surrounds the left and right sides and the closed and open ends of the sheath, with the '138 and '009 patents further reciting that the surrounding bottom portion surrounds a "top side." *E.g.*, '137 pat., cl. 1; '138 pat., cl. 1; '009 pat., cl. 1. The '138 and '009 patents also have claims reciting the "surrounding bottom portion" surrounding a "raised portion" with USB opening. *E.g.*, '138 pat., cl. 23; '009 pat., cl. 29.

The meaning of "surrounding" is unclear from the claims alone because a POSITA would have understood the term to have multiple meanings applicable to the claimed "sheath." The plain meaning of "surround" means to "extend on all sides of simultaneously," "encircle," or "enclose or confine on all sides." Ex. 8 (The Am. Heritage Dictionary of the English Language (5th Ed., 2019)) at -320; *see also* Ex. 9 (The Merriam-Webster Dictionary (2019)) at -324 (defining "surround" as "to enclose on all sides; encircle"); Ex. 10 (Collins English Dictionary (8th Ed., 2019)) at -302 (defining "surround" as "to encircle or enclose"). With this understanding, a "bottom portion" that surrounds the sides of the sheath could be any of the three configurations in yellow below, depending on the orientation of the sheath.

| Figure 7: '137 pat. figures showing possible "bottom portion" orientations | | |
|---|---|---|
| *'137 pat., Fig. 2 (showing sheath open end pointing down)* | *'137 pat., Fig. 44 (showing connector held flat against the side of the bag)* | *'137 pat., Fig. 2 (rotated, such that sheath open end points sideways* |



The '009 patent also claims a "cable connector **having surrounding sides**, an operative end, a cord end, and a cord," consistent with one of the plain readings of "surrounding" in the "surrounding bottom portion" context. '009 pat., cl. 29. The natural reading of "surrounding sides"

of a cable connector is the four roughly rectangular sides that encircle the connector. A bottom portion surrounding those sides would correspond to the example at the far left in Figure 7 above.

The specification, however, reveals that "surrounding bottom portion" means none of the above, and is instead a flat portion extending outwardly from the bottom of the sides of the sheath. The specifications of the Continuation Patents describe a flat "surrounding bottom portion" or "surrounding bottom attachment portion" that surrounds the "sides" of the sheath recited in the claims. *E.g.*, '137 pat., 5:60-62 ("The surrounding bottom attachment portion is a flat portion surrounding the at least three sides, the first tapered closed end and the second open end of the sheath"); '138 pat., 6:6-8 (same); '009 pat., 6:15-18 (same); *see also* '138 pat., 6:52-59 (similar); '009 pat., 6:61-67 (similar). Each figure of the Continuation Patents depicting the "surrounding bottom portion" or "surrounding bottom attachment portion"—corresponding to 4508, 4602, 4402, or 5300 in the figures ('137 pat., 5:57-60; '138 pat., 6:3-6, 6:52-57, 7:39-41; '009 pat., 6:12-15, 6:61-66, 7:47-51)—confirms that the portions are flat portions that extend outwardly from the bottom part of the sides the claimed "portion" surrounds, as depicted in Figure 8 above at right.[8]



[8] Figures 44, 45, and 46 are identical in the three Continuation Patents. Figure 53 appears only in the '138 and '009 patents and is identical in those two patents.

The '138 and '009 patents also contain an additional disclosure supporting Defendants' construction. The two patents explain that the surrounding bottom portion "surround[s] a portion of the sheath that extends above the outer surface of a body, as depicted in Figs. 47, 48, and 49." '138 pat., 6:59-65; '009 pat., 7:1-7. As the referenced figures 47-49 show (below), the surrounding bottom portion (annotated in red) is flat, extending from the bottom of the sides it surrounds.



| Figure 9: '138 pat. figures illustrating surrounding bottom portion | | |
|---|---|---|
| *'138 pat., Fig. 47* | *'138 pat., Fig. 48* | *'138 pat., Fig. 49* |

The patents' description of these figures shows that the surrounding bottom portion extends outward from the sides that it surrounds. Figure 47 shows that the left side of the portion (4702) extends out from the bottom of the left side of the sheath (4708) and the right side (4704) from the bottom of the right side of the sheath (4710). *See* '138 pat., 6:65-7:16; '009 pat., 7:7-27. Figure 48 shows that the first "end portion" of the surrounding bottom portion (4802) extends from the first closed end of the sheath (4806), and the second "end portion" (4804) from the second open end of the sheath (4808). *See* '138 pat., 6:65-7:16; '009 pat., 7:7-27. Fig. 49 shows that the surrounding bottom portion may also extend from more than one side by depicting a surrounding bottom portion (4906) attached to the left side (4902), right side (4905), and the second open end (4900). *See* '138 pat., 7:16-19; '009 pat., 7:24-27. Thus, the surrounding bottom portion as claimed must extend outward from the bottom of the surrounding sides, as Defendants' construction requires.

The prosecution history further confirms the "surrounding bottom portion" must ***extend outward*** from the sides of the sheath, and cannot simply be, for example, the bottom of the sheath.

During the prosecution of the '137 patent, an examiner advised Plaintiff that U.S. Patent No. 10,547,036 ("Ashley") discloses the claimed surrounding bottom portion. Ex. 11 (2020-06-12 Examiner Interview Summary) at -823. In response, Plaintiff argued "Ashley does not teach a surrounding bottom portion as in the claimed invention, but rather teaches a ***flat closed bottom*** (not surrounding the left side and the right side, the first tapered closed end and the second open end of the sheath as claimed)." Ex. 12 (2020-07-06 Applicant Remarks) at -819.



**Figure 10: Figure from '009 patent prosecution history illustrating "surrounding bottom portion"**

*'009 pat., Fig. 44* (Ex. 13 (2022-06-09 Applicant Remarks) at -538 (annotation in original, showing '009 pat., Fig. 44))

Plaintiff further argued that "[a]t best, Ashley teaches a bottom cover and not a surrounding bottom portion as claimed." *Id.* Plaintiff also confirmed during prosecution of the '009 patent that the claimed "surrounding bottom portion" is the portion shown extending from the bottom of the sheath in Figure 44 (indicated by Plaintiff with an arrow, above at right), and "allows for attachment to the body and secure insertion and removal of the cable connector." Finally, Plaintiff argued in an interview that the "surrounding bottom portion" was "not part of the body/bag." Ex. 14 (2022-06-13 Interview Summary) at -525.

All of the above intrinsic evidence from the prosecution history supports Defendants' proposed construction. The claimed "bottom portion" cannot be an enclosed bottom for the sheath or a part of the bag body (instead of the sheath), and is therefore a portion that extends outward from the bottom of the sheath's sides. Defendants' construction is also consistent with the portion of the figures that Plaintiff expressly pointed to as the claimed "surrounding bottom portion."

## IV.    CONCLUSION

For these reasons, Defendants respectfully request that the Court adopt their proposed constructions for the disputed claim terms of the Asserted Patents.

Dated:  February 13, 2025

Respectfully submitted,

By: */s/ Adam J. Kessel*
Adam J. Kessel
Massachusetts Bar No. 661,211
kessel@fr.com
**FISH & RICHARDSON P.C.**
One Marina Park Drive
Boston, MA 02210
Tel:  (617) 542-5070
Fax: (617) 542-8906

Neil J. McNabnay (*Pro Hac Vice*)
Texas Bar No. 24002583
mcnabnay@fr.com
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
Tel: (214) 747-5070
Fax: (214) 747-2091

Bailey K. Benedict (*Pro Hac Vice* )
Texas Bar No. 24083139
benedict@fr.com
Ethan K. Kovar (*Pro Hac Vice* )
Texas Bar No. 24138134
kovar@fr.com
**FISH & RICHARDSON P.C.**
909 Fannin Street, Suite 2100
Houston, TX 77010
Tel: (713) 654-5300
Fax: (713) 652-0109

Wonjoon Chung (*Pro Hac Vice* )
Georgia Bar No. 396468
chung@fr.com
**FISH & RICHARDSON P.C.**
1180 Peachtree Street NE
21st Floor
Atlanta, GA 30309
Tel: (404) 892-5005
Fax: (404) 892-5002

*Attorneys for Defendants*
*SAMSONITE INTERNATIONAL S.A.;*
*SAMSONITE LLC; SAMSONITE COMPANY*
*STORES, LLC; and DIRECT MARKETING*
*VENTURES, LLC*