# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

SWISSDIGITAL USA CO., LTD.

    *Plaintiff*,

    v.

SAMSONITE INTERNATIONAL S.A.;
SAMSONITE LLC; SAMSONITE
COMPANY STORES, LLC; and
DIRECT MARKETING VENTURES,
LLC;

    *Defendants*.

Case No. 1:24-cv-11636-JEK-PGL

**JURY TRIAL DEMANDED**

## SWISSDIGITAL USA CO., LTD.'S CLAIM CONSTRUCTION RESPONSE BRIEF

## <u>TABLE OF CONTENTS</u>

**Page**

I.     TERMS DISPUTED BY SAMSONITE.................................................................1

     A.     "a [bag or luggage]/[sheath] for convenient charging"..............................1

          1.     The Preambles of the Asserted Patents Are Not Limiting............................2

          2.     The Preambles of the Asserted Patents Are Not Indefinite.........................4

               a.     Defendants Provide No Evidence That a POSITA Would Not Be Informed About the |Meaning of the Preambles......................................................................4

               b.     The Asserted Patents Provide Sufficient Guidance to a POSITA Regarding the Meaning of "Convenient Charging."...............................................5

     B.     "the outer surface of the bag or luggage body".........................................8

     C.     "an outer surface of the bag or luggage body".........................................12

          1.     Because There Was No Disclaimer Made During the Prosecution of the '071 Patent, Defendants' Disclaimer Argument with Respect to the '137, '138, and '009 Patents Fails.............12

          2.     The Claim Language of the '137, '138, and '009 Patents Is Not the Same as the Claim Language of the '071 Patent and the Language Addressed During Prosecution, and Therefore Disclaimer Cannot Attach........................................................13

     D.     "fixedly attached".....................................................................................15

     E.     "surrounding bottom portion"..................................................................18

II.     CONCLUSION.............................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abiomed, Inc. v. Maquet Cardiovascular LLC*, F. Supp. 3d 59 (D. Mass. 2021)...............................8

*Advanced Media Networks, LLC v. AT&T Mobility LLC*,
748 F. App'x 308 (Fed. Cir. 2018)................................................................................18

*Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336 (Fed. Cir. 2002)......................................1

*American Med. Sys., Inc. v. Biolitec, Inc.*, 618 F.3d 1354 (Fed. Cir. 2010)....................................2

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338 (Fed. Cir. 2008)..................................14

*Banhazl v. Am. Ceramic Soc'y*, No. 16-cv-10791-ADB,
2019 WL 3387722 (D. Mass. July 26, 2019)...........................................................3, 8

*Biogen, Inc. v. Berlex Laby's, Inc.*, 318 F.3d 1132 (Fed. Cir. 2003)................................................15

*Biosig Insts., Inc. v. Nautilus, Inc.*, 783 F.3d 1374 (Fed. Cir. 2015)................................................8

*Boston Sci. Corp. v. Cook Inc.*, 187 F. Supp. 3d 249 (D. Mass. 2016)............................................5

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801 (Fed. Cir. 2002)................2, 3, 4

*Cordis Corp. v. Bos. Sci. Corp.*, 561 F.3d 1319 (Fed. Cir. 2009).........................................9, 19, 20

*Dow Chem. Co. v. Nova Chems. Corp. (Can.)*, 809 F.3d 1223 (Fed. Cir. 2015)........................4, 8

*Eli Lilly & Co. v. Teva Pharms. Int'l GmbH*, 8 F.4th 1331 (Fed. Cir. 2021)....................................3

*Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325 (Fed. Cir. 2010)............................................6

*Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314 (Fed. Cir. 2016)........................5

*Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323 (Fed. Cir. 2008)............................................16

*GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304 (Fed. Cir. 2014)..............................15, 18

*Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229 (Fed. Cir. 2017)................................2

*Golden Bridge Tech., Inc., v. Apple Inc.*, 758 F.3d 1362 (Fed. Cir. 2014)................................12, 18

*Guangdong Alison Hi-Tech Co. v. Int'l Trade Comm'n*, 936 F.3d 1353 (Fed. Cir. 2019)................6

ii

*Hand Held Prod., Inc. v. Amazon.com, Inc.*, No. CV 12-768-RGA-MPT,
    2014 WL 2873902 (D. Del. June 24, 2014)................................................................5

*IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422 (Fed. Cir. 2000)......................2

*Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364 (Fed. Cir. 2014)..............................6

*Intri-Plex Techs., Inc. v. NHK Int'l Corp.*, No. 17-cv-01097-EMC,
    2018 WL 659017 (N.D. Cal. Feb. 1, 2018)................................................................4

*Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374 (Fed. Cir. 2005)..........................6

*Iovate Health Scis., Inc. v. Allmax Nutrition, Inc.*, 639 F. Supp. 2d 115 (D. Mass. 2009)..............15

*Janssen Pharmaceutica, N.V. v. Eon Labs Mfg., Inc.*, 134 F. App'x 425 (Fed. Cir. 2005)..............11

*Kenexa BrassRing, Inc. v. HireAbility.com, LLC*, 59 F. Supp. 3d 206 (D. Mass. 2014)................16

*Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898 (Fed. Cir. 2004)....................................12, 19

*Merck & Co., Inc. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364 (Fed. Cir. 2005)..........................11

*Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898 (2014)........................................5

*Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339 (Fed. Cir. 2022)................6, 7, 8

*Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314 (Fed. Cir. 2003)................................13

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005)..........................................3, 18

*Poly-Am., L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303 (Fed. Cir. 2004)......................4

*ResQNet.com, Inc. v. Lansa, Inc.*, 346 F.3d 1374 (Fed. Cir. 2003)..........................13, 15

*Rowe v. Dror*, 112 F.3d 473 (Fed. Cir. 1997)........................................................2

*SFA Sys., LLC v. 1-800-Flowers.com, Inc.*, 940 F. Supp. 2d 433 (E.D. Tex. 2013)..........................2

*Sky Technologies, LLC v. Ariba, Inc.*, 491 F. Supp. 2d 154 (D. Mass. 2007)..........................8, 9

*SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331 (Fed. Cir. 2005)................................5

*Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570 (Fed. Cir. 1995)........................9

*Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823 (Fed. Cir. 2003)........................9

*STX, LLC v. Brine, Inc.*, 211 F.3d 588 (Fed. Cir. 2000)......................................................4

*Swissdigital USA Co. v. Wenger S.A.*, No. 6:21-cv-00453-ADA-DTG,
    2022 WL 3567348 (W.D. Tex. Aug. 18, 2022)........................................................16

*Teva Pharms. Int'l GMBH v. Eli Lilly & Co.*, No. 18-CV-12029-ADB,
    2021 WL 723337 (D. Mass. Feb. 24, 2021)....................................................2, 3, 8

*Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362 (Fed. Cir. 2012)..........................9, 19, 20

*VDP Patent, LLC v. Welch Allyn Holdings, Inc.*, 623 F. Supp. 2d 414 (S.D.N.Y. 2008)...................5

*Ventana Med. Sys. v. Biogenex Laby's, Inc.*, 473 F.3d 1173 (Fed. Cir. 2006)................................15

Plaintiff Swissdigital USA Co., Ltd. ("Swissdigital" or "Plaintiff") files this response to Samsonite International S.A. ("Samsonite Int'l"), Samsonite LLC ("Samsonite LLC"), Samsonite Company Stores, LLC ("Samsonite Co. Stores"), and Direct Marketing Ventures, LLC ("DMV") (collectively, "Samsonite" or "Defendants")'s Opening Claim Construction Brief ("Defendants' Opening Brief") (ECF No. 37).   In their Opening Brief, Defendants attempt to manufacture disclaimer where there is none, assert construction is necessary for a claim another court has already determined does not require construction, and proffer attorney argument under the guise of POSITA's understanding/lack of understanding.   As set forth below and in Swissdigital's Opening Claim Construction Brief ("Plaintiff's Opening Brief") (ECF No. 36), Swissdigital respectfully requests that the claim terms identified by Samsonite be construed as having their ordinary and customary meaning.

## I.    TERMS DISPUTED BY SAMSONITE[1]

### A.    "a [bag or luggage]/[sheath] for convenient charging"

In direct contradiction, Defendants argue on one hand that the preambles are limiting because they give "life, meaning, and vitality" to the claims and on the other hand that they are indefinite.   If "convenient charging" were indefinite, however, it plainly could not give life, meaning, or vitality to the claims, and would therefore not be limiting.   Courts have previously rejected the position Defendants take.   *See, e.g.*, *Allen Eng'g Corp. v. Bartell Indus., Inc*., 299 F.3d 1336, 1346–47 (Fed. Cir. 2002) (explaining that because "fast steering" in the preamble could not be understood by persons of skill in the art, and therefore did not give life, meaning and vitality to

---

[1] On February 13, 2025, Defendants' counsel emailed Plaintiff's counsel and withdrew Samsonite's challenge of the claim term "adjacent to," stating that it "will agree to that term being given its plain and ordinary meaning."   Samsonite does not address the term in Defendants' Opening Brief.   Accordingly, Swissdigital does not further address this claim term in this brief.

1

the claimed structure, the term was not limiting); *SFA Sys., LLC v. 1-800-Flowers.com, Inc.*, 940 F. Supp. 2d 433, 456–57 (E.D. Tex. 2013) (noting that where the defendant argues that a term in the preamble is indefinite, then "[b]y Defendants' own arguments" the term "cannot be necessary to give meaning to the claim" and is not limiting).  Defendants' arguments that the preambles of the asserted patents are limiting and also indefinite are unavailing and for this reason alone should be rejected.  Notwithstanding, Plaintiff addresses Defendants' arguments below.

### 1.    The Preambles of the Asserted Patents Are Not Limiting.

As set out in Plaintiff's Opening Brief and addressed below, "generally, the preamble does not limit the claims."  *Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229, 1236 (Fed. Cir. 2017).  "[T]he preamble has no separate limiting effect if . . . 'the preamble merely gives a descriptive name to the set of limitations in the body of the claim that completely set forth the invention."  *American Med. Sys., Inc. v. Biolitec, Inc.*, 618 F.3d 1354, 1359 (Fed. Cir. 2010) (quoting *IMS Tech., Inc. v. Haas Automation, Inc*., 206 F.3d 1422, 1434–35 (Fed. Cir. 2000)). "[P]reamble language merely extolling benefits or features of the claimed invention does not limit the claim scope without clear reliance on those benefits or features as patentably significant." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 809 (Fed. Cir. 2002); *see also Rowe v. Dror*, 112 F.3d 473, 478 (Fed. Cir. 1997) (explaining that a preamble is not limiting "where a patentee defines a structurally complete invention in the claim body and **uses the preamble only to state a purpose or intended use for the invention**" (emphasis added)).  And "a preamble is generally not limiting unless there is '**clear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art**.'"  *Teva Pharms. Int'l GMBH v. Eli Lilly & Co.*, No. 18-CV-12029-ADB, 2021 WL 723337, at *13 (D. Mass. Feb. 24, 2021) (emphasis added) (quoting *Catalina Mktg. Int'l*, 289 F.3d at 808).

2

The preambles of the asserted patents are not limiting because: (1) the claims use the preamble to state a purpose or intended use; and (2) the inventor did not rely on the preamble to distinguish the claimed invention from the prior art. As set out in Plaintiff's Opening Brief, the body of the asserted claims set out the complete invention and the preambles are not necessary to give life, meaning, and vitality to the claim. The preambles of the asserted claims merely state a purpose of intended use of the sheath/bag or luggage—convenient charging.

Defendants' attorney argument regarding the inventor's objectives and interpretation of the claims in a vacuum (i.e., not in the context of the patent as a whole) is not supported by POSITA testimony and is improper. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) ("[E]ach claim term is construed according to its ordinary and accustomed meaning **as understood by one of ordinary skill in the art** at the time of the invention **in the context of the patent**." (emphasis added)). Furthermore, the cases Defendants rely on are not instructive because either the preamble language was essential to completing the invention, the patentee relied on the limitation to distinguish its invention from the prior art, and/or the preamble was part of a method claim. *See, e.g.*, *Banhazl v. Am. Ceramic Soc'y*, No. 16-cv-10791-ADB, 2019 WL 3387722, at *4 (D. Mass. July 26, 2019) (finding the preamble term "permanent" limiting because "it is . . . necessary to complete the claims"); *Teva Pharms. Int'l,* 2021 WL 723337, at *13 (holding that the preamble term "treating a human for a headache" was limiting "because the treatment of a human was needed [to explain] what the 'dose' referenced in the claim" meant); *Eli Lilly & Co. v. Teva Pharms. Int'l GmbH*, 8 F.4th 1331, 1341 (Fed. Cir. 2021) (contrasting method claims from apparatus claims, explaining that because "what a method does is usually recited in its preamble . . . our claim construction analysis of statements of intended purpose in methods of using apparatuses or compositions has tended to result in a conclusion that such preamble language is

3

limiting"); *Poly-Am., L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1310 (Fed. Cir. 2004) (agreeing that in a method claim, "preamble language relating to 'blown-film' does not state a purpose or an intended use of the invention, but rather discloses a fundamental characteristic of the claimed invention"). Importantly, none of the cases cited by Defendants involve terms merely extolling a benefit, as with the term "convenient." *See STX, LLC v. Brine, Inc.*, 211 F.3d 588, 591 (Fed. Cir. 2000) (agreeing that a preamble stating that the invention provides "improved playing and handling characteristics" is not a limitation); *Intri-Plex Techs., Inc. v. NHK Int'l Corp.*, No. 17-cv-01097-EMC, 2018 WL 659017, at *6 (N.D. Cal. Feb. 1, 2018) (holding "optimized" in the preamble as not limiting).

Defendants do not argue that the inventor relied on the preamble to distinguish the claimed inventions from the prior art. *See Catalina Mktg. Int'l, Inc.*, 289 F.3d at 808. Therefore, because the preamble language "for convenient charging" merely states a purpose or intended use of the invention and was not a limitation relied on by the inventor to overcome prior art, it is not limiting.

### 2.    The Preambles of the Asserted Patents Are Not Indefinite.

Even if Defendants' position that the preambles give life to the claims yet could not be understood by a POSITA was not problematic, Defendants cannot meet their burden of proving indefiniteness by clear and convincing evidence. *See Dow Chem. Co. v. Nova Chems. Corp. (Can.)*, 809 F.3d 1223, 1227 (Fed. Cir. 2015) ("The burden of proving indefiniteness . . . remains at all times on the party challenging the validity of the patent").

#### a.    Defendants Provide No Evidence That a POSITA Would Not Be Informed About the Meaning of the Preambles.

Defendants provide no expert testimony as to the understanding (or lack thereof) of the preambles by one of ordinary skill in the art at the time of the invention in the context of the patent, specification, and prosecution history. Extrinsic evidence may play a significant role in the

4

indefiniteness analysis, as definiteness is evaluated from the perspective of a person of skill and requires a determination of whether such a skilled person would understand the scope of the claim when it is read in light of the specification at the time of the invention. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 908 (2014); *Dow Chem. Co.*, 809 F.3d at 1225; *see also Boston Sci. Corp. v. Cook Inc.*, 187 F. Supp. 3d 249, 271 (D. Mass. 2016) (stating that expert testimony "is essential to understand what meaning such a person would take from the wording of the patent's claims and specifications"); *Hand Held Prod., Inc. v. Amazon.com, Inc*., No. CV 12-768-RGA-MPT, 2014 WL 2873902, at *5, *16, *27 (D. Del. June 24, 2014) (pointing to Amazon's lack of expert testimony in ultimately rejecting its indefiniteness arguments); *VDP Patent, LLC v. Welch Allyn Holdings, Inc.*, 623 F. Supp. 2d 414, 423 (S.D.N.Y. 2008) (stating that extrinsic evidence may be necessary to invalidate a claim as indefinite). "The test for indefiniteness does not depend on a potential infringer's ability to ascertain the nature of its own accused product to determine infringement, but instead on whether the claim delineates to a skilled artisan the bounds of the invention." *SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1340–41 (Fed. Cir. 2005).

Defendants had full opportunity to present expert testimony on this issue and elected not to. Defendants' attorney argument cannot be a basis of establishing indefiniteness and should be rejected. *See Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1319 (Fed. Cir. 2016).

### b.    The Asserted Patents Provide Sufficient Guidance to a POSITA Regarding the Meaning of "Convenient Charging."

The asserted patents provide guidance to a POSITA regarding the meaning of "convenient charging." With respect to indefiniteness, "absolute precision" is not required; indeed, due to the "inherent limitations of language . . . [s]ome modicum of uncertainty . . . is the price of ensuring the appropriate incentives for innovation." *Nautilus, Inc.*, 572 U.S. at 909–10 (internal quotation

marks omitted).  Thus, "mathematical precision" is not required in order to comply with the definiteness requirement.  *Interval Licensing LLC v. AOL, Inc*., 766 F.3d 1364, 1370 (Fed. Cir. 2014) (citing *Invitrogen Corp. v. Biocrest Mfg., L.P*., 424 F.3d 1374, 1384 (Fed. Cir. 2005)); *see also Guangdong Alison Hi-Tech Co. v. Int'l Trade Comm'n*, 936 F.3d 1353, 1359 (Fed. Cir. 2019). A patent's claims can provide guidance to persons of ordinary skill in the art regarding the meaning of terms of degree.  *Enzo Biochem, Inc. v. Applera Corp*., 599 F.3d 1325, 1334 (Fed. Cir. 2010) (holding that "not interfering substantially" was not indefinite where, in part, dependent claims in each patent "provide at least some guidance as to how much interference will be tolerated"); *see also Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1349 (Fed. Cir. 2022) ("Numerous dependent claims further inform the meaning of this term by providing exemplary resilient materials of which the other catheter could be made.").

*Niazi* is illustrative.  There, after a district court held that preamble language—including the terms "resilient" and "pliable"— in a claim directed to a catheter rendered claims indefinite, the Federal Circuit reversed, holding that the intrinsic evidence provided guidance to persons of skill in the art regarding the meanings of those terms.  *Niazi Licensing Corp.*, 30 F.4th at 1344. The Federal Circuit determined that the claims themselves provided guidance, including dependent claims that provided examples of materials that could be used.  *Id*. at 1349.  The Federal Circuit also found that the specification provided further guidance.  *Id*.  Based on this evidence, the Federal Circuit found that the intrinsic record was "sufficient to dispose of" the indefiniteness issues.  *Id*.

The same is true in this case.  Here, the specification and the claims themselves provide guidance on the meaning of "convenient," including dependent claims that provide examples of convenient charging.  For example, the '071 patent explains that for "tourists, field staff and those making long business trips, it is not easy to charge their digital devices when the battery is dying."

The "summary of the invention" then describes the patented bag or luggage as "enable[ing] a user to charge a device or product needing to be charged conveniently **at any time or any place during traveling"** and **"without** *necessarily* **opening** the bag . . . **nor taking out** the power source for charging." The summary of the invention also states that "during traveling, when the battery of the product to be charged is dying, it is only necessary to plug the charging interface of the product to be charged into the female connector of the USB extension cable." The claims themselves would also provide guidance to a POSITA. By way of example, the '071 patent would provide a POSITA with guidance on the meaning of "convenient charging" in the context of the asserted patents, including but not limited to the following exemplarily limitations: a bag or luggage body having a placing space for placing a power storage device inside the bag or luggage body (claims 1 and 10); the operative end of the female connector which is exposed and fixedly attached above the exterior of the bag such that the operative end of the female connector does not need to be moved (claims 1 and 10); the bag or luggage body does not need to be opened to accept a charging interface of a product to be charged (claims 1 and 10); wherein the power cable outlet is on a shoulder strap of the bag or a side panel or a front part of the bag or luggage (claim 9).

In arguing that the preamble is limiting, Defendants effectively concede that the asserted patents provide sufficient guidance to a POSITA regarding the meaning of "convenient charging." *See* Defs.' Opening Br. 5–6, ECF No. 37. Indeed, Defendants state that "the specifications each tout the purported convenience of the invention over the prior art" and provide several lines of citations to support their argument. *Id*. Defendants have not presented any evidence from a POSITA to demonstrate they would not be informed by these disclosures.

Just as in *Niazi*, the intrinsic record in this case is "sufficient to dispose of" the indefiniteness issues that Defendants raise. *Niazi Licensing Corp.*, 30 F.4th at 1349; *see also*

*Biosig Insts., Inc. v. Nautilus, Inc*., 783 F.3d 1374, 1382–84 (Fed. Cir. 2015).  Defendants cannot

meet their burden of proving indefiniteness by clear and convincing evidence.  *See Dow Chem.*

*Co.*, 809 F.3d at 1227 ("The burden of proving indefiniteness . . . remains at all times on the party

challenging the validity of the patent.").  Defendants have not shown that a POSITA reading the

claim language in the context of the patent, specification, and prosecution history would not

understand the meaning of "convenient charging."  Accordingly, even if the preambles were

determined to be limiting, they are not indefinite.  As Defendants do not propose an alternative

construction,[2] the ordinary and customary meaning should be applied.

### B.    "the outer surface of the bag or luggage body"

As this Court noted in *Sky Technologies, LLC v. Ariba, Inc*., 491 F. Supp. 2d 154 (D. Mass.

2007), it is improper to use prosecution history estoppel—a different doctrine relating to the

doctrine of equivalents—as a way to limit the scope of a claim term.  That is exactly what

Defendants attempt to do in relying on the inventor distinguishing Ferber and amending its claims

during prosecution.

In *Sky Technologies*, this Court cautioned against erroneously applying the principles of

prosecution history estoppel to claim construction.  *Id.* at 157.  Citing the Federal Circuit case

---

[2] For the very first time, in a footnote, Defendants argue that this term should alternatively "be limited to allow charging without opening a bag."  Defendants' belated proposed construction violates Local Rule 16.6(e) and the Court's Scheduling Order (ECF No. 25) and should therefore be rejected.  *Abiomed, Inc. v. Maquet Cardiovascular LLC*, F. Supp. 3d 59, 74 (D. Mass. 2021) ("The court has discretion to preclude parties from injecting new claim-construction theories where the court has prescribed specific procedures and a party has failed to adhere to them.").  Defendants provide no POSITA support for their construction.  Further, by their own argument, this attempt to rewrite the claims fails because the "essential understanding of the claim" is already captured by the claim limitation "such that the operative end of the female connector does not need to be moved and the bag or luggage body does not need to be opened to accept a charging interface of a product to be charged," which appears in both independent claims of the '071 Patent.  *See Teva Pharms. Int'l GMBH*, 2021 WL 723337, at *13; *Banhazl*, 2019 WL 3387722, at *4 (finding a preamble limiting if "necessary to complete the claim").

*Southwall Technologies, Inc.*, this Court explained that "prosecution history estoppel [is] applicable only to attempts by patent holders to recapture, through the doctrine of equivalents, disclaimed or disavowed claim scope." *Id.*; *see also Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1582 (Fed. Cir. 1995). "The limit on the range of equivalents that may be accorded a claim due to prosecution history estoppel is **simply irrelevant** to the interpretation of those claims." *Southwall Techs.*, 54 F.3d at 1578 (emphasis added). This Court went on to explain that "[t]o do otherwise would give a defendant two bites of the apple, first by using prosecution history to limit the interpretation of disputed terms—thereby increasing the chance of undermining a literal infringement claim—and then, second, using the same prosecution history to restrict the scope of the doctrine of equivalents." *Sky Techs.*, 491 F. Supp. 2d at 157. This Court made clear that the prosecution history analysis during claim construction "differs from the use of prosecution history estoppel because **the inquiry is limited to arguments or disavowals made** . . . **regarding the meaning of the disputed claim term** . . . [and t]he court is thus not concerned with the state or scope of the prior art." *Id.* (emphasis added). Thus, "statements or disavowals must directly address the disputed term." *Id.*

The inventor did not disclaim the full scope of the term "outer surface" with respect to the '071 Patent, and the plain and ordinary meaning should apply. The law is clear that disclaimer does not occur merely because the patentee characterizes a prior art (or its own invention) during prosecution but rather requires "clear and unmistakable" statements relinquishing the full scope of a discrete claim term. *Cordis Corp. v. Bos. Sci. Corp.*, 561 F.3d 1319, 1329 (Fed. Cir. 2009) ("[T]he patentee's statements in the specification or prosecution history **must amount to a 'clear and unmistakable' surrender**." (emphasis added)); *see also Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1366 (Fed. Cir. 2012) ("The patentee may demonstrate intent to deviate from

9

the ordinary and accustomed meaning of a claim term by including in the specification expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope."); *Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 833–34 (Fed. Cir. 2003) (refusing to find statements where applicants distinguished their own invention from a prior art reference disclaimer absent unambiguous disavowal of claim scope).

In the present case, no such statements were made during prosecution. Indeed, no statements were made at all with respect to the claim term "outer surface."[3] The inventor's discussion of Ferber involved the claim limitation as a whole: "*a power cable outlet on **the** outer surface of the bag or luggage body.*" Defendants' argument misrepresents the prosecution history of the '071 Patent by ignoring what was actually addressed. During prosecution of the '071 Patent, the inventor merely characterized a prior art reference (Ferber)'s teaching of "a connector that is removably retained inside a connector pocket that is attached to a compartment that is on the interior of the bag covered by the messenger flap" as not teaching the claim language (among other claim language) "a power cable outlet on **the** outer surface of the bag or luggage body." ECF No. 49-3 at 12–13. The inventor did not argue that the term "outer surface" had a specific, narrow meaning or was any particular kind of outer surface. This does not amount to "clear and unmistakable" surrender.

Additionally, the '071 Patent claim language at issue already identifies a specific outer surface by use of the article "the" in the context of the claim. As addressed *infra*, the definite article "the" has meaning as a matter of law and within this claim element. The claim language

---

[3] The inventor characterized Ferber as teaching a charger covered by **multiple** layers of pockets and flaps: "Ferber provides the connector is removably retained inside a **connector pocket** 224 that is **attached to a compartment** 212 that is on the interior of the bag **covered by the messenger flap**." ECF No. 37-2 at 12. The claim language "outer surface" was not addressed during prosecution.

also belies Defendants' position for an additional reason.  Independent claim 1 of the '071 Patent recites that "the bag or luggage **body** does not need to be opened to access a charging interface."[4] Implicit in Defendants' argument is rewriting the claim term "body" to mean the entire bag or luggage itself, including external pockets or compartments.  However, Defendants do not provide any POSITA testimony to support this interpretation or any evidence that a POSITA would opine opening a pocket on the exterior of the bag amounts to opening the *body* of the bag or luggage. The inventor's decision to use the term "bag or luggage *body*" in its claims as opposed to merely "bag or luggage" has meaning and cuts against Defendants' interpretation.  *See Merck & Co., Inc. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("[a] claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so"); *Janssen Pharmaceutica, N.V. v. Eon Labs Mfg., Inc.*, 134 F. App'x 425, 428 (Fed. Cir. 2005) ("[W]e generally interpret claims so that no term is superfluous.").

    Defendants identify a claim limitation added during amendment: "the bag or luggage body does not need to be opened to accept a charging interface of a product to be charged" to support their argument that the inventor narrowed the scope of the term "outer surface" to mean "the outermost surface."  But this amendment does the opposite and makes clear that Defendants' proposed construction <u>cannot</u> be correct.  If "outer surface of the bag or luggage body" truly meant "the *outermost* surface of the bag or luggage body," as Defendants contend, the limitation added during amendment would be wholly superfluous and redundant.  Indeed, if "outer surface" meant "outermost surface" it would already be unambiguous that the bag or luggage body would not need

---

[4] The prosecution history supports the notion that the term body has a specific import.  ECF No. 37-2 at 11, 13 ("...such that the operative end of the female connector does not need to be moved and the bag or luggage **body** does not need to be opened to accept a charging interface of a product to be charged." (emphasis added)).

to be opened to accept a charging interface, an amendment would not be appropriate, and the addition of the language/limitation in the amendment would not be necessary .

Defendants' references to embodiments in the specification and attorney argument with respect to waterproofing are not appropriate or compelling.  "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited."  *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).  Defendants provide no support or POSITA testimony for their opinion that waterproofing would only be needed if the outer surface is the outermost surface.  A person charging their phone while travelling in the rain would similarly appreciate waterproofing if the sheath were in an external pocket of the bag, which would also be exposed to rain.

Neither exception to the general rule that claims terms are construed according to their plain and ordinary meaning applies with respect to the construction of "the outer surface of the bag or luggage body."  *See Golden Bridge Tech., Inc., v. Apple Inc.*, 758 F.3d 1362, 1365 (Fed. Cir. 2014).  Accordingly, no construction is necessary, and the ordinary and customary meaning of this claim term should be applied.

C.    **"an outer surface of [the/a] body"**

1.    **Because There Was No Disclaimer Made During the Prosecution of the '071 Patent, Defendants' Disclaimer Argument with Respect to the '137, '138, and '009 Patents Fails.**

With respect to the '137, '138, and '009 Patents, Defendants do not identify *any* prosecution history from the prosecution of *these* patents in arguing disclaimer.  Instead, they rely on their unavailing argument that there was disclaimer of "outer surface" made during prosecution of the '071 Patent.  As addressed above, Defendants cannot establish that the inventor disclaimed

the full scope of the term " the outer surface" during prosecution of the '071 Patent.  Accordingly, because Defendants rely entirely on the same prosecution history with respect to the Continuation Patents, there is no disclaimer here either.  Furthermore, Defendants' reliance on *Traxcell* is not relevant here because it would be illogical for the inventor to withdraw a nonexistent disclaimer made during prosecution of a parent patent during prosecution of the child patents.

> **2.    The Claim Language of the '137, '138, and '009 Patents Is Not the Same as the Claim Language of the '071 Patent and the Language Addressed During Prosecution, and Therefore Disclaimer Cannot Attach.**

Even if there was disclaimer with respect to the '071 Patent, for disclaimer to attach to a continuation patent, the claim language must be the same.  *ResQNet.com, Inc. v. Lansa, Inc.*, 346 F.3d 1374, 1383 (Fed. Cir. 2003) ("[P]rosecution history is irrelevant to the meaning of [a] limitation [if] the two patents do not share the same claim language.").  While Defendants cite law acknowledging this requirement in Defendants' Opening Brief, they attempt to circumvent it by isolating the term "outer surface" that is common to both patents and ignoring the meaningful other (different) language of the claim limitations to bootstrap prosecution history addressing the entire limitation of the '071 patent.  Def.'s Opening Br. 9, ECF No. 37 ("[I]f '**the same claim limitation** is at issue, prosecution disclaimer made on **the same limitation** in an ancestor application will attach . . . .'" (emphasis added) (quoting *Omega Eng'g, Inc. v. Raytek Corp*., 334 F.3d 1314, 1333 (Fed. Cir. 2003)).

Even if, *arguendo*, there was disclaimer with respect to the entire '071 claim language— "a power cable outlet on the outer surface of the bag or luggage body"—made during prosecution (which there was not), Defendants' attempt to bootstrap it to the grammatically and structurally different claim limitations of the Continuation Patents is untenable.  While the term "outer surface

of [the/a] [bag or luggage] [body]" appears in claims of each asserted patent, grammatically, the article preceding the claim term differs, and structurally, the relevant component differs:

| Patent | Claim language |
|---|---|
| '071 pat., cl. 1, 10 | "a **power cable outlet** on **the** outer surface of the bag or luggage body" |
| '137 pat., cl. 1, 4, 9, 18 | "...**the sheath** extends above **an** outer surface of a body," |
| '138 pat., cl. 1, 2, 5, 9, 18, 23 | "...**the sheath** extends above **an** outer surface of a body," |
| '009 pat., cl. 5, 9, 18, 29 | "wherein **the sheath** is separate from and attaches to a body having...**an** **outer surface**...the sheath extends above the outer surface of the body." |

As addressed in Plaintiff's Opening Brief, Defendants conspicuously leave out the articles (definite article "the" in the '071 Patent and indefinite article "an" in the other asserted patents) and ignores relevant structural differences when arguing disclaimer.  The Federal Circuit has "repeatedly emphasized that an indefinite article 'a' or 'an' in patent parlance carries the meaning of 'one or more'" and the exceptions to this rule are extremely limited: a patentee must "evince[ ] a clear intent" to limit "a" or "an" to "one."  *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342 (Fed. Cir. 2008). The inventor's discussion of Ferber in the prosecution history identified by Defendants involves claim language that included the article **"the"** (i.e., "the outer surface"); not the broader **"an"** recited in the claims of the '137, '138, and '009 Patents.[5] Therefore, the inventor's statements relating to the narrower claim language (i.e., "the outer surface") cannot be used to limit different, broader claim language (i.e., "an outer surface").  The prosecution history identified by Defendants is also directed to a different component and disposition of that component than the claim language it attempts to rewrite in the '137, '138, and

---

[5] As previously addressed (section I(B), *supra*), the prosecution history identified by Defendants relating to Ferber has no relevance to claim construction because it is not directed to the discrete term "outer surface" but rather to the inventor's distinctions between its invention and Ferber.

'009 Patents.  The prosecution history of the '071 Patent relates to **a power cable outlet** that is "**on** the outer surface of the bag or luggage body" while the claim language of the '137, '138, and '009 Patents identified by Defendants relates to a **sheath** that "**extends above** an outer surface of a body."  *See ResQNet.com, Inc.*, 346 F.3d at 1383 ("[P]rosecution history is irrelevant to the meaning of [a] limitation [if] the two patents do not share the same claim language."); *Ventana Med. Sys. v. Biogenex Laby's, Inc.*, 473 F.3d 1173, 1182 (Fed. Cir. 2006) ("[P]rosecution disclaimer generally does not apply when the claim term in the descendent patent uses different language."); *Biogen, Inc. v. Berlex Laby's, Inc.*, 318 F.3d 1132, 1139 (Fed. Cir. 2003) ("Arguments made in a related application do not automatically apply to different claims in a separate application.").  Accordingly, even if there were disclaimer with respect to the '071 Patent, which there is not, it cannot attach to the Continuation Patents because of these grammatical and structural differences in the limitations at issue.

Given the lack of lexicography (which Defendants have not argued) or disclaimer (which did not occur), construction of this term is not appropriate.  *See GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014) ("[T]he specification and prosecution history only compel departure from the plain meaning in two instances: lexicography and disavowal.").

**D.    "fixedly attached"**

As Plaintiff asserted in its Opening Brief, the court in the Wenger case correctly determined that no construction of this term is necessary and the plain and ordinary meaning should be applied. And although this Court is not bound by the court's interpretation in the Wenger Case, the Wenger court's decision to apply the plain and ordinary meaning is nevertheless "entitled to reasoned deference."  *Iovate Health Scis., Inc. v. Allmax Nutrition, Inc.*, 639 F. Supp. 2d 115, 124 (D. Mass. 2009) (internal quotation marks omitted); *see also Kenexa BrassRing, Inc. v. HireAbility.com,*

15

*LLC*, 59 F. Supp. 3d 206, 216 n.4 (D. Mass. 2014) ("While the claim construction of one court is not binding on another, a court may consult 'the claim analysis of different district courts on the identical terms in the context of the same patent' 'in the interest of uniformity and correctness.'" (quoting *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1329 (Fed. Cir. 2008))).

In the Wenger case, the court rejected Wenger's proposed construction of "connected to the bag or luggage permanently" and held that it did "not find that construction of the term is appropriate" and expressly found that "[t]he prosecution history does not mandate permanent attachment." *See Swissdigital USA Co. v. Wenger S.A.*, No. 6:21-cv-00453-ADA-DTG, 2022 WL 3567348, at *5 (W.D. Tex. Aug. 18, 2022). The Wenger court also held that "the term is also not so technical and complex to require construction for jury understanding." *Id.* Here, Defendants propose substantially the same construction that Wenger did based on prosecution history also previously identified by Wenger. As in the Wenger case, the prosecution history identified by Defendants does not support its position, and the Court should reject Defendants' attempt to rewrite the claim language.

Defendants' interpretation of the prosecution history also misrepresents the record. The "very important distinction" between Ferber and the present invention "highlighted" by the inventor is not, as Defendants argue, that Ferber's connectors can be removed and the inventor's USB connectors cannot; rather, Ferber's connectors ***must be removed to be used***:

> This highlights a very important distinction between Ferber and the present invention. The connectors of Ferber are contained within the compartment, **unless they are to be used**. At that point, **they *are removed* from the compartment for use**.

> ECF No. 37-2 at 12 (emphasis added).

Thus, during prosecution, the inventor distinguished Ferber's teaching of a connector that **required removal to be used**:

> The connector 40 fits inside the pocket 42 **and may be placed there when it is not connected to a mobile device**.

> ECF No. 37-2 at 9 (emphasis added).

> Ferber teaches a connector contained in a pocket, attached to another pocket, under a messenger flat. **Ferber also teaches that the connector *must be removed* from the pocket to charge the device**. This does not teach or suggest the claims.

> ECF No. 49-3 at 13 (emphasis added).

The inventor's statements during prosecution all relate to the disposition of the connector when it is being *used*—not its disposition generally. Elsewhere, the inventor explains that unlike Ferber, where the "connector [] is retained when not being used and **is pulled out of the pocket to be used**," the "sheath of the present invention secures the operative end of the female connector which is exposed and fixedly attached . . . such that the operative end of **the female connector does not need to be moved** . . . **to accept a changing interface** of a product to be charged." ECF. No. 37-2 at 8 (emphasis added). Contrary to Defendants' argument, the inventor did not disclaim the scope of "fixedly attached" or engage in lexicography. At best, the inventor merely distinguished the claimed "fixedly attached" USB connector from the Ferber connector that **must be removed from a pocket to be used**. Defendants again improperly make a prosecution estoppel argument here. The prosecution history in no way supports Defendants' argument that Plaintiff narrowed the plain and ordinary meaning of claim term "fixedly attached."

Defendants also attempt to narrow the scope of "fixedly attached" based on its attorney argument regarding the scope of other claim language in the other asserted patents ("removably retained" or "retained"). This attorney argument, without any reasoning or support from a person of ordinary skill in the art at the time of the invention, should be rejected. Similarly, Defendants' argument that "extrinsic evidence showing a POSITA's understanding of the meaning of 'fixedly

attached' at the time of the invention shows Defendants' construction is correct" is without merit. Defendants' generic dictionary definitions of the individual words "attached" and "fixed" and conclusory argument that these definitions represent a "POSITA's understanding" do not represent an understanding of a POSITA with respect to the meaning of "fixedly attached" within the context of the claims, specification, and prosecution history of the Asserted Patents. *See Phillips*, 415 F.3d at 1313–14.

Defendants' attempt to create a non-infringement argument under the guise of a proposed claim construction should be rejected. *See GE Lighting Sols.*, 750 F.3d at 1309 (explaining that the standard for finding disavowal is "exacting"). Defendants' attempt to deviate from the ordinary and customary meaning of these terms and phrases falls short of the presumption laid out by the Federal Circuit. *See Advanced Media Networks, LLC v. AT&T Mobility LLC*, 748 F. App'x 308, 311 (Fed. Cir. 2018). Accordingly, as in the Wenger case, no construction is necessary, and the ordinary and customary meaning of this claim term should be applied.

**E.    "surrounding bottom portion"**

Plaintiffs asserts that no construction of "surrounding bottom portion" is necessary and one of ordinary skill in the art at the time of the invention would understand the ordinary and customary meaning of these terms when read in the context of the claims, specification, and prosecution history of the '137, '138, and '009 Patents. *See Phillips*, 415 F.3d at 1314. The two exceptions to the general rule that claims are construed according to their plain and ordinary meaning—when a patentee sets out a definition and acts as his own lexicographer or when a patentee disavows the full scope of the claim term—are not present here. *See Golden Bridge Tech., Inc.*, 758 F.3d at 1365; *Thorner*, 669 F.3d at 1367 ("[A] patentee is free to choose a broad term and expect to obtain

the full scope of its plain and ordinary meaning unless the patentee explicitly redefines the term or disavows its full scope.").

Defendants' non-technical dictionary definitions regarding the meaning of "surround" in isolation paired with attorney argument regarding how a POSITA would understand the claim (including the purported "possible 'bottom portion' orientations"), without any support or testimony of a POSITA, are not relevant and should be rejected.

Furthermore, to the extent Defendants' proposed construction references the Asserted Patent's specification and figures, these references do not support its proposed construction, are inconsistent with the disclosures in the specification, and improperly attempt to narrow the scope of the claims by adding limitations that do not exist in the prosecution history or specification of the Asserted Patents. *See Cordis Corp.*, 561 F.3d at 1329 ("To disavow or disclaim the full scope of a claim term, the patentee's statements in the specification or prosecution history must amount to a "clear and unmistakable" surrender."). "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co.*, 358 F.3d at 913.

The prosecution history of the '137 Patent identified by Defendants does not support their position. Again, Defendants improperly make a prosecution estoppel argument here. The prosecution history raised by Defendants relating to Ashley has no relevance to claim construction because it is not directed to the discrete term "surrounding bottom portion" but rather to the inventor's distinctions between its invention and Ashley.

19

Additionally, the inventor's statements made during prosecution of the '137 Patent make clear that the inventor did not consider Ashley relevant because it taught a fully integrated circuitry contraption rather than a sheath. ECF No. 37-12 at 6–7 (characterizing the reference as "not a cover for a USB cord, [but] an integrated device with significant on board functionality). The inventor's characterizations of its own invention or the Ashley reference cannot constitute disclaimer absent "clear and unmistakable surrender" with respect to specific claim language. *Cordis Corp.*, 561 F.3d at 1329 ("[T]he patentee's statements in the specification or prosecution history **must amount to a 'clear and unmistakable' surrender**." (emphasis added)). At no point during prosecution did the inventor make a "clear and unmistakable" surrender of "surrounding bottom portion" let alone mandate it include a "flat portion" or "extend outward," as Defendants contend. And Defendants provide no support that a POSITA would agree with their narrow construction of "surrounding bottom portion" or understanding of Ashley. The examiner considered all of the statements identified by Defendants and allowed the claim language "surrounding bottom portion" as is.

Defendants' attempt to deviate from the ordinary and customary meaning of this claim term falls short of the presumption laid out by the Federal Circuit. *Thorner*, 669 F.3d at 1367 ("[A] patentee is free to choose a broad term and expect to obtain the full scope of its plain and ordinary meaning unless the patentee explicitly redefines the term or disavows its full scope.").

## II.    CONCLUSION

For all of the reasons given above and in Plaintiff's Opening Claim Construction Brief, Plaintiff respectfully requests that all of the terms identified by Defendants be given their ordinary and customary meanings.

Date: March 27, 2025

Respectfully submitted,


/s/ *Dariush Keyhani*

Dariush Keyhani (*pro hac vice*)
Frances H. Stephenson (*pro hac vice*)
Scott M. Draffin (*pro hac vice*)
**KEYHANI LLC**
1050 30th Street NW
Washington, DC 20007
Phone: (202) 748-8950
dkeyhani@keyhanillc.com
fstephenson@keyhanillc.com
sdraffin@keyhanillc.com

Lisa M. Tittemore (BBO # 567941)
Kevin R. Mosier (BBO # 703739)
Katherine W. Soule (BBO #703965)
**SUNSTEIN LLP**
100 High Street
Boston, MA 02110
Phone: (617) 443-9292
ltittemore@sunsteinlaw.com
kmosier@sunsteinlaw.com
ksoule@sunsteinlaw.com

*ATTORNEYS FOR PLAINTIFF,*
*SWISSDIGITAL USA CO., LTD.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 27th day of March 2025, the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all attorneys or record who have consented to accept this Notice as service of this document by electronic means.

/s/ Katherine W. Soule
Katherine W. Soule (BBO #703965)