# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

SWISSDIGITAL USA CO., LTD.,

      *Plaintiff*,

    v.

SAMSONITE INTERNATIONAL S.A.;
SAMSONITE LLC; SAMSONITE
COMPANY STORES, LLC; and DIRECT
MARKETING VENTURES, LLC,

      *Defendants*.

Civil No. 1:24-cv-11636

**JURY TRIAL DEMANDED**

## <u>DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... ii

I.     INTRODUCTION ......................................................................................................... 1

II.    DISPUTED TERMS ...................................................................................................... 2

       A.    The Preambles Are Limiting and Indefinite. ....................................................... 2

             1.    The Preambles Are Limiting. .................................................................... 2

             2.    The Preambles Are Indefinite. .................................................................. 5

       B.    The "Outer Surface" Terms Mean the "Outermost Surface." ............................. 7

             1.    Plaintiff's Disclaimer During Prosecution Limits the Scope
                   of the "Outer Surface" Term in the '071 Patent ("the outer
                   surface of the bag or luggage body"). ....................................................... 7

             2.    Plaintiff's '071 Patent Disclaimer Applies to the
                   Continuation Patents ("an outer surface of [the/a] body")...................... 10

       C.    "Fixedly Attached" ........................................................................................... 13

             1.    Clear Lexicography and Disclaimer Mandate Defendants'
                   Proposed Construction of "Fixedly Attached." ....................................... 13

             2.    The Claim Construction Decision in the *Wenger* Case
                   Involved Different Arguments and Is Irrelevant Extrinsic
                   Evidence................................................................................................... 15

       D.    There Is No Dispute Regarding the "Adjacent to" Term...................................... 17

       E.    Defendants' Proposal for "Surrounding Bottom Portion" Should
             Be Adopted. ...................................................................................................... 17

III.   CONCLUSION............................................................................................................ 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3M Innovative Props. Co. v. Avery Dennison Corp.*,
  350 F.3d 1365 (Fed. Cir. 2003)................................................................9

*Banhazi v. Am. Ceramic Society*,
  No. 16-cv-10791-ADB, 2019 WL 3387722 (D. Mass. July 26, 2019)................................2, 4

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018)................................................................6

*Bicon, Inc. v. Straumann Co.*,
  271 F. Supp. 2d 368 (D. Mass. 2003) ........................................................3

*Capital Mach. Co., Inv. v. Miller Veneers, Inc.*,
  524 Fed. App'x. 644 (Fed. Cir. 2013)........................................................12

*Cordis Corp. v. Boston Sci. Corp.*,
  658 F.3d 1347 (Fed. Cir. 2011)................................................................10

*Data Engine Techs. LLC v. Google LLC*,
  10 F.4th 1375 (Fed. Cir. 2021) ..............................................................4, 5

*Datamize, LLC v. Plumtree Software*,
  417 F.3d 1342 (Fed. Cir. 2005)..............................................................5, 6

*Dow Chem. Co. v. Nova Chem. Corp. (Canada)*,
  803 F.3d 620 (Fed. Cir. 2015)................................................................6

*Eli Lilly and Co. v. Teva Pharms. Int'l GmbH*,
  8 F.4th 1331 (Fed. Cir. 2021) ..............................................................2, 3

*Eolas Techs., Inc. v. Adobe Sys., Inc.*,
  No. 6:09-CV-446, 2011 WL 11070303 (E.D. Tex. Sept. 23, 2011)........................................16

*Fiber, LLC v. Ciena Corp.*,
  792 Fed. App'x. 789 (Fed. Cir. 2019)........................................................17

*Graham v. John Deere Co. of Kansas City*,
  383 U.S. 1 (1966)............................................................................9

*Hakim v. Cannon Avent Group, PLC*,
  479 F.3d 1313 (Fed. Cir. 2007)..............................................................10, 11

*iLight Techs., Inc. v. Fallon Luminous Prods. Corp.*,
  375 Fed. App'x. 21 (Fed. Cir. 2010).......................................................................9

*Intell. Ventures I LLC v. T-Mobile USA, Inc.*,
  902 F.3d 1372 (Fed. Cir. 2018)...............................................................................2

*Interval Licensing LLC v. AOL, Inc.*,
  766 F.3d 1363 (Fed. Cir. 2014)...............................................................................5

*L & P Prop. v. JTM, LLC*,
  578 F. Supp. 2d 318 (D. Mass. Sept. 29, 2008) ......................................................9

*Lexos Media IP, LLC v. Overstock.com, Inc.*,
  No. 22-2324-JAR-ADM, 2023 WL 8373184 (D. Kan. Dec. 4, 2023) ...................15

*Mems Tech. Berhad v. Int'l Trade Comm'n*,
  447 F. App'x 142 (Fed. Cir. 2011) ........................................................................16

*In re Neurografix ('360) Patent Litig.*,
  201 F. Supp. 3d 206 (D. Mass. 2016) ....................................................................15

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
  521 F.3d 1351 (Fed. Cir. 2008)....................................................................1, 14, 15

*Omega Eng'g, Inc. v. Raytek Corp.*,
  334 F.3d 1314 (Fed. Cir. 2003).............................................................................10

*Parkervision, Inc. v. Vidal*,
  88 F.4th 969 (Fed. Cir. 2023) ...............................................................................14

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005).........................................................................1, 17

*Poly-America, L.P. v. GSE Lining Tech., Inc.*,
  383 F.3d 1303 (Fed. Cir. 2004)...........................................................................2, 3

*Proveris Sci. Corp. v. Innovasystems, Inc.*,
  749 F.3d 1349 (Fed. Cir. 2014)...............................................................................2

*Rambus Inc. v. Hynix Semiconductor Inc.*,
  569 F. Supp. 2d. 946 (N.D. Cal. 2008) .................................................................16

*Realtime Data, LLC v. Morgan Stanley*,
  554 Fed. App'x. 923 (Fed. Cir. 2014).....................................................................1

*Regents of Univ. of Minnesota v. AGA Med. Corp.*,
  717 F.3d 929 (Fed. Cir. 2013)...............................................................................12

*Retractable Techs., Inc. v. Becton, Dickinson & Co.*,
   653 F.3d 1296 (Fed. Cir. 2011)....................................................................................7, 10

*Seabed Geosolutions (US) Inc. v. Magseis FF LLC*,
   8 F.4th 1285 (Fed. Cir. 2021) ..............................................................................................16

*Standard Oil Co. v. Am. Cyanamid Co.*,
   774 F.2d 448 (Fed. Cir. 1985)................................................................................................6

*Strikeforce Techs., Inc. v. Gemalto, Inc.*,
   No. 17-10422-RGS, 2017 WL 3813905 (D. Mass. Aug. 31, 2017) .......................................15

*Syntheon, LLC v. Coviden AG*,
   No. 16-cv-10244-ADB, 2017 WL 4225994 (D. Mass. Sept. 22, 2017) .............................7, 11

*Tech. Props. Ltd. LLC v. Huawei Techs. Co.*,
   849 F.3d 1349 (Fed. Cir. 2017)............................................................................................14

*Teva Pharms., Int'l GmbH v. Eli Lilly and Co.*,
   No. 18-cv-12029-ADB, 2021 WL 723337 (D. Mass. Feb. 24, 2021) ...................................3, 4

*Traxcell Tecs., LLC v. AT&T Corp.*,
   No. 2:17-cv-00718-RWS-RSP, 2019 WL 6037984 (E.D. Tex. Oct. 7, 2019) .......................10

*Vitrionics Corp. v. Conceptronic, Inc.*,
   90 F.3d 1576 (Fed. Cir. 1993)..............................................................................................16

*Vizio, Inc. v. Int'l Trade Comm'n*,
   605 F.3d 1330 (Fed. Cir. 2010)..............................................................................................4

## I.    INTRODUCTION

The Court should adopt Defendants' proposed claim constructions for all terms. Plaintiff cites little support in the intrinsic or extrinsic evidence for its arguments, and instead relies on bare recitations of generic claim construction principles and conclusory arguments with no explanation. The conclusion of most of these unsubstantiated arguments is the same—that each term should simply be given its plain and ordinary meaning. But as Defendants' opening brief demonstrates, there is a "dispute regarding the proper scope of these claims," and "the court, not the jury, must resolve that dispute." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008). Indeed, Plaintiff does not actually dispute that the parties disagree as to the scope of these terms. Further, despite arguing that the terms in dispute all have well-understood plain meanings, Plaintiff tellingly does not identify what that plain meaning actually is for, or purport to describe the scope of, a single term. A construction of "plain and ordinary meaning" is plainly insufficient guidance for the ultimate factfinder under these circumstances.

To determine what the plain meaning actually is, "[c]ourts look to both intrinsic and extrinsic evidence, … focusing first on the intrinsic record." *Realtime Data, LLC v. Morgan Stanley*, 554 Fed. App'x. 923, 933 (Fed. Cir. 2014). "[W]hile extrinsic evidence can shed useful light on the relevant art," it is "less significant than the intrinsic record in determining the legally operative meaning of claim language." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) (cleaned up). Here, when viewing the disputed terms in light of the intrinsic evidence (and, where applicable, the extrinsic evidence), Defendants' proposed constructions capture the terms' correct meaning. Defendants' proposals should thus be adopted.

## II.    DISPUTED TERMS

### A.    The Preambles Are Limiting and Indefinite.

The preambles of the claims in the Asserted Patents—in particular, the phrase "for convenient charging" recited in all claims—are limiting because they are "necessary to give life, meaning, and vitality to the claim." *Proveris Sci. Corp. v. Innovasystems, Inc.*, 749 F.3d 1349, 1357 (Fed. Cir. 2014). While Plaintiff cites a general rule that preambles do not limit claim scope, several recognized exceptions to that rule apply here to render the "convenient charging" language limiting. These preambles are also indefinite, because whether charging is or is not "convenient" is "entirely subjective and user-defined." *Intell. Ventures I LLC v. T-Mobile USA, Inc.*, 902 F.3d 1372, 1381 (Fed. Cir. 2018).

### 1.    The Preambles Are Limiting.

As explained in Defendants' opening brief, the preambles of the Asserted Patents are limiting because the idea of convenient charging is the "heart" of the alleged inventions, repeatedly emphasized throughout the specification. Dkt. No. 37 (Defs.' Op. Br.) at 5-6; *Banhazi v. Am. Ceramic Society*, No. 16-cv-10791-ADB, 2019 WL 3387722, at *4 (D. Mass. July 26, 2019). The specifications of the Asserted Patents—from the Abstracts, the background sections, and detailed summaries to the claims—all repeatedly emphasize the importance of "convenient charging" to the alleged inventions. Dkt. No. 37 (Defs.' Op. Br.) at 5-6. This "heavy emphasis" on the feature in the Asserted Patents confirms the preambles are limiting. *Eli Lilly and Co. v. Teva Pharms. Int'l GmbH*, 8 F.4th 1331, 1342 (Fed. Cir. 2021); *Proveris*, 739 F.3d at 1373, *Poly-America, L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1310 (Fed. Cir. 2004).

Plaintiff's arguments to the contrary ignore the fact that whether a preamble is limiting must be examined "in light of the claim as a whole and the invention described in the patent." *Eli Lilly*, 8 F.4th at 1340. Plaintiff first argues that the preambles simply state a purpose or intended

2

use for the claimed sheaths or bags. Dkt. No .36 (Pl.'s Op. Br.) at 8. But this understates the importance of convenient charging in the intrinsic record. The specification's *ad nauseum* repetition of the fact that the alleged invention must enable "convenient charging," and the emphasis on the fact that this feature distinguishes the invention over the "quite inconvenient" need to "open the bag or luggage for charging" in the prior art, make clear that convenient charging is not only an intended use or purpose, but is "central to the inventions" and therefore limiting. *See* Dkt. No. 37 (Defs.' Op. Br.) at 5-6; *Eli Lilly*, 8 F.4th at 1342. The inventor of the Asserted Patents clearly believed that convenient charging "represented an important characteristic of the claimed invention," making the preamble limiting. *Poly-America*, 383 F.3d at 1310.

Plaintiff's second argument that the preambles are not limiting because they do not "affect the structure of the claimed invention, as defined by the body of the claim," fares no better. Dkt. No. 36 (Pl.'s Op. Br.) at 8-9. To begin with, Plaintiff does not cite actual claim language to support its proposition, or attempt to demonstrate that the claims recite a complete structure. *Id.* Even if the claims did recite a complete structure, however, the general rule that preambles are not limiting when the body of the claim defines a structurally complete invention does not apply where the preamble is "essential to understand limitations or terms in the claim body" or recites "additional structure or steps underscored as important by the specification." *See Bicon, Inc. v. Straumann Co.*, 271 F. Supp. 2d 368, 371 (D. Mass. 2003) (quoting *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002)).

Here, the preambles are limiting because they both "provide an essential understanding of the claim," and recite concepts underscored as important by the specification. *Teva Pharms., Int'l GmbH v. Eli Lilly and Co.*, No. 18-cv-12029-ADB, 2021 WL 723337, at *13 (D. Mass. Feb. 24, 2021). The preambles explain what the limitations in the claim are "meant to accomplish." *Id*. The

inventor cannot claim to have invented bags, USB cables, sheaths for holding USB cables, or, indeed, bags containing sheaths for holding USB cables. Instead, he purportedly invented a bag that utilizes those previously-known components in a particular way to make "charging" more "convenient." Structurally complete or not, the remainder of the claim has "little meaning without" this "intended objective." *Vizio, Inc. v. Int'l Trade Comm'n*, 605 F.3d 1330, 1340-41 (Fed. Cir. 2010). The specifications of the patents also repeatedly emphasize convenient charging as a key aspect of the invention. Dkt. No. 37 (Defs.' Op. Br.) at 5-6. The preambles are "necessary to complete the claims to reflect what" the inventor "actually invented," and are therefore limiting. *Banhazi*, 2019 WL 3387722, at *4 (citation omitted).

Another recognized exception to the rule that preambles are not limiting is when "there is 'clear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art.'" *Teva Pharms*, 2021 WL 723337, at *13 (quoting *Bio-Rad Labs., Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1369 (Fed. Cir. 2020)). That is exactly what happened here. Plaintiff relied on the "convenient charging" preambles to "distinguish prior art during prosecution." *Data Engine Techs. LLC v. Google LLC*, 10 F.4th 1375, 1381 (Fed. Cir. 2021) (citing *In re Cruciferous Sprout Litig.*, 301 F.3d 1343, 1347-48 (Fed. Cir. 2002). During the prosecution of the '009 patent, in distinguishing the Ferber prior art reference, Plaintiff argued that Ferber's placement of connectors inside pockets was "one of the very problems addressed" by the alleged invention. Ex. 15 (June 9, 2022 Applicant Remarks) at -539-40. By contrast, Plaintiff argued that its invention "conveniently" did not require opening the bag or taking out a power source for charging:

> The present invention intends to overcome the disadvantages stated above, and provides a type of bag or luggage ***for convenient charging***, which enables the user to charge a device or product needing to be ***charged conveniently*** at anytime or any place during traveling, <u>without necessarily opening the bag or luggage, nor taking out the power source for charging</u>.

*Id.* at -540 (underlined emphasis in original). Plaintiff's reliance on "convenient charging" in the preamble to distinguish Ferber's orientation of having internal charging connectors was a "clear reliance . . . on the preamble to persuade the Patent Office that the claimed invention is not anticipated by the prior art." *Data Engine*, 10 F.4th at 1381 (quoting *Cruciferous Sprout Litig*, 301 F.3d at 1347-48).

Because the preamble gives life, meaning, and vitality to the claims, and because Plaintiff relied on the preamble during prosecution to distinguish the prior art, the preambles in the Asserted Patents are all limiting.

### 2.    The Preambles Are Indefinite.

The term "for convenient charging" is "completely dependent on a person's subjective opinion." *Datamize, LLC v. Plumtree Software*, 417 F.3d 1342, 1350 (Fed. Cir. 2005). That is particularly true here, in view of Plaintiff's position that "outer surface" does not require a lack of a need to open a bag or luggage. Subjective claim terms are not necessarily indefinite—instead, the written description can "provide the clarity that the subjective claim language needs." *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1363, 1371 (Fed. Cir. 2014). Every Asserted Patent explains that "convenience" relates to ***not having to open a bag*** to charge a device. '071 patent at 1:26-29; '137 patent at 1:21-25; '138 patent at 1:21-25; '009 patent at 1:21-25. Plaintiff also emphasized this point during the prosecution of the '009 patent, distinguishing the Ferber reference as enabling "convenient charging at any time or any place during traveling, <u>without necessarily opening the bag or luggage, nor taking out the power source for charging</u>." Ex. 15 (June 9, 2022 Applicant Remarks) at -540 (emphasis in original). Now, however, Plaintiff contends that none of the Asserted Patents have that requirement, and that the charging ports can be, for example, inside a pocket. *E.g.*, Dkt. No. 36 (Pl.'s Op. Br.) at 10-14. Without the concept of not opening a bag for charging to ground its meaning, the term "convenient charging" is entirely subject to the

"unpredictable vagaries of any one person's opinion," and therefore indefinite. *Dow Chem. Co. v. Nova Chem. Corp. (Canada)*, 803 F.3d 620, 635 (Fed. Cir. 2015) (quoting *Interval Licensing*, 766 F.3d at 1374).

Tellingly, Plaintiff offers no objective definition of what "convenient charging" means. Nor does it explain what the ordinary meaning of this phrase is, despite its contention that "the ordinary and customary meaning should be applied." Dkt. No. 36 (Pl.'s Op. Br.) at 9. Instead, Plaintiff only makes bald assertions that "convenient charging" is composed of common English terms, and that the scope "would be clear to a POSITA from the claims themselves and the specification." *Id.* Of course, no one disputes that the phrase "convenient charging" is composed of common English terms. But courts routinely find claim terms using common English words indefinite, and the Federal Circuit routinely affirms those decisions. *E.g.*, *Datamize*, 417 F.3d at 1355-56 (affirming decision finding "aesthetically pleasing" indefinite); *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 453 (Fed. Cir. 1985) (affirming decision finding "partially soluble" indefinite); *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1363-64 (Fed. Cir. 2018) (affirming decision finding "minimal redundancy" indefinite). The problem here is that—whether the words in the claims are common English terms or not—the patents provide no "objective standard" that would "allow the public to determine the scope of the claimed invention." *Datamize*, 417 F.3d at 1350. Even from the perspective of a POSITA, the patent "fails to provide any direction regarding the relevant question of how to determine whether that person succeeded in creating" a sheath, bag, or luggage "for convenient charging." *Id.* What one person considers convenient may not be convenient for another, and vice versa. Unsurprisingly, despite its contention that the claims and specification make the scope of convenient charging "clear" (Dkt. No. 36 (Pl.'s Op. Br. at 9), Plaintiff does not point to a single specific disclosure that provides some objective standard for

measuring whether charging is "convenient." There is no objective boundary for determining the scope of what "for convenient charging" means, and the preambles are indefinite.

### B.    The "Outer Surface" Terms Mean the "Outermost Surface."

The intrinsic evidence establishes that the "outer surface" claimed in the Asserted Patents refers to the outer**most** surface. Plaintiff does not meaningfully dispute that it disclaimed any other scope of "outer surface" during prosecution of the '071 patent, and Plaintiff's argument that the "outer surface" the '137, '138, and '009 patents (collectively, the "Continuation Patents") is not similarly limited is primarily based on claim differentiation, which is overcome by Plaintiff's disclaimer during the '071 patent disclaimer. *E.g.*, *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1305 (Fed. Cir. 2011) ("[A]ny presumption created by the doctrine of claim differentiation will be overcome by a contrary construction dictated by the written description or prosecution history" (quotations and citation omitted)); *Syntheon, LLC v. Coviden AG*, No. 16-cv-10244-ADB, 2017 WL 4225994, at *5 (D. Mass. Sept. 22, 2017) (similar). Accordingly, the '071 patent prosecution disclaimer extends to the Continuation Patents, and "outer surface" should be construed similarly for all Asserted Patents.

### 1.    Plaintiff's Disclaimer During Prosecution Limits the Scope of the "Outer Surface" Term in the '071 Patent ("the outer surface of the bag or luggage body").

Plaintiff unequivocally disclaimed any scope of the term "outer surface" that requires opening a bag or luggage to access a USB connector or has the USB connector on the inside a pocket during prosecution, thus limiting "outer surface" to an "outer**most** surface." In distinguishing the Ferber prior art reference—which disclosed connectors inside pockets covered by a flap—Plaintiff argued that this structure with the connector inside a surface "clearly fails to

teach or suggest, 'a power cable outlet **on the outer surface**[1] of the bag or luggage body.'" Dkt. No. 37 (Defs.' Op. Br.) at 9-10; Dkt. No. 37-2 (Defs.' Ex. 2) at -156-57. The claims' specific recitation that the body "does not need to be opened to access a charging interface of a product to be charged," and the specification's disclosure of "convenience" and the need for waterproofing to protect against the elements, further reinforce that Defendants' proposal of "outermost surface" correctly captures the intended meaning and scope of the "outer surface" term. Dkt. No. 37 (Defs.' Op. Br.) at 10-11.

Indeed, the '071 patent's prosecution history is replete with admissions that the alleged invention was limited to the outer***most*** surface in an attempt to distinguish Ferber. As explained in Defendants' opening brief, Plaintiff argued in its June 25, 2019 remarks that Ferber's disclosure of connectors "removably retained inside a connector pocket . . . clearly fails to teach or suggest, "a power cable outlet on the outer surface of the bag or luggage body." Dkt. No. 37-2 (Defs.' Ex. 2) at -156-57. But that statement was only exemplary; similar statements disclaiming any scope of "outer surface" other than the outermost surface pervade the prosecution history of the '071 patent. In another set of applicant remarks, Plaintiff distinguished Ferber as showing connectors "on the interior" of the bag and not the "exterior," exposing the connector to the outside elements and teaching against the alleged invention's "outer surface." Ex. 16 (Apr. 8, 2019 Applicant Remarks) at -255 ("Ferber explicitly provides that the aperture is **on the interior of the bag**, and therefore **is not 'on the outer surface of the bag or luggage body'** as required by claims 1 and 11"), -256 ("[Ferber's connectors] are **on the interior of the bag**, so they would **not be more tolerant to outdoor use** and **would in fact not be on the exterior of the bag**."). Plaintiff further explained to

---

[1] All emphasis herein has been added, unless otherwise specified.

the examiner in an interview that "[t]he sheath and USB connector are rigidly attached ***to the***

***exterior surface*** of the bag." Ex. 17 (July 5, 2019 Interview Summary) at -128.

In other words, Plaintiff clearly and unmistakably disclaimed anything other than an

"outermost surface" in order to avoid the prior art. *E.g.*, *iLight Techs., Inc. v. Fallon Luminous*

*Prods. Corp.*, 375 Fed. App'x. 21, 27 (Fed. Cir. 2010) (finding disclaimer where Plaintiff

distinguished prior art in response to an Examiner rejection). Plaintiff used the fact that Ferber

disclosed connectors "inside" a pocket or the "interior" of the bag as a "sword to hew a distinction

between its purported invention," which taught an outlet on the "outer surface," and Ferber's

teachings. *L & P Prop. v. JTM, LLC*, 578 F. Supp. 2d 318, 325-26 (D. Mass. Sept. 29, 2008).

Plaintiff does not meaningfully dispute this disclaimer, and its conclusory, unsupported statement

that "[a]t no point during the prosecution did Applicant clearly or unmistakably surrender the full

scope of the term 'outer surface'" (Dkt. No. 36 (Pl.'s Op. Br.) at 10) is demonstrably false in light

of the record.

Plaintiff's other arguments (*id.* at 10-11) are irrelevant. Defendants are not importing

limitations from embodiments, but relying on Plaintiff's disclaimer. The fact that the claims issued

also does not undo Plaintiff's disclaimer. It is well-settled that "claims that have been narrowed in

order to obtain the issuance of patent by distinguishing the prior art cannot be sustained to cover

that which was previously by limitation eliminated from the patent." *Graham v. John Deere Co.*

*of Kansas City*, 383 U.S. 1, 33 (1966). Finally, Defendants' proposed construction ***is*** the plain

meaning of "outer surface" in view of the claims, specification, and prosecution history. *3M*

*Innovative Props. Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1371 (Fed. Cir. 2003) ("A term's

ordinary meaning, however, ***must be considered in the context of all intrinsic evidence***, namely

the claims, the specification, and the prosecution history"). Accordingly, Defendants' proposed construction should be adopted.

### 2.    Plaintiff's '071 Patent Disclaimer Applies to the Continuation Patents ("an outer surface of [the/a] body").

The disclaimer in the '071 patent prosecution applies equally to the Continuation Patents because Plaintiff never rescinded the disclaimer. *E.g.*, *Hakim v. Cannon Avent Group, PLC*, 479 F.3d 1313, 1318 (Fed. Cir. 2007) (noting that to rescind disclaimer, "the prosecution history [of the child patent] must be sufficiently clear to inform the examiner that the previous disclaimer, and the prior art that it was made to avoid, may need to be re-visited"); *see also*, *e.g.*, *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1333-34 (Fed. Cir. 2003) (finding narrowing disavowals made in parent applications apply to continuation-in-part applications); *Cordis Corp. v. Boston Sci. Corp.*, 658 F.3d 1347, 1357 n. 5 (Fed. Cir. 2011) ("a disclaimer in the parent application carries forward into the construction of the same term in the child."). Rescinding a disclaimer has "exacting requirements," and those requirements have clearly not been met here. *Traxcell Tecs., LLC v. AT&T Corp.*, No. 2:17-cv-00718-RWS-RSP, 2019 WL 6037984, at *9-10 (E.D. Tex. Oct. 7, 2019); Dkt. No. 37 (Defs.' Op. Br.) at 13-14. Plaintiff does not dispute that it never rescinded the '071 patent disclaimer during prosecution of the Continuation Patents. Instead, it argues 1) the dependent claims would not make sense if the "outer surface" in the Continuation Patents were the outermost surface; 2) relatedly, the specification discusses more than one "outer surface"; and 3) the Continuation Patents recite "an" instead of "the." Dkt. No. 36 (Pl.'s Op. Br.) at 11-14. These arguments fail.

First, a "construction dictated by the written description or prosecution history" ***overcomes*** "[a]ny presumption created by the doctrine of claim differentiation." *Retractable Techs., Inc. v. Becton, Dickinson, & Co.*, 653 F.3d 1296, 1305 (Fed. Cir. 2011). Here, Plaintiff's argument that

"outer surface" is not limited to an outermost surface because of certain dependent claims and disclosures in the specification relating to more than one "outer surface" is "overcome by a contrary construction" that is "required by the specification or prosecution history." *Syntheon, LLC v. Covidien AG*, No. 16-cv-10244-ADB, 2017 WL 4225994, at *5 (D. Mass. Sept. 22, 2017). If Plaintiff had its way, a patent applicant could always overcome any disclaimer from a parent patent by drafting broader claims in continuation patents. That is not the law. *See Hakim*, 479 F.3d at 1317 (noting applicants have "the right to refile the application and attempt to broaden the claims," but "***cannot recapture*** claim scope that was surrendered or disclaimed."). Regardless of whether the dependent claims in the Continuation Patents or disclosures in the specification discuss more than one "outer surface," Plaintiff's failure to clearly rescind the disclaimer from the '071 patent prosecution during prosecution of the Continuation Patents means the Continuation Patents inherited the disclaimer from the '071 patent. Disclaimer cannot be overcome by bad drafting.

Indeed, Plaintiff even ***reinforced*** its disclaimer with similar statements during prosecution of the '009 patent. In response to a rejection over the same prior art reference cited during the '071 patent prosecution, Ferber, Plaintiff argued that "the present invention" of the '009 patent—which recites substantially the same claims as the other Continuation Patents—"provides a type of bag or luggage for convenient charging, which enables the user to charge a device or product needing to be charged conveniently at any time or any place during traveling, ***without necessarily opening the bag or luggage, nor taking out the power source for charging***." Ex. 15 (June 9, 2022 Applicant Remarks) at -540. This statement reaffirms that the disclaimer from the '071 patent extends to the Continuation Patents, limiting the scope of the "outer surface" terms to the outermost surface, *i.e.*, a surface that can be accessed without opening the bag.

Second, the fact that the '071 patent claims recite "the" outer surface while the Continuation Patents' claims recite "an" outer surface is a distinction without a difference in the context of these patents. All Asserted Patents recite the **substantive** term at issue that was the subject of Plaintiff's disclaimer, "outer surface." The intrinsic evidence in the Continuation Patents matches that in the '071 patent demonstrating the "outer surface" is the "outermost surface," touting the "convenience" of not having to open the bag and waterproofing features. Dkt. No. 37 (Defs.' Op. Br.) at 12. Plaintiff cites no authority that stands for the idea that a difference in articles warrants a different construction when the substantive claim language is identical.

In fact, merely changing the wording surrounding the substantive terms in a claim does not prevent a disclaimer from extending to other related patents' claims. In *Capital Mach. Co., Inv. v. Miller Veneers, Inc.*, the Federal Circuit held that unmistakable disclaimer of the scope of the term "flitch" as limited to a "tapered flitch" applied to all related patents, even though some of the patents recited simply a "flitch," while others specifically recited a "tapered flitch." 524 Fed. App'x. 644, 647-49 (Fed. Cir. 2013). Similarly, here, Plaintiff disclaimed any "outer surface" that is not an "outer**most** surface," even though some patents recite "an outer surface," some recite "the outer surface," and some specifically recite that "the female connector does not need to be moved and the bag or luggage body does not need to be opened to accept a charging interface of a product to be charged."

At most, the difference in the claim language in the Continuation Patents is an "immaterial difference[]." *E.g.*, *Regents of Univ. of Minnesota v. AGA Med. Corp.*, 717 F.3d 929, 944 (Fed. Cir. 2013) ("The appropriate focus is on the scope of the claim element . . . . This is why our cases . . . carry[] disclaimer forward if there are only immaterial differences"); *see also id.* at 943 ("[O]ur cases establish that the two patents must have the same **or closely related** claim limitation language

[for disclaimer to carry to a subsequent patent]"). Plaintiff never rescinded its disclaimer, and the intrinsic evidence in the Continuation Patents supports construing "outer surface" in the Continuation Patents to have the same scope as "outer surface" in the '071 patent. Dkt. No. 37 (Defs.' Op. Br.) at 11-12.

The disclaimer made during the prosecution of the '071 patent was never rescinded, and Plaintiff cannot recapture claim scope it surrendered with that disclaimer simply because it has drafted inconsistent claims. Instead, Plaintiff's statements during the prosecution of the '009 patent show that the scope of the "outer surface" terms never changed. Defendants' construction thus correctly captures the meaning of "outer surface" and should be adopted.

### C.    "Fixedly Attached"

Defendants' proposed construction for "fixedly attached" as "fastened to or adjoined such that it does not move and cannot be removed" is drawn from Plaintiff's lexicography and disclaimer, and is consistent with the claim language, specification disclosures, and extrinsic evidence. All the canons of claim construction point toward Defendants' proposal as the correct interpretation of this term. As shown below, Plaintiff's contention that the term should simply be given its plain and ordinary meaning contradicts every established claim construction principle and chiefly relies on extrinsic evidence—an irrelevant construction of the term from a different case. Plaintiff's arguments fail, and Defendants' proposed construction should be adopted.

#### 1.    Clear Lexicography and Disclaimer Mandate Defendants' Proposed Construction of "Fixedly Attached."

As explained in Defendants' opening brief, Plaintiff clearly and unmistakably defined "fixedly attached" during prosecution. Distinguishing a prior art reference, Plaintiff unequivocally proclaimed during prosecution of the '071 patent that "[t]he entire purpose of the present invention is to provide the female USB connector that *does not move (claimed as "fixedly attached")*." Dkt.

13

No. 37-2 (Defs.' Ex. 2) at -155-156. This statement defining "fixedly attached" is as clear as statements of disclaimer and lexicography get. As if that were not enough, Plaintiff further confirmed in an examiner interview that "[t]he sheath and USB connector are ***rigidly attached*** to the exterior surface of the bag." Ex. 17 (July 5, 2019 Interview Summary) at -128. Plaintiff's conclusory argument that lexicography and disclaimer are "not present here" (Dkt. No. 36 (Pl.'s Op. Br.) at 14) is unsupported and incorrect.

Plaintiff's argument entirely ignores the clear lexicography and disclaimer which define the term "fixedly attached." Defendants' proposed construction is correct here because it adopts Plaintiff's lexicography and disclaimer, which supersede any purported "plain and ordinary" meaning. *E.g.*, *Parkervision, Inc. v. Vidal*, 88 F.4th 969, 975-78 (Fed. Cir. 2023) ("A patentee can displace plain and ordinary meaning of a claim term when it acts as its own lexicographer"); *Tech. Props. Ltd. LLC v. Huawei Techs. Co.*, 849 F.3d 1349, 1357 (Fed. Cir. 2017) (affirming a "narrower construction [that] … includes both of the patentee's clear disclaimers" relied on to distinguish prior art during prosecution).

Plaintiff's contention that the term should be given its plain and ordinary meaning must also fail because it would leave the parties' dispute about the proper scope of the claim unresolved. "[T]he court, not the jury, must resolve" disputes regarding the scope of the claims. *O2 Micro*, 521 F.3d at 1360. Here, the parties dispute whether "fixedly attached" means that the female connector does not move, and cannot be removed from, the sheath. Assigning "fixedly attached" its alleged plain and ordinary meaning only pushes the dispute further down the line, where Plaintiff will inevitably continue to argue that the plain meaning encompasses USB connectors and sheaths that can be moved and can be removed, in direct contravention of its lexicography and disclaimer during prosecution. Indeed, Plaintiff has already demonstrated its improper interpretation of the

14

scope of this term in its prior litigation against Wenger, arguing that "fixedly attached" simply means the "female connector … does not ***need*** to be removed in order to charge," instead of meaning it is "***rigidly attached***" and "***does not*** move" or be removed, as it argued during prosecution. *Compare* Ex. 18 (Swissdigital Resp. Claim Construction Brief from Wenger Case) at 14 *with* Dkt. No. 37-2 (Defs.' Ex. 2) at -155-156, Ex. 17 (July 5, 2019 Examiner Interview) at -128. The time to resolve this dispute over the scope of the terms is now, during claim construction. *See O2 Micro*, 521 F.3d at 1360.

### 2.    The Claim Construction Decision in the *Wenger* Case Involved Different Arguments and Is Irrelevant Extrinsic Evidence.

Claim constructions from a previous litigation between Plaintiff and a different company, Wenger S.A., in the Western District of Texas (the "Wenger Case") are irrelevant to the analysis. The "Federal Circuit requires each district court to perform a claim analysis independent of another court's claim construction." *Strikeforce Techs., Inc. v. Gemalto, Inc.*, No. 17-10422-RGS, 2017 WL 3813905, at *3, n. 3 (D. Mass. Aug. 31, 2017) (citing *Lexington Luminance LLC v. Amazon.com Inc.*, 601 Fed. App'x. 963, 969 (Fed. Cir. 2015)); *see also In re Neurografix ('360) Patent Litig.*, 201 F. Supp. 3d 206, 217 (D. Mass. 2016) ("[A] district court has a duty to perform its own analysis independent of another court's claim construction."). This is especially true when, as is the case here, a party "presents arguments … that were not before the [previous] court[.]" *Lexos Media IP, LLC v. Overstock.com, Inc.*, No. 22-2324-JAR-ADM, 2023 WL 8373184, at *5 (D. Kan. Dec. 4, 2023). The Wenger Case ruling involved different arguments by different parties, on different proposed constructions, in a different case, in a different court.

Plaintiff's assertion that "Defendants propose substantially the same construction that Wenger did" is false. The construction rejected in the Wenger Case ("connected to the bag or luggage permanently") bears no resemblance to Defendants proposal here ("fastened to or adjoined

such that it does not move and cannot be removed"), which is based on Plaintiff's lexicography during prosecution and says nothing about the concept of permanence. *Compare* Ex. 19 (Wenger Case Claim Construction Order) at 2 *with* Dkt. No. 37 (Defs.' Op. Br.) at 14-16. Notably, Wenger did not rely on Plaintiff's clear lexicography that the fact that the USB connector cannot move was "claimed as 'fixedly attached,'" likely because lack of movement was not even at issue in Wenger's proposed construction. Ex. 18 (Wenger Claim Constr. Br.) at 13-14. Even if the proposed constructions were identical, however, the Wenger Case construction has no precedential effect here because it was never even considered by the Federal Circuit, much less affirmed by that court. *Compare Eolas Techs., Inc. v. Adobe Sys., Inc.*, No. 6:09-CV-446, 2011 WL 11070303, at *2 (E.D. Tex. Sept. 23, 2011) (adopting claim construction of term "as construed by the Illinois District Court ***and affirmed by the Federal Circuit***.") *with Rambus Inc. v. Hynix Semiconductor Inc.*, 569 F. Supp. 2d. 946, 968 (N.D. Cal. 2008) (finding prior claim construction not "sufficiently firm" to be preclusive where party had not had an opportunity to appeal the ruling).

Here, it is improper to rely on the decision in *Wenger* because the intrinsic evidence clearly supports Defendants' construction. Although Plaintiff asserts the Wenger Case district court rulings are entitled to "reasoned deference" (Dkt. No. 36 (Pl.'s Op. Br.) at 15), "[r]elated judicial holdings" in the absence of affirmance by the Federal Circuit are "non-binding ***extrinsic*** evidence in a claim construction analysis." *Mems Tech. Berhad v. Int'l Trade Comm'n*, 447 F. App'x 142, 153 (Fed. Cir. 2011). "In most situations," such as here, "an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term," and "it is ***improper*** to rely on extrinsic evidence." *See Vitrionics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1993); *see also Seabed Geosolutions (US) Inc. v. Magseis FF LLC*, 8 F.4th 1285, 1287 (Fed. Cir. 2021) ("If the meaning of a claim term is clear from the intrinsic evidence, there is no reason to resort to

16

extrinsic evidence."). Because the meaning of "fixedly attached" is clear from the intrinsic evidence—Plaintiff's lexicography and disclaimer during prosecution—extrinsic evidence such as the Wenger Case constructions have no place in the analysis here. *E.g.*, *Fiber, LLC v. Ciena Corp.*, 792 Fed. App'x. 789, 795 n. 2 (Fed. Cir. 2019) ("Because we agree with the district court's claim construction based on the intrinsic evidence alone, we do not reach the extrinsic evidence.").

### D.    There Is No Dispute Regarding the "Adjacent to" Term.

Defendants already agreed that the "adjacent to" term should be given its plain and ordinary meaning before the parties' opening briefs were filed. Ex. 20 (Feb. 13, 2025 Email fr Chung to Plaintiff) (noting Defendants "agree to [the 'adjacent to' claim term] being given its plain and ordinary meaning"). Accordingly, there is no dispute regarding, or a need to construe, this term.

### E.    Defendants' Proposal for "Surrounding Bottom Portion" Should Be Adopted.

Defendants' opening brief demonstrates that Defendants' proposed construction of "surrounding bottom portion" is supported by intrinsic and extrinsic evidence. Dkt. No. 37 (Defs.' Op. Br.) at 16-20. Plaintiff counters with the same claim construction truisms regarding lexicography and disclaimer, and the same conclusory statements that neither are present here. Dkt. No. 36 (Pl.'s Op. Br.) at 18-19. Defendants' construction is the correct construction of "surrounding bottom portion" in the context of the Asserted Patents when viewed in light of the claims, specification, and prosecution history, as well as dictionary definitions from the relevant time. Dkt. No. 37 (Defs.' Op. Br.) at 16-20; *see Phillips*, 415 F.3d at 1317 (noting claim construction requires consideration of both intrinsic and extrinsic evidence).

Plaintiff's arguments do not change that result. Plaintiff asserts that it did not "relinquish the full scope of the term during prosecution." Dkt. No. 36 (Pl.'s Op. Br.) at 18. However, as Defendants have explained, "surrounding bottom portion" has multiple possible ordinary meanings in the context of the patents, and the meaning becomes clear only upon review of the

specification and file history. Dkt. No. 37 (Defs.' Op. Br.) at 17-20. Plaintiff did not need to disclaim or define any terms in prosecution—Defendants' construction of "a flat portion that extends outward from the bottom of" is the ***only*** correct plain and ordinary meaning of "surrounding bottom portion" in view of the intrinsic and extrinsic evidence. Similarly, Defendants' construction does not import limitations from the specification, but reflects the plain and ordinary meaning of "surrounding bottom portion." Indeed, despite all of Plaintiff's posturing, it fails to identify any scope of the plain meaning of "surrounding bottom portion" that is not encompassed by Defendants' proposal. Finally, while Plaintiff accuses Defendants of attempting to create a noninfringement argument, Defendants' construction has nothing to do with the accused products, and Plaintiff does not explain or demonstrate how Defendants' construction relates to infringement. Dkt. No. 36 (Pl.'s Op. Br.) at 19.

Defendants' proposed construction of "surrounding bottom portion" is supported by the intrinsic and extrinsic evidence, and should be adopted.

## III.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that their proposed constructions for the disputed terms in the Asserted Patents be adopted.

Dated: March 27, 2025

Respectfully submitted,

By: */s/ Adam J. Kessel*

Adam J. Kessel
Massachusetts Bar No. 661,211
kessel@fr.com
**FISH & RICHARDSON P.C.**
One Marina Park Drive
Boston, MA 02210
Tel: (617) 542-5070
Fax: (617) 542-8906

Neil J. McNabnay (*Pro Hac Vice*)
Texas Bar No. 24002583
mcnabnay@fr.com
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
Tel: (214) 747-5070
Fax: (214) 747-2091

Bailey K. Benedict (*Pro Hac Vice* )
Texas Bar No. 24083139
benedict@fr.com
Ethan K. Kovar (*Pro Hac Vice* )
Texas Bar No. 24138134
kovar@fr.com
**FISH & RICHARDSON P.C.**
909 Fannin Street, Suite 2100
Houston, TX 77010
Tel: (713) 654-5300
Fax: (713) 652-0109

Wonjoon Chung (*Pro Hac Vice* )
Georgia Bar No. 396468
chung@fr.com
**FISH & RICHARDSON P.C.**
1180 Peachtree Street NE
21st Floor
Atlanta, GA 30309
Tel: (404) 892-5005
Fax: (404) 892-5002

*Attorneys for Defendants*
*SAMSONITE INTERNATIONAL S.A.;*
*SAMSONITE LLC; SAMSONITE COMPANY*
*STORES, LLC; and DIRECT MARKETING*
*VENTURES, LLC*