**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

SWISSDIGITAL USA CO., LTD.,

               Plaintiff,

      v.

SAMSONITE GROUP S.A.; SAMSONITE
LLC; SAMSONITE COMPANY STORES,
LLC; and DIRECT MARKETING
VENTURES, LLC,

               Defendants.

Civil No. 1:24-cv-11636

**JURY TRIAL DEMANDED**

**FILED UNDER SEAL**

**DEFENDANTS SAMSONITE GROUP S.A., SAMSONITE LLC, SAMSONITE
COMPANY STORES, LLC, AND DIRECT MARKETING VENTURES, LLC'S
MOTION FOR SUMMARY JUDGMENT REGARDING THE CORRECT PRIORITY
DATE OF U.S. PATENT NOS. 10,931,137, 10,931,138, AND 11,601,009, AND
<u>INVALIDITY OF CERTAIN ASSERTED CLAIMS OF THOSE PATENTS</u>**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND .................................................................................................. 2

        A.      The '071 Patent ...................................................................................... 2

        B.      The Continuation Patents ....................................................................... 3

        C.      Plaintiff's Litigation Against Wenger and Group III ............................. 4

        D.      Plaintiff's Participation in Trade Shows and Pre-2019 Offers for
                Sale ......................................................................................................... 5

        E.      Defendant Samsonite Group S.A.'s Deposition of Group III ................. 5

III.    LEGAL STANDARDS ........................................................................................ 5

        A.      A Later-Filed Patent's Priority Claim to a Parent Patent ....................... 5

        B.      Invalidity Under 35 U.S.C. § 102's "On-Sale Bar" ............................... 7

IV.     ARGUMENT ...................................................................................................... 8

        A.      The Continuation Patents Are Not Entitled to the '071 Patent's
                Priority Date Because the '071 Patent Does Not Describe a
                "Surrounding Bottom Portion." ............................................................. 8

        B.      The Challenged Claims Are Invalid Under 35 U.S.C. § 102 ................ 10

                1.      The Group III 6067 and/or Swissdigital's TSG4H157
                        Product Practiced Every Limitation of the Challenged
                        Claims of the Continuation Patents ........................................... 11

                        a.      Swissdigital's TSG4H157 practiced the claims of
                                the '137 patent ............................................................... 11

                        b.      Group III's 6067 practiced the claims of the '138
                                and '009 patents. ............................................................ 13

                        c.      The TSG4H157 practiced the claims of the '138 and
                                '009 patents. .................................................................. 17

                2.      Group III's 6067 Product and Plaintiff's TSG4H157
                        Product Were Subject to Commercial Offers for Sale Prior
                        to the Critical Date. ................................................................... 19

3.    The Invention Was Ready for Patenting Prior to the Critical
Date. ........................................................................................................... 20

V.    CONCLUSION ....................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anascape, Ltd. v. Nintendo of Am., Inc.*,
601 F.3d 1333 (Fed. Cir. 2010)..................................................................1, 8, 9

*Applied Mats., Inc. v. Adv. Semiconductor Mats. Am., Inc.*,
98 F.3d 1563 (Fed. Cir. 1996)...........................................................................3

*Caterpillar Inc. v. Int'l Trade Comm'n*,
837 Fed. App'x. 775 (Fed. Cir. 2020)...............................................................7

*D Three Enters., LLC v. SunModo Corp.*,
890 F.3d 1042 (Fed. Cir. 2018).................................................................6, 9, 10

*Junker v. Med. Components, Inc.*,
25 F.4th 1027 (Fed. Cir. 2022) ...............................................................7, 19, 20

*Medicines Co. v. Hospira, Inc.*,
827 F.3d 1363 (Fed. Cir. 2016)........................................................................7

*Novartis Pharms. Corp. v. Accord Healthcare, Inc.*,
38 F.4th 1013 (Fed. Cir. 2022) .......................................................................10

*Paice LLC v. Ford Motor Co.*,
881 F.3d 894 (Fed. Cir. 2018)..........................................................................6

*PowerOasis, Inc. v. T-Mobile USA, Inc.*,
522 F.3d 1299 (Fed. Cir. 2008).........................................................................7

*Quest Integrity USA, LLC v. Cokebusters USA Inc.*,
924 F.3d 1220 (Fed. Cir. 2019)........................................................................7

*Sunoco Partners Mktg. & Terminals L.P. v. U.S. Venture, Inc.*,
32 F.4th 1161 (Fed. Cir. 2022) .......................................................................20

*The Medicines Co. v. Hospira, Inc.*,
881 F.3d 1347 (Fed. Cir. 2018).....................................................................7, 20

*Vanmoor v. Wal-Mart Stores, Inc.*,
201 F.3d 1363 (Fed. Cir. 2000).......................................................................20

**Statutes**

35 U.S.C. 112(a) ............................................................................................6

35 U.S.C. § 102 ................................................................................................2, 7, 10, 20

35 U.S.C. § 102(a)(1) ...............................................................................................7

35 U.S.C. § 102(b)(1) ...............................................................................................7

35 U.S.C. § 112(a) ....................................................................................................6

35 U.S.C. 120 ...........................................................................................................6

## I.    INTRODUCTION

Plaintiff Swissdigital USA Co Ltd.'s ("Plaintiff") patents were filed over a course of many years. The earliest U.S. application was filed in 2015 and issued as U.S. Patent 10,574,071 (the "'071 patent"). Years later, from 2019–2021, Plaintiff filed the applications that led to U.S. Patents 10,931,137 (the "'137 patent"), 10,931,138 (the "'138 patent"), and 11,601,009 (the "'009 patent") (collectively, the "Continuation Patents"). The '137 patent was labeled a "continuation," the '138 and '009 patents "continuations-in-part." All three claim priority to the parent '071 patent.

But a later-filed patent is only entitled to the "benefit of the filing date of a parent application" if the later-filed patent's claims are "supported by the written description in the parent in sufficient detail" that a person of ordinary skill in the art ("POSITA") can "clearly conclude that the inventor invented the claimed invention as of the filing date sought." *Anascape, Ltd. v. Nintendo of Am., Inc.*, 601 F.3d 1333, 1335 (Fed. Cir. 2010). Under typical patent prosecution practice, a "continuation" patent provides the ***same written description*** as its parent application while adding new claims based on that description. Here, however, Plaintiff added substantial new material to the written description of its later patent filings beginning in 2019 that was entirely absent from its original 2015 filing.[1] In fact, there is ***no*** support in the specification of the earliest-filed '071 patent for the "surrounding bottom portion" recited in the claims of the Continuation Patents, and thus none of those patents or their claims is entitled to the '071 patent's priority date.

The question of the priority date of the Continuation Patents is critical. When those patents are accorded their true priority date of April 19, 2019—the date the claimed "surrounding bottom portion" was first disclosed in Plaintiff's patent application—their claims are invalid over the prior art. Product sales by (1) Group III International, Inc. ("Group III"), the entity that sold the products

---

[1] This is true of both the '137 patent, which was filed as a "continuation" despite addition of new matter, as well as the three Continuation Patents, which were filed as "continuations-in-part."

Plaintiff accused in a prior case against Wenger S.A. ("Wenger"), and (2) by Plaintiff itself, invalidate the claims under the on-sale bar of 35 U.S.C. § 102. Defendants thus respectfully request that the Court grant summary judgment that 1) the priority date of the Continuation Patents is no earlier than April 19, 2019; and 2) that certain claims of those patents are invalid.

## II.     BACKGROUND

### A.     The '071 Patent

The '071 patent, titled "Bag or Luggage With USB Charging Connector," was filed on August 26, 2015, and claims foreign priority to November 18, 2014, based on the filing of a Chinese patent application (the "Chinese '148 Application"). SUMF ¶¶ 3-5.[2] When Plaintiff first sued Defendant Samsonite Group S.A. (formerly Samsonite International, S.A.) in the Western District of Texas ("WDTX Litigation"), Plaintiff contended that the '071 patent claims were entitled to the November 18, 2014 priority date of the Chinese '148 Application. SUMF ¶ 91.[3]

The "present invention" of the '071 patent is a bag or luggage enabling a user to charge a device "conveniently at any time or place during traveling, without necessarily opening the bag or luggage," or "taking out [a] power source for charging." SUMF ¶ 12. Although the '071 patent does disclose a "sheath," the '071 patent invariably describes the sheath as something that "wraps" or "covers" the ***outer surface*** of a female connector. SUMF ¶¶ 13, 15-22. There is no disclosure of a "surrounding bottom portion" in the patent's written description or figures. SUMF ¶¶ 7-11.

---

[2] Defendants refer to their concurrently filed statement of Statement of Undisputed Material Fact using the abbreviation "SUMF" herein.

[3] During prosecution of the '071 patent, Plaintiff submitted a translation of the Chinese '148 Application. *See* Ex. 30 (CN '148 Application translation). Defendants also obtained a certified translation of the CN '148 Application. Ex. 31 (certified translation); Ex. 32 (translator's certification). There are no material differences between the '071 patent and the CN '148 Application and either translation. Defendants thus address the disclosures of the '071 patent, originally issued in English, herein. However, the same arguments apply should Plaintiff argue that the Continuation Patents are entitled to priority via the disclosures in the CN '148 Application.

## B.    The Continuation Patents

The '137 patent, titled "Sheath for USB Charger," claims on its face to be a "continuation" of the '071 patent and was filed on April 19, 2019. SUMF ¶¶ 24-26.[4] The '138 patent, also titled "Sheath for USB Charger," is a continuation-in-part of the '137 patent filed on April 2, 2020, and likewise claims priority to the '071 patent. SUMF ¶¶ 36-39. The '009 patent, titled "Sheath for Convenient Charging," was filed on May 12, 2022, and is a continuation-in-part of both the '137 and '138 patents, and claims priority to the '071 patent. SUMF ¶¶ 55-58. In the WDTX Litigation, Plaintiff contended the Continuation Patents were all entitled to the November 18, 2014 filing date of the Chinese '148 Application. SUMF ¶ 91. Defendants understand Plaintiff maintains that position here.

Each of the Continuation Patents add new features to the claims and specifications that are not found in the '071 patent. The Continuation Patents' claims are all directed to a "sheath." SUMF ¶¶ 34, 52, 73. In contrast to the '071 patent's sheath that "wraps" around or "covers" the female USB connector, however, the Continuation Patents' claims recite an entirely separate "sheath" with a "surrounding bottom portion" that surrounds the sides of the sheath (or, where the sheath is claimed as a "raised portion," surrounds the raised portion). SUMF ¶¶ 34, 52, 73; Appendix A.

To support these claims, the Continuation Patents also added a plethora of new disclosures and figures not included in the '071 patent, describing and depicting the claimed "surrounding bottom portion." SUMF ¶¶ 32 ('137 patent), 44-50 ('138 patent), 64-71 ('009 patent); *see* Appendices B-D (highlighting passages in the Continuation Patents that are not found in the '071 patent specification and figures). The contrast between the '071 patent's sheath "wrapped" around

---

[4] Defendants submit that the '137 patent was misclassified as a continuation, when it is in fact a continuation-in-part. "By definition, a continuation adds no new matter." *Applied Mats., Inc. v. Adv. Semiconductor Mats. Am., Inc.*, 98 F.3d 1563, 1579 (Fed. Cir. 1996). As discussed herein, the '137 added substantial new matter to the '071 patent's disclosures.

the USB connector and the Continuation Patents' sheath with "surrounding bottom portion" is apparent from a comparison of the figures:

| Ex. 3 ('071 patent) at Fig. 2 (annotated, "wrapped" sheath in yellow) | Ex. 4 ('137 patent) at Fig. 44 (annotated, "surrounding bottom portion" in orange) |
|---|---|
|  | |

Defendants' Motion challenges the validity of claims 1, 3, 6-7, and 19-21 of the '137 patent; claims 1-2, 4, 6-8, 17, 19-21, and 23 of the '138 patent, and claims 1, 2, 4, 6-8, 17, 19-21, and 29 of the '009 patent (collectively, "Challenged Claims").[5] Many of the claims of the Continuation Patents are, in relevant part, substantively identical to each other. *See* Appendix A (listing similar or identical limitations in the Continuation Patents side by side).

### C.    Plaintiff's Litigation Against Wenger and Group III

On January 29, 2015, Plaintiff and its parent Krummholz International, Inc. filed suit against Wenger in the Western District of New York ("Krummholz Litigation"). SUMF ¶ 74-75. Exhibit A to the complaint was a catalog showing products that Plaintiff offered for sale and sold at that time. SUMF ¶¶ 76-77. That catalog included pictures of Plaintiff's TSG4H156 and TSG4H157 products, including images showing a USB "sheath." SUMF ¶¶ 81-85. In this litigation, Plaintiff has produced a design document with photographs matching the photographs of the TSG4H157 product in the catalog. SUMF ¶¶ 119-21; Ex. 25 (SWISSDIGITAL001835).

---

[5] Plaintiff asserts other claims which are not subject to this Motion. SUMF ¶ 1.

On April 30, 2021, Plaintiff filed suit against Wenger in the Western District of Texas ("Wenger Litigation"). SUMF ¶ 86. Plaintiff accused Wenger of selling products "incorporat[ing] an integrated USB sheath pocket" that infringed the '071 and '138 patents. SUMF ¶¶ 87-88.

### D.    Plaintiff's Participation in Trade Shows and Pre-2019 Offers for Sale

Plaintiff has described its commercial sales activities in its public filings. In the Krummholz Litigation, Plaintiff alleged that it sold the "bags, luggage and backpacks with wearable intelligence," identified in an exhibit to that Complaint. SUMF ¶ 76. That exhibit included photos of a bag with a USB female connector port, reproduced at right. SUMF ¶¶ 82-85. As of that time, Plaintiff had also offered these products for sale globally and at trade shows. SUMF ¶¶ 77-80.



### E.    Defendant Samsonite Group S.A.'s Deposition of Group III

During the WDTX Litigation, Samsonite Group S.A. deposed Group III's representative, John Pulichino, on November 6, 2023. SUMF ¶ 92. Mr. Pulichino, who was Group III's executive chairman and former CEO, was actively involved with, and knowledgeable about, the design of Group III's products. SUMF ¶¶ 93-95. He testified regarding the structure and sale of two Group III products, the 5358 and 6067, which either utilized an "off-the-shelf" USB component or a custom-designed component, named SG-X27. *See generally* SUMF ¶¶ 92-118. Counsel for Plaintiff could have deposed Mr. Pulichino, but did not. SUMF ¶ 118.

## III.    LEGAL STANDARDS

### A.    A Later-Filed Patent's Priority Claim to a Parent Patent

The law regarding the proper priority date to be accorded to a continuation or continuation-in-part application is clear. The relevant statute provides that a later patent application with the same inventors as an earlier-filed application shall have the effect of being "filed on the date of

the prior application," so long as that ***prior application*** meets the requirements of Section 112(a). 35 U.S.C. § 120. Section 112(a), in turn, requires the specification to "contain a written description of the invention" in "such full, clear, concise, and exact terms as to enable any person skilled in the art" to "make and use the same." 35 U.S.C. § 112(a). In short, the claims of the later-filed child patent must be supported under Section 112(a) in the written description of the parent patent to which it claims to claim priority. This written description requirement is "amenable to summary judgment in cases where no reasonable fact finder could return a verdict for the non-moving party." *D Three Enters., LLC v. SunModo Corp.*, 890 F.3d 1042, 1047 (Fed. Cir. 2018).

For a child patent to be entitled to the priority date of its parent, the ***parent*** patent's written description must allow a POSITA to "recognize that the inventor invented what is claimed" in the ***child*** patent, and "reasonably convey[]" to a POSITA that the "inventor had possession of the claimed subject matter as of the filing date" of the parent patent. *Id.* at 1047 (quoting *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (emphasis in original)); *see also Paice LLC v. Ford Motor Co.*, 881 F.3d 894, 906 (Fed. Cir. 2018) ("For claims to be entitled to a priority date of an earlier-filed application, the application must provide ***adequate written description support*** for the ***later-claimed limitations***.").[6] This determination requires an "objective inquiry into the four corners of the specification." *D Three Enters.*, 890 F.3d at 1047. The USPTO's Manual of Patent Examining Procedure ("MPEP") similarly provides that "***[o]nly* the claims**" in a continuation-in-part application "that are ***disclosed in the manner provided by 35 U.S.C. 112(a) in the prior-filed application*** are entitled to the benefit of the filing date of the prior-filed application." MPEP § 211.05.I.B.

The burden to establish an earlier filing date is on Swissdigital after Defendants show that

---

[6] All emphasis herein has been added unless otherwise specified.

the prior art invalidates the claims. *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1305 (Fed. Cir. 2008) (finding burden was on patentee to prove entitlement to claim priority to an earlier filing date after Defendant T-Mobile "established its prima facie case of invalidity").

### B.    Invalidity Under 35 U.S.C. § 102's "On-Sale Bar"

Under current patent law, a person is entitled to a patent unless "the claimed invention was patented, described in a printed publication, or in public use, ***on sale***, or otherwise available to the public before the effective filing date of the claimed invention." 35 U.S.C. § 102(a)(1). The "on sale" portion of the statute is known as the "on-sale bar." *Quest Integrity USA, LLC v. Cokebusters USA Inc.*, 924 F.3d 1220, 1227 (Fed. Cir. 2019). One exception to the on-sale bar is if the inventor made the disclosure less than a year before the effective filing date of the patent. 35 U.S.C. § 102(b)(1). This effectively means for a sale to invalidate a patent claim, it must have occurred more than one year prior to the date of the application. *E.g.*, *Quest Integrity*, 924 F.3d at 1227.

To invalidate under the on-sale bar, the patented invention must have been (1) the "subject of a commercial offer for sale," and (2) "ready for patenting." *Junker v. Med. Components, Inc.*, 25 F.4th 1027, 1032 (Fed. Cir. 2022). An invention is "ready for patenting when it is reduced to practice . . . ." *The Medicines Co. v. Hospira, Inc.*, 881 F.3d 1347, 1353 (Fed. Cir. 2018) (quoting *Hamilton Beach Brands, Inc. v. Sunbeam Prods., Inc.*, 726 F.3d 1370, 1375 (Fed. Cir. 2013)). The product being sold must also meet the limitations of the claims being invalidated. *See Quest Integrity*, 924 F.3d at 1231 (affirming invalidity judgment where product sold prior to critical date practiced the claim limitations); *Caterpillar Inc. v. Int'l Trade Comm'n*, 837 Fed. App'x. 775, 777-79 (Fed. Cir. 2020) (similar). "Whether the on-sale bar applies is a question of law based on factual underpinnings." *Medicines Co. v. Hospira, Inc.*, 827 F.3d 1363, 1371 (Fed. Cir. 2016).

## IV.    ARGUMENT

The parent '071 patent contains no written description support for a "surrounding bottom portion," recited by every claim in the Continuation Patents, and therefore cannot support priority for those claims. Once the proper priority date is accorded to the Continuation Patents' claims—April 19, 2019, the filing date of the '137 patent—those claims are invalid under the on-sale bar because of Group III and Plaintiff's product sales prior to the critical date of April 19, 2018.

### A.    The Continuation Patents Are Not Entitled to the '071 Patent's Priority Date Because the '071 Patent Does Not Describe a "Surrounding Bottom Portion."

The claims of the Continuation Patents add new matter that is not described in the written description of the '071 patent *at all*, let alone with "sufficient detail that one skilled in the art can clearly conclude that the inventor invented the claimed invention as of the filing date sought." *Anascape,* 601 F.3d at 1335. Every Continuation Patent claim recites a "surrounding bottom portion," which "surround[s]" the sides and ends of the sheath, or at least a portion of the "raised portion" of the sheath. Ex. 4 ('137 patent) at claims 1-21; Ex. 5 ('138 patent) at claims 1-24; Ex. 6 ('009 patent) at claims 1-30. According to the claims, the recited "surrounding bottom portion" is either "attached to" or in "communication with" a "portion" of the body of a bag, or attaches to an "inner surface" of the bag. Ex. 4 ('137 patent) at claim 1; Ex. 5 ('138 patent) at claims 1, 2, 23; Ex. 6 ('009 patent) at claims 1, 2, 29. In other words, the "surrounding bottom portion" is what is used to attach the sheath to the bag.

The written descriptions of the Continuation Patents also contain similar or identical disclosures regarding the "surrounding bottom portion" recited in all of their claims. Ex. 4 ('137 patent) at 5:57-6:18 (describing the surrounding bottom portion as a "flat portion surrounding" the sides and ends of the sheath and is "in communication" with the inner surface of the body), Figs. 11-17, 19-22, 43-46 (depicting the surrounding bottom portion around the sheath); Ex. 5 ('138

patent) at Abstract, 6:4-23, 6:55-7:19, 8:32-40, Figs. 11-17, 19-22, 43-49, 53-58, 60-61 (similar); Ex. 6 ('009 patent) at Abstract, 6:13-32, 6:64-7:27, 8:40-44, Figs. 4-8, 10-17, 43-49, 53-58, 60-61 (similar). An exemplary figure depicting the "surrounding bottom portion" (and annotated to show the same), present in all Continuation Patents, is shown at right. Ex. 4 ('137 patent) at Fig. 12; Ex. 5 ('138 patent) at Fig. 12 (similar); Ex. 6 ('009 patent) at Fig. 12 (similar).



The '071 patent, on the other hand, contains no disclosure at all of a "surrounding bottom portion," either in the written description or the figures. SUMF ¶¶ 7-11. The words "surrounding" and "portion" do not even appear in the '071 patent. SUMF ¶¶ 9-10. Notably, the '071 patent only has ten figures (not reaching Figure 12, reproduced above at right, where the "surrounding bottom portion" is first depicted in the '137 and '138 patents). None of the '071 patent's ten figures depict anything resembling the "surrounding bottom portion" claimed and described in the Continuation Patents. *See* Ex. 3 ('071 patent) at Figs. 1-10. There is no discussion of any portion of a sheath used to attach the sheath to a bag—instead, the sheath is simply "wrapped" on or "covers" the female connector. SUMF ¶¶ 13, 15-20. The '071 patent thus lacks **any** written description support—let alone sufficient description to "reasonably convey[]" to a POSITA that the inventor had possession of the subject matter. *See D Three Enters.*, 890 F.3d at 1047; *see also Anascape*, 601 F.3d at 1335.[7]

Tellingly, **every** discussion of the "surrounding bottom portion" in the Continuation Patents is a **new disclosure** added with the Continuation Patents, and references **new figures** added with

---

[7] That the parties dispute the proper construction of "surrounding bottom portion" is irrelevant to the analysis here. The '071 patent contains no disclosure of any surrounding bottom portion at all, and cannot support the limitation under either party's proposed construction of the term.

the Continuation Patents that were not present in the '071 patents. *See* Appendices B-D (highlighting passages and figures in the Continuation Patents that are not found in the '071 patent). The '137 and '138 patents keep all of the original Figures 1 through 10 from the '071 patent and add dozens of new figures—36 and 51 new figures, respectively. SUMF ¶¶ 28-30, 40-42. The '009 patent goes one step further, only sharing Figures 1 and 2 in common with the '071 patent, while adding 70 new figures. SUMF ¶¶ 60-62. Every discussion of the "surrounding bottom portion" in each Continuation Patent is newly added matter and describes the newly added figures in the Continuation Patents, and there is no corresponding or similar disclosure anywhere in the '071 patent. SUMF ¶¶ 31-32 ('137 patent), 43-51 ('138 patent), 63-72 ('009 patent); *see also* Appendices B-D. Under these facts, "no reasonable fact finder" could find that the '071 patent provides adequate written description support for the "surrounding bottom portion" claimed in the Continuation Patents. *D Three Enters.* 890 F.3d at 1047 (Fed. Cir. 2018).

The written description requirement is examined from the viewpoint of a POSITA, but the specification must "***reasonably*** convey" to the POSITA that the "inventor had possession" of the subject matter, and that possession "***must be shown in the disclosure***." *Novartis Pharms. Corp. v. Accord Healthcare, Inc.*, 38 F.4th 1013, 1016 (Fed. Cir. 2022). The '071 patent contains no mention whatsoever of a "surrounding bottom portion," or anything similar. Nothing in the '071 patent's disclosure can reasonably convey the surrounding bottom portion to a POSITA. Accordingly, the Continuation Patents are not entitled to the priority date of the '071 patent.

### B.     The Challenged Claims Are Invalid Under 35 U.S.C. § 102.

Because the '071 patent's written description does not support the "surrounding bottom portion," the priority date of the Continuation Patents is the date of filing of the first application that does support that limitation—that is, the filing date of the '137 patent, April 19, 2019. Sales of Group III's 6067 product and Plaintiff's TSG4H157 product occurring more than one year prior

to April 19, 2019 invalidate the Challenged Claims of the Continuation under the on-sale bar.

        1.        **The Group III 6067 and/or Swissdigital's TSG4H157 Product Practiced Every Limitation of the Challenged Claims of the Continuation Patents.**

The Group III 6067 and Swissdigital's TSG4H157 products met all limitations of the Challenged Claims of the Continuation Patents, as explained in further detail below.[8]

        a.        <u>Swissdigital's TSG4H157 practiced the claims of the '137 patent.</u>

**The TSG4H157 product practiced claim 1 of the '137 patent**. To the extent the <u>preamble</u> is limiting, the TSG4H157 included a sheath for convenient charging because it held the female connector of the USB cable outside, allowing a user to charge a device without opening a bag. *E.g.*, Ex. 9 (Krummholz Litigation, Complaint, Ex. A) at 3 (showing USB port on shoulder strap of TSG4H157 bag). The sheath on the TSG4H157 also practiced <u>limitation 1[a]</u>, as shown below. Ex. 25 (SWISSDIGITAL001835) at -1841 (annotated image of the sheath, █████████████████ ██████████████████████████████████████████████████ █████████████████████████ ).



The TSG4H157 practiced <u>limitation 1[b]</u>, because the sheath portion holding the female

---

[8] The references to the claim limitations herein refer to the limitations as labeled in Appendix A. The full language of the claim limitations at issue are also in Appendix A.

connector would have come through a hole in the bag (with an inner and outer surface where the hole is) to the surface. For example, when attached, the sheath portion is visible above the surface of the bag's shoulder straps, as shown at right. Ex. 9 (Krummholz Litigation, Complaint, Ex. A) at 3. The TSG4H157 sheath also practiced <u>limitations 1[c] and 1[d]</u> because the sheath



was at the outlet in the bag, and received a female end of a USB cable, which has four sides, an operative end, and a cord end, and removably held the female end in a flat position with the operative end uncovered and above the outer surface of the body. Ex. 25 (SWISSDIGITAL001835) at -1841 (illustrating assembly of the sheath, including the USB cable connector); *see also* annotated image for 1[a], above (showing the orientation of the cord and operative ends of the female USC connector). The TSG4H157 also practiced <u>limitation 1[e]</u> because the surrounding bottom portion was attached to the inner surface of the body. For example, in the above image at right, only the sheath portion is visible, meaning the surrounding bottom portion is inside the surface of the shoulder strap, and used to attach the sheath to inner surface of the strap. Finally, the TSG4H157 practiced <u>limitation 1[f]</u>, because the sheath had ventilation openings on the top side, as shown in the image above with respect to limitation 1[a], annotated to show the ventilation openings.

**The TSG4H157 product practiced claim 3 of the '137 patent**, because it was a backpack, which is a "bag" as claimed. SUMF ¶¶ 81-83.

**The TSG4H157 product practiced claim 6 of the '137 patent,** because the sheaths sold with TSG4H157 product had ventilation openings along the open end of the sheath, as shown above in the image with respect to limitation 1[a].

**The TSG4H157 product practiced claim 7 of the '137 patent,** because the surrounding bottom portion acts as the attachment portion that is in communication with the inner surface of the body, as explained above with respect to limitation 1[e].

**The TSG4H157 product practiced claim 19 of the '137 patent** because when attached to the shoulder strap, the tapered closed end of the sheath was above the open end of the sheath, as shown at right. Ex. 9 (Krummholz Litigation, Complaint, Ex. A) at 3 (annotated).



**The TSG4H157 product practiced claim 20 of the '137 patent** because the "plastic support" (shown ███) portion of the sheath used in the TSG4H157 product was a "piece of material" that is ████████████████████████ ████████████████████████████, as shown at right. Ex. 25 (SWISSDIGITAL001835) at - 1841 (annotation in original).

**The TSG4H157 product practiced claim 21 of the '137 patent** because the surrounding bottom portion was flat, as shown above with respect to limitation 1[a].

   **b.**   <u>Group III's 6067 practiced the claims of the '138 and '009 patents.</u>

**The 6067 with SG-X27 sheath practiced claim 1 of the '138 patent and claim 1 of the '009 patent.**[9] To the extent the <u>preambles of these claims are</u> limiting, the SG-X27 was a sheath for convenient charging because it allowed a user to charge a device without opening a bag. *E.g.,* Ex. 22 (GROUPIII000022 (6067 design document)) at -0025; Ex. 21 (GROUPIII000094 (SG-X27 design document)); Ex. 15 (Pulichino Dep. Tr.) at 38:2-9 (explaining female end of USB was

---

[9] Because the '138 patent and '009 patent have very similar, and in many cases identical, claim limitations, Defendants address them together herein for efficiency.

external to the bag so a customer can charge a device). The SG-X27 also practiced <u>limitation 1[a]</u> of both claims, as shown below. *Id.* at -0095 (annotated to show a left side, right side, top side, first closed end, second open end, and surrounding bottom portion surrounding the sides and ends).



The 6067 with the SG-X27 practiced <u>limitations 1[b] and 1[c]</u> of the '138 patent and <u>limitations 1[b], 1[c], and 1[d]</u> of the '009 patent. The sheath portion was at the opening or port in the bag, and received a female end of a USB cable, which has four sides, an operative end, a cord end, and a cord, with a portion of the sheath extending above the surface of the body by having the sheath portion holding the female connector come through a hole in the bag (with an inner and outer surface of the bag where the hole is). SUMF ¶¶ 97 (explaining the female end is above the fabric), 98-99 (describing the wire and "off-the-shelf female adaptor"), 101 (explaining the female end is "external to the bag at the power outlet" with the "operative end" being exposed), 113 (similar). The sheath is also separate from and attaches to the bag body, and was "at the opening" in the bag body so that the sheath can be pushed through the hole. SUMF ¶¶ 97, 101, 113-115.

The 6067 with the SG-X27 also practiced <u>limitation 1[d]</u> of the '138 patent and <u>limitation 1[e]</u> of the '009 patent, because the operative end of the female end of the USC cable is uncovered in the open end of the sheath, meaning the cord end will be retained in the closed end, and the

female connector is uncovered above the outer surface of the body. SUMF ¶¶ 101 (describing female connector being "exposed"), 113 (similar); *see also* Ex. 21 (GROUPIII000094). Finally, the SG-X27 sheath also practiced <u>limitation 1[e]</u> of the '138 patent and <u>limitation 1[f]</u> of the '009 patent, because the surrounding bottom portion of the sheath was attached to the inner surface of the body. In the 6067 bag, the sheath would go through a hole on the inner surface of the bag, such that the sheath comes above the surface while the "flange" or surrounding bottom portion would remain under the surface to be attached to the inner surface. SUMF ¶ 97, 112-113; *see also* Ex. 21 (GROUPIII000094). The result would be, for example, that only the sheath portion is visible outside the bag, while the surrounding bottom portion would be attached to the inner surface of the bag and therefore not visible from the outside.  This example is shown in Group III's design document, a portion of which is reproduced at right. Ex. 22 (GROUPIII000022 (6067 design document)) at -0025 (annotated). The cord of the female end would go through the hole under the sheath to the inside of the bag. *E.g.*, *id.* at -0026 (showing male end of USB cable inside the bag); SUMF ¶ 101-102. 113.



**The 6067 with SG-X27 sheath practiced claim 2 of the '138 patent and claim 2 of the '009 patent**. As explained above, the SG-X27 sheath would be pushed through a hole in the bag, creating an "opening between the inner surface and the outer surface," while the flange portion, or "surrounding bottom portion," would attach to the inner surface of the bag body.

**The 6067 with SG-X27 sheath practiced claim 4 of the '138 patent and claim 4 of the '009 patent**, because the 6067 product was a carry-on bag, which is a type of "luggage" as claimed. Ex. 22 (GROUPIII000022) (describing bag as a "Carry on").

**The 6067 with SG-X27 sheath practiced claim 8 of the '138 patent and claim 8 of the '009 patent,** because the flange, or "surrounding bottom portion," acts as the attachment portion that is in communication with the inner surface of the body, as explained above for limitation 1[e] and claim 2 of the '138 patent and limitation 1[f] and claim 2 of the '009 patent.

**The 6067 with SG-X27 sheath practiced claim 17 of the '138 patent and claim 17 of the '009 patent,** because the bottom of the sheath has an opening through which the female end of the USB cable can be pushed through, with the cord remaining outside the sheath to go through the opening. SUMF ¶ 113 (explaining there is a hole in the back of the USB port where the USB cable could come out); *see also* Ex. 21 (GROUPIII000094) at -0095 (reproduced at right, ▮▮▮▮ ▮▮▮ ▮▮▮▮▮▮▮▮).



**The 6067 with SG-X27 sheath practiced claim 19 of the '138 patent and claim 19 of the '009 patent,** because when attached, the closed end was above the open end. *See* Ex. 22 (GROUPIII000022) at -0025 (reproduced at right with annotations).



**The 6067 with SG-X27 sheath practiced claim 20 of the '138 patent and claim 20 of the '009 patent,** because the sheath portion that is holding, or retaining, the female end of the USB cable, is "attached" to the surrounding bottom portion, as shown in the above image with respect to limitation 1[a] of both patents.

**The 6067 with SG-X27 sheath practiced claim 21 of the '138 patent and claim 21 of the '009 patent,** because the flange portion is flat, as shown in the above image with respect to limitation 1[a] of both patents.

**The 6067 with SG-X27 sheath practiced claim 23 of the '138 patent and claim 29 of the '009 patent.** To the extent the <u>preamble</u> is limiting, the SG-X27 was a "sheath for convenient charging," as explained above with respect to the preamble of claim 1 of both patents. The "raised portion" corresponds to the recited structure in limitation 1[a] of both patents, *i.e.*, the sheath with top, right, and left sides, and closed and open ends, because the sides and ends form a "raised" portion with respect to the surrounding bottom portion, as shown at right. Ex. 21 (GROUPIII000094 (SG-X27 design document)) (annotated).



The limitations of claim 23 of the '138 patent and claim 29 of the '009 patent are otherwise identical to the corresponding limitations in claim 1 of both patents, and the 6067 with SG-X27 sheath practiced those limitations for the same reasons explained above with respect to claim 1.

    **c.**   <u>The TSG4H157 practiced the claims of the '138 and '009 patents.</u>

**The TSG4H157 practiced claim 1 of the '138 patent and claim 1 of the '009 patent**. To the extent the <u>preambles</u> of these claims are limiting, the TSG4H157 was a sheath for convenient charging, as explained above with respect to the preamble of claim 1 of the '137 patent. The sheath used in the TSG4H157 also practiced <u>limitation 1[a]</u> of both claims, as shown below. Ex. 25 (SWISSDIGITAL001835) at -1841 (annotated, showing the ███████████ ██████████████████████████████████████████████████████████).



The TSG4H157 practiced <u>limitations 1[b] and 1[c]</u> of the '138 patent and <u>limitations 1[b],</u> <u>1[c], and 1[d]</u> of the '009 patent, because the sheath portion holding the female connector went through a hole in the bag (with an inner and outer surface where the hole is) to the surface. For example, when attached, the sheath portion is visible above the surface of the bag's shoulder straps, as shown at right.  Ex. 9 (Krummholz Litigation, Complaint, Ex. A) at 3. The TSG4H157



sheath also it received a female end of a USB cable, which has four sides, an operative end, and a cord end. Ex. 25 (SWISSDIGITAL001835) at -1841 (illustrating assembly of the sheath, including the USB cable connector). The TSG4H157 also practiced <u>limitation 1[d]</u> of the '138 patent and <u>limitation 1[e]</u> of the '009 patent, because the surrounding bottom portion was attached to the inner surface of the body, and because the female USB connector operative end was uncovered and above the body. For example, in the above image, only the sheath portion is visible, meaning the surrounding bottom portion would have to be inside the surface of the shoulder strap to be used for attaching the sheath to the strap, while the sheath with the female connector is above the surface of the shoulder strap. Finally, the TSG4H157 practiced <u>limitation 1[e]</u> of the '138 patent and <u>limitation 1[f]</u> of the '009 patent, because the surrounding bottom portion was attached to the inner

18

surface of the body.

**The TSG4H157 practiced claims 6 and 7 of both the '138 and '009 patents,** because the sheath used in the TSG4H157 had ventilation openings, and the ventilation openings were along the open end of the sheath, as shown above in the image with respect to limitation 1[a].

**The TSG4H157 product practiced claim 20 of both the '137 and '009 patents,** because the "plastic support" (shown ███) of the sheath used in the TSG4H157 product was a "piece of material" that is ████████████████████████ ████████████████████████████ as shown at right. Ex. 25 (SWISSDIGITAL001835) at -1841 (annotation in original).

    2.    **Group III's 6067 Product and Plaintiff's TSG4H157 Product Were Subject to Commercial Offers for Sale Prior to the Critical Date.**

Group III's 6067 products were the "subject of a commercial offer for sale" prior to the critical date of April 19, 2018. *E.g.*, *Junker*, 25 F.4th 1026. The 6067 product was sold in large quantities on several occasions to Group III's customers from September 2017 to December 2018. SUMF ¶¶ 116-117; *see also* Ex. 23 (GROUPIII000048); Ex. 24 (GROUPIII000088). These 6067 products all included the SG-X27 USB component. SUMF ¶¶ 115, 117. Many of these sales of the 6067 products occurred prior to the critical date of April 19, 2018. SUMF ¶¶ 116-117.

Plaintiff's own TSG4H157 product was also subject to commercial offers for sale prior to the critical date. When it filed the complaint in the Krummholz litigation, Plaintiff was already selling the TSG4H157, identified in Exhibit A to that complaint. SUMF ¶¶ 76, 81-83. Plaintiff globally marketed and advertised its products and attended trade shows to promote the sales of its products. SUMF ¶¶ 76-80. Plaintiff filed the complaint in the Krummholz Litigation on January 29, 2015, long before the critical date of April 19, 2018. SUMF ¶ 74.

Group III and Plaintiff's sales of these products were sales "made to commercially exploit the invention," and thus satisfy the commercial sale requirement. *See*, *e.g.*, *Sunoco Partners Mktg. & Terminals L.P. v. U.S. Venture, Inc.*, 32 F.4th 1161, 1174 (Fed. Cir. 2022).

### 3.    The Invention Was Ready for Patenting Prior to the Critical Date.

The inventions embodied in the 6067 and TSG4H157 products were "ready for patenting" prior to the critical date. *E.g.*, *Junker*, 25 F.4th 1026. An invention is "ready for patenting when it is reduced to practice." *Hospira*, 881 F.3d at 1353. The commercial sales of the products prior to the critical date establish that they were reduced to practice, and therefore ready for patenting, at that time. *E.g.*, *Vanmoor v. Wal-Mart Stores, Inc.*, 201 F.3d 1363, 1366-67 (Fed. Cir. 2000) (finding that "pre-critical date sales" of "completed" products showed that "any invention embodied in [those products] was reduced to practice before the critical date").

## V.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant summary judgment that 1) the Continuation Patents are entitled to priority only to the April 19, 2019; and 2) that the Challenged Claims of the Continuation Patents are invalid under 35 U.S.C. § 102.

Dated: April 11, 2025                    Respectfully submitted,

                                         By: */s/ Adam J. Kessel*
                                         Adam J. Kessel
                                         Massachusetts Bar No. 661,211
                                         kessel@fr.com
                                         **FISH & RICHARDSON P.C.**
                                         One Marina Park Drive
                                         Boston, MA 02210
                                         Tel: (617) 542-5070
                                         Fax: (617) 542-8906

                                         Neil J. McNabnay (*Pro Hac Vice*)
                                         Texas Bar No. 24002583
                                         mcnabnay@fr.com
                                         **FISH & RICHARDSON P.C.**
                                         1717 Main Street, Suite 5000
                                         Dallas, TX 75201
                                         Tel: (214) 747-5070
                                         Fax: (214) 747-2091

                                         Bailey K. Benedict (*Pro Hac Vice*)
                                         Texas Bar No. 24083139
                                         benedict@fr.com
                                         Ethan K. Kovar (*Pro Hac Vice*)
                                         Texas Bar No. 24138134
                                         kovar@fr.com
                                         **FISH & RICHARDSON P.C.**
                                         909 Fannin Street, Suite 2100
                                         Houston, TX 77010
                                         Tel: (713) 654-5300
                                         Fax: (713) 652-0109

                                         Wonjoon Chung (*Pro Hac Vice*)
                                         Georgia Bar No. 396468
                                         chung@fr.com
                                         **FISH & RICHARDSON P.C.**
                                         1180 Peachtree Street NE
                                         21st Floor
                                         Atlanta, GA 30309
                                         Tel: (404) 892-5005
                                         Fax: (404) 892-5002

                                         *Attorneys for Defendants*
                                         *SAMSONITE GROUP S.A.; SAMSONITE*
                                         *LLC; SAMSONITE COMPANY STORES,*
                                         *LLC; and DIRECT MARKETING*
                                         *VENTURES, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 11, 2025, I caused the foregoing document to be served upon all counsel of record via electronic mail.


*/s/ Adam J. Kessel* _____
Adam J. Kessel