**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SWISSDIGITAL USA CO., LTD., | |
| Plaintiff, | |
| v. | Civil No. 1:24-cv-11636 |
| SAMSONITE GROUP S.A.; SAMSONITE LLC; SAMSONITE COMPANY STORES, LLC; and DIRECT MARKETING VENTURES, LLC, | **JURY TRIAL DEMANDED** |
| Defendants. | |

**DEFENDANTS SAMSONITE GROUP S.A., SAMSONITE LLC, SAMSONITE COMPANY STORES, LLC, AND DIRECT MARKETING VENTURES, LLC'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Local Rule 56.1, and in support of their Motion for Summary Judgment regarding the correct priority date of U.S. Patent Nos. 10,931,137 (the "'137 patent"), 10,931,138 (the "'138 patent"), and 11,601,009 (the "'009 patent") and invalidity of the asserted claims of those patents, Defendants Samsonite Group S.A., Samsonite LLC, Samsonite Company Stores, LLC, and Direct Marketing Ventures, LLC (collectively, "Defendants") submit the following statements of undisputed material facts ("SUMF").

## STATEMENTS OF UNDISPUTED MATERIAL FACT

### I.    The Asserted Patents

1.     Plaintiff Swissdigital USA Co., Ltd. ("Plaintiff") asserts certain claims of U.S. Patent No. 10,574,071 (the "'071 patent), the '137 patent, the '138 patent, and the '009 patent (collectively, "Asserted Patents") in this litigation. Specifically, Plaintiff asserts claims 1, 3, 4, 6-7, and 18-21 of the '137 patent, claims 1-2, 4-8, 17-21, and 23 of the '138 patent, and claims 1, 2, 4-8, 17-21, and 29 of the '009 patent. Ex. 1 (Ex. B to Swissdigital's Infringement Contentions) at 2-12 (listing asserted claims for the Continuation Patents); Ex. 2 (Nov. 6, 2024 Email fr Draffin to Defendants) (explaining that Exhibit B to Plaintiff's contentions "discloses the specific claims that [Plaintiff] is asserting").

### A.    The '071 patent

2.     Ex. 3 ('071 patent) is a true and correct copy of the '071 patent.

3.     The '071 patent is titled "BAG OR LUGGAGE WITH USB CHARGING CONNECTOR." Ex. 3 ('071 patent) at Cover.

4.     The '071 patent was filed on August 26, 2015, and issued on February 25, 2020. *Id.*

5.     The '071 patent claims priority to a Chinese patent application, CN 2014 2 0692148 U (the "Chinese 148 Application"). *Id.*

6.      The specification of the '071 patent contains 10 Figures. *Id.* at Figs. 1-10.

7.      The 10 Figures in the '071 patent do not depict a "surrounding bottom portion." *Id.*

8.      The specification of the '071 patent does not contain the term "surrounding bottom portion." *See generally id.*

9.      The specification of the '071 patent does not contain the word "surround" or "surrounding." *See generally id.*

10.      The specification of the '071 patent does not contain the word "portion." *See generally id.*

11.      The word "bottom" appears twice in the '071 patent. *Id.* at 4:10, 4:22. The first disclosure reads ". . .a power cable outlet at the ***bottom*** on the side of the bag body 1 . . . ." *Id.* at 4:10. The second disclosure similarly reads ". . . and a power cable outlet at the ***bottom*** on the side of the case body 1 . . . ." *Id.* at 4:22.

12.      The '071 patent states, "The present invention intends to overcome the disadvantages stated above, and provides a type of bag or luggage for convenient charging, which enables the user to charge a device or product needing to be charged conveniently at any time or any place during traveling, without necessarily opening the bag or luggage, nor taking out the power source for charging." *Id.* at 1:33-39.

13.      The '071 patent states, "The present invention is realized in the following way: a type of bag or luggage for convenient charging, comprising the luggage body, wherein, a placing space for placing an electrical storage device is provided inside the bag or luggage body, and a power cable outlet on the outer surface of the bag or luggage body; the bag or luggage further comprises a USB extension cable on the body of the luggage, and the male connector of the USB

extension cable is inside the bag or luggage body, which is used to connect to the electrical storage device in the electrical storage device placing space; the female connector is in the power cable outlet or exposed outside the power cable outlet, and the female connector may be equipped with a sheath for water proofing wrapped on the outer surface of the female connector." *Id.* at 1:40-54.

14.    The '071 patent states, "Description of the symbols in the drawings: 1. bag or luggage body; 2. USB extension cable; 2-1. male connector; 2-2. female connector; 3. sheath; 4. duct cap; 5. groove; 6. nameplate; 7. fastener; 8. cable laying channel; 9. Bluetooth anti-lost alarm; 10. GPS device; 11. shoulder strap; 12. external USB connecting line; and power cable outlet 14." *Id.* at 3:1-6.

15.    The '071 patent states, "FIG. 1 shows embodiment 1 of the utility model, which is a backpack comprising the bag body 1, wherein, a placing space for placing an electrical storage device (which is not shown in the drawing) is provided inside the bag body 1, and a power cable outlet on the side of the bag body 1; the bag further comprises a USB extension cable 2 on the bag body 1, and the male connector 2-1 of the USB extension cable 2 is connected to the power storage device in the power storage device placing space; the female connector 2-2 is exposed outside the power cable outlet, and the female connector 2-2 is equipped with a sheath 3 for water proofing wrapped on the outer surface of the female connector 2-2; the male connector 2-2 is further equipped with a Bluetooth anti-lost alarm 9, which is used to connect to the Bluetooth device on the product to be charged, and a GPS device 10 for positioning." *Id.* at 3:14-29.

16.    The '071 patent states, "FIG. 3 shows embodiment 3 of the utility model, which is a rod box comprising the box body 1, wherein, a placing space for placing an electrical storage device (which is not shown in the drawing) is provided inside the box body 1, and a power cable

outlet on the side of the box body 1; the box further comprises a USB extension cable 2 on the box body 1, and the male connector 2-1 of the USB extension cable 2 is connected to the power storage device in the power storage device placing space; the female connector 2-2 is exposed outside the power cable outlet, and the female connector 2-2 is equipped with a sheath 3 for water proofing wrapped on the outer surface of the female connector 2-2, and the external USB connecting line 12 connected to the female connector 2-2." *Id.* at 3:46-59.

17.     The '071 patent states, "FIG. 4 shows embodiment 4 of the utility model, which is a gentlemen handbag comprising the bag body 1, wherein a placing space for placing an electrical storage device (which is not shown in the drawing) is provided inside the bag body 1, and a power cable outlet (which is not shown in the drawing) on the surface of the bag body 1; the bag further comprises a USB extension cable 2 on the bag body 1, and the male connector 2-1 of the USB extension cable 2 is connected to the power storage device in the power storage device placing space; the female connector 2-2 is exposed outside the power cable outlet, and the female connector 2-2 is equipped with a sheath 3 for water proofing wrapped on the outer surface of the female connector 2-2." *Id.* at 3:60-4:5.

18.     The '071 patent states, "FIG. 8 shows embodiment 8 of the utility model, which is a shoulder bag comprising the bag body 1, wherein, a placing space for placing an electrical storage device (which is not shown in the drawing) is provided inside the bag body 1, and a power cable outlet on the side of the bag body 1; the bag further comprises a USB extension cable 2 on the bag body 1, and the male connector 2-1 of the USB extension cable 2 is connected to the power storage device in the power storage device placing space; the female connector 2-2 is exposed outside the power cable outlet, and the female connector 2-2 is equipped with a sheath 3 for water proofing wrapped on the outer surface of the female connector 2-2." *Id.* at 4:34-45.

19.    The '071 patent states, "FIG. 9 shows embodiment 9 of the utility model, which is an outdoor backpack comprising the bag body 1, wherein, a placing space for placing an electrical storage device is provided inside the bag body 1, and a power cable outlet on a shoulder strap of the bag body 1; the bag further comprises a USB extension cable 2 on the bag body 1, and the male connector 2-1 of the USB extension cable 2 is connected to the power storage device in the power storage device placing space; the female connector 2-2 is exposed outside the power cable outlet, and the female connector 2-2 is equipped with a sheath 3 for water proofing wrapped on the outer surface of the female connector 2-2; the bag or luggage body 1 is provided with a cable laying channel 8 from the power storage device placing space to the power cable outlet for the penetration of the USB extension cable 2." *Id.* at 4:46-60.

20.    The '071 patent states, "With reference to the claims, the present invention provides a bag or luggage for convenient charging, comprising: a luggage body (1) having a placing space for placing a power storage device inside the luggage body and a power cable outlet on the outer surface of the luggage body (1); a USB extension cable (2) having a male connector (2-1) and a female connector (2-2) on the luggage body (1),wherein the male connector (2-1) of the USB extension cable is inside the luggage body (1) and is used to connect to the power storage device in the placing space; wherein the female connector (2-2) is in the power cable outlet or exposed outside the power cable outlet, and the female connector (2-2) is equipped with a sheath (3) wrapped on the outer surface of the female connector (2-2) for water proofing. The term "luggage body" includes any bag, bag body, purse, backpack, luggage or the like. The placing space would typically be a pocket on the inside of the luggage body that holds the power storage device. The power storage device may be any device capable of charging a device. The sheath (3) may be further equipped with a dust cap (4) for dust proofing. The power

cable outlet is provided on the surface of the luggage body, the female connector (2-2) is exposed outside the power cable outlet, and the dust cap (4) is attached on the side of the female connector (2-2). The power cable outlet may be provided in a groove (5) on the side of the luggage body, the female connector is in the power cable outlet, and the dust cap is at the opening of the groove and connected to the groove. The power cable outlet may be provided on any edge of a nameplate (6). The power cable outlet is provided on either side of a fastener (7).The luggage body may be provided with a cable laying channel (8) from the power storage device placing space to the power cable outlet for the penetration of the USB extension cable (2). The male connector of the USB extension cable is further equipped with a wireless technology standard for exchanging data over short distances (e.g. Bluetooth™) as an anti-loss alarm (9), which is used to connect to the device on the product to be charged. The Bluetooth™ on the USB extension cable would connect with the Bluetooth™ on, for example, a phone and could be used to locate the luggage body. The male connector of the USB extension cable may be further equipped with a GPS device (10) for positioning. The term positioning may be interchanged with locating. The power cable outlet may be on a shoulder strap (11) of the bag." *Id.* at 4:65-5:42.

21.    Independent claim 1 of the '071 patent recites the following limitation: "wherein the female connector is retained outside and adjacent to the power cable outlet with one side of the four sides of the female connector in communication with the bag or luggage body, and the other three sides of the female connector are covered by a water proof sheath that protects the female connector and provides it in a flat position and wherein the sheath is above and covers the power cable outlet, . . . ." *Id.* at Claim 1.

22.    Independent claim 10 of the '071 patent recites the following limitation: "wherein the female connector is retained outside and adjacent to the power cable outlet with one side of

the four sides of the female connector in communication with the bag or luggage body, and the other three sides of the female connector are covered by a waterproof sheath that protects the female connector and provides it in a flat position, . . . ." *Id.* at Claim 10.

**B.    The '137 patent**

23.    Ex. 4 ('137 patent) is a true and correct copy of the '137 patent.

24.    The '137 patent is titled "SHEATH FOR USB CHARGER." Ex. 4 ('137 patent) at Cover.

25.    The '137 patent was filed on April 1, 2019, and issued on February 23, 2021. *Id.*

26.    The '137 patent on its face claims to be a continuation of the application that issued as the '071 patent. *Id.*

27.    The '137 patent claims priority to a Chinese patent application, CN 2014 2 0692148 U (the "Chinese 148 Application"). *Id.*

28.    The specification of the '137 patent contains 46 Figures. *Id.* at Figs. 1-46.

29.    Figures 1-10 of the '137 patent are substantively identical to Figures 1-10 of the '071 patent. *Compare id.* at Figs 1-10 *with* Ex. 3 ('071 patent) at Figs. 1-10. Any differences are not material to Defendants' motion for summary judgment.

30.    Figures 11-46 of the '137 patent are newly added figures in the '137 patent that are not in the '071 patent. *Compare id.* at Figs. 1-10 *with* Ex. 4 ('137 patent) at Figs. 11-46.

31.    The written description of the '137 patent contains several disclosures that are not present in the written description of the '071 patent. *Compare generally id. with* Ex. 3 ('071 patent).

32.    The '137 patent states, "It is noted that the sheath may also have a surrounding bottom attachment portion (4508 and 4602) which allows the sheath to be easily attached to a body. The surrounding bottom attachment portion is a flat portion surrounding the at least three

sides, the first tapered closed end and the second open end of the sheath. As shown in FIG. 14-16 this may allow the sheath to be sewn or glued to the body. The attachment portion (4508 and 4602) is in communication with the inner surface of the body. There may also be a piece of fabric (1500) in communication with the inner surface of the body and retaining at least the operative end of the female end of the USB cable in the sheath. The piece of fabric may partially (as depicted in FIG. 15) or entirely (as depicted by the rigid cover 2000 in FIG. 20 and depicted in FIG. 23) cover the opening between the inner surface and the outer surface and has an opening for the USB cable. FIG. 20 depicts that the piece of fabric is a reinforced piece of fabric which may be a rigid cover (2000) in communication with the inner surface of the body and retaining at least the operative end of the female end of the USB cable in the sheath. The sheath may also have four sides with a bottom side (4510) having a bottom side opening to allow the female end of the USB cable (2200) to sit in the sheath and the cord of the USB to go through the bottom side opening and the power cable outlet. This is to say that the sheath may have at least three sides and an embodiment is envisioned with the sheath having four sides without departing from the present invention." Ex. 4 ('137 patent) at 5:57-6:18. This disclosure is not in the specification of the '071 patent. *See generally* Ex. 3 ('071 patent).

33.    Of the Asserted Patents, the '137 patent is the earliest-filed patent in which the term "surrounding bottom portion" appears. *See generally id.*; Ex. 4 ('137 patent); Ex. 5 ('138 patent); Ex. 6 ('009 patent).

34.    Claims 1, 3, 4, 6, 7, 18, 19, 20, and 21 of the '137 patent are accurately reproduced in Appendix A to Defendants' Motion for Summary Judgment, and are each directed to a "sheath." *See* Appendix A.

**C.    The '138 patent**

35.    Ex. 5 ('138 patent) is a true and correct copy of the '138 patent.

36.     The '138 patent is titled "SHEATH FOR USB CHARGER." Ex. 5 ('138 patent) at Cover.

37.     The '138 patent was filed on April 2, 2020, and issued on February 23, 2021. *Id.*

38.     The '138 patent is a continuation in part of application No. 16/388,994, which issued as the '137 patent. *Id.*

39.     The earliest patent to which the '138 patent claims priority on its face is the '071 patent. *Id.*

40.     The specification of the '138 patent contains 61 Figures. *Id.* at Figs. 1-46.

41.     Figures 1-10 of the '138 patent are substantively identical to Figures 1-10 of the '071 patent. *Compare id.* at Figs 1-10 *with* Ex. 3 ('071 patent) at Figs. 1-10. Any differences are not material to Defendants' motion for summary judgment.

42.     Figures 11-61 of the '138 patent are newly added figures in the '138 patent that are not in the '071 patent. *Compare id.* at Figs. 1-10 *with* Ex. 5 ('138 patent) at Figs. 11-61.

43.     The written description of the '138 patent contains several disclosures that are not present in the written description of the '071 patent. *Compare generally id. with* Ex. 3 ('071 patent).

44.     The Abstract of the '138 patent states, "A sheath for convenient charging having a left side, a right side and a top side, a first closed end, a second open end and a surrounding bottom portion surrounding at least a portion of the sides and ends of the sheath. At least a portion of the sheath extends above an outer surface of a body, wherein the body has an inner surface, an outer surface and an opening between the inner surface and the outer surface. The sheath is at the opening and the sheath receives a female end of a USB cable having four sides, an operative end, a cord end and a cord. The operative end of the female end of the USB cable is

9

retained in the second open end of the sheath and the cord end of the female end of the USB cable is retained in the first closed end of the sheath to provide the female end of the UBS cable in a flat position with the operative end of the female connector being uncovered and above the outer surface of the body and the cord of the female end goes through the opening between the inner surface and the outer surface and the surrounding bottom portion is attached to a portion of the body." Ex. 5 ('138 patent) at Abstract.

45.    The '138 patent states, "It is noted that the sheath may also have a surrounding bottom attachment portion (4508 and 4602) which allows the sheath to be easily attached to a body. The surrounding bottom attachment portion is a flat portion surrounding the at least three sides, the first tapered closed end and the second open end of the sheath. As shown in FIG. 14-16 this may allow the sheath to be sewn or glued to the body. The attachment portion (4508 and 4602) is in communication with the inner surface of the body. There may also be a piece of fabric (1500) in communication with the inner surface of the body and retaining at least the operative end of the female end of the USB cable in the sheath. The piece of fabric may partially (as depicted in FIG. 15) or entirely (as depicted by the rigid cover 2000 in FIG. 20 and depicted in FIG. 23) cover the opening between the inner surface and the outer surface and has an opening for the USB cable. FIG. 20 depicts that the piece of fabric is a reinforced piece of fabric which may be a rigid cover (2000) in communication with the inner surface of the body and retaining at least the operative end of the female end of the USB cable in the sheath. The sheath may also have four sides with a bottom side (4510) having a bottom side opening to allow the female end of the USB cable (2200) to sit in the sheath and the cord of the USB to go through the bottom side opening and the opening. This is to say that the sheath may have at least three sides and an

embodiment is envisioned with the sheath having four sides without departing from the present invention." *Id.* at 6:3-30.

46.    The '138 patent states, "With reference to FIGS. 44, 47, 48 and 49, a sheath for convenient charging is provided, comprising: a sheath having a left side (4404), a right side (4406), a top side (4408), a first closed end (4410), a second open end (4400) and a surrounding bottom portion (4402) surrounding at least a portion of one of the left side (4404), the right side (4406), the top side (4408), the first closed end (4410) and the second open end (4400) of the sheath. The "surrounding at least a portion of one of the left side (4404), the right side (4406), the top side (4408), the first closed end (4410) and the second open end (4400) of the sheath" is intended to say that the surrounding bottom portion may surround a portion of the sheath that extends above the outer surface of a body, as depicted in FIGS. 47, 48 and 49. As can be seen in FIG. 47, the surrounding bottom portion has a surrounding bottom portion left side (4702) attached to the left side (4708) and a surrounding bottom portion right side (4704) attached to the right side (4710) of the sheath. It is noted that the surrounding bottom portion left side (4702) is attached to a small portion of the first closed end (4706) and the surrounding bottom portion right side (4704) is also attached to a small portion of the first closed end (4706). In this embodiment, the surrounding bottom portion does not meet the second open end (4712). As can be seen in FIG. 48, the surrounding bottom portion has a surrounding bottom portion first end portion (4802) and a surrounding bottom portion second end portion (4804). In this embodiment, the surrounding bottom portion first end portion (4802) is attached to the first closed end (4806) and the surrounding bottom portion second end portion (4804) is attached to the second open end (4808). As can be seen in FIG. 49, the sheath (4904) has a the surrounding bottom portion (4906)

attached a portion of the left side (4902), a portion of the right side (4905) and the second open end (4900)." *Id.* at 6:52-7:19.

47.     The '138 patent states, "When attached to the body, at least a portion of the sheath extends above an outer surface (5202) of a body, wherein the body has an inner surface (not shown in this Figure, see 1900 of FIG. 19 for the inner surface, it would be understood and appreciated by one of ordinary skill in the art that the inner surface is simply the other side of the outer surface), an outer surface (5202) and an opening (5204) between the inner surface and the outer surface. The opening (5204) refers to the hole in the body. This may take different forms. According to one embodiment, as depicted in FIGS. 52, 11, 12, 13, 14, 15, 16, 17, 19, 20, 21, 22, 25, 26 and 27 the surrounding bottom portion touches the inner surface of the body and the sheath sits inside an opening in the body and extends above an outer surface of a body. The body has an opening between the inner surface and the outer surface and the surrounding bottom portion is attached to the inner surface of the body. The surrounding bottom portion (5100) of the sheath in FIG. 52 is not seen as it is on the inner surface of the body. The cord (5102) of the USB cable is on the interior of the body." *Id.* at 7:20-38.

48.     The '138 patent states, "Alternatively, as depicted in FIGS. 53, 54 and 55, the entire sheath (including the surrounding bottom portion (5300) may sit on top of the body. The surrounding bottom portion (5300) may be in communication with the outer surface (5302) of the body. There may also be a piece of material (5404) attached to the surrounding bottom portion (5300) to retain the operative end of the female end of the USB cable in the sheath. As can be seen there would be a cord opening (5406) in the piece of material (5404) to allow the USB cable to be attached to the top of the body and the cord (5408) fed through an opening

(5410) in the body to the interior of the body. FIG. 55 depicts the interior (5500) of the body

showing cord (5502) fed through opening (5504)." *Id.* at 7:39-51.

49.    The '138 patent states, "In both embodiments (the surrounding bottom portion on

top of the body or on the inner surface of the body) the sheath is at the opening and the sheath

receives a female end of a USB cable (5104) having four sides (see FIGS. 43, 4304, 4306, 4308

and 4310 depicting the USB cables four sides), an operative end (5106), a cord end (5108) and a

cord (5102). As depicted in FIG. 44, the operative end (4300) of the female end of the USB cable

is retained in the second open end (4400) of the sheath and the cord end of the female end of the

USB cable is retained in the first closed end (4410) of the sheath to provide the female end of the

UBS cable in a flat position with the operative end (4300) of the female connector being

uncovered and above the outer surface of the body (See FIGS. 52 and 53), wherein the cord of

the female end goes through the opening between the inner surface and the outer surface and the

surrounding bottom portion is attached to a portion of the body (See FIG. 51 cord (5102) and

FIG. 55 cord (5502)." *Id.* at 7: 52-8:2.

50.    The '138 patent states, "As shown in FIGS. 56, 57, 58, 29, 60 and 61 the raised

portion may take many different shapes. The sheath having a raised portion that is selected from

the group consisting of dome shaped (5600), raised circular shape (5700), raised semi-circular

shape (5800), raised rectangular shape (6000), raised square shape and raised polygon shape

(6100 and 5900) that extends above an outer surface of a body, wherein the raised portion has a

USB opening, and a surrounding bottom portion surrounding at least a portion of the raised

portion, wherein the body has an inner surface, an outer surface and a body opening between the

inner surface and the outer surface; wherein the sheath is at the body opening with the raised

portion above the outer surface and at least a portion of the surrounding bottom portion is in

communication with a portion of the body, and wherein the sheath has a female end of a USB cable in the USB opening, wherein the female end of the USB cable has four sides, an operative end and a cord end and the operative end of the female end of the USB cable is retained in the USB opening to provide the female end of the UBS cable in a flat position with the operative end of the female connector being uncovered and above the outer surface of the body." *Id.* at 8:25-46.

51.     The disclosures of the '138 patent cited in SUMF ¶¶ 44-50, *supra*, are not in the specification of the '071 patent. *See generally* Ex. 3 ('071 patent).

52.     Claims 1, 2, 4, 5, 6, 7, 8, 17, 18, 19, 20, 21, and 23 of the '138 patent are accurately reproduced in Appendix A to Defendants' Motion for Summary Judgment, and are each directed to a "sheath." *See* Appendix A.

**D.    The '009 patent**

53.     Ex. 6 ('009 patent) is a true and correct copy of the '009 patent.

54.     The '009 patent is titled "SHEATH FOR CONVENIENT CHARGING." Ex. 6 ('009 patent) at Cover.

55.     The '009 patent was filed on May 12, 2022, and issued on March 7, 2023. *Id.*

56.     The '009 patent is a continuation in part of the application that issued as the '138 patent. *Id.*

57.     The '009 patent is also a continuation in part of the application that issued as the '137 patent. *Id.*

58.     The earliest U.S. patent to which the '009 patent claims priority on its face is the '071 patent. *Id.*

59.     The '009 patent claims priority to a Chinese patent application, CN 2014 2 0692148 U (the "Chinese 148 Application"). *Id.*

60.     The specification of the '009 patent contains 72 Figures. *Id*. at Figs. 1-72.

61.     Figures 1 and 2 of the '009 patent are substantively identical to Figures 1 and 2 of the '071 patent. *Compare id*. at Figs 1, 2 *with* Ex. 3 ('071 patent) at Figs. 1, 2. Any differences are not material to Defendants' motion for summary judgment.

62.     Figures 3-72 of the '009 patent are newly added figures in the '009 patent that are not in the '071 patent. *Compare id*. at Figs. 1-10 with Ex. 6 ('009 patent) at Figs. 3-72.

63.     The written description of the '009 patent contains several disclosures that are not present in the written description of the '071 patent. *Compare generally id. with* Ex. 3 ('071 patent).

64.     The Abstract of the '009 patent states, "Sheath having a left side, a right side and a top side, a first closed end, a second open end and a surrounding bottom portion, a body having an inner surface, an outer surface and a first port between the inner surface and the outer surface, a portion of the sheath extends above the outer surface of the body, the sheath receives a female end of a cable connector having surrounding sides, an operative end, a cord end and a cord, the operative end of the female end of the cable connector is retained in the second open end of the sheath and the cord end of the female end of the cable connector is retained in the first closed end to provide the female end of the cable connector in a flat position with the operative end of the female connector being uncovered above the body outer surface." Ex. 6 ('009 patent) at Abstract.

65.     The '009 patent states, "The present invention is realized in the following way a sheath for convenient charging is provided, comprising: a sheath having a left side, a right side and a top side, a first closed end, a second open end and a surrounding bottom portion surrounding at least a portion of one of the left side, the right side, the top side, the first closed

end and the second open end of the sheath, wherein a body has an inner surface, an outer surface

and a first port between the inner surface and the outer surface, wherein at least a portion of the

sheath extends above the outer surface of the body, wherein the sheath receives a female end of a

cable connector having surrounding sides, an operative end, a cord end and a cord, wherein the

operative end of the female end of the cable connector is retained in the second open end of the

sheath and the cord end of the female end of the cable connector is retained in the first closed

end of the sheath to provide the female end of the cable connector in a flat position with the

operative end of the female connector being uncovered and above the outer surface of the body,

wherein the cord of the female end goes through the first port between the inner surface and the

outer surface and the surrounding bottom portion is attached to a portion of the body adjacent to

the first port." *Id.* at 1:42-64.

66.    The '009 patent states, "It is noted that the sheath may also have a surrounding

bottom attachment portion (4508 and 4602) which allows the sheath to be easily attached to a

body. The surrounding bottom attachment portion is a flat portion surrounding the at least three

sides, the first tapered closed end and the second open end of the sheath. As shown in FIG. 14-16

this may allow the sheath to be sewn or glued to the body. The attachment portion (4508 and

4602) is in communication with the inner surface of the body. There may also be a piece of

fabric (1500) in communication with the inner surface of the body and retaining at least the

operative end of the female end of the USB cable in the sheath. The piece of fabric may partially

(as depicted in FIG. 15 ) or entirely (as depicted by the rigid cover 2000 in FIG. 20 and depicted

in FIG. 23 ) cover the opening between the inner surface and the outer surface and has an

opening for the USB cable. FIG. 20 depicts that the piece of fabric is a reinforced piece of fabric

which may be a rigid cover (2000) in communication with the inner surface of the body and

retaining at least the operative end of the female end of the USB cable in the sheath. The sheath may also have four sides with a bottom side (4510) having a bottom side opening to allow the female end of the USB cable (2200) to sit in the sheath and the cord of the USB to go through the bottom side opening and the opening. This is to say that the sheath may have at least three sides and an embodiment is envisioned with the sheath having four sides without departing from the present invention." *Id.* at 6:12-39.

67.    The '009 patent states, "With reference to FIGS. 44, 47, 48 and 49 , a sheath for convenient charging is provided, comprising: a sheath having a left side (4404), a right side (4406), a top side (4408), a first closed end (4410), a second open end (4400) and a surrounding bottom portion (4402) surrounding at least a portion of one of the left side (4404), the right side (4406), the top side (4408), the first closed end (4410) and the second open end (4400) of the sheath. The "surrounding at least a portion of one of the left side (4404), the right side (4406), the top side (4408), the first closed end (4410) and the second open end (4400) of the sheath" is intended to say that the surrounding bottom portion may surround a portion of the sheath that extends above the outer surface of a body, as depicted in FIGS. 47, 48 and 49 . As can be seen in FIG. 47 , the surrounding bottom portion has a surrounding bottom portion left side (4702) attached to the left side (4708) and a surrounding bottom portion right side (4704) attached to the right side (4710) of the sheath. It is noted that the surrounding bottom portion left side (4702) is attached to a small portion of the first closed end (4706) and the surrounding bottom portion right side (4704) is also attached to a small portion of the first closed end (4706). In this embodiment, the surrounding bottom portion does not meet the second open end (4712). As can be seen in FIG. 48 , the surrounding bottom portion has a surrounding bottom portion first end portion (4802) and a surrounding bottom portion second end portion (4804). In this embodiment,

the surrounding bottom portion first end portion (4802) is attached to the first closed end (4806) and the surrounding bottom portion second end portion (4804) is attached to the second open end (4808). As can be seen in FIG. 49 , the sheath (4904) has a the surrounding bottom portion (4906) attached a portion of the left side (4902), a portion of the right side (4905) and the second open end (4900)." *Id.* at 6:61-7:27.

68.    The '009 patent states, "When attached to the body, at least a portion of the sheath extends above an outer surface (5202) of a body, wherein the body has an inner surface (not shown in this Figure, see 1900 of FIG. 19 for the inner surface, it would be understood and appreciated by one of ordinary skill in the art that the inner surface is simply the other side of the outer surface), an outer surface (5202) and an opening (5204) between the inner surface and the outer surface. The opening (5204) refers to the hole in the body. This may take different forms. According to one embodiment, as depicted in FIGS. 52, 11, 12, 13, 14, 15, 16, 17, 19, 20, 21, 22, 25, 26 and 27 the surrounding bottom portion touches the inner surface of the body and the sheath sits inside an opening in the body and extends above an outer surface of a body. The body has an opening between the inner surface and the outer surface and the surrounding bottom portion is attached to the inner surface of the body. The surrounding bottom portion (5100) of the sheath in FIG. 52 is not seen as it is on the inner surface of the body. The cord (5102) of the USB cable is on the interior of the body." *Id.* at 7:28-46.

69.    The '009 patent states, "Alternatively, as depicted in FIGS. 53, 54 and 55 , the entire sheath (including the surrounding bottom portion (5300) may sit on top of the body. The surrounding bottom portion (5300) may be in communication with the outer surface (5302) of the body. There may also be a piece of material (5404) attached to the surrounding bottom portion (5300) to retain the operative end of the female end of the USB cable in the sheath. As

can be seen there would be a cord opening (5406) in the piece of material (5404) to allow the USB cable to be attached to the top of the body and the cord (5408) fed through an opening (5410) in the body to the interior of the body. FIG. 55 depicts the interior (5500) of the body showing cord (5502) fed through opening (5504)." *Id.* at 7:47-59.

70.     The '009 patent states, "In both embodiments (the surrounding bottom portion on top of the body or on the inner surface of the body) the sheath is at the opening and the sheath receives a female end of a USB cable (5104) having four sides (see FIGS. 43, 4304, 4306, 4308 and 4310 depicting the USB cables four sides), an operative end (5106), a cord end (5108) and a cord (5102). As depicted in FIG. 44 , the operative end (4300) of the female end of the USB cable is retained in the second open end (4400) of the sheath and the cord end of the female end of the USB cable is retained in the first closed end (4410) of the sheath to provide the female end of the UBS cable in a flat position with the operative end (4300) of the female connector being uncovered and above the outer surface of the body (See FIGS. 52 and 53 ), wherein the cord of the female end goes through the opening between the inner surface and the outer surface and the surrounding bottom portion is attached to a portion of the body (See FIG. 51 cord (5102) and FIG. 55 cord (5502)." *Id.* at 7:60-8:10.

71.     The '009 patent states, "As shown in FIGS. 56, 57, 58, 29, 60 and 61 the raised portion may take many different shapes. The sheath having a raised portion that is selected from the group consisting of dome shaped (5600), raised circular shape (5700), raised semi-circular shape (5800), raised rectangular shape (6000), raised square shape and raised polygon shape (6100 and 5900) that extends above an outer surface of a body, wherein the raised portion has a USB opening, and a surrounding bottom portion surrounding at least a portion of the raised portion, wherein the body has an inner surface, an outer surface and a body opening between the

inner surface and the outer surface; wherein the sheath is at the body opening with the raised portion above the outer surface and at least a portion of the surrounding bottom portion is in communication with a portion of the body, and wherein the sheath has a female end of a USB cable in the USB opening, wherein the female end of the USB cable has four sides, an operative end and a cord end and the operative end of the female end of the USB cable is retained in the USB opening to provide the female end of the UBS cable in a flat position with the operative end of the female connector being uncovered and above the outer surface of the body." *Id.* at 8:33-54.

72.    The disclosures of the '009 patent cited in SUMF ¶¶ 64-71, *supra*, are not in the specification of the '071 patent. *See generally* Ex. 3 ('071 patent).

73.    Claims 1, 2, 4, 5, 6, 7, 8, 17, 18, 19, 20, 21, and 29 of the '009 patent are accurately reproduced in Appendix A to Defendants' Motion for Summary Judgment, and are each directed to a "sheath." *See* Appendix A.

## II.    Litigations Involving the Parties and Related Allegations

### A.    Plaintiff's Prior Litigation Against Wenger S.A. in the Western District of New York

74.    Plaintiff, along with Krummholz International, Inc. ("Krummholz"), filed suit against Wenger S.A. ("Wenger") in the Western District of New York on January 29, 2015. Ex. 7 (*Krummholz Int'l, Inc., et al. v. Wenger, S.A.*, No. 1:15-cv-00086-WMS-HKS (W.D.N.Y.) ("Krummholz Litigation"), Dkt. No. 1 (Complaint)) at 1.

75.    As part of the complaint in the Krummholz Litigation, Plaintiff alleged that Krummholz was its "parent company." *Id.* at ¶ 6.

76.    As part of the complaint in the Krummholz Litigation, Plaintiff alleged the following: "Plaintiffs sell, *inter alia*, bags, luggage and backpacks with wearable intelligence.

One of Plaintiffs' products is called DigitalShield™. DigitalShield™ is an anti-loss backpack that utilizes Bluetooth and an app on a smart phone to locate the bag, luggage and/or backpack. Plaintiffs utilize a blue color scheme on their marks. Plaintiffs' goods are high tech products. See attached Exhibit A." *Id.* at ¶ 12.

77.     As part of the complaint in the Krummholz Litigation, Plaintiff alleged the following: "Over the past few years, Plaintiffs and their related companies have invested over one million dollars in global marketing and advertising of their trademarks and brands in connection with their products." *Id.* at ¶ 13.

78.     As part of the complaint in the Krummholz Litigation, Plaintiff alleged the following: "Plaintiffs and its[sic] related companies first offered for sale products in connection with U.S. Trademark Reg. No. 4462487 at the TGA show in Las Vegas in March of 2011." *Id.* at ¶ 17.

79.     As part of the complaint in the Krummholz Litigation, Plaintiff alleged the following: "An agent of a licensee, John Pullichino, of Defendant (Group III International, Ltd.) threatened to sue Plaintiffs at the TGA show in Las Vegas, March 2014 and further told Plaintiffs' agent that if he goes to the TGA show in March 2015 he will throw his products in the toilet." *Id.* at ¶ 19.

80.     On September 18, 2015, Plaintiff filed a declaration in the Krummholz Litigation from Plaintiff's CEO and owner at the time, Zhijian Li, in which Mr. Li stated the following: "In March of 2014, I attended the TGA tradeshow in Phoenix, Arizona on behalf of Krummholz and Swissdigital (and their predecessor companies). During the show, I displayed sample products with the marks identified in U.S. Trademark Reg. No. 4462487." Ex. 8 (Krummholz Litigation, Dkt. No. 28-1 (Li Declaration)) at ¶ 1, 6.

81.    Exhibit A to the complaint filed in the Krummholz Litigation included pictures of at least two of Plaintiff's products, the TSG4H157 and the TSG4H156. Ex. 9 (Krummholz Litigation, Complaint, Ex. A) at 3-4.

82.    The below is an accurate reproduction of the photographs of the TSG4H157 submitted with Exhibit A to the complaint filed in the Krummholz Litigation.



*Id.* at 3.

83.    The pictures of the TSG4H157 include a picture of a USB sheath. *Id.*

84.    The below is an accurate reproduction of the photographs of the TSG4H156 submitted with Exhibit A to the complaint filed in the Krummholz Litigation.



*Id.* at 4.

      85.    The pictures of the TSG4H156 include a picture of a USB sheath. *Id.*

**B.      Plaintiff's Prior Litigation Against Wenger S.A. in the Western District of Texas**

86.      On April 30, 2021, Plaintiff file suit against Wenger in the Western District of Texas, alleging patent infringement. Ex. 10 (*Swissdigital USA Co., Ltd. v. Wenger S.A.*, No. 6:21-cv-453 (W.D. Tex.) ("Wenger Litigation"), Dkt. No. 1 (Complaint)), at 1, ¶ 1.

87.      As part of the complaint in the Wenger Litigation, Plaintiff asserted the '071 and '138 patents against Wenger. *Id.* at ¶ 4-6.

88.      As part of the complaint in the Wenger Litigation, Plaintiff accused Wenger of infringing by "offering for sale and selling luggage products" that "incorporate an integrated USB sheath socket and include a place for placing a power storage device inside the bag and a power cable outlet on the outer surface of the bag." *Id.* at ¶¶ 14-15.

89.      During the pendency of the Wenger Litigation, Wenger moved to transfer the case to the Southern District of Florida, alleging that the party that another party, Group III International, Inc. ("Group III"), actually designed, manufactured, and sold the accused products, and was located there. Ex. 11 (Wenger Litigation, Dkt. No. 27 (Motion to Transfer))N at 1-2, 5.

**C.      The Parties' Litigation in the Western District of Texas**

90.      Plaintiff initially sued Samsonite Group S.A. (at the time, Samsonite International S.A.) in the Western District of Texas. Ex. 12 (*Swissdigital USA Co. Ltd. v. Samsonite International S.A.*, No. 6:23-cv-00196-ADA (W.D. Tex.) ("WDTX Litigation"), Dkt. No. 1 (Complaint)).

91.      In the WDTX Litigation, Plaintiff served infringement contentions in which it contended that all of the Asserted Claims of the Asserted Patents were entitled to a November 18, 2014 priority date. Ex. 13 (WDTX Litigation, Pltf.'s Prelim. Inf. Contentions) at 6.

### D.    Deposition of Group III International

92.    As part of the WDTX Litigation, Samsonite Group S.A. deposed Group III's representative, John Pulichino, on November 6, 2023. Ex. 14 (WDTX Litigation, Subpoena to Group III).

93.    Mr. Pulichino testified that Group III sells "travel gear, which includes luggage, backpacks, travel accessories," as well as "belts, wallets, [and] small travel bags." Ex. 15 (Pulichino Dep. Tr.) at 22:20-25.

94.    At the time he was deposed, Mr. Pulichino was the executive chairman of Group III. *Id.* at 16:19-21. Prior to that role, Mr. Pulichino was the CEO of Group III from approximately 1994 to 2019. *Id.* at 16:22-17:6.

95.    Mr. Pulichino testified that, in his role as CEO, he had "overall responsibility and oversight for the financial aspects of the company, the marketing and sales, product design and development, overseas sourcing, and key customer relationships." *Id.* at 17:7-12.

96.    Mr. Pulichino testified that Group III sold products with USB connectors with the following configuration: "We would mount the exterior female side, okay, of the – of the USB connector by cutting a hole through the – where – it was going to be applied either on the surface wrap or the bag itself. And we would mount it from the inside and then sew the flange to the outside fabric – you now[sic], to the exterior of the outside fabric, sew that, and then the lining on the inside would be sewn to cover up the attachment." *Id.* at 24:21-25:8.

97.    Mr. Pulichino testified that the USB connectors had a "flange which the actual female connector is on, so when you're coming from the inside, you push it through an open hole. So the flange stays below the fabric, and the mounting piece, the female piece, is above the fabric on the outside. And then you would sew the fabric to the flange that's on the inside, and

then on the inside you put a piece of lining fabric and that would be sewn as part of a whole inside the bag." *Id.* at 25:9-22.

98.    Mr. Pulichino testified that "around 2016, we began to see the need for the consumer, when they travel and wanting to have the ability to charge their phones in remote places, that it would be convenient to have a battery pack inside the bag, okay, that would then be – went through a wire connected to a female side of a USB charger, so that the consumer could have access to instant charging, if you will, while they're traveling. And it was something that we felt would be appropriate to be put into our products, and we designed products around that." *Id.* at 27:23-28:12.

99.    Mr. Pulichino testified that "the first Group III bag that had the USB connector feature" was the 5358 bag, designed in 2016. *Id.* at 28:14-22. Mr. Pulichino further testified that Group III initially used an "off-the-shelf female adaptor" and put it on the bags. *Id.* at 29:8-17.

100.    Mr. Pulichino testified that the document Bates numbered GROUPIII000001 was a "specification sheet that we use to document the design and feature benefits of all of our products," created in the ordinary course of Group III's business. *Id.* at 30:5-31:20. Mr. Pulichino further testified that the document Bates numbered GROUPIII000001 was the design specification sheet for the 5358 bag. *Id.* at 31:25-32:9. Mr. Pulichino also testified that the features shown in the document Bates numbered GROUPIII000001 "accurately reflect[] the structure of the [5358] bag that was eventually sold to the public." *Id.* at 33:13-23; *see also* Ex. 28 (GROUPIII000001).

101.    Testifying with respect to the document Bates numbered GROUPIII000001, specifically the page ending in -008, Mr. Pulichino testified that the image depicted "the two shoulder straps in the back of the bag," including "all of the dimensions," and that it "highlights

the power outlet, which was the female side of the USB connector that was sewn into the bag."
Ex. 15 (Pulichino Dep. Tr.) at 36:1-8. Mr. Pulichino further testified that "the flange that holds
this would be a little wider than the actual outlet," so that "there would be a – square stitching
just to the four sides of the [power outlet]." *Id.* at 36:9-20. Mr. Pulichino further testified that
"the female end of the USB . . . would be external to the bag at the power outlet," such that "a
customer would be able to use the power outlet to plug in a USB cable and charge a device." *Id.*
at 38:2-9. Mr. Pulichino testified that the "operative end of the female end of the USB cable," or
the "end that a user would actually plug in," was "exposed when it's mounted from the inside."
*Id.* at 39:4-21. Mr. Pulichino testified that USB cable connected to the female connector would
"run internal to the shoulder strap before it comes out of [the] outlet." *Id.* at 38:23-39:2.



Ex. 28 (GROUPIII000001) at -0008.

102.    Mr. Pulichino testified that the "top part" of the power outlet was "narrower than the bottom part." Ex. 15 (Pulichino Dep. Tr.) at 40:19-23. Mr. Pulichino also testified that "operative end that the customer plugs USB cables into would be the bottom" portion of the outlet in the image, and that the "end with the cord would be closer to the narrower part," and would "go internally in the bag." *Id.* at 40:24-41:10.

103.    Mr. Pulichino testified that the document Bates numbered GROUPIII000018 was a "typical approval form" that Group III "submit[s] to [its] licensor in Switzerland for their approval of any product." *Id.* at 41:11-24; *see also* Ex. 27 (GROUPIII000018). Mr. Pulichino further testified that the approval form had "some specifics on feature benefits for the product," and included "photography listing the feature benefits." Ex. 15 (Pulichino Dep. Tr.). at 41:24-42:7. Mr. Pulichino testified that the design as shown on the approval form was "approved for manufacture and sale" to the public on August 25, 2016. *Id.* at 43:25-45:3. Mr. Pulichino confirmed that the approval form is a document created as a "part of Group III's ordinary course of business." *Id.* at 43:21-24.

104.    Mr. Pulichino testified that the design shown in the approval form, reproduced below in enlarged form, had "two sides to the flange, one on the inside and one on the outside." *Id.* at 45:9-22. Mr. Pulichino further testified that the piece on the outside "surrounding the female end of the USB cable" was "sewed on to another similar piece inside of the bag," to "give[] it stability, rather than just having it on the fabric itself." *Id.* at 45:23-46:12.



Ex. 27 (GROUPIII000018) at -0020.

105.    Mr. Pulichino testified that Group III issued "typical purchase order[s]" to its manufacturer for the "production and shipment of particular items," including the 5358 bag. Ex. 15 (Pulichino Dep. Tr.) at 47:25-48:14. Mr. Pulichino testified that the purchase orders are documents that are "created as a part of Group III's ordinary course of business." *Id.* at 48:15-21. Mr. Pulichino testified that the document Bates numbered GROUPIII000017 is one such purchase order, reflecting an order placement date of July 27, 2016. *Id.* at 47:14-49:17; *see also* Ex. 16 (GROUPIII000017).

106.    Mr. Pulichino also testified that the document Bates numbered GROUPIII000021 was another purchase order created in the ordinary course of Group III's business. Ex. 15 (Pulichino Dep. Tr.) at 54:13-55:5. GROUPIII000021 reflects a purchase order date of January 12, 2017. Ex. 17 (GROUPIII000021).

107.    Mr. Pulichino further testified that the document Bates numbered GROUPIII000038, which shows a purchase order date of May 26, 2017, was another purchase

order created in the ordinary course of Group III's business, in particular for Walmart. Ex. 15 (Pulichino Dep. Tr.) at 55:7-23; *see also* Ex. 18 (GROUPIII000038).

108.    Mr. Pulichino further testified that the document Bates numbered GROUPIII000045 was a "commercial invoice from the manufacturer that produced the 5358 bag," and reflected a shipment of "3,807 pieces of the 5358 bag" to Group III's warehouse on August 3, 2017. *Id.* at 55:24-57:2; *see also* Ex. 19 (GROUPIII000045).

109.    Mr. Pulichino further testified that before the purchase order is placed to the manufacturer, Group III would "have a commitment from a customer long before the order is placed. So that means we've presented the product to the customer, they have accepted the – expressed their interest in the design, and, based on that, we would then go out and manufacture the product." *Id.* at 52:21-53:20, 54:2-8.

110.    Mr. Pulichino testified that the document Bates numbered GROUPIII000087 is a "report that's generated by the company" that lists "for the particular time frame and for the backpack, the order quantity and requested ship date and who the customer is." *Id.* at 59:10-60:2. Mr. Pulichino testified that GROUPIII000087 reflects orders for 5358 to Walmart, with order dates in the "ORDDT" column and shipped dates in the "Shipped DT column." *Id.* at 60:3-23. GROUPIII000087 reflects order dates and shipped dates in November and December of 2017. Ex. 20 (GROUPIII000087).

111.    Mr. Pulichino testified that the images in the document Bates numbered GROUPIII000096, specifically on pages -0102-03, "accurately show[ed] the USB connector feature as it was present in the 5358 bags sold to the public," including the outer flanges. Ex. 15 (Pulichino Dep. Tr.) at 61:1-63:1. Mr. Pulichino testified that the flange was formed as one piece with the USB female port portion of the USB connector. *Id.* at 63:5-64:7. Mr. Pulichino testified

that there would also be a separate piece, an inner flange, that would be stitched together through the bag. *Id.* at 64:10-65:14. An exemplary image from the document is reproduced below.



Ex. 29 (GROUPIII000096) at -0103.

112.    Mr. Pulichino testified that Group III eventually made changes to the USB design in the 5358 bag, so that the USB connector "just ha[d] the inside flange." *Id.* at 50:19-51:21. Specifically, Mr. Pulichino testified that Group III began using the same original Group III USB sheath design used in its 6067 product in the 5358 products in May of 2017. Ex. 15 (Pulichino Dep. Tr.) at 71:21-72:10, 78:15-79:22; *see also* Ex. 21 (GROUPIII000094 (sheath design document)).

113.    Mr. Pulichino testified that the document Bates labeled GROUPIII000022 was "design specification sheet" for a "carry-on bag that has a feature of a USB," designed

specifically for target, with product number 6067. Ex. 15 (Pulichino Dep. Tr.) at 67:20-69:3, 69:24-70:5. Mr. Pulichino further testified that the USB design shown in the 6067 design document was Group III's "unique design for the USB port," which Group III "migrated" to from the off-the-shelf components used in prior products. *Id.* at 71:5-10. Mr. Pulichino testified that the USB port in the 6067 product was structured such that "[t]here's a flange on the inside, we cut a hole in the bag, we mount the – the port through the back, the flange stays behind the material, the portion that – the female portion is on the surface. And then it's sewn, the material is sewn to connect the material to the flange." *Id.* at 72:17-73:4. Mr. Pulichino testified that there would be a hole in the back of the USB port designed by Group III, such that the "USB cable could come out." *Id.* at 75:14-18, 76:11-77:5.

114.    Mr. Pulichino testified that the USB flange designed by Group III was depicted on the page ending in -0037. *Id.* at 64:13-18.  The image from that page is reproduced below.



Ex. 22 (GROUPIII000022) at -0037.

115.    Mr. Pulichino further testified that "Project SG-X27," which was designed to "replace the off-the-shelf part that was available to the general public . . . to have something that was unique for Group III and offered an improvement in the overall design and method of assembly of the product," and be placed on "bags such as the 5358 or the [6067]." Ex. 15 (Pulichino Dep. Tr.) at 78:15-79:11. Mr. Pulichino testified that the document Bates numbered GROUPIII000094 "accurately reflect[ed] the structure of the USB port that was used in the 6067 product." *Id.* at 79:23-80:8. GROUPIII000094 is dated April 18, 2017. Ex. 21 (GROUPIII000094) at -0094. Images showing the USB port from this document are reproduced below.



*Id.* at -0095.

116.    Mr. Pulichino testified that the document Bates numbered GROUPIII000048 was a "summary document created in the ordinary course of business that speaks to orders that we shipped to Target," showing the "order date" and "the ship date," shown in the second and third columns, respectively. Ex. 15 (Pulichino Dep. Tr.) at 81:6-82:2, 82:21-24). Mr. Pulichino further testified that the orders are for the 6067 product. Ex. 15 (Pulichino Dep. Tr.) at 82:25-83:3. GROUPIII000048 shows order dates of November 17, 2017. Ex. 23 (GROUPIII000048).

117.    Mr. Pulichino testified that the document Bates numbered GROUPIII000088 was another summary document for purchase orders of the 6067 product. Ex. 15 (Pulichino Dep. Tr.) at 83:8-84:9, 84:24-85:11. Mr. Pulichino also testified that all of the 6067 products sold to customers would have the USB port shown in GROUPIII000022. *See id.* at 85:8-11.

GROUPIII000088 shows order dates ranging from September 2017 to December 2018. Ex. 24 (GROUPIII000088).

118.    Counsel for Plaintiff had an opportunity to question Mr. Pulichino during his deposition, and chose not to do so. *Id.* at 97:2-12.

### E.    Plaintiff's TSG4H157 Product

119.    Plaintiff produced a document in this litigation Bates numbered SWISSDIGITAL001835. Ex. 25 (SWISSDIGITAL001835). That document contains pictures of several products sold by Plaintiff, as well as the USB component used in those products. *See generally id.* The document has several different dates, ranging from November to December of 2014. *Id.* The below image is an accurate reproduction of a page from SWISSDIGITAL001835, showing a "████████████." *Id.* at -1841.



120.    One of the bags pictured in SWISSDIGITAL001835 closely resembles the TSG4H157 product pictured in Plaintiff's catalog filed with the Krummholz Litigation. The below are accurate reproductions of images from the catalog picturing the TSG4H157 bag. Ex. 9 (Krummholz Litigation, Complaint, Ex. A), at 3.



121.    Below are accurate reproductions of images from SWISSDIGITAL001835. Ex. 25 (SWISSDIGITAL001835) at -1836, 1849-51.



Dated: April 11, 2025                          Respectfully submitted,

                                               By:  */s/ Adam J. Kessel*
                                               _____
                                                    Adam J. Kessel
                                                    Massachusetts Bar No. 661,211
                                                    kessel@fr.com
                                                    **FISH & RICHARDSON P.C.**
                                                    One Marina Park Drive
                                                    Boston, MA 02210
                                                    Tel: (617) 542-5070
                                                    Fax: (617) 542-8906

                                                    Neil J. McNabnay (*Pro Hac Vice*)
                                                    Texas Bar No. 24002583
                                                    mcnabnay@fr.com
                                                    **FISH & RICHARDSON P.C.**
                                                    1717 Main Street, Suite 5000
                                                    Dallas, TX 75201
                                                    Tel: (214) 747-5070
                                                    Fax: (214) 747-2091

                                                    Bailey K. Benedict (*Pro Hac Vice* )
                                                    Texas Bar No. 24083139
                                                    benedict@fr.com
                                                    Ethan K. Kovar (*Pro Hac Vice* )
                                                    Texas Bar No. 24138134
                                                    kovar@fr.com
                                                    **FISH & RICHARDSON P.C.**
                                                    909 Fannin Street, Suite 2100
                                                    Houston, TX 77010
                                                    Tel: (713) 654-5300
                                                    Fax: (713) 652-0109

                                                    Wonjoon Chung (*Pro Hac Vice* )
                                                    Georgia Bar No. 396468
                                                    chung@fr.com
                                                    **FISH & RICHARDSON P.C.**
                                                    1180 Peachtree Street NE
                                                    21st Floor
                                                    Atlanta, GA 30309
                                                    Tel: (404) 892-5005
                                                    Fax: (404) 892-5002

                                                    ***Attorneys for Defendants***
                                                    ***SAMSONITE GROUP S.A.; SAMSONITE***
                                                    ***LLC; SAMSONITE COMPANY STORES,***
                                                    ***LLC; and DIRECT MARKETING***
                                                    ***VENTURES, LLC***

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2025, I caused the foregoing document to be served upon all counsel of record via electronic mail.


*/s/ Adam J. Kessel*
Adam J. Kessel