# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SWISSDIGITAL USA CO., LTD. | |
| *Plaintiff*, | |
| v. | Case No. 1:24-cv-11636-JEK |
| SAMSONITE GROUP S.A.;<br>SAMSONITE LLC; SAMSONITE<br>COMPANY STORES, LLC; and<br>DIRECT MARKETING VENTURES,<br>LLC; | **JURY TRIAL DEMANDED** |
| *Defendants*. | |

## PLAINTIFF SWISSDIGITAL USA CO., LTD.'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# <u>TABLE OF CONTENTS</u>

Page

PRELIMINARY STATEMENT.................................................................................................1

LEGAL STANDARDS............................................................................................................2

ARGUMENT.........................................................................................................................5

I.     The Child Patents Are Entitled to the '071 Patent's Priority Date........................................5

      A.    The '071 Patent Provides Written Description Support for the
             Asserted Child Patent Claims.....................................................................................5

      B.    Even Under Defendants' Construction of a Surrounding Bottom
             Portion, the '071 Patent Provides Written Description Support for
             the Asserted Child Patent Claims.............................................................................10

      C.    The Surrounding Bottom Portion Limitation Is Inherently
             Disclosed by the '071 Patent....................................................................................11

II.    Defendants Have Not Shown by Clear and Convincing Evidence That the
      Challenged Claims Are Invalid Pursuant to the On-Sale Bar................................................16

      A.    Defendants' Evidence Fails to Establish That the TSG4H157 Bag
             That Was Offered for Sale Possessed Each and Every Claim Limitation
             of the Asserted Claims Defendants Challenge and Thus Cannot Be Used
             to Invalidate the Challenged Claims of the '137 Patent...........................................16

      B.    Mr. Pulichino's Testimony Is Self-Serving and Raises Genuine Issues
             of Material Fact Regarding Whether the Group III 6067 Bag Practiced
             the Asserted Claims of the '138 and '009 Patents....................................................19

CONCLUSION......................................................................................................................20

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Agilent Techs., Inc. v. Affymetrix, Inc.*, 567 F.3d 1366 (Fed. Cir. 2009)....................................12, 15

*Allergan, Inc. v. Sandoz Inc.*, 796 F.3d 1293 (Fed. Cir. 2015)........................................................12

*Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336 (Fed. Cir. 2010)..............................2, 3, 4, 10

*Ascion, LLC v. Ashley Furniture Indus., Inc.*, No. 2021-1857,
 2022 WL 1197338 (Fed. Cir. Apr. 22, 2022)............................................................................13

*Bradford Co. v. Conteyor N. Am., Inc.*, 603 F.3d 1262 (Fed. Cir. 2010)...........................................2

*Cap Exp., LLC v. Zinus, Inc.*, No. 2021-2159,
 2022 WL 4376407 (Fed. Cir. Sept. 22, 2022)...........................................................................17

*Capon v. Eshhar*, 418 F.3d 1349 (Fed. Cir. 2005)............................................................................4

*Centrak, Inc. v. Sonitor Techs., Inc.*, 915 F.3d 1360 (Fed. Cir. 2019)..............................................12

*Cooper Cameron Corp. v. Kvaerner Oilfield Prods., Inc.*,
 291 F.3d 1317 (Fed. Cir. 2002)..................................................................................................3

*Crown Packaging Tech., Inc. v. Belvac Prod. Mach., Inc.*,
 122 F.4th 919 (Fed. Cir. 2024)............................................................................................16, 18

*Cummins-Allison Corp. v. SBM Co.*, 484 F. App'x 499 (Fed. Cir. 2012).........................................3

*Grp. One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041 (Fed. Cir. 2001)......................................16

*In re Daniels*, 144 F.3d 1452 (Fed. Cir. 1998)..................................................................................2

*In re Vaeck,* 947 F.2d 488 (Fed. Cir. 1991).....................................................................................12

*Intell. Ventures I, LLC v. Motorola Mobility, LLC*, 72 F. Supp. 3d 496 (D. Del. 2014)....................4

*Inverness Med. Switz. GmbH v. Acon Lab'ys, Inc.*,
 367 F. Supp. 2d 182 (D. Mass. 2005).........................................................................................5

*Koito Mfg. Co. v. Turn-Key-Tech, LLC*, 381 F.3d 1142 (Fed. Cir. 2004)...................................4, 12

*Kubota v. Shibuya*, 999 F.2d 517 (Fed. Cir. 1993)............................................................................3

*Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898 (Fed. Cir. 2004)...............................................8

*LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336 (Fed. Cir. 2005)................................3

*Lockwood v. Amer. Airlines, Inc.*, 107 F.3d 1565 (Fed. Cir. 1997)...................................................2

*Martin v. Mayer*, 823 F.2d 500 (Fed. Cir. 1987)..............................................................................3

*Meds. Co. v. Hospira, Inc.*, 827 F.3d 1363 (Fed. Cir. 2016)..........................................................16

*PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299 (Fed. Cir. 2008)..............................*passim*

*Pozen Inc. v. Par Pharm., Inc.*, 696 F.3d 1151 (Fed. Cir. 2012).......................................................4

*Scaltech, Inc. v. Retec/Tetra, LLC*, 269 F.3d 1321 (Fed. Cir. 2001).................................................16

*Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316 (Fed. Cir. 2001)...........................17

*Tronza v. Biomet, Inc.*, 156 F.3d 1154 (Fed. Cir. 1998)..................................................................12

*TurboCare Div. of Demag Delaval Turbomachinery Corp. v. Gen. Elec. Co.*,
    264 F.3d 1111 (Fed. Cir. 2001)................................................................................................12

*Union Oil Co. of Cal. v. Atl. Richfield Co.*, 208 F.3d 989 (Fed. Cir. 2000).......................................5

*Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555 (Fed. Cir. 1991).........................................................3

*Vasudevan Software, Inc. v. MicroStrategy, Inc.*, 782 F.3d 671 (Fed. Cir. 2015).......................3, 4

*Wi-LAN Inc. v. LG Elecs., Inc.*, 421 F. Supp. 3d 911 (S.D. Cal. 2019).............................................5

*Yeda Rsch. & Dev. Co. v. Abbott GmbH & Co. KG*, 837 F.3d 1341 (Fed. Cir. 2016)....................12

*Zimmer Surgical, Inc. v. Stryker Corp.*, 365 F. Supp. 3d 466 (D. Del. 2019)...................................5

**Other Authorities**

Manual of Patent Examining Procedure § 2163 (9th ed. Rev. 3, Jan. 2018)....................................12

Plaintiff Swissdigital USA Co., Ltd. ("Swissdigital" or "Plaintiff"), hereby submits this Response in Opposition to the Motion for Summary Judgment (ECF No. 56) (the "Motion") filed by Defendants Samsonite Group S.A., Samsonite LLC, Samsonite Company Stores, LLC, and Direct Marketing Ventures, LLC (collectively, "Samsonite" or "Defendants").

## PRELIMINARY STATEMENT

The claims of Swissdigital's U.S. Patent Nos. 10,931,137 ("the '137 patent"), 10,931,138 ("the '138 patent"), and 11,601,009 ("the '009 patent") (collectively, "the continuation patents" or the "child patents") find ample support in their priority application.[1]  Samsonite's priority arguments rely on written description—a pure question of fact for the jury.  The test to determine whether the written description is satisfied requires an objective inquiry from the perspective of a person of ordinary skill in the art.  Yet, Samsonite presents **no evidence** from a person of ordinary skill in the art.  Instead, in its two and a half pages directed at this issue, Samsonite argues that the written description is not satisfied for a handful of reasons that are not supported by law or fact.  Samsonite argues that the written description requirement is not met because the parent patent specification does not include the *specific* term "surrounding bottom portion" (a position plainly rejected by law).  And all of Samsonite's arguments are premised on their own narrowing claim construction based on embodiments/figures from the *continuation* patents (which are not relevant to the sufficiency of the disclosure of the *parent* patent).

---

[1] Each of the asserted patents are entitled to the November 18, 2014 priority date of CN 204317802U, which U.S. Patent No. 10,574,071 ("the '071 patent" or "parent patent") claims priority to.  The '071 patent is also asserted in this case but not challenged in Defendants' Motion. Defendants concede that there are "no material differences between the '071 patent and the CN 204317802U Application," so Swissdigital follows Defendants' practice of referring to the '071 patent rather than the English translation of the priority reference.  Defs.' Mot. 2 n.3, ECF No. 56.

In stark contrast to Samsonite's lack of relevant evidence on this quintessential factual question, Swissdigital points to specific disclosures in the specification of U.S. Patent No. 10,574,071 ("the '071 patent" or "parent patent") that teach the "surrounding bottom portion" limitation and presents expert testimony from its highly qualified expert, Mr. Joel Delman, supporting its position. Mr. Delman concludes that all claims challenged by Defendants[2] in their Motion are supported by their priority reference and explains why. Additionally, Swissdigital identifies how the written description requirement is met even under Samsonite's incorrect and limiting interpretation of the claim language and how the limitation is inherently disclosed. This disparity in evidence reveals material issues of fact for a jury to resolve and thus makes summary judgment not warranted.

## **LEGAL STANDARDS**

To be entitled to an earlier application's filing date, a continuation application must comply with the written description requirement of 35 U.S.C. § 112, ¶ 1. *In re Daniels*, 144 F.3d 1452, 1456 (Fed. Cir. 1998). Determining whether a priority application contains sufficient disclosure to comply with the written description requirement is a **question of fact**. *Bradford Co. v. Conteyor N. Am., Inc.*, 603 F.3d 1262, 1268 (Fed. Cir. 2010); *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc). An applicant shows that the inventor was in possession of the claimed invention by describing the claimed invention with all of its limitations using such descriptive means as words, structures, figures, diagrams, and formulas that fully set forth the claimed invention. *Lockwood v. Amer. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997). The Federal Circuit has consistently held that "drawings alone may provide a 'written description' of

---

[2] Defendants' Motion challenges claims 1, 3, 6–7, and 19–21 of the '137 patent; claims 1–2, 4, 6–8, 17, 19–21, and 23 of the '138 patent; and claims 1, 2, 4, 6–8, 17, 19–21, and 29 of the '009 patent (collectively, the "challenged claims").

an invention as required by § 112." *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1565 (Fed. Cir. 1991); *Cooper Cameron Corp. v. Kvaerner Oilfield Prods., Inc.*, 291 F.3d 1317, 1322 (Fed. Cir. 2002); *Cummins-Allison Corp. v. SBM Co.*, 484 F. App'x 499, 505 (Fed. Cir. 2012).

The test for written description is whether "the disclosure of the application relied upon reasonably conveys **to those skilled in the art** that the inventor had possession of the claimed subject matter as of the filing date." *Ariad*, 598 F.3d at 1351 (emphasis added); *Vas-Cath Inc.*, 935 F.2d at 1563. As a result, "Section 112 does not require that the specification contain that which is known to those skilled in the art." *Martin v. Mayer*, 823 F.2d 500, 504–05 (Fed. Cir. 1987); *Kubota v. Shibuya*, 999 F.2d 517, 521 (Fed. Cir. 1993). This "is because the patent specification is written for a person of skill in the art, and such a person comes to the patent with the knowledge of what has come before." *LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1345 (Fed. Cir. 2005). "Placed in that context, it is unnecessary to spell out every detail of the invention in the specification; only enough must be included to convince a person of skill in the art that the inventor possessed the invention . . . ." *Id.*

Summary judgment is not appropriate where, drawing all reasonable inferences in favor of the non-movant, there are genuine issues of material fact regarding whether the specification shows possession of the claimed invention. *Vasudevan Software, Inc. v. MicroStrategy, Inc.*, 782 F.3d 671, 682–83 (Fed. Cir. 2015). Accordingly, compliance with the written description requirement is only "amenable to summary judgment in cases where **no reasonable fact finder** could return a verdict for the non-moving party." *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1307 (Fed. Cir. 2008) (emphasis added); *Vas–Cath Inc.*, 935 F.2d at 1567 (holding that a genuine issue of material fact existed as to whether claims of the patent-in-suit were sufficiently supported by the disclosure of an earlier application where the patentee submitted an expert

declaration stating that a person of skill in the art would have understood the disclosure of the earlier application to encompass the later claims and the accused infringer failed to provide technical evidence to refute those conclusions). "A party must prove invalidity for lack of written description by clear and convincing evidence." *Vasudevan Software, Inc.*, 782 F.3d at 682; *Intell. Ventures I, LLC v. Motorola Mobility, LLC*, 72 F. Supp. 3d 496, 506 (D. Del. 2014) ("[D]efendants must provide clear and convincing evidence that persons skilled in the art would not recognize in the disclosure a description of the claimed invention.").

The Federal Circuit has explained that "the test requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art." *Ariad Pharm., Inc.*, 598 F.3d at 1351. "Based on that inquiry, the specification must describe an invention understandable to that skilled artisan and show that the inventor actually invented the invention claimed." *Id.* The Federal Circuit has further explained that "determining whether a patent complies with the written description requirement will necessarily vary depending on the context." *Id.* "Specifically, the level of detail required to satisfy the written description requirement **varies depending on the nature and scope of the claims and on the complexity and predictability of the relevant technology**." *Id.* (emphasis added); *Capon v. Eshhar*, 418 F.3d 1349, 1359 (Fed. Cir. 2005) (explaining that the court considers "the extent and content of the prior art, the maturity of the science or technology, the predictability of the aspect at issue, and other considerations appropriate to the subject matter.").

In deciding a claim of priority, a "prior application need not contain precisely the same words as are found in the asserted claims." *PowerOasis, Inc.*, 522 F.3d at 1306; *Koito Mfg. Co. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1154 (Fed. Cir. 2004); *Pozen Inc. v. Par Pharm., Inc.*, 696 F.3d 1151, 1167 (Fed. Cir. 2012) (explaining that "the disclosure as originally filed does not have

to provide *in haec verba* support for the claimed subject matter"); *Inverness Med. Switz. GmbH v. Acon Lab'ys, Inc.*, 367 F. Supp. 2d 182, 185 (D. Mass. 2005) ("Later claims need not be described literally in the specification to satisfy the written description requirement."); *Wi-LAN Inc. v. LG Elecs., Inc.*, 421 F. Supp. 3d 911, 932 (S.D. Cal. 2019) (finding a genuine issue of material fact based on expert testimony despite the absence of the claim term "wireless cellular mobile unit" in the disclosure). Rather, "[t]he Patent Act and th[e Federal Circuit] require only sufficient description to show one of skill in the refining art that the inventor possessed the claimed invention at the time of filing." *Union Oil Co. of Cal. v. Atl. Richfield Co.*, 208 F.3d 989, 997 (Fed. Cir. 2000).

Inclusion of a new embodiment in the specification or additional figures is not evidence that the original disclosure would not satisfy the written description requirement. *PowerOasis,* 522 F.3d at 1306; *Zimmer Surgical, Inc. v. Stryker Corp.*, 365 F. Supp. 3d 466, 482 (D. Del. 2019) (explaining that the "test is not whether the claims may also find support in new matter, but whether the original disclosure is sufficient to support the claims.")

## ARGUMENT

For the reasons discussed below, Samsonite's Motion lacks merit. Samsonite's Motion should be denied because the continuation patents are entitled to the '071 patent's priority date. Further, Defendants have not shown clear and convincing evidence that the challenged claims are invalid pursuant to the on-sale bar. Summary judgment is therefore not warranted.

## I.    The Child Patents Are Entitled to the '071 Patent's Priority Date.

### A.    The '071 Patent Provides Written Description Support for the Asserted Child Patent Claims.

The disclosure of the '071 patent reasonably conveys to those skilled in the art that the inventor had possession of the subject matter claimed in the child patents as of the November 18,

2014.  Though Defendants submit that claim construction is not relevant to this analysis, their argument is premised on their own flawed, narrowing claim construction that limits the "surrounding bottom portion" to "a flat portion that extends outward from the bottom of" (i.e., a separate piece of material attached to and surrounding the sheath), which they interpret as a "flange" (*see, e.g.*, Defs.' Mot. 16, ECF No. 56 (equating "flange" with "surrounding bottom portion")), rather than the plain and ordinary meaning of the term as understood by a POSITA, which would encompass the bottom of the sheath itself or mere portions of the bottom of the sheath.  Indeed, the claim language of the child patents[3] recite various structural characteristics of the sheath itself: "left side, a right side and a top side, a first closed end, a second open end and a surrounding bottom portion."  And the claim requires only that the "surrounding bottom portion" surround "at least a portion of **one** of the left side, the right side, the top side.  That the surrounding bottom portion is merely the bottom (or part of the bottom) of the sheath itself is further supported by the continuation patents' references to other parts of the sheath itself (as opposed to separate pieces, like a flange) as "portions" elsewhere in the patent.  *See, e.g.*, '137 patent claim 1, ECF No. 58-4 ("at least *a portion of the sheath extends above an outer surface* of the body"); '138 patent claim 1, ECF No. 58-5 (same); '009 patent claim 1, ECF No. 58-6 ("at least *a portion of the sheath extends above the outer surface* of the body"); '009 patent claim 29 ("a sheath having a *raised portion*").

Moreover, the child patents' disclosures of a separate limitation, an "attachment portion," further demonstrates Defendants' flawed construction.  For example, the '009 patent discloses an embodiment where the claimed bottom portion may include an "attachment portion."  *See* '009

---

[3] Swissdigital follows Defendants' practice of addressing certain claim limitations of the child patents together for efficiency without accepting Defendants' assertion that the patents have "very similar" or "identical" claim limitations.  *See* Defs.' Mot. 3 n.9, ECF No. 56.

Patent col. 6 ll. 12–18 ("the sheath *may* also have a surrounding bottom *attachment portion* (**4508** and **4602**) which allows the sheath to be easily attached to a body.").[4]  The "attachment portion" limitation is claimed in, for example, dependent claim 8 of the '009 patent ("the sheath as in claim 1, further comprising an attachment portion **that extends around a bottom portion of the sheath**...").  When arguing that the Group III 6067 product practices one of these dependent claims, Defendants gloss over the relationship between the surrounding bottom portion (of independent claim 1) and the attachment portion (of dependent claims 8), conflating the two by stating that the "'surrounding bottom portion[]' acts as the attachment portion."  Defs.' Mot. 16, ECF No. 56.  Defendants' attempt to narrow the scope of the term "surrounding bottom portion" to that of the "attachment portion" is not supported and cannot be correct.

Additionally, Defendants' arguments based on embodiments/figures of the "surrounding bottom portion" from the child patents, *id.* at 4, 9, are misplaced and not relevant to whether the *parent* patents' disclosures meet the written description requirement of the invention.[5]  *See PowerOasis*, 522 F.3d at 1306 (explaining that inclusion of a new embodiment in the child specification or additional figures is not evidence that the original disclosure would not satisfy the written description requirement).

A POSITA would understand that the sheath has a surrounding bottom portion from the disclosure of the '071 patent.  Delman Decl. ¶¶ 51, 53–56, 61–62, 64.  For example, the specification describes "a type of bag or luggage for convenient charging, comprising . . . a sheath

---

[4] Moreover, similar to Defendants' construction of "surrounding bottom portion," the attachment portion is also described as "a flat portion." *See, e.g.*, '009 Pat. col. 6 ll. 12–16.

[5] Defendants' also provide no support for their characterization of the continuation patents as including "new matter" and their suggestion that the '137 patent was misclassified as a continuation.  *See* Defs.' Mot. 3 n.4, ECF No. 56.

for water proofing **wrapped on the outer surface of the female connector**."[6]  '071 Pat. col. 1, ll. 52–54, ECF No. 58-3.  The size and shape of a female connector was well known in the art at the time of the '071 patents' priority date.  Delman Decl. ¶ 58.  And because the sheath "wrapped" on the surface of a female connector and sits above and covers the power cable outlet, a POSITA would expressly understand the sheath to be three dimensional and have certain structural dispositions, including sides, a top, and a surrounding bottom portion.  *Id.* ¶¶ 58–59.

Tellingly, Defendants do not argue that the '071 patent specification does not disclose to a POSITA the other structural limitations of the sheath, such as the "left side," "right side," or "top side."  This further suggests that Defendants' arguments are premised on their improper reliance on figures/embodiments from the child patents and on their claim construction narrowing the "surrounding bottom portion" of the sheath to a "flange."  *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004) ("[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." ).

The '071 patent also provides that "the other three sides of the female connector **are covered by a water proof sheath** that protects the female connector and **provides it in a flat position,**" which further informs a POSITA of the shape and disposition of the sheath.  '071 Pat. claim 1; Delman Decl. ¶¶ 58–60.  To a POSITA, the structural limitations of the sheath as disclosed

---

[6] Defendants state that "[a]lthough the '071 patent does disclose a 'sheath,' the '071 patent invariably describes the sheath as something that 'wraps' or 'covers' the outer surface of a female connector."  Defs.' Mot. 2, ECF No. 56 (emphasis omitted).  Defendants appear to suggest that this somehow means there is no surrounding bottom portion of the sheath yet provide no support for their understanding.  To the extent Defendants suggest that '071 patent discloses a sheath that is not attached to a bag, this suggestion is nonsensical and belied by figures clearly depicting the sheath attached to a bag/luggage body.  *See, e.g.*, '071 Patent Fig. 1; *infra*, section A.3.

in the '071 patent, including that it is "wrapped on the outer surface of the female connector" and that it "provides [the female connector] in a flat position," makes clear that the sheath possesses a surrounding bottom portion.  Delman Decl. ¶ 60.  Moreover, the structure of the sheath, including the "surrounding bottom portion" limitation, is further disclosed by the Figures of the '071 patent that disclose the bag or luggage body as including a sheath attached to the bag or luggage body, for example figures 1,3, and 8:



'071 Patent Fig. 3 and annotated close-up of Fig. 3



9

'071 Patent Fig. 1 and annotated close-up of Fig. 1 with surrounding
bottom portion of sheath attached to bag depicted in red.

These figures depict the bottom of the sheath (i.e., the surrounding bottom portion) as attached to the bag. Delman Decl. ¶¶ 61–62. Taken either separately or together, at a minimum, these disclosure raise questions of material fact as to whether the '071 patent reasonably conveys to a POSITA that the inventor had possession of the claimed subject matter of the child patents as of the filing date. *Id.* ¶ 54; *Ariad*, 598 F.3d at 1351. Accordingly, Defendants' Motion should be denied.

**B.    Even Under Defendants' Construction of a Surrounding Bottom Portion, the '071 Patent Provides Written Description Support for the Asserted Child Patent Claims.**

The '071 patent disclosures reasonably convey to those skilled in the art that the inventor had possession of the subject matter claimed in the child patents—even under Defendants' proposed claim construction. When applying Defendants' proposed construction, Figure 6 explicitly depicts a surrounding bottom portion. Indeed, Mr. Delman opines that, applying Defendants' proposed construction, this figure alone would disclose to a POSITA the "surrounding bottom portion" limitation of the child patents. Delman Decl. ¶¶ 55–56. An annotated image of Figure 6 of the '071 Patent is shown below:



10

As the law makes clear, a "prior application need not contain precisely the same words as are found in the asserted claims" but rather "the prior application must indicate to a person skilled in the art that the inventor was 'in possession' of the invention as later claimed." *PowerOasis, Inc.*, 522 F.3d at 1306.  Every claim of the '071 patent discloses a sheath. *See, e.g.*, '071 Pat. claim 1 ("the female connector . . . covered by a water proof sheath").  And Figure 6, a "structural schematic diagram" of an embodiment of the invention, conveys to a POSITA that the sheath may include a surrounding bottom portion (here, the "nameplate").  Delman Decl. ¶ 56.  Therefore, Figure 6 would indicate that the inventor was in possession of the "surrounding bottom portion" limitation.  *Id.* ¶¶ 55–57.

Notably, a patent by the same inventor but not asserted in this lawsuit, U.S. Patent No. 9,865,153 ("the '153 patent"), which was filed on April 19, 2016 and claims priority to a foreign application filed on April 24, 2015, provides further support that Figure 6 discloses a surrounding bottom portion.  Delman Decl. ¶ 57; *see* '153 patent (Ex. A).  The '153 patent describes the "nameplate" as including a "base." *See, e.g.*, '153 patent (Ex. A) col. 4 ll. 4–21.  The '153 patent also describes that the base "may be made from a flexible material." *Id.*  Based on the disclosure provided by Figure 6 of the '071 patent and Mr. Delman's testimony relating to the same, at a minimum, there exists genuine issues of material fact as to whether the written description is met.  For this reason, Defendants' Motion should be denied.

### C.     The Surrounding Bottom Portion Limitation Is Inherently Disclosed by the '071 Patent.

Even if the '071 patent's specification lacked an express written description of a "surrounding bottom portion," the surrounding bottom portion limitation is inherently disclosed in the patent.  The Federal Circuit has recognized that even if a certain limitation is not expressly disclosed, the written description requirement may still be met through an inherent disclosure.

*PowerOasis, Inc.*, 522 F.3d at 1306–07; *Yeda Rsch. & Dev. Co. v. Abbott GmbH & Co. KG*, 837 F.3d 1341, 1345 (Fed. Cir. 2016) ("Under the doctrine of inherent disclosure, when a specification describes an invention that has certain undisclosed yet inherent properties, that specification serves as adequate written description to support a subsequent patent application that explicitly recites the invention's inherent properties."); *cf.* Manual of Patent Examining Procedure § 2163 (9th ed. Rev. 3, Jan. 2018) (recognizing that inherency may satisfy the written description requirement). The doctrine of inherency arises when a specification lacks sufficient written description to satisfy Section 112, paragraph 1, yet the patent nonetheless "unavoidably teaches the property in question." *Agilent Techs., Inc. v. Affymetrix, Inc.*, 567 F.3d 1366, 1383 (Fed. Cir. 2009); *Tronza v. Biomet, Inc.*, 156 F.3d 1154, 1159 (Fed. Cir. 1998); *Allergan, Inc. v. Sandoz Inc*., 796 F.3d 1293, 1309 (Fed. Cir. 2015) ("A claim that recites a property that is necessarily inherent in a formulation . . . is not invalid as lacking written description merely because the property itself is not explicitly described.").

For "a disclosure to be inherent, 'the missing descriptive matter must necessarily be present in the [original] application's specification such that one skilled in the art would recognize such a disclosure.'" *TurboCare Div. of Demag Delaval Turbomachinery Corp. v. Gen. Elec. Co.*, 264 F.3d 1111, 1119 (Fed. Cir. 2001). Although the written description requirement *can* be satisfied by a precise description of what is claimed in the subject matter, an exact depiction of the claimed subject matter is **not necessary** to satisfy that requirement. *See, e.g.*, *Koito Mfg. Co.*, 381 F.3d at 1154. "The level of detail required to satisfy the written description requirement varies depending on the nature and scope of the claims and on the complexity and predictability of the relevant technology." *Centrak, Inc. v. Sonitor Techs., Inc.*, 915 F.3d 1360, 1367 (Fed. Cir. 2019); *In re Vaeck,* 947 F.2d 488, 496 (Fed. Cir. 1991) (observing that electrical elements are predictable and

noting that the required level of disclosure for such inventions is less than for unpredictable arts);

*Ascion, LLC v. Ashley Furniture Indus., Inc.*, No. 2021-1857, 2022 WL 1197338, at *2 (Fed. Cir.

Apr. 22, 2022) (explaining that there is a "lower level of detail required to satisfy the written

description requirement [for mechanical inventions] than for unpredictable arts").

In this case, which involves a visually accessible invention that is a "predictable art," a

lesser level of disclosure is required to satisfy the written description, and application of the

inherency doctrine is appropriate. Delman Decl. ¶ 53. Defendants do not address the doctrine of

inherency and instead focus on the fact that the parent patent specification does not include the

*specific* term "surrounding bottom portion," which as previously addressed, is not required by the

law. Mr. Delman testifies that in addition to the express disclosures that satisfy the written

description requirement, *supra*, the '071 patent's disclosure of the sheath attached to a bag or

luggage unavoidably discloses a surrounding bottom portion because such a configuration (i.e.,

the sheath attached to the bag or luggage as opposed to not attached) would require there be a

surrounding bottom portion (under Defendants' interpretation of the claim term). *Id.* ¶¶ 59–64. A

POSITA would understand that the sheath is consistently described throughout the '071 patent as

having a raised portion that extends above an outer surface of a body [bag or luggage] and is

attached to the bag or luggage body. *Id.* ¶¶ 61–63. Figure 3 of the '071 patent provides a

perspective view that clearly supports this:

13



'071 Patent Fig. 3 and annotated close-up of Fig. 3

*Id.* As can be seen, the sheath (which the '071 patent discloses covers/is wrapped on the outer surface of the female connector [2-2]) is a raised portion that extends above the outer surface of the body [luggage]. The female connector end of a USB is inside the sheath and receives an external connecting plug (12).

Further, it would be clear to a POSITA that the continuation patents focus on the invention from the perspective of a sheath as opposed to the '071 patent that focuses on the invention from the perspective of the larger bag or luggage. Delman Decl. ¶ 65. It is common practice for continuation patents to focus on elements of an invention disclosed in a parent patent, and a POSITA would recognize this context and would not view additional embodiments disclosed in a child patent as new matter not disclosed in the parent patent, as Defendants assert. *Id.* Unlike the child patents, which focus on a separate sheath component, every embodiment of the claims of the '071 patent mandates that the bag or luggage body incorporate a sheath component. '071 Pat. claims 1 and 10. This is evident from the claim language itself and figures depicting the sheath attached to the bag or luggage body itself. *Id.* claims 1 and 10, Fig. 1.



FIGURE 1

An invention that includes a sheath incorporated onto a bag or luggage body "unavoidably teaches" the means of attachment—the surrounding bottom portion.  Delman Decl. ¶ 62; *see Agilent Techs., Inc.*, 567 F.3d at 1383.  This conclusion is not remarkable; Defendants rely on the same logic and similar images of the TSG4H157 bag and the Group III 6067 bag when arguing those products practice claims of the child patents that include the "surrounding bottom portion" limitation.  *See* Defs.' Mot. (and embedded images) 12, ECF No. 56 ("For example, in the above image at right, only the sheath portion is visible, **meaning the surrounding bottom portion is** . . . **used to attach the sheath** to the inner surface of the strap." (emphasis added)); *id.* at 15 ("**[T]he surrounding bottom portion** would be attached to the inner surface of the bag and therefore **not visible** from the outside." (emphasis added)).

For these reasons, there exists a general issue of material fact as to whether one skilled in the art would recognize an inherent disclosure of the "surrounding bottom portion" claim term in the '071 patent specification.  Accordingly, Defendants' Motion should be denied.

**II.    Defendants Have Not Shown by Clear and Convincing Evidence That the Challenged Claims Are Invalid Pursuant to the On-Sale Bar.**

Even if Defendants could establish that the continuation patents are not entitled to the priority date of the '071 patent (which they cannot), Defendants have not met their burden of proving invalidity under Section 102's on-sale bar by clear and convincing evidence.

**A.    Defendants' Evidence Fails to Establish That the TSG4H157 Bag That Was Offered for Sale Possessed Each and Every Claim Limitation of the Asserted Claims Defendants Challenge and Thus Cannot Be Used to Invalidate the Challenged Claims of the '137 Patent.[7]**

Defendants present no evidence that the ███████████████████████████████ ████████████████████████████████ was on sale or publicly disclosed prior to the purported critical date. "Only an offer which rises to the level of a commercial offer for sale" triggers the on-sale bar. *Meds. Co. v. Hospira, Inc.*, 827 F.3d 1363, 1378 (Fed. Cir. 2016). A commercial offer "must meet the level of an offer for sale in the contract sense, one that would be understood as such in the commercial community." *Grp. One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041, 1046 (Fed. Cir. 2001). "The subject of the offer for sale must embody the claims of the asserted patent." *Crown Packaging Tech., Inc. v. Belvac Prod. Mach., Inc.*, 122 F.4th 919, 924 (Fed. Cir. 2024); *cf. Scaltech, Inc. v. Retec/Tetra, LLC*, 269 F.3d 1321, 1326 (Fed. Cir. 2001) (finding that the district court erred because "the district court was required to examine whether the process offered [for sale] satisfied all the claim limitations [and the defendant] was required to show that the process offered for sale inherently possessed each of the claim limitations."). Because anticipation is a question of fact, summary judgment of invalidity under the on-sale bar is only proper "if no reasonable jury could find that the patent is not anticipated" by the on-sale

---

[7] Defendants do not assert that the Group III 6067 and/or SG-X27 practice any of the claims of the '137 patent. Therefore, their only support in arguing to invalidate the challenged claims of the '137 patent is the TSGH157 bag.

product.  *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1327 (Fed. Cir. 2001);

*Cap Exp., LLC v. Zinus, Inc.*, No. 2021-2159, 2022 WL 4376407, at *3 (Fed. Cir. Sept. 22, 2022).

To establish that the Swissdigital TSG4H157 product practices the challenged claims of

the continuation patents,[8] Defendants rely on an annotated ███████████████████████

███████ to meet several claim limitations:



*See, e.g.*, Defs.' Mot. 11, ECF No. 56 ("The sheath on the TSG4H157 also practiced limitation

1[a], as shown.").  The image annotated by Defendants ███████████████████████████████

███████████████████████████below:



<hr>

[8] Defendants do not challenge all of the claims of the continuation patents Plaintiff asserts in this case.  *See* Defs. Br. at 4; 4 fn 5 ("Plaintiff asserts other claims which are not subject to this Motion").

Defs.' Ex. 25, at SWISSDIGITAL001841, ECF No. 58-25.  Notably, the ███████████

███████████ image was taken from a confidential, internal document produced as "Highly

Confidential, Attorneys' Eyes Only" during this litigation.  There is no evidence that the image

from a ████████████████████████████████ Defendants rely upon as prior art/on sale

bar evidence were in the public domain or that this specific design was included in the TSGH157

product offered for sale.  Samsonite asserts that "Plaintiff has produced a design document with

photographs *matching* the photographs of the TSG4H157 product," yet provides no real

connection between the prototype design specification and the TSG4H157 product.  Defs.' Mot.

4, ECF No. 56 (emphasis added).  Indeed, Defendants offer no testimony from an expert examining

the TSG4H157 bag itself to support its position.  Defendants' attorneys' opinion that the unrelated

confidential ████████████████████ depicting a ████████████ *matches* photographs of the

TSG4H157 bag is not sufficient evidence that the subject of the offer (i.e., the TSG4H157 bag)

included every limitation of the challenged claims or was publicly disclosed prior to April 19,

2018.  *See Crown Packaging Tech., Inc.*, 122 F.4th at 924.

Defendants rely solely on this ████████████ image to meet, among other limitations,

at least claim 1 limitation [a] of the '137 patent.[9]  *See* Defs.' Mot. 11–13, ECF No. 56.  Because

Defendants' fail to prove the TSGH157 bag as offered for sale prior to April 19, 2018, practiced

claim 1—an independent claim—Defendants' invalidity challenges to the remaining dependent

claims of the '137 patent also fail.  Accordingly, Defendants have failed to meet their burden of

proving the challenged claims of the '137 patent are invalid by clear and convincing evidence.

---

[9]  Defendants also rely on this confidential prototype design specification when asserting that the
TSGH157 practiced the claims of the '138 and '009 patents.  *See* Defs.' Mot. 17–18, ECF No. 56.

**B.** **Mr. Pulichino's Testimony Is Self-Serving and Raises Genuine Issues of Material Fact Regarding Whether the Group III 6067 Bag Practiced the Asserted Claims of the '138 and '009 Patents.**

In asserting that the Group III 6067 bag practiced the challenged claims of the '138 and '009 patents, Defendants rely on a combination of images of a design specification of a component (SG-X27) and photos of the Group III 6067 bag.  Defendants rely solely on the SG-X27 design specification to meet, among other limitations, at least claim 1 limitation [a] of the '138 and '009 patents, claim 23 [a] of the '138 patent, and claim 29 [a] of the '009 Patent.  *See* Defs.' Mot. 11, 13–14, 17, ECF No. 56.



*See id.* at 14 (depicting the SG-X27 design document annotated by Defendants to show a "surrounding bottom portion surrounding the sides and ends").

Defendants provide no independent expert testimony to support that the Group III 6067 bag included the actual component depicted in the SG-X27 design specification.  Rather, the only "evidence" Defendants rely on for this proposition is Mr. Pulichino's self-serving testimony.  Mr. Pulichino is a long-time competitor of Plaintiff, and his bag and luggage products have also been accused of patent infringement and the subject of patent infringement litigation brought by Plaintiff.  *See Swissdigital USA Co., Ltd. v. Wenger S.A.*, No. 6:21-cv-453 (W.D. Tex.) ("Wenger Litigation"), ECF. No. 20 (Amended Complaint); *see generally* Wenger Litigation.  At the time of

19

his deposition, Mr. Pulichino shared an interest in invalidating Plaintiff's patent claims. *See generally* Wenger Litigation. Accordingly, there are factual questions regarding Mr. Pulichino's testimony and whether the SG-X27 design was present in the Group III 6067 bags on sale prior to April 19, 2018.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion in its entirety.

Date: May 9, 2025

<div style="margin-left:40%">

Respectfully submitted,

<u>/s/ *Dariush Keyhani*</u>

Dariush Keyhani (*pro hac vice*)
Frances H. Stephenson (*pro hac vice*)
Scott M. Draffin (*pro hac vice*)
KEYHANI LLC
1050 30th Street NW
Washington, DC 20007
Phone: (202) 748-8950
dkeyhani@keyhanillc.com
fstephenson@keyhanillc.com
sdraffin@keyhanillc.com

Lisa M. Tittemore (BBO # 567941)
Kevin R. Mosier (BBO # 703739)
Katherine W. Soule (BBO #703965)
SUNSTEIN LLP
100 High Street
Boston, MA 02110
Phone: (617) 443-9292
ltittemore@sunsteinlaw.com
kmosier@sunsteinlaw.com

*ATTORNEYS FOR PLAINTIFF,*
*SWISSDIGITAL USA CO., LTD.*

</div>

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 9th day of May, the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all attorneys or record who have consented to accept this Notice as service of this document by electronic means.

*/s/ Kevin R. Mosier*
Kevin R. Mosier