# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

SWISSDIGITAL USA CO., LTD.,

        Plaintiff,

     v.

SAMSONITE GROUP S.A.; SAMSONITE
LLC; SAMSONITE COMPANY STORES,
LLC; and DIRECT MARKETING
VENTURES, LLC,

        Defendants.

Civil No. 1:24-cv-11636

**JURY TRIAL DEMANDED**

███████████████

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT REGARDING THE CORRECT PRIORITY DATE OF U.S. PATENT NOS. 10,931,137, 10,931,138, AND 11,601,009, AND <u>INVALIDITY OF CERTAIN ASSERTED CLAIMS OF THOSE PATENTS (Dkt. 56)</u>

## TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................ 1

II.    ARGUMENT ................................................................................................ 1

     A.     Mr. Delman's Declaration Does Not Raise a Genuine Dispute of
Material Fact. ................................................................................... 2

     B.     The '071 Patent Lacks Written Description Support for the
"Surrounding Bottom Portion." ....................................................... 4

          1.     Plaintiff's Belated Claim Construction Arguments Are
Both Incorrect and Irrelevant. ........................................... 4

                 a.     Plaintiff's Untimely Claim Construction Argument
Is Incorrect Because It Ignores the Disclosures in
the Continuation Patents. .................................... 5

                 b.     Plaintiff's Untimely Claim Construction Argument
Is Irrelevant as a Matter of Law. ........................ 6

          2.     Figure 6 of the '071 Patent Does Not Depict a
"Surrounding Bottom Portion." ......................................... 8

          3.     Plaintiff's Inherency Argument Fails, Because a
"Surrounding Bottom Portion" Is Not *Necessarily* Present
in the '071 Patent Disclosures. ......................................... 11

          4.     The Challenged Claims Cannot Claim Priority to the '071
Patent Because the '138 and '009 Patents Are
Continuations-in-Part. ....................................................... 13

     C.     The Challenged Claims Are Invalid Under 35 U.S.C. § 102. .............. 15

          1.     Plaintiff's TSG4H157 Product Was Sold Before April 19,
2018 ███████████████ in Plaintiff's Design
Document. .......................................................................... 15

          2.     There Is No Dispute that Group III's 6067 Product
Invalidates. ........................................................................ 18

III.    CONCLUSION ............................................................................................ 20

CERTIFICATE OF SERVICE ................................................................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amgen Inc. v. Sandoz Inc.*,
66 F.4th 952 (Fed. Cir. 2023) ...............................................11

*Application of Werheim*,
541 F.2d 257 (C.C.P.A. 1976) ...............................................10

*Ariad Pharms., Inc. v. Eli Lilly and Co.*,
598 F.3d 1336 (Fed. Cir. 2010).............................................8, 10

*In re Berkman*,
642 F.2d 427 (C.C.P.A. 1981) ...............................................6

*Chore-Time Equip., Inc. v. Cumberland Corp.*,
713 F.2d 774 (Fed. Cir. 1983)..............................................2, 17

*Cy Tech. Grp. LLC v. Groupon, Inc.*,
No. 10-CV-07287 MRP, 2011 WL 13193420 (C.D. Cal. July 7, 2011) ................................13

*Ferring B.V. v. Barr Labs, Inc.*,
437 F.3d 1181 (Fed. Cir. 2006)...............................................18

*In re Floyd*,
No. 2023-2395, 2025 WL 1163561 (Fed. Cir. Apr. 22, 2025) ............................8, 11

*Haemonetics Corp. v. Baxter Healthcare Corp.*,
607 F.3d 776 (Fed. Cir. 2010)...............................................3

*Hebert v. Off. of Personnel Mgmt.*,
No. 18-11483-MPK, 2024 WL 4892666 (D. Mass. Sept. 16, 2024) ......................16

*In re Jones*,
10 F. App'x. 822 (Fed. Cir. 2001) ...........................................11

*Juno Therapeutics, Inc. v. Kite Pharma, Inc.*,
10 F.4th 1330 (Fed. Cir. 2021) .............................................7

*Lockwood v. Am. Airlines, Inc.*,
107 F.3d 1565 (Fed. Cir. 1997)..............................................3

*Novartis Pharms. Corp. v. Accord Healthcare, Inc.*,
38 F.4th 1013 (Fed. Cir. 2022) ............................................4, 10

*Nuvo Pharms. (Ireland) Designated Activity Co. v. Dr. Reddy's Labs. Inc.*,
　923 F.3d 1368 (Fed. Cir. 2019)............................................................................11

*Phillips v. AWH Corp.*,
　415 F.3d 1303 (Fed. Cir. 2005)............................................................................3, 5

*PowerOasis, Inc. v. T-Mobile USA, Inc.*,
　522 F.3d 1299 (Fed. Cir. 2008)............................................................................4, 7, 13

*Ralston Purina Co. v. Far-Mar-Co, Inc.*,
　772 F.2d 1570 (Fed. Cir. 1985)............................................................................10

*SynQor, Inc. v. Artesyn Techs., Inc.*,
　709 F.3d 1365 (Fed. Cir. 2013)............................................................................6

*Univ. of Rochester v. G.D. Searle & Co., Inc.*,
　358 F.3d 916 (Fed. Cir. 2004)............................................................................7

*Vas-Cath Inc. v. Mahurkar*,
　935 F.2d 1555 (Fed. Cir. 1991)............................................................................7, 10

*In re Wertheim*,
　646 F.2d 527 (C.C.P.A. 1981) ............................................................................13

*X2Y Attenuators, LLC v. Int'l Trade Comm'n*,
　757 F.3d 1358 (Fed. Cir. 2014)............................................................................7

**Statutes**

35 U.S.C. § 102............................................................................15

**Other Authorities**

Fed. R. Civ. P. 30(c)(1)............................................................................19

## I. INTRODUCTION

Plaintiff's Opposition ("Opposition" or "Opp.") is premised on misapplications of the law and a self-serving expert declaration consisting solely of conclusory, unsupported opinions. But an expert declaration cannot replace deficiencies in a parent application's disclosure nor create a genuine issue of material fact where, as here, the specification of the parent application simply does not disclose the invention claimed in the child applications. When the law is correctly applied to the patents and disclosures at issue, U.S. Patents 10,931,137 (the "'137 patent"), 10,931,138 (the "'138 patent"), and 11,601,009 (the "'009 patent") (collectively, "Continuation Patents") are not entitled to claim priority to U.S. Patent 10,574,071 (the "'071 patent").

With the correct priority date (April 19, 2019) applied, the Challenged Claims—claims 1, 3, 6-7, and 19-21 of the '137 patent, 1-2, 4, 6-8, 17, 19-21, and 23 of the '138 patent, and 1, 2, 4, 6-8, 17, 19-21, and 29 of the '009 patent—are invalid as anticipated over Plaintiff's TSG4H157 and Group III's 6067 products that were on sale before the relevant date. Plaintiff ***does not dispute*** that these bags practiced the Challenged Claims, or that the bags were offered for sale and ready for patenting before the critical date. *See* Dkt. No. 56 (Opp.) at 16-20. Plaintiff's attempts to overcome Samsonite's showing of invalidity raise no genuine dispute.

## II. ARGUMENT

The '071 patent fails to provide written description support for the "surrounding bottom portion" claimed in the Challenged Claims and therefore cannot support priority for those patents. Plaintiff's arguments otherwise apply an erroneous legal standard and improperly rely on a declaration by its surprise expert, Mr. Delman, to supply disclosures that are entirely absent from the '071 patent. Plaintiff also does not raise any genuine factual dispute that Plaintiff's TSG4H157 and Group III 6067 bags invalidate the Challenged Claims when the correct priority date is applied. Instead, Plaintiff baselessly questions the authenticity of its own documents and the veracity of

sworn testimony of a third-party witness in a transparent attempt to manufacture a factual dispute. These arguments do not hold water, and the Challenged Claims are invalid over the TSG4H157 and 6067.

## A. Mr. Delman's Declaration Does Not Raise a Genuine Dispute of Material Fact.

The technology at issue in this case is simple. It involves a conventional USB cable with male and female ends outside a hole or outlet, with a piece of cloth or fabric (the claimed "sheath") covering the female end of the USB cable. *See*, *e.g.*, Dkt. No. 56 (Mot.) at 2-4; Dkt. No. 1 (Complaint) at ¶¶ 11-14. In Plaintiff's own words, "this is not a complicated case necessitating that the Court be educated on complex technology or terminology," "the technology at issue is readily accessible," and "the patent language is not complicated or overly technical." Dkt. No. 55 (Pl. Ltr. re Claim Constr.) at 1. Fittingly, Plaintiff did not submit an expert declaration in support of its claim construction brief regarding the proper interpretation of any disputed claim term— including the "surrounding bottom portion" at issue in this Motion—and represented to the Court that "***no further context or argument*** is needed to decide the claim construction disputes in this case."[1] Dkt. No. 36 (Pl. Opening Claim Constr. Br.); Dkt. No. 49 (Pl. Resp. Claim Constr. Br.); Dkt. No. 55 (Pl. Ltr. re Claim Constr.) at 1.

Yet now, in a transparent attempt to manufacture a factual dispute, Plaintiff includes the declaration of a surprise expert witness with its opposition, advocating new claim construction theories it did not raise in its claim construction briefing. The Court should decline to entertain Plaintiff's gamesmanship and disregard Mr. Delman's conclusory and unsupported opinions, particularly where, as here, the technology at issue is "easily discernible." *E.g.*, *Chore-Time Equip., Inc. v. Cumberland Corp.*, 713 F.2d 774, 779 (Fed. Cir. 1983).

---

[1] Emphasis added unless otherwise specified.

Even if it is considered, Mr. Delman's declaration raises no genuine dispute *of fact*. Plaintiff, relying chiefly on Mr. Delman's declaration, attempts to derail the inquiry into the proper priority date for the Continuation Patents by turning it into a dispute over new arguments about *claim construction*. *Compare*, *e.g.*, Dkt. No. 36 (Pl. Opening Claim Constr. Br.) at 18-19 *with* Dkt. No. 66 (Opp.) at 6 (arguing term "would encompass the bottom of the sheath itself or mere portions of the bottom of the sheath"); *see also* Dkt. No. 49 (Pl. Resp. Claim Constr. Br.) at 18-20. Indeed, Plaintiff's primary argument is that the plain and ordinary meaning of the term "surrounding bottom portion" includes the "bottom of the sheath itself or mere portions of the bottom of the sheath," and that a POSITA examining the '071 patent would have understood that the sheath in the '071 patent would have been attached to the bag via a bottom portion of the sheath. Dkt. No. 66 (Opp.) at 5-10; Dkt. No. 68 (Delman Decl.) at ¶¶ 58-64. But claim interpretation is an issue of *law* for the Court, not an issue of *fact*. *E.g.*, *Haemonetics Corp. v. Baxter Healthcare Corp.*, 607 F.3d 776, 780 (Fed. Cir. 2010). Indeed, this motion is already set to be heard and decided in the context of the claim construction hearing on July 11, 2025.

Further, although the written description requirement is examined from the point of view of a Person of Ordinary Skill in the Art ("POSITA"), a party cannot avoid summary judgment simply by submitting an expert declaration contradicting the intrinsic evidence of the patents. "[W]hile extrinsic evidence," such as expert testimony, "can shed useful light on the relevant art," it is "less significant than the intrinsic record in determining the legally operative meaning of claim language." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) (cleaned up). Even expert testimony must find its basis *in the disclosure of the patent*. *E.g.*, *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997) ("While the meaning of terms, phrases, or diagrams in a disclosure is to be explained or interpreted from the vantage point of one skilled in the art, *all the*

*limitations must appear in the specification*.”). As explained in more detail below (*infra* Sections II.B.1-3), Mr. Delman’s declaration is conclusory and cannot overcome the lack of disclosure of a “surrounding bottom portion” in the ’071 patent.

## B. The ’071 Patent Lacks Written Description Support for the “Surrounding Bottom Portion.”

Each Continuation Patent adds new figures and disclosures not found in the ’071 patent. Dkt. No. 56 (Mot.) at 8-10. These new disclosures, which describe and depict a sheath that has a “surrounding bottom portion” surrounding the sides of the sheath, are a far cry from the ’071 patent’s disclosure of a simpler sheath that is “wrapped on” or “covers” only the “outer sides” of a female connector. *Compare* SUMF ¶¶ 13, 15-20 (quoting disclosures from the ’071 patent describing the configuration of the sheath) *with*, *e.g.*, Mot., Ex. 4 (’137 patent) at 5:57-6:18, Figs. 11-17, 19-22, 43-46. The ’071 patent’s disclosure does not satisfy the legal requirement that the specification “*reasonably* convey” to a POSITA that the inventor had possession of the subject matter claimed in the later-filed Continuation Patents, as “*shown in the disclosure*.” *E.g.*, *Novartis Pharms. Corp. v. Accord Healthcare, Inc.*, 38 F.4th 1013, 1016 (Fed. Cir. 2022).

In trying to concoct a factual dispute, Plaintiff 1) argues that the ’071 patent discloses a “surrounding bottom portion” because it depicts a “bottom of the sheath itself” or “mere portions” thereof; 2) advances an unsupported interpretation of Figure 6 of the ’071 patent; and 3) incorrectly applies the law of inherency. Dkt. No. 66 (Opp.) at 5-15. Plaintiff’s arguments fail.

### 1. Plaintiff’s Belated Claim Construction Arguments Are Both Incorrect and Irrelevant.

The relevant inquiry to determine whether the Continuation Patents are entitled to the ’071 patent’s priority date is whether the ’071 patent’s specification contains disclosures sufficient to convey the *full scope* of the sheath with the “surrounding bottom portion” *as claimed in the Continuation Patents*. *E.g.*, *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1306 (Fed.

Cir. 2008) ("[T]he prior application must indicate to a person skilled in the art that the inventor was 'in possession' of the invention *as later claimed*." (citation omitted)). Thus, determining the full scope of the "surrounding bottom portion" as claimed in the Continuation Patents is a predicate inquiry. But rather than address this inquiry head on, Plaintiff and its expert answer a different question: if a POSITA *were forced* to search for a "surrounding bottom portion" in the '071 patent—which does not even mention the term—where would it be? Plaintiff then shoehorns the answer to that irrelevant question into a partial construction of the term "surrounding bottom portion," arguing that its plain meaning must include "the bottom of the sheath itself or mere portions." Dkt. No. 66 (Opp.) at 5-10. Plaintiff's proposed construction is a transparent attempt to manufacture a link between the Continuation Patents' "surrounding bottom portion" and the disclosures of the '071 patent, which Plaintiff can then exploit to bolster its priority date argument. Plaintiff's proposed construction is late, wrong,[2] and legally irrelevant.

### a. Plaintiff's Untimely Claim Construction Argument Is Incorrect Because It Ignores the Disclosures in the Continuation Patents.

The proper construction and scope of the term "surrounding bottom portion" can only be determined by first reviewing *the Continuation Patents* in which the claim term appears, including the intrinsic record, which is the best evidence of the "legally operative meaning of claim language." *Phillips v. AWH Corp.*, 415 F.3d at 1317 (citation omitted). Plaintiff does not dispute that the Continuation Patents explicitly disclose a "surrounding bottom portion" that is a flat portion or flange. In fact, *every single embodiment* of a "surrounding bottom portion" in the Continuation Patents is of the flat portion or flange that "surrounds" the sides of the sheath,

---

[2] Defendant's proposed construction for "surrounding bottom portion," as fully explained in the earlier-filed claim construction briefs, is the correct one. Dkt. No. 37 (Defs.' Opening Claim Constr. Br.); Dkt. No. 50 (Defs.' Responsive Claim Constr. Br.). However, Defendants will not rehash those arguments here; the precise construction of the term "surrounding bottom portion" is not determinative of this issue.

depicted at right. *See* Dkt. No. 56 (Mot.) at 8-9.[3] Thus, the intrinsic evidence is clear that whatever the correct construction of "surrounding bottom portion" in the Continuation Patents is, its full scope ***must at least*** include the flat portion or flange-like piece of the sheath. *See SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1378-79 (Fed. Cir. 2013) ("A claim construction that excludes the preferred embodiment is rarely, if ever, correct" (citation omitted)).



Mr. Delman's opinion that the "surrounding bottom portion" includes the "bottom of the sheath or mere portions thereof," is based solely on his interpretation of figures in the '071 patent, but lacks any support in the Continuation Patents that actually recite the claim term "surrounding bottom portion." Dkt. No. 68 (Delman Decl.) at ¶¶ 54-64. The "surrounding bottom portion" claimed in the Continuation Patents simply cannot encompass the bottom of the sheaths or portions thereof when "[t]here is nothing shown in the drawings to lead one of ordinary skill to such a conclusion." *In re Berkman*, 642 F.2d 427, 430 (C.C.P.A. 1981).

### b. Plaintiff's Untimely Claim Construction Argument Is Irrelevant as a Matter of Law.

Even if the Court credits Plaintiff's new claim construction arguments, they are irrelevant to the written description inquiry at issue. The Continuation Patents' claims are entitled to the priority date of the '071 patent "***only if*** the earlier specification provides sufficient written support

---

[3] That the Continuation Patents describe a separate "attachment portion" is irrelevant. Dkt. No. 66 (Opp.) at 6-7. The Continuation Patents describe use the term "surrounding bottom portion" and "surrounding bottom attachment portion" to describe the same flat portion surrounding the sides of the sheath. *E.g.*, Mot., Ex. 5 ('138 patent) at 6:3-6 (describing "surrounding bottom attachment portion"), 6:52-59 (describing "surrounding bottom portion"); *compare*, *e.g.*, Fig. 44 (depicting "surrounding bottom portion" 4402) *with* Fig. 45 (depicting "surrounding bottom attachment portion" 4508). In any case, neither a "surrounding bottom portion" nor an "attachment portion" are disclosed in the '071 patent.

for the ***full scope*** of the claim." *X2Y Attenuators, LLC v. Int'l Trade Comm'n*, 757 F.3d 1358, 1365 (Fed. Cir. 2014); *Juno Therapeutics, Inc. v. Kite Pharma, Inc.*, 10 F.4th 1330, 1336 (Fed. Cir. 2021) (vacating jury verdict because "no reasonable jury could find the [earlier patent]'s written description sufficiently demonstrates that the inventors possessed the ***full scope*** of the claimed invention"). Put simply, even if the term "surrounding bottom portion" is construed to include the bottom of the sheath itself, as Plaintiff now suggests, the full scope of "surrounding bottom portion" must still include the flat portion/flange embodiments of the Continuation Patents as well. The '071 patent still lacks any such disclosure, or even any suggestion of such disclosure. [4]

Accordingly, even if Plaintiff's new claim construction argument were correct (it is not), the '071 patent still fails to provide written description support for the "full scope" of the claims containing the term "surrounding bottom portion," and therefore cannot support priority for the Challenged Claims. *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1561 (Fed. Cir. 1991) (finding specification that "discusses only compound A and contains no broadening language of any kind" may "***enable*** one skilled in the art to make and use compounds B and C," but does not satisfy the ***written description*** requirement for the "class consisting of A, ***B, and C***"); *PowerOasis,* 522 F.3d at 1308-09 (finding claims were not adequately supported by written description where the earlier application disclosed only a "unitary vending machine apparatus," and there was "***simply no disclosure***" of a "user interface . . . separate from the vending machine itself"); *Univ. of Rochester v. G.D. Searle & Co., Inc.*, 358 F.3d 916, 923 (Fed. Cir. 2004) ("It is not a question of whether one skilled in the art ***might*** be able to construct the patentee's device from the teachings of the disclosure of the application. Rather, it is a question of whether the application ***necessarily***

---

[4] Plaintiff's argument that the "nameplate" in Figure 6 of the '071 patent somehow discloses the flat portion/flange is not credible. Dkt. No. 66 (Opp.) at 10-11. Nonetheless, it is addressed separately below in Section II.B.2.

*discloses* that ***particular device***" (citation omitted)); *Ariad Pharms., Inc. v. Eli Lilly and Co.*, 598 F.3d 1336, 1358 (Fed. Cir. 2010) (vacating jury verdict and finding claims invalid for lack of written description where specification "at best" described a narrow invention, and asserted claims were "far broader"); *see also In re Floyd*, No. 2023-2395, 2025 WL 1163561, at *5 (Fed. Cir. Apr. 22, 2025) (finding disclosure of two arrays with specific dimensions provided "no basis on which to conclude that a skilled artisan would necessarily recognize that [the inventor] possessed the ***different claimed six-by-five design***").

Whether the '071 patent discloses something that may be part of the scope of "surrounding bottom portion" in isolation has no bearing on whether the '071 patent discloses the flat portion/flange embodiment described in the Continuation Patents, which is indisputably within the full scope of the term. Plaintiff's belated claim construction argument is thus irrelevant.

### 2. Figure 6 of the '071 Patent Does Not Depict a "Surrounding Bottom Portion."

Plaintiff's argument that Figure 6 of the '071 patent provides written description support for the flat portion or flange described and depicted in the Continuation Patents does not pass muster. Plaintiff bases its argument entirely on a "nameplate" shown in Figure 6. Dkt. No. 66 (Opp.) at 10-11; Dkt. No. 68 (Delman Decl.) at ¶¶ 55-57. The '071 patent describes Figure 6 as "embodiment 6" with a "power cable outlet" located "below the nameplate 6," and the "female connector 2-2" located "at the power cable outlet." Mot., Ex. 3 ('071 patent) at 4:18-38. Plaintiff ignores that the patent calls this a "nameplate," and instead



creates an annotated version of the figure (reproduced above, at right) re-labeling the "nameplate 6" as the "surrounding bottom portion," with no basis. Plaintiff then uses this re-labeled figure to argue that the nameplate in the '071 patent is equivalent to the "surrounding bottom portion" limitation of the Continuation Patents because it shows the sides and flat portion surrounding the sides, even though the '071 patent does not use the same terminology as the Continuation Patents to describe those portions. Dkt. No. 66 (Opp.) at 10-11.

But Plaintiff (and Mr. Delman) ignore that Figure 6 of the '071 patent does not depict a sheath at all, let alone a sheath having a surrounding bottom portion. The term "sheath" is used in the '071 patent with respect to the patent's description of the embodiments shown in Figures 1-4, and 8-10, even if the specific "sides" are not described. Mot., Ex. 3 ('071 patent) at 3:14-4:5 (describing a "sheath" in "embodiment 1," "embodiment 2," "embodiment 3," and "embodiment 4"), 4:34-60 (describing a "sheath" in "embodiment 8" and "embodiment 9"); 4:61-64 (describing "embodiment 10" as the same as "embodiment 9," except the location of the power cable outlet). The figures associated with these embodiments also all clearly depict the "sheath," using solid lines in the illustrations. *Id.* at Figs. 1-4, 8-10. Meanwhile, embodiments 5-7, and associated Figures 5, 6, and 7, do not mention or depict a "sheath." *Id.* at 4:6-33 (describing "embodiment 5," "embodiment 6," and "embodiment 7"), Figs. 5-7. The intent is clear—embodiments 5, 6, and 7 and their associated figures ***do not depict a "sheath"*** at all.

The fact that Figure 6 shows the "female connector 2-2" in dashed lines demonstrates that the portions Plaintiff points to are not raised "sides," as Plaintiff suggests. If that were the case, the "sheath" portion would be shown in solid lines, as is the case with every other figure associated with descriptions of a "sheath" in the '071 patent. *Id.* at Figs. 1-4, 8-10. Instead, the only reasonable interpretation is that Figure 6 simply illustrates the silhouette of a connector that is located "below"

the nameplate at the power outlet (and thus is not visible from outside), as the specification expressly states. *Id.* at 4:18-38; *Novartis Pharms.*, 38 F.4th at 1016 ("To satisfy the written description requirement, a patent's specification must **reasonably convey** to those skilled in the art that the inventor had possession of the claimed subject matter." (cleaned up)); *Ralston Purina Co. v. Far-Mar-Co, Inc.*, 772 F.2d 1570, 1578 (Fed. Cir. 1985) ("The legal equivalent of the claim language is thus the necessary and **only reasonable construction** to be given the disclosure in the parent application by one skilled in the art." (cleaned up)). There is simply nothing in the '071 patent that would lead a POSITA to **reasonably** believe that the "nameplate" is depicting a "sheath" with sides and a "surrounding bottom portion" as described and claimed in the Continuation Patents.

Plaintiff and Mr. Delman's reliance on another, unrelated patent, U.S. Patent 9,865,153 (the "'153 patent"), is legally erroneous. *See* Dkt. No. 66 (Opp.) at 11; Dkt. No. 68 (Delman Decl.) at ¶ 57. "[W]ritten description is determined **as of the filing date**" sought, and in the case of the '071 patent, the relevant date is the priority date which Plaintiff seeks, November 18, 2014. *Ariad Pharms.,* 598 F.3d at 1355. "[E]vidence of what one of ordinary skill in the art knew" in 2015 or 2016, which by Plaintiff and Mr. Delman's own admission are the priority and filing dates of the '153 patent, respectively, "cannot provide substantial evidence" that the "claims were supported by adequate written description" in November 2014. *Id.*; *Vas-Cath*, 935 F.2d at 1563-64 (noting applicant must convey that he or she was in possession of the invention "as of the filing date sought"); *Application of Werheim*, 541 F.2d 257, 264 (C.C.P.A. 1976) (noting an application issued after the filing date of the application "is not evidence of what those skilled in the art considered conventional at the time" the "application was filed"); *see also* Dkt. No. 66 (Opp.) at 11; Dkt. No. 68 (Delman Decl.) at ¶ 57. Disclosures in the unrelated, later-filed '153 patent are

irrelevant as a matter of law.

Even if the '153 patent's disclosures were relevant (they are not), whether a "nameplate" *may* include a "base" or "may be made from a flexible material" (Dkt. No. 66 (Opp.) at 11) is immaterial to the '071 patent's failure to disclose a *sheath* with a "surrounding bottom portion." The '071 patent is clear that the nameplate is just that—a nameplate—and is not a "sheath," and has no disclosure suggesting a "nameplate" would include the "sides" required for a sheath, let alone any "surrounding bottom portion." Mot., Ex. 3 ('071 patent) at 4:18-28. That a nameplate may have a base or flexible material has no bearing on whether there is any disclosure in the '071 patent of a nameplate with raised sides and a "surrounding bottom portion."

### 3. Plaintiff's Inherency Argument Fails, Because a "Surrounding Bottom Portion" Is Not *Necessarily* Present in the '071 Patent Disclosures.

"Demonstrating inherent disclosure requires meeting a stringent standard." *Amgen Inc. v. Sandoz Inc.*, 66 F.4th 952, 966 (Fed. Cir. 2023). As the Federal Circuit has articulated, written description via inherency occurs only "under a **narrow set of circumstances**." *Nuvo Pharms. (Ireland) Designated Activity Co. v. Dr. Reddy's Labs. Inc.*, 923 F.3d 1368, 1382-83 (Fed. Cir. 2019). Inherency requires a showing not simply that a POSITA may have made a certain design choice, but that the POSITA would "***necessarily*** do so." *In re Floyd,* 2025 WL 1163561, at *5. "Inherency 'may not be established by probabilities or possibilities.'" *In re Jones*, 10 F. App'x. 822, 828 (Fed. Cir. 2001) (quoting *Cont'l Can Co. USA v. Monsanto, Inc.*, 948 F.2d 1264, 1268-69 (Fed. Cir. 1991)).

While Plaintiff recognizes the standard requires that the "missing descriptive matter must ***necessarily be present*** in the [original] application's specification." Dkt. No. 66 (Opp.) at 11-15 (quoting *Turbocare Div. Demag Delaval Turbomachinery Corp. v. Gen. Elec. Co.*, 264 F.3d 1111, 1119 (Fed. Cir. 2001)). However, it fails to ***apply*** that standard by showing that the "surrounding

11

bottom portion"—whether interpreted as plaintiff's proposal of attachment of a sheath by the "bottom of the sheath" or "portions" thereof, or as the flat portion/flange portion claimed in the Continuation Patents— is actually **necessarily present** in the '071 patent's disclosures. Tellingly, even the expert Plaintiff enlisted for its self-serving testimony does not actually opine that a "surrounding bottom portion" is necessarily present or otherwise inherent in the disclosure of the '071 patent, under any interpretation of the term. *See generally* Dkt. No. 68 (Delman Decl.).[5]

Thankfully, the solution here is simple and requires no expert testimony, because ***the '071 patent itself*** clearly explains that its female connector and sheath are attached to the bag ***without*** using a "surrounding bottom portion." Every disclosure of a "sheath" in the '071 patent invariably describes the sheath as "wrapped on" solely "the ***outer surface*** of the female connector." Mot., Ex. 3 ('071 patent) at 1:52-54, 3:23-25, 3:55-57, 4:3-5, 4:43-45, 4:55-57. The claims recite a female connector with "***one of the four sides***" attached, or "in communication with," the bag, and the "***other three sides***"—that is, the "outer" three sides—covered or wrapped by the sheath. Mot., Ex. 3 ('071 patent) at cl. 1. In other words, the claims and specification of the '071 patent describe a female connector with ***one side attached to the bag***, and a sheath attached to the ***other three ("outer") sides*** of the female connector. The existence of that claimed configuration alone defeats Plaintiff's inherency argument, because the female connector and sheath ***can*** be attached to the bag without the use of a "surrounding bottom portion." Plaintiff's argument that the mere presence of a sheath attached to a bag "unavoidably discloses" the "surrounding bottom portion" (Dkt. No. 66 (Opp.) at 13) under its construction or as the flat portion claimed in the Continuation Patents completely ignores the '071 patent's disclosures and claims in favor of Mr. Delman's conclusory

---

[5] While Plaintiff cites portions of Mr. Delman's declaration in its inherency argument, Mr. Delman does not actually opine that a "surrounding bottom portion" is ***inherent*** or ***necessarily present*** in the '071 patent's disclosure. Dkt. No. 68 (Delman Decl.).

declaration, and must be rejected. *See PowerOasis*, 522 F.3d at 1310.

### 4. The Challenged Claims Cannot Claim Priority to the '071 Patent Because the '138 and '009 Patents Are Continuations-in-Part.

Plaintiff's arguments must also be rejected because the '138 and '009 patents are continuations-*in-part*. By definition, continuations-in-part *must* have *new matter*, and their claims can have "two effective priority dates dependent on the application from which the claim[s] draw[] [their] support." *E.g.*, *Cy Tech. Grp. LLC v. Groupon, Inc.*, No. 10-CV-07287 MRP (VBKx), 2011 WL 13193420, at *2 (C.D. Cal. July 7, 2011) (citing *Litton Sys., Inc. v. Honeywell, Inc.*, 140 F.3d 1449, 1437-38 (Fed. Cir. 1998); *Augustine Med. Inc. v. Gaymar Indus.*, 181 F.3d 1291, 1303 (Fed. Cir. 1999)). Plaintiff's theory, apparently, is that it filed a continuation-in-part (rather than a straight continuation) and added substantial material to the specification and the figures with its new filing, yet there was absolutely no reason for it to do so, since there was already sufficient disclosure to support every claim without any of the added material. This theory defies belief and cannot be squared with the claims themselves.

Specifically, Plaintiff argues that neither the Challenged Claims—which include all the broadest, independent claims, and therefore include within their scope ***all*** of the subject matter claimed in the Continuation Patents—nor the additional specification disclosures and figures added to the Continuation Patents adds ***any*** new matter. Dkt. No. 66 (Opp.) at 5-15; Dkt. No. 69 (Pl.'s Counter SUMF) at ¶¶ 42-43, 51, 62-63, 72. But that cannot be the case, because then there would be no new matter in these continuation-in-part patents. *E.g.*, *In re Wertheim*, 646 F.2d 527, 536 (C.C.P.A. 1981) ("A continuation-in-part application, ***by definition***, adds new matter to the parent application.").

The only subject matter claimed in the '138 and '009 patents that can possibly be new matter is the "surrounding bottom portion." As Plaintiff recognizes (Dkt. No. 66 (Opp.) at 8),

Defendants do not dispute that the '071 patent depicts a sheath with a left side, right side, and top side. Defendants also do not dispute that the depicted sheath has a tapered closed end, and second open end—because that is clearly evident from the '071 patent's disclosure. *See*, *e.g.*, Mot., Ex. 3 ('071 patent) at Fig. 1. The '071 patent also clearly depicts and describes its sheath extending above the outer surface of a body at an opening in the bag, and the sheath receiving a USB cable such that the female end of the USB cable is exposed at the second open end of the sheath, with the cable going through the opening in the bag. *Compare*, *e.g.*, Mot., Ex. 5 ('138 patent) at cl. 1; *with*, *e.g.*, Ex. 3 ('071 patent) at Fig. 1; 3:14-29. The only subject matter left in the independent claims of the Continuation Patents is the "surrounding bottom portion," which is new matter added in the Continuation Patents via new figures and passages depicting and describing the flat portion. Dkt. No. 56 (Mot.) at 3-4, 9-10. By virtue of the '138 and '009 patents' status as continuations-in-part, the "surrounding bottom portion" ***must*** be new matter.

The '137 patent, while labeled a continuation on its face, also includes the same, newly added "surrounding bottom portion" subject matter. Indeed, the '137 patent claims are substantively near-identical or identical to the claims of the '138 and '009 patents—a fact that Plaintiff does not dispute. *See* Dkt. No. 58-33 (Mot. App. A (claims index)) (listing claims with similar limitations side-by-side); *see also* Dkt. No. 66 (Opp.) at 6, n.3 (following convention of addressing similar limitations together).[6] The Continuation Patents thus all contain new matter not disclosed in the '071 patent, and are entitled only to the '137 patent's priority date of April 19, 2019, when the "surrounding bottom portion" was first disclosed.

---

[6] While Plaintiff contends, seemingly only for argument's sake, that it does not "accept[] Defendants' assertion that the patents have 'very similar' or 'identical' claim limitations" (Dkt. No. 66 (Opp.) at 6, n.3), Plaintiff tellingly identifies no material differences in the claims, and does not dispute the claims claim the same subject matter.

## C. The Challenged Claims Are Invalid Under 35 U.S.C. § 102.

Plaintiff does not dispute that Defendants' evidence shows that each and every limitation of each Challenged Claim was practiced by Plaintiff's TSG4H157 bag and Group III's 6067 bag. Dkt. No. 66 (Opp.) at 16-20. Plaintiff thus tacitly concedes that if Defendants prevail regarding the proper priority date accorded to the Challenged Claims, the TSG4H157 and 6067 bags practiced those claims. Dkt. No. 56 (Mot.) at 11-19. Plaintiff also does not dispute that the TSG4H157 and 6067 were subject to commercial offers for sale, and that the invention was ready for patenting, before the critical date. *Id.* at 19-20; Dkt. No. 66 (Opp.) at 16-20.

Rather than challenge whether the TSG4H157 or 6067 practice the claims, Plaintiff's sole purported dispute is over 1) whether its own design document ███████████████ ██████████ actually depicts its products as-sold; and 2) whether a third party witness's sworn testimony, recorded under oath and subject to cross-examination, is in fact truthful. Both of these attempts to manufacture a genuine dispute of material fact where there is none should fail.

### 1. Plaintiff's TSG4H157 Product Was Sold Before April 19, 2018 ████ ████████████████ in Plaintiff's Design Document.

Defendants' evidence shows that the sheath shown in the design document demonstrates that the TSG4H157 bag practiced every limitation of the Challenged Claims, and therefore invalidates the Challenged Claims if the proper priority date is applied. Dkt. No. 56 (Mot.) at 11-13, 17-19. Plaintiff does not dispute that the design document it produced ████████████ includes every limitation of the Challenged Claims. Dkt. No. 66 (Opp.) at 16-18. Instead, Plaintiff's only argument is that its own design document may or may not show the as-sold bag. But all evidence of record supports Defendants' conclusion that the design document depicts the as-sold bag. Plaintiff's failure to adduce any contrary evidence here, instead relying on vague speculations that its own documents may be unreliable, should be dispositive.

Plaintiff's argument that "[t]here is no evidence" that the sheath depicted in the design document Defendants relied on—which Plaintiff itself produced—was "in the public domain or that this specific design was included in the TSG[4]H157 product offered for sale" falls flat. Dkt. No. 66 (Opp.) at 18. At bottom, Plaintiff's complaint is that Defendants did not sufficiently tie the design document showing the sheath to the as-sold TSG4H157. But Plaintiff's discovery responses to date are independently sufficient to demonstrate that the TSG4H157 bag practices the claims, even without the design document or associated images. Defendants' interrogatories to Plaintiff defined "Related Product[s]" as "products Swissdigital sold or sells that it contends **embody or practice** one or more claims of the asserted patents." Ex. 33 (Nov. 1, 2024 Defs.' Interrogs.) at 2 (defining "Related Products"). In its latest response to Defendants' Interrogatory No. 1, requesting sales information for "Related Product[s]"—Plaintiff identified a spreadsheet of sales information. *Id.*; Ex. 34 (Mar. 14, 2025 Pl.'s 2d Supp. Resp. to Defs.' Interrogs.) at 7 (identifying SWISSDIGITAL001889). That spreadsheet, in turn, ███████████████████████████████ ████████████████████████████████████████████████. *See* Ex. 35 (SWISSDIGTAL001889) at rows 115, 188, 281.

Tellingly, Plaintiff does not actually deny that the sheath depicted in the design document was in the TSG4H157 offered for sale. Dkt. No. 66 (Opp.) at 16-18.[7] Instead, even though the TSG4H157 is **Plaintiff's own product** and Plaintiff no doubt has the relevant information (*i.e.*, the design of the as-sold TSG4H157 bags) in its possession, Plaintiff merely complains that the design document **might** not depict the bag as-sold. *Id.* at 16-18. If the TSG4H157 bag truly did not include

---

[7]Any argument by plaintiff that the TSG4H157 as sold did not actually include the sheath in its design document is waived. *See*, *e.g.*, *Hebert v. Off. of Personnel Mgmt.*, No. 18-11483-MPK, 2024 WL 4892666, at *6 (D. Mass. Sept. 16, 2024) (noting party "has waived this issue by failing to further develop it in her Opposition" to a "Motion for Summary Judgment").

the sheath depicted in the design document, Plaintiff presumably would have simply stated as such, and provided supporting evidence. In fact, Plaintiff even admits that the photographs of the TSG4H157 bag as sold include a USB Sheath. Dkt. No. 69 (Pl.'s Counter SUMF) at ¶¶ 81-83. Indeed, it is unclear why Plaintiff would have produced the design document at all if it did not depict its own practicing products.

The suggestion that Defendants should have introduced expert testimony to support its motion is meritless. Plaintiff alleges that expert testimony is needed to "examin[e] the TSG4H157 bag itself to support its position," arguing photos are insufficient to match the design document with the as-sold TSG4H157. Dkt. No. 66 (Opp.) at 18. But "no testimony, expert or otherwise" is necessary here, where the "scope and content" of the patents is "easily discernible" by any layperson. *E.g.*, *Chore-Time*, 713 F.2d at 779. Underscoring that fact, Plaintiff's expert offers no testimony on this topic. *See* Dkt. No. 68 (Delman Decl.). That is unsurprising; as discussed above, Plaintiff admitted that this technology is not complex, and readily discernible by a layperson. *See supra* Section II.A; Dkt. No. 55 (Pl. Ltr. re Claim Constr.) at 1.

Plaintiff ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████. Defendants have demonstrated that the ████████████████████████████████████████████████████ ██████████████████████ as evident from a simple visual inspection. Plaintiff does not contend that the ████████████████████, does not contend that the design document ***does not*** disclose the as-sold TSG4H157, and does not otherwise rebut Defendants' evidence. Dkt. No. 66 (Opp.) at 18; Dkt. No. 69 (Pl.'s Counter SUMF) at ¶ 120. Merely casting aspersions that this evidence, taken together, ***may not*** be enough is insufficient to create a genuine dispute of material fact, particularly where, as here, Plaintiff would be the sole custodian of any contrary evidence and has identified nothing.

*See*, *e.g.*, *Ferring B.V. v. Barr Labs, Inc.*, 437 F.3d 1181, 1193 (Fed. Cir. 2006) ("Conclusory allegations and attorney arguments are insufficient to overcome a motion for summary judgment.").

### 2. There Is No Dispute that Group III's 6067 Product Invalidates.

As with Plaintiff's TSG4H157 bag, Plaintiff does not dispute that the Group III 6067 bag included every limitation of the Challenged Claims of the '138 and '009 patents. Dkt. No. 66 (Opp.) at 19-20. Indeed, as Defendants' evidence demonstrates, the Group III 6067 bag (which had the SG-X27 sheath) practiced every Challenged Claim of these two patents. Dkt. No. 56 (Mot.) at 13-17. Accordingly, when the right priority date is applied to the Challenged Claims, the Challenged Claims of the '138 and '009 patents are invalid over the Group III 6067 bag.

Plaintiff's unsupported argument that Group III representative Mr. Pulichino's testimony is not reliable because it is "self-serving" is meritless. *See* Dkt. No. 66 (Opp.) at 19-20. Mr. Pulichino testified under oath that he had "overall responsibility and oversight" for Group III's products, including "product design and development," and was knowledgeable about the 6067 product at issue. SUMF ¶¶ 94-96, 112-117. Plaintiff's suggestion that Defendants needed to provide "independent expert testimony" is again contradicted by Plaintiff's own representations regarding the simplicity of this technology, as well as the failure of Plaintiff's own expert to offer any opinion contradicting Mr. Pulichino's testimony. *See generally* Dkt. No. 68 (Delman Decl.). Mr. Pulichino's testimony is the singular best source of information about the structure of Group III's products, and his ***undisputed*** testimony shows that the Challenged Claims of the '138 and '009 patents are invalid over the 6067 bag. Dkt. No. 56 (Mot.) at 13-17.

In fact, Plaintiff's argument that Mr. Pulichino "shared an interest in invalidating Plaintiff's patent claims" at the time of his deposition because of litigation between Plaintiff and Wenger (Dkt. No. 66 (Opp.) at 19-20) is demonstrably false. Plaintiff and Wenger/Group III ███████

███████████████████████████████████. Ex. 36 (SWISSDIGITAL001861 (██████
███████████████████████████████████████████████████. The
deposition of Mr. Pulichino took place on **November 6, 2023**—█████████████
███████████████████████████████████████████. SUMF ¶ 92.
Accordingly, Mr. Pulichino had no reason or motivation to commit perjury in an attempt to
invalidate Plaintiff's patents.

If Plaintiff doubted the truthfulness of Mr. Pulichino's testimony, it was free to question
Mr. Pulichino during his deposition. Plaintiff's suggestion that it did not or could not question Mr.
Pulichino at his deposition because Mr. Pulichino was subpoenaed only by Defendants (Dkt. No.
69 (Pl.'s Counter SUMF) at ¶ 118) is legally and factually incorrect. First, the Federal Rules do
not require Plaintiff to serve its own subpoena to question a witness who has appeared for
deposition in response to Defendants' subpoena. *See* Fed. R. Civ. P. 30(c)(1). Second, Plaintiff's
assertion that it "reserved the right to subpoena Mr. Pulichino at a later time in discovery in that
case" (Dkt. No. 69 (Pl.'s Counter SUMF) at ¶ 118) is plainly false. As Plaintiff is aware, Judge
Albright, who presided over the parties' litigation in the Western District of Texas, expressly
limited the parties to ***one deposition*** of third party Wenger/Group III solely for prior art purposes,
and was clear that Plaintiff would have to depose Wenger/Group III about any additional topics it
desired ***at that same deposition***. Ex. 37 (Sept. 15, 2023 Hr'g Tr.) at 9:21-22 (Judge Albright stating
he "will limit [the parties] to *one* [deposition]"), 6:17-7:14, 9:8-12 (limiting deposition to prior art,
***including Plaintiff's requests***). Plaintiff neither identified additional topics, nor asked any
questions. SUMF ¶ 118; Mot., Ex. 15 (Pulichino Dep. Tr.) at 97:2-12 (Plaintiff's counsel stating,
"I don't have any questions for you"). Plaintiff's belated attempt to raise doubt about Mr.
Pulichino's testimony now is insufficient to raise a genuine dispute of material fact.

## III.  CONCLUSION

For the foregoing reasons, Defendants ask the Court to grant their Motion for Summary Judgment, finding that the correct priority date of the Continuation Patents is April 19, 2019, and that the Challenged Claims are invalid over the TSG4H157 and the 6067.

Dated: May 23, 2025

Respectfully submitted,

By: */s/ Adam J. Kessel*
    Adam J. Kessel
    Massachusetts Bar No. 661,211
    kessel@fr.com
    **FISH & RICHARDSON P.C.**
    One Marina Park Drive
    Boston, MA 02210
    Tel: (617) 542-5070
    Fax: (617) 542-8906

    Neil J. McNabnay (*Pro Hac Vice*)
    Texas Bar No. 24002583
    mcnabnay@fr.com
    **FISH & RICHARDSON P.C.**
    1717 Main Street, Suite 5000
    Dallas, TX 75201
    Tel: (214) 747-5070
    Fax: (214) 747-2091

    Bailey K. Benedict (*Pro Hac Vice*)
    Texas Bar No. 24083139
    benedict@fr.com
    Ethan K. Kovar (*Pro Hac Vice*)
    Texas Bar No. 24138134
    kovar@fr.com
    **FISH & RICHARDSON P.C.**
    909 Fannin Street, Suite 2100
    Houston, TX 77010
    Tel: (713) 654-5300
    Fax: (713) 652-0109

    Wonjoon Chung (*Pro Hac Vice*)
    Georgia Bar No. 396468
    chung@fr.com
    **FISH & RICHARDSON P.C.**
    1180 Peachtree Street NE
    21st Floor
    Atlanta, GA 30309
    Tel: (404) 892-5005
    Fax: (404) 892-5002

    ***Attorneys for Defendants***
    ***SAMSONITE GROUP S.A.; SAMSONITE***
    ***LLC; SAMSONITE COMPANY STORES,***
    ***LLC; and DIRECT MARKETING***
    ***VENTURES, LLC***

**CERTIFICATE OF SERVICE**

I hereby certify that on May 23, 2025, I caused the foregoing document to be served upon all counsel of record via electronic mail.

*/s/ Adam J. Kessel*
Adam J. Kessel