# EXHIBIT 37

—1—

```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF TEXAS
                      WACO DIVISION

SWISSDIGITAL USA CO.,      *
   LTD                     *
                           *       September 15, 2023
VS.                        *
                           *  CIVIL ACTION NO. 6:23-CV-196
SAMSONITE INTERNATIONAL    *
   S.A.                    *

         BEFORE THE HONORABLE ALAN D ALBRIGHT
              DISCOVERY HEARING (via Zoom)

APPEARANCES:

For the Plaintiff:    Dariush Keyhani, Esq.
                      Keyhani LLC
                      1050 30th St. NW
                      Washington, DC 20007

                      Jacqueline P. Altman, Esq.
                      Naman Howell Smith & Lee
                      400 Austin Avenue, Suite 800
                      Waco, TX 76701

For the Defendant:    Bailey Benedict, Esq.
                      Fish & Richardson P.C.
                      1221 McKinney, Suite 2800
                      Houston, TX 77010

Court Reporter:       Kristie M. Davis, CRR, RMR
                      PO Box 20994
                      Waco, Texas 76702-0994
                      (254) 666-0904


   Proceedings recorded by mechanical stenography,

transcript produced by computer-aided transcription.
```

2

```
01:31   1                    (Hearing begins.)
01:31   2                    DEPUTY CLERK:  A civil action in Case
01:31   3    6:23-CV-196, Swissdigital USA Co., LTD versus Samsonite
01:31   4    International S.A.  Case called for a discovery
01:31   5    hearing.
01:31   6                    THE COURT:  Announcements from counsel,
01:31   7    please.
01:31   8                    MS. ALTMAN:  Good afternoon, Your Honor.
01:31   9    Jacqueline Altman.  And along with Daruish Keyhani, we
01:31  10    represent plaintiff Swissdigital.
01:31  11                    THE COURT:  Welcome.
01:31  12                    MS. BENEDICT:  And good afternoon, Your
01:31  13    Honor.  Bailey Benedict for defendant.  And with me is
01:31  14    Mr. Ethan Kovar who has been working for us for four
01:31  15    days now.  So he's here to observe.
01:31  16                    (Laughter.)
01:31  17                    THE COURT:  You ought to give him a lead
01:31  18    role.
01:31  19                    MS. BENEDICT:  I thought about it.  If
01:31  20    he'd only been here for five days, he could have had
01:32  21    it.
01:32  22                    (Laughter.)
01:32  23                    THE COURT:  Well, I hope to hear from him
01:32  24    next time.
01:32  25                    So okay.  I have concerns, I believe,
```

—3—

01:32  1   that the plaintiff has with prefact discovery --
01:32  2   discovery in the form of subpoena.  And I'll hear first
01:32  3   from the plaintiff.
01:32  4                   MS. ALTMAN:  Yes, Your Honor.
01:32  5                   So as you noted, this is prefact
01:32  6   discovery.  Pursuant to the Court's OGP, fact discovery
01:32  7   is stayed until after the Markman hearing.
01:32  8                   Now, despite that, Samsonite sent
01:32  9   subpoenas for a deposition and request for documents to
01:32  10  a nonparty prior to fact discovery opening.
01:32  11                  And so, essentially, there's two issues
01:32  12  regarding this, is that these subpoenas deal with
01:32  13  information related to prior art as well as
01:32  14  confidential settlement agreements and negotiations in
01:32  15  a prior case.
01:32  16                  And Samsonite is claiming that they
01:33  17  should get around the Court's stay in discovery because
01:33  18  they're seeking information related to prior art which
01:33  19  is related to claim construction.
01:33  20                  And there's two problems with that, is
01:33  21  that first prior art is not related to claim
01:33  22  construction such that we can open discovery earlier.
01:33  23  And, second, they're seeking information admittedly
01:33  24  beyond prior art as they acknowledged in their dispute
01:33  25  chart.

—4—

```
01:33   1              And so the issue is if all that's
01:33   2   necessary is to include a request for prior art,
01:33   3   essentially this obviates the Court's OGP and stay on
01:33   4   discovery.  Because a defendant merely asks one
01:33   5   question related to prior art, says that has to do with
01:33   6   claim construction, includes other information, and now
01:33   7   is able to open discovery prior to the Court's order.
01:33   8              And so we believe that these subpoenas
01:33   9   are improper as fact discovery has not been opened, and
01:33  10   there is no -- this does not actually relate to claim
01:33  11   construction, jurisdictional or venue discovery, which
01:33  12   are the only exceptions to opening fact discovery
01:33  13   earlier.
01:34  14              THE COURT:  Got it.
01:34  15              A response?
01:34  16              MS. BENEDICT:  Yes, Your Honor.
01:34  17              This is not in any way an end-run around
01:34  18   the OGP that precludes general fact discovery until
01:34  19   after the Markman hearing.
01:34  20              The schedule is in a bit of an odd
01:34  21   posture because the plaintiff did not -- did -- the
01:34  22   plaintiff did not send a case readiness status report
01:34  23   back in June.  And so oddly enough, the 26(f) report
01:34  24   wasn't done, wasn't filed.  There's not a schedule.
01:34  25   There's nothing.  We're just sort of operating in this
```

5

01:34  1  limbo of venue discovery, which shouldn't actually be
01:34  2  the case.
01:34  3              But regardless, before a Markman hearing
01:34  4  happens, we will have to serve invalidity contentions.
01:34  5  And saying that we can't -- we can't research relevant
01:35  6  prior art from third parties in order to compile
01:35  7  reasonable invalidity contentions, it makes no sense.
01:35  8              Additionally, it's incorrect to say that
01:35  9  prior art is not relevant to claim construction.  While
01:35  10 it is true that prior art will rarely inform the actual
01:35  11 construction of a term, it is incredibly relevant to
01:35  12 which terms need to be construed.  An understanding of
01:35  13 the invalidity case at issue is incredibly relevant to
01:35  14 which terms need to be construed from the defendant's
01:35  15 perspective.
01:35  16             So the subpoena itself requests primarily
01:35  17 prior art discovery.  It is not a lengthy subpoena.
01:35  18 There are four document requests, and there are three
01:35  19 deposition topics.  And the first in all of those is
01:36  20 prior art.
01:36  21             The only reason that we even included the
01:36  22 remaining document requests and the remaining
01:36  23 deposition topics is because it -- it would be unfair
01:36  24 and very inconvenient to a third party to have to go
01:36  25 through the subpoena process and a deposition twice,

6

01:36  1   once for prior art documents and then again several
01:36  2   months later just because we couldn't open it up to the
01:36  3   relevant information.
01:36  4              THE COURT:  Let me tell you how I've
01:36  5   dealt with this in the past, because I am sympathetic
01:36  6   to both sides.  I'm sympathetic to what you just said,
01:36  7   that we don't want third parties to be hassled twice if
01:36  8   we can avoid that.  On the other hand, there's a reason
01:36  9   why I have stayed discovery the way I do.
01:37 10              And so what I think I've done in the past
01:37 11   is in the situation -- the only time I think I've
01:37 12   allowed these subpoenas is when someone could put
01:37 13   forward an argument that the information would be
01:37 14   really difficult to get, for example, if you were
01:37 15   trying to get something out of China or we were going
01:37 16   to have Hague issues and stuff like that.
01:37 17              I guess at one level if discovery needs
01:37 18   to be done of a third party, it'll have to be done at
01:37 19   some point.  But my guess is that you sent the subpoena
01:37 20   without any involvement of the plaintiff, which means
01:37 21   if they want anything from the third party, then the
01:37 22   third party will necessarily be bothered twice is my
01:37 23   guess.  I don't know, but that just seems to be the way
01:37 24   it works.
01:37 25              So I think what I'm going to do is allow

```
01:38  1    the plaintiff -- I'm sorry -- allow the defendant, if
01:38  2    you want to do the subpoenas now, you can do them, but
01:38  3    you need to give the plaintiff an opportunity to
01:38  4    determine whether or not there's anything they want to
01:38  5    ask for from these same targets.
01:38  6                 And I think it should be limited to
01:38  7    trying to acquire prior art, because I do see -- I do
01:38  8    understand how that impacts the -- what I don't want is
01:38  9    in -- I'm making up a -- but like in February of next
01:38  10   year or the following year fights over, you know, what
01:38  11   was said in an invalidity contention because you now
01:38  12   have more information.
01:38  13                After that long -- that's -- so that's my
01:38  14   ruling in a long, rambling, old-man fashion.
01:38  15                But what I'm more concerned about is if
01:38  16   the case is not actually -- does not actually have a
01:38  17   scheduling order that it's operating under, which is
01:39  18   what I heard counsel say, that's not a good situation
01:39  19   either.
01:39  20                So if that -- if that is so, then you all
01:39  21   need to huddle early next -- either today or early next
01:39  22   week and send us what you want to have as your
01:39  23   scheduling order, which, you know, charts out when
01:39  24   things are due, exchange of infringement contentions,
01:39  25   exchange of invalidity contentions, and trying to get
```

8

| | | |
|---|---|---|
| 01:39 | 1 | into the queue for a Markman.  Because right now, it |
| 01:39 | 2 | sounds like it's -- that hasn't happened, and we do |
| 01:39 | 3 | need to have that control over it. |
| 01:39 | 4 | MS. BENEDICT:  Yes, Your Honor.  May I -- |
| 01:39 | 5 | oh, I apologize. |
| 01:39 | 6 | THE COURT:  No.  No.  Please. |
| 01:39 | 7 | MS. BENEDICT:  May I -- I wanted to ask |
| 01:39 | 8 | one additional thing related to the scope of the |
| 01:39 | 9 | subpoenas that we can do at this point in time. |
| 01:39 | 10 | So to give you a factual background, a |
| 01:39 | 11 | party that we've subpoenaed is a party that |
| 01:39 | 12 | Swissdigital sued in this Court on these patents a |
| 01:40 | 13 | little while ago, and they settled. |
| 01:40 | 14 | And so part of the subpoena requests |
| 01:40 | 15 | information about that litigation and that settlement. |
| 01:40 | 16 | And I -- |
| 01:40 | 17 | THE COURT:  You're not going to -- you're |
| 01:40 | 18 | not going to get into that now. |
| 01:40 | 19 | MS. BENEDICT:  Okay.  That -- I don't |
| 01:40 | 20 | know whether that is relevant to claim construction. |
| 01:40 | 21 | That's right about the time that case settled.  And so |
| 01:40 | 22 | that's where we're -- okay. |
| 01:40 | 23 | THE COURT:  It's -- I don't think it is. |
| 01:40 | 24 | And so that -- and in the past, we've had the same -- |
| 01:40 | 25 | I'm putting all this on the record just so you |

9

| | | |
|---|---|---|
| 01:40 | 1 | understand.  How this has progressed is in the past |
| 01:40 | 2 | there actually was a question about whether this kind |
| 01:40 | 3 | of information needed to be given before or after, |
| 01:40 | 4 | licensing information, kind of what you're getting at, |
| 01:40 | 5 | all that. |
| 01:40 | 6 | And no.  That's not something I want to |
| 01:40 | 7 | open discovery on until after the Markman.  So... |
| 01:40 | 8 | MS. BENEDICT:  Okay.  Yes, Your Honor. |
| 01:40 | 9 | We will limit it to the prior art-directed request, and |
| 01:41 | 10 | we will work with the plaintiffs to see if they have |
| 01:41 | 11 | any prior art-directed requests that they would like to |
| 01:41 | 12 | add to the subpoena, if I understand your ruling. |
| 01:41 | 13 | THE COURT:  Then -- but you did make a |
| 01:41 | 14 | point that I want to emphasize here, which is:  This is |
| 01:41 | 15 | your shot with these people.  I mean, if you want to do |
| 01:41 | 16 | it now and the plaintiff comes in later and says, |
| 01:41 | 17 | Judge, they got away with this because you were soft -- |
| 01:41 | 18 | you're getting soft and you let them do this.  Now they |
| 01:41 | 19 | want to send, you know, they want to do this again. |
| 01:41 | 20 | You can do it now or -- you can send the |
| 01:41 | 21 | subpoena now or you can send it later, but I will limit |
| 01:41 | 22 | you to one time. |
| 01:41 | 23 | MS. BENEDICT:  Thank you, Your Honor. |
| 01:41 | 24 | THE COURT:  Entirely up to you. |
| 01:41 | 25 | MS. BENEDICT:  This was a prior art |

```
01:41  1   subpoena, and we -- that is what we want.  And so we
01:41  2   will send it now, and we will just forego those
01:41  3   remaining questions.
01:41  4               THE COURT:  Okay.  Now, I've lost track.
01:41  5   Give me one second to get back to my cheat sheet here.
01:41  6               I think, if I understood the notes from
01:42  7   my clerk, I've resolved everything that you all had.
01:42  8   But in the interest of making sure that's true, I'll
01:42  9   hear first from plaintiff's counsel whether there's
01:42 10   anything else we need to take up.
01:42 11               MS. ALTMAN:  Yes, Your Honor.  I believe
      12   so.
01:42 13               And just so I understand, the subpoenas
01:42 14   will need to be reissued that are limited solely to
01:42 15   prior art and that defendant has one opportunity to
01:42 16   send a subpoena to this party, so they can either
01:42 17   choose to do that now or at a later time.
01:42 18               THE COURT:  Correct.
01:42 19               MS. ALTMAN:  Okay.  Yes, Your Honor.
01:42 20               THE COURT:  And Ms. Benedict?
01:42 21               MS. BENEDICT:  I had one follow-up
01:42 22   question just related to the scheduling order.
01:42 23               THE COURT:  Sure.
01:42 24               MS. BENEDICT:  We did receive a draft of
01:42 25   the case readiness status report a few days ago from
```

—11—

```
01:42   1   plaintiffs.
01:42   2                  Is that still something that we need to
01:42   3   get on file for procedural reasons, or would you prefer
01:42   4   us to skip that step and just get to a 26(f) report and
01:42   5   a schedule?
01:43   6                  THE COURT:  I think given how long this
01:43   7   has gone on, I'd prefer for you -- because y'all need
01:43   8   to do some coordination with us so whenever y'all pick
01:43   9   for a Markman syncs up with when we can do a Markman,
01:43  10   so if you could get your proposed schedule to us, that
01:43  11   would help us a lot.
01:43  12                  And also, you know, what we -- and
01:43  13   actually, it's been pretty accurate so far.  You know,
01:43  14   I think -- I've been amazed that we've stayed on track
01:43  15   as much as we have with most of our cases.
01:43  16                  But, for example, it tends to be that the
01:43  17   Markman is more or less eight months, in my world, from
01:43  18   the filing of the suit, but it sounds like this is a
01:43  19   little different now.  But this is the way it typically
01:43  20   tracks in my court, eight months, and then -- and it's
01:43  21   fine.  Y'all can do what you want that both sides agree
01:43  22   to.  But then typically the trial date is somewhere
01:43  23   around 13 months after that or whatever.
01:43  24                  Again, y'all know the case.  There may be
01:44  25   foreign people that you need to -- I mean, generally
```

```
01:44  1    speaking, the target for the Court is to get it tried
01:44  2    within about 24 months of -- but I would rather you
01:44  3    all, as long as it's, generally speaking, within that
01:44  4    rubric for both sides, you know, I don't care one way
01:44  5    or the other, you know, when it's set or any of that.
01:44  6    Whatever works best for you is fine with me.
01:44  7                MS. BENEDICT:  Thank you, Your Honor.
01:44  8                THE COURT:  I did have a hearing this
01:44  9    week where there was a fight over whether something
01:44  10   could be one week or two weeks, and I just had each
01:44  11   side pick a number and one side won.
01:44  12               So I may do that more often in the
01:44  13   future.
01:44  14               (Laughter.)
01:44  15               THE COURT:  Primarily because it made my
01:44  16   clerks laugh when they heard me do it.  So they still
01:44  17   have this belief that -- from law school that, you
01:44  18   know, this mystical wisdom federal judges have.
01:44  19               So I hope you all have a wonderful
01:45  20   weekend.  And if you need anything else, please let us
01:45  21   know.  Take care.
01:45  22               (Hearing adjourned.)
       23
       24
       25
```

```
 1   UNITED STATES DISTRICT COURT  )
 2   WESTERN DISTRICT OF TEXAS     )
 3
 4
 5              I, Kristie M. Davis, Official Court
 6   Reporter for the United States District Court, Western
 7   District of Texas, do certify that the foregoing is a
 8   correct transcript from the record of proceedings in
 9   the above-entitled matter.
10              I certify that the transcript fees and
11   format comply with those prescribed by the Court and
12   Judicial Conference of the United States.
13              Certified to by me this 19th day of May
14   2025.
15
16                            /s/ Kristie M. Davis
                              KRISTIE M. DAVIS
17                            Official Court Reporter
                              PO Box 20994
18                            Waco, Texas 76702
                              (254) 666-0904
19                            kmdaviscsr@yahoo.com
20
21
22
23
24
25
```

01:45