## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

SWISSDIGITAL USA CO., LTD.,

    Plaintiff,

    v.

SAMSONITE GROUP S.A.; SAMSONITE
LLC; SAMSONITE COMPANY STORES,
LLC; and DIRECT MARKETING
VENTURES, LLC,

    Defendants.

Civil No. 1:24-cv-11636

**JURY TRIAL DEMANDED**

███████████████

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL RESPONSIVE DOCUMENTS AND COMPLETE INTERROGATORY RESPONSES

# TABLE OF CONTENTS

I.     INTRODUCTION .................................................................................................. 1

II.    BACKGROUND ..................................................................................................... 2

    A.     Zhijian "Hunter" Li Owns and Controls Swissdigital and Related
        Entities. ...................................................................................................... 2

    B.     Swissdigital Failed to Provide Discovery Regarding Costs and
        Sales for Swissdigital's Products. ............................................................... 3

    C.     Swissdigital Failed to Provide Discovery Regarding Its Corporate
        Structure and Related Entities. .................................................................... 5

    D.     Swissdigital Failed to Provide Discovery Regarding Conception
        and Reduction to Practice of the Asserted Patents. ..................................... 6

    E.     Discovery Deadlines Are Fast Approaching. ............................................... 7

III.   LEGAL STANDARD ............................................................................................. 8

IV.    ARGUMENT ........................................................................................................... 8

    A.     Swissdigital Should Be Ordered to Produce and Provide
        Information Regarding Its Product Component Costs and Sales. ................. 9

        1.     Swissdigital Should Produce Information Regarding the
            Cost of Components Used in Swissdigital Bags. ........................... 9

        2.     Information Regarding the Sales of Swissdigital's Bags
            Should be Produced. ..................................................................... 13

    B.     Swissdigital Should Be Orderd to Produce and Provide
        Information Regarding Its Corporate Structure and Related
        Entities. .................................................................................................... 14

    C.     Swissdigital Should Be Ordered to Produce and Provide
        Information Regarding Development and Sales of Its Prototypes. .............. 16

    D.     Swissdigital Should be Ordered to Produce the Requested
        Information by April 27 2026, or Fact Discovery Should Be
        Extended. .................................................................................................. 18

    E.     This Motion Should Be Automatically Granted as a Sanction
        Against Swissdigital. ................................................................................. 20

V.     CONCLUSION ..................................................................................................... 20

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Addamax Corp. v. Open Software Foundation, Inc.*,
  148 F.R.D. 462 (D. Mass. 1993).................................................................................................12

*Bobba v. Patel*,
  No. 3:19-30171-MGM, 2021 WL 1907460 (D. Mass. May 12, 2021) ....................................11

*Commonwealth Sci. and Indus. Res. Org. v. Cisco Sys., Inc.*,
  809 F.3d 1295 (Fed. Cir. 2015)...............................................................................................10

*Garretson v. Clark*,
  111 U.S. 120 (1884)................................................................................................................10

*In re Hand Held Prods., Inc.*,
  No. 24-mc-91378-NMG, 2024 WL 5136071 (D. Mass. Oct. 24, 2024) ...........................11, 12

*Merchia v. U.S. Internal Revenue Serv.*,
  336 F.R.D. 396 (D. Mass. Aug. 5, 2020).................................................................................11

*Oppenheimer Fund, Inc. v. Sanders*,
  437 U.S. 340 (1978)..................................................................................................................8

*Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*,
  575 F.2d 1152 (6th Cir. 1978) ............................................................................................13, 14

*Rite-Hite Corp v. Kelley Co., Inc.*,
  56 F.3d 1538 (Fed. Cir. 1995)..................................................................................................13

*Robbins & Myers, Inc. v. J.M. Huber Corp.*,
  274 F.R.D. 63 (W.D.N.Y. 2011)................................................................................................8

*Roy v. FedEx Ground Package Sys.*,
  675 F. Supp. 3d 140 (D. Mass. 2023).........................................................................................8

*Solamere Cap. v. DiManno*,
  621 F. Supp. 3d 152 (D. Mass. 2022).........................................................................................8

*Virtek Vision Int'l Inc. v. Assembly Guidance Sys., Inc.*,
  344 F.R.D. 141 (D. Mass. 2023).................................................................................................8

**Other Authorities**

D. Mass. L.R. 37.1 .........................................................................................1, 8, 9, 19, 20

D. Mass. L.R. 7.1 ..................................................................................................................18

Fed. R. Civ. P. 26 ..................................................................................................................8

Fed. R. Civ. P. 30(b)(6)..........................................................................................................19

Fed. R. Civ. P. 33 ............................................................................................................11, 17

## I.    INTRODUCTION

Swissdigital has not provided critical discovery that is essential to Samsonite's defenses. In view of the Court's recent claim construction and summary judgment order, and with the fact witness deposition deadline less than two months away, Samsonite requests that the Court compel Swissdigital to promptly provide this important discovery.

Swissdigital has failed to produce documents and/or answer interrogatories on three core topics: (1) component costs and sales figures for Swissdigital's product sales; (2) its corporate structure, including a specific identification of entities involved in the design, manufacture, marketing, and sales of Swissdigital's products; and (3) prototypes it created and/or sold. Each category is fundamental discovery routinely provided by plaintiffs in patent litigation, and is important to Samsonite's ability to fairly defend itself. Each should have been produced as a matter of course.

Swissdigital does not seriously dispute the relevance and importance of this information. Its primary basis for withholding it—namely, that the information is not physically in Swissdigital's possession, but presumably in the possession of affiliates controlled by Swissdigital's CEO, Zhijian "Hunter" Li—is wrong on the law and the facts. Discovery is broad, and a party must produce documents if it has the practical ability to obtain them, which Swissdigital plainly has here because Mr. Li has practical control over Swissdigital's related entities. Indeed, he is the ***only*** person that Swissdigital has identified as having ***any*** relevant information, so all the core information is necessarily in his practical possession.

Finally, Swissdigital has violated Local Rule 37.1 by failing to respond to Samsonite's request to meet and confer about this motion within seven days of the request. Accordingly, Samsonite respectfully asks the Court to compel Swissdigital to promptly produce documents and thorough interrogatory responses regarding the three categories of information listed above.

## II. BACKGROUND

### A. Zhijian "Hunter" Li Owns and Controls Swissdigital and Related Entities.

Zhijian "Hunter" Li is the "president and sole owner" of Swissdigital. Ex. 1 (*Krummholz Int'l, Inc. v. Wenger, S.A.*, No. 1:15-cv-86-WMS (W.D.N.Y.), Dkt. No. 28-1 (Li Decl.)), at ¶1; *see also* Dkt. No. 004 (Swissdigital Corporate Disclosure Statement) ("Plaintiff further certifies that no publicly held entity owns ten percent or more of Plaintiff's stock.").

Mr. Li also owns and operates several companies in China linked to Swissdigital and its sales of products. For example, Mr. Li also owns HK New Hunter International Investment Co., Limited ("HK New Hunter"), the entity which manufactures and sells Swissdigital's bag and luggage products to Swissdigital. Ex. 2 (Mar. 14, 2025 Swissdigital 2nd Supp. Resp. to Samsonite Initial Interrogs.)[1] at 7-9; Ex. 4 (Sept. 29, 2025 Swissdigital Resp. to Samsonite RFAs) at 9-11 (admitting "Mr. Li is the sole shareholder and owner of HK New Hunter"). "Hunterbags.com"—a website affiliated with Quanzhou New Hunter Bags & Luggages Co., Ltd. ("Hunter Bags")—explains that Hunter Bags creates the "Swissdigital Design" backpack products, and that the entire "great brand" was "set up by Mr. Hunter." Ex. 5 (hunterbags.com printout, China Wholesale).[2] That corporate umbrella includes HK New Hunter, as well as several other companies bearing Mr. Li's name. Ex. 6 (hunterbags.com printout, Our Company).[3]

---

[1] The Court allowed the parties to take a set of initial discovery that did not count toward the parties' discovery limits, to promote settlement during the initial case management conference. Ex. 3 (October 2, 2024 Hearing Tr.) at 9:2-11:9. Samsonite refers to this initial set of interrogatories as "Initial Interrogatories" herein.

[2] https://www.hunterbags.com/china-wholesale-gift-pencil-pen-box-factory-swissdigital-design-mens-college-business-travel-backpack-rfid-protection-pre-wired-usb-charging-fits-laptops-up-to-15-6-black-new-hunter-product/, last accessed April 8, 2026.

[3] https://www.hunterbags.com/our-company/, last accessed April 8, 2026.

Importation records further confirm that HK New Hunter is associated with Swissdigital. Swissdigital is HK New Hunter's sole trading partner in the United States, and all of HK New Hunter's shipments into the United States were to Swissdigital. Ex. 7 (importgenius printout).[4]

This background leads to the inescapable conclusion that Mr. Li solely owns and operates Swissdigital, Hunter Bags, HK New Hunter, and likely several other companies bearing the "Hunter" name and otherwise affiliated with Swissdigital and its related enterprises.

### B. Swissdigital Failed to Provide Discovery Regarding Costs and Sales for Swissdigital's Products.

Swissdigital has provided no information regarding the costs of individual components in its products. Samsonite requested information regarding the component costs for Swissdigital's products, the identity of Swissdigital-related or third-party entities involved in manufacture and sales of those products, and details regarding manufacture and component sourcing for the products. *See* Ex. 8 (Nov. 1, 2024 Samsonite Initial Interrogs.) at 5-6 (Interrog. No. 2); Ex. 9 (Sept. 5, 2025 Swissdigital Resp. to Samsonite 1st Interrogs.) at 14 (Interrog. No. 7); Ex. 10 (Sept. 29, 2025 Swissdigital Resp. to Samsonite 2nd Interrogs.) at 27 (Interrog. No. 22).[5] The cost and sourcing of the allegedly patented component in comparison to the rest of the bag or luggage product is unquestionably relevant to damages—any damages Swissdigital is entitled to are limited to the value of the allegedly patented component. But this information may also be relevant to Samsonite's invalidity defense. For example, if Swissdigital (or one of its Chinese affiliates)

---

[4] https://www.importgenius.com/suppliers/hk-new-hunter-intl-investment-grou, last accessed April 8, 2026.

[5] Samsonite initially inadvertently served a misnumbered set of interrogatories, which Swissdigital responded to. *See generally* Ex. 10 (Sept. 29, 2025 Swissdigital Resp. to Samsonite 2nd Interrogs.). After discovering the error, Samsonite served a corrected set, correcting only the numbering of the interrogatories. Ex. 21 (Oct. 16, 2025 Corrected Samsonite 2nd Interrogs.). Swissdigital has not served a corrected response.

merely sourced pre-existing USB sheaths from a third party when making its bags, rather than designing its own, those pre-existing USB sheaths may be key invalidating prior art.

Samsonite also requested information regarding the sales of Swissdigital products allegedly practicing or embodying the Asserted Patents. *Id.* at 18 (Interrog. No. 17). Information regarding the sales of Swissdigital's products prior to April 2019—the now confirmed priority date for three of the four Asserted Patents in the case—is now particularly relevant, as those sales likely invalidate those patents. Dkt. No. 93 (Order re Claim Construction, MSJ) at 28-34. Indeed, Swissdigital's deficient discovery regarding its own products sold in that earlier period has already prejudiced Samsonite, as the dearth of evidence resulted in the Court allowing the '137 patent claims to (for now) survive Samsonite's summary judgment motion. *Id.* at 35-36.

Swissdigital has not provided this relevant information. With respect to component cost information, Swissdigital claims that it cannot provide the requested information because Swissdigital purchases bags wholly manufactured from HK New Hunter, and thus does not have component cost information in its own possession, custody, or control. Ex. 2 (Mar. 14, 2025 Swissdigital 2nd Supp. Resp. to Samsonite Initial Interrogs.) at 7-9 (claiming "[t]he bag and luggage products sold by Plaintiff are manufactured as a whole for the Plaintiff and [Swissdigital] does not have the requested information" and that "Plaintiff has no input, control, or visibility into sourcing or costs for components of the bags it purchases"). But HK New Hunter is solely owned and controlled by Mr. Li, who is also the sole owner of Swissdigital. Ex. 4 (Sept. 29, 2025 Swissdigital Resp. to Samsonite RFAs) at 9-11. Mr. Li is also the only fact witness Swissdigital has identified with any relevant knowledge of Swissdigital's products. *See* Ex. 2 (Mar. 14, 2025 Swissdigital 2nd Supp. Resp. to Samsonite Initial Interrogs.) at 5, 13 (identifying Mr. Li as knowledgeable regarding Swissdigital's products, sales, and prototypes); Ex. 9 (Sept. 5, 2025

Swissdigital Resp. to Samsonite 1st Interrogs.) at 10, (identifying Mr. Li as knowledgeable regarding prototypes); Ex. 10 (Sept. 29, 2025 Swissdigital Resp. to Samsonite 2nd Interrogs.) at 19, 24 (identifying Mr. Li as knowledgeable regarding Swissdigital products practicing the Asserted Patents and sales records).

Despite this, Swissdigital's position is that if ***Swissdigital*** does not have relevant information, then it is not within Swissdigital's possession, custody, or control for production in this litigation. *See*, *e.g.*, Ex. 11 (Nov. 14, 2025 Ltr fr Keyhani to Kovar) at 2 ("Swissdigital alone is party to this case . . . . "). Swissdigital also refuses to provide dates of sale for Swissdigital's products prior to 2018, claiming such discovery is overbroad and unduly burdensome. *See* Ex. 11 (Nov. 14, 2025 Ltr fr Keyhani to Kovar) at 2.

**C.      Swissdigital Failed to Provide Discovery Regarding Its Corporate Structure and Related Entities.**

Samsonite also sought information regarding the identity of entities involved in supplying components for Swissdigital's products, as well as information regarding entities involved in the design, manufacture, marketing, and sales of Swissdigital's products. Ex. 8 (Nov. 1, 2024 Samsonite Initial Interrogs.) at 5-6 (Interrog. No. 2); Ex. 9 (Sept. 5, 2025 Swissdigital Resp. to Samsonite 1st Interrogs.) at 14 (Interrog. No. 7). This information is necessary for Samsonite to identify—if Swissdigital truly does not have component cost information—which entity actually does have that information.

Corporate organization information is common discovery sought and provided by both sides in patent litigation. For example, Swissdigital propounded a substantially similar interrogatory, to which Samsonite provided a fulsome response explaining exactly which Samsonite entities are responsible for what aspects of the design, manufacture, distribution,

advertising, marketing, and sale of Samsonite's products. Ex. 12 (Nov. 7, 2025 Samsonite Supp. Resp. to Swissdigital Interrogs.) at 12-14.

Swissdigital, on the other hand, has withheld all responsive information, never providing any response to Samsonite's interrogatory seeking the same information. *See* Ex. 9 (Sept. 5, 2025 Swissdigital Resp. to Samsonite 1st Interrogs.) at 14-15 (listing objections, but no response). Further, despite its agreement to produce documents relating to Swissdigital and related entities' organizational structure, Swissdigital has produced no organizational charts or other documents containing this information. Ex. 13 (Sept. 5, 2025 Swissdigital Resp. to Samsonite RFPs) at 72-74. When Samsonite again requested this information (Ex. 14 (Nov. 3, 2025 Ltr to Keyhani fr Kovar) at 4-5), Swissdigital responded with its now-familiar party line: "Swissdigital alone is a party to this case, and all relevant information regarding Swissdigital has been produced." Ex. 11 (Nov. 14, 2025 Ltr fr Keyhani to Kovar) at 2.

**D. Swissdigital Failed to Provide Discovery Regarding Conception and Reduction to Practice of the Asserted Patents.**

Swissdigital has also failed to provide discovery regarding the conception and reduction to practice of its Asserted Patents, in particular any prototypes. Samsonite sought information regarding the development and sales of Swissdigital's product prototypes early on and throughout discovery. Ex. 8 (Nov. 1, 2024 Samsonite Initial Interrogs.) at 6-7 (Interrog. No. 4); Ex. 9 (Sept. 5, 2025 Swissdigital Resp. to Samsonite 1st Interrogs.) at 8-9 (Interrog. No. 3), Ex. 10 (Sept. 29 Swissdigital Resp. to Samsonite 2nd Interrogs.) at 32 (Interrog. No. 25).

Swissdigital provided no substantive response. Instead, Swissdigital has identified only a handful of documents under 33(d): SWISSDIGITAL001861-1886 and SWISSDIGITAL001887-1889. Ex. 2 (Mar. 14, 2025 Swissdigital 2nd Supp. Resp. to Samsonite Initial Interrogs.) at 12-14; Ex. 9 (Sept. 5, 2025 Swissdigital Resp. to Samsonite 1st Interrogs.) at 10; Ex. 10 (Sept. 29, 2025

Swissdigital Resp. to Samsonite 2nd Interrogs.) at 33-35. The first cited range, SWISSDIGITAL001861-1886, includes license and settlement agreements between Swissdigital and other third parties unrelated to Swissdigital's prototypes. *Id*. at 33-35. The second range, SWISSDIGITAL001887-1889, comprises █████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. *See* Ex. 15 (SWISSDIGITAL001887); Ex. 16 (SWISSDIGITAL001888); Ex. 17 (SWISSDIGITAL001889).

When pressed, Swissdigital admitted that the cited documents contained information for both prototypes and non-prototype products. Ex. 11 (Nov. 14, 2025 Ltr fr Keyhani to Kovar) at 1-2. Despite stating it would investigate, Swissdigital to date has not supplemented its responses with information distinguishing prototypes products from non-prototype products.

### E.     Discovery Deadlines Are Fast Approaching.

The Court's issuance of an order ruling on the parties' disputed claim construction and summary judgment issues on March 27, 2026 triggered the remaining discovery deadlines in the case. Dkt. No. 93 (CC, MSJ Order); Dkt. No. 86 (Order granting joint motion for extension of time) (ordering fact witness depositions and fact discovery to be completed by 60 and 90 days "after the entry of the Court's ruling on claim construction or the defendants' motion for summary judgment," respectively). The current deadline for the completion of fact witness depositions is May 26, 2026, and fact discovery closes on June 25, 2026. The parties agreed to these deadlines when they filed a joint motion for extension of time to complete discovery. *See* Dkt. No. 85.

Given the impending deadlines, counsel for Samsonite wrote counsel for Swissdigital on Wednesday, April 1, 2026, to request a meet and confer the following week. Ex. 18 (correspondence between counsel) at 2-3. Counsel for Swissdigital responded on Friday, April 3,

2026, explaining that counsel "need[ed] to confer with our client," but did not respond to Samsonite's request to meet and confer. *Id.* at 1-2. That same day, Samsonite reiterated its request that Swissdigital provide availability for a meet and confer the following week. *Id.* at 1. As of the filing of this motion more than seven days later, Swissdigital has not responded, in dereliction of LR 37.1.

## III.    LEGAL STANDARD

Rule 26(b)(1) authorizes discovery of "any nonprivileged matter that is relevant to a party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1). Courts consistently interpret relevance broadly—information is deemed discoverable if there is "any possibility it might be relevant to the subject matter of the case." *Roy v. FedEx Ground Package Sys.*, 675 F. Supp. 3d 140, 144 (D. Mass. 2023) (internal quotations omitted); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Solamere Cap. v. DiManno*, 621 F. Supp. 3d 152, 159 (D. Mass. 2022). A party further has an affirmative duty to "supplement or correct" its responses in a timely manner if the party learns that the responses are "incomplete or incorrect."  Fed. R. Civ. P. 26(e)(1)(A). The duty to supplement is not temporally limited and applies to all information "without reference to the date of its existence" or creation. *Virtek Vision Int'l Inc. v. Assembly Guidance Sys., Inc.*, 344 F.R.D. 141, 148 (D. Mass. 2023) (citing *Robbins & Myers, Inc. v. J.M. Huber Corp.*, 274 F.R.D. 63 (W.D.N.Y. 2011)).

## IV.    ARGUMENT

Swissdigital must provide the relevant discovery Samsonite seeks. Swissdigital asserts that it need not provide relevant information because Swissdigital is the only party in this case, and Swissdigital does not possess the relevant information. But "control" for discovery purposes extends beyond named parties in the case, and Swissdigital (via its principal Mr. Li, if not

otherwise) clearly has control over the relevant entities. Even if Swissdigital's assertion were true, Swissdigital must *at least* disclose the entities that do have the relevant information.

Further, Swissdigital failed to respond to Samsonite's request for a meet and confer within seven days of Samsonite's request, as required by Local Rule 37.1(a). Samsonite therefore requests that the Court impose at a minimum the sanction of granting this motion, and order Swissdigital to provide all relevant information regarding Swissdigital's component costs and pre-2018 sales data, corporate structure, and product prototypes by April 27, 2026. If the Court orders Swissdigital to provide the relevant information after that date, Samsonite requests that the deadlines for completion of fact witness depositions and fact discovery, currently set for May 26, 2026, and June 25, 2026, respectively, to 30 and 60 days after the date Swissdigital actually produces this core information.

### A. Swissdigital Should Be Ordered to Produce and Provide Information Regarding Its Product Component Costs and Sales.

The component costs and sales data for Swissdigital's products is relevant to damages issues in the case. Component costs are necessary for apportionment of the value of the patented feature (a USB sheath) compared to the value of a full product. Swissdigital's sales data is relevant to Swissdigital's lost profits allegations, including at least alleged demand for the patented product and Swissdigital's ability to meet demand. Swissdigital should be ordered to produce the relevant component cost and sales information for its products.

#### 1. Swissdigital Should Produce Information Regarding the Cost of Components Used in Swissdigital Bags.

Component cost information is critical to Samsonite's damages case. While the products Swissdigital accuses of infringing its patents, as well as the products Swissdigital itself sells, are whole bags and luggage products, this case ultimately centers not on entire bags, but on patents covering a single component, a "USB sheath," used in those bags. *See, e.g.*, Dkt. No. 56 (Samsonite

9

MSJ) at 2-4 (overview of the Asserted Patents). The cost of those components to Swissdigital is relevant to Swissdigital's lost profits and reasonable royalty claims, and Samsonite's ability to test those claims. Ex. 10 (Sept. 29, 2025 Swissdigital Resp. to Samsonite 2nd Interrogs.) at 12 (seeking lost profits and reasonable royalty). Apportionment of the patented features for damages purposes is well-settled law dating back to 1884, and requires "apportion[ing] the defendant's profits and the patentee's damages between the patented feature and the unpatented features." *E.g.*, *Commonwealth Sci. and Indus. Res. Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1302 (Fed. Cir. 2015) (quoting *Garretson v. Clark*, 111 U.S. 120, 121 (1884)). The specific costs to Swissdigital for the purportedly patented USB component are inseparable from that analysis.

Swissdigital does not dispute the relevance of component cost information. The argument it makes instead—that Swissdigital is not obligated to provide this relevant discovery because only Swissdigital, and not any other company that sources the components or manufactures the bags Swissdigital sells, is a party to this litigation (Ex. 11 (Nov. 14, 2025 Ltr fr Keyhani to Kovar) at 2)—fails as a matter of law.

***First***, Swissdigital is obligated to produce, at least in interrogatory responses, all responsive information in the possession of Mr. Li, Swissdigital's CEO. Swissdigital has taken the position that Mr. Li is the ***only*** person or entity who has any information relevant to this lawsuit. *See* Ex. 2 (Mar. 14, 2025 Swissdigital 2nd Supp. Resp. to Samsonite Initial Interrogs.) at 5, 13 (identifying only Mr. Li as knowledgeable regarding Swissdigital's products, sales, and prototypes); Ex. 9 (Sept. 5, 2025 Swissdigital Resp. to Samsonite 1st Interrogs.) at 10 (identifying only Mr. Li as knowledgeable regarding prototypes); Ex. 10 (Sept. 29, 2025 Swissdigital Resp. to Samsonite 2nd Interrogs.) at 19, 24 (identifying only Mr. Li as knowledgeable regarding Swissdigital products practicing the Asserted Patents and sales records). Swissdigital cannot simultaneously claim that

Mr. Li has relevant information in his possession, and refuse to answer Samsonite's interrogatories requesting information likely in Mr. Li's possession. If Mr. Li has relevant responsive information, then Swissdigital must gather that information and substantively respond to Samsonite's interrogatories. *See* Fed. R. Civ. P. 33(b)(1)(B) (requiring interrogatories to be answered using "***any officer or agent***, who ***must*** furnish the information available to the party"). In addition, Mr. Li unquestionably does know about component costs and sales, as he is also the owner of HK New Hunter, who sells these products to Swissdigital. Thus, Swissdigital should be compelled to promptly provide this information ***at least*** as interrogatory responses.

***Second***, the underlying documents themselves are also in Swissdigital's control. "[C]ontrol is not limited to actual physical possession of a document"—rather, documents are under a party's control "when that party has the right, authority, or ability to obtain" those documents "upon demand." *Merchia v. U.S. Internal Revenue Serv.*, 336 F.R.D. 396, 398 (D. Mass. Aug. 5, 2020) (citations omitted). In other words, a party has control of documents that it has the "right, authority or ***practical ability***"[6] to obtain those documents from a non-party. *Bobba v. Patel*, No. 3:19-30171-MGM, 2021 WL 1907460, at *4 (D. Mass. May 12, 2021) (citation omitted). Courts have found control exists in a variety of circumstances. As relevant here, two factors are critical: first, the degree of intermingling of directors or officers of the companies, and second, whether the non-party corporation is involved in the litigation. *In re Hand Held Prods., Inc.*, No. 24-mc-91378-NMG, 2024 WL 5136071, at *4 (D. Mass. Oct. 24, 2024).[7]

---

[6] All emphasis herein has been added unless otherwise specified.

[7] These are non-exhaustive considerations. Courts have also found control in other circumstances, including where (1) the alter ego doctrine warrants piercing the corporate veil; (2) the subsidiary was an agent of the parent in the transaction giving rise to the lawsuit; (3) the relationship is such that the agent-subsidiary can secure documents of the principal-parent to meet its own business needs and documents helpful for use in litigation; (4) there is access to documents when the need

Here, the record strongly suggests that Swissdigital has the practical ability to obtain the relevant information from HK New Hunter. Swissdigital's CEO and owner, Mr. Li, also owns HK New Hunter—the entity that sells Swissdigital the bags that Swissdigital then sells in the United States—as its sole shareholder and owner. Ex. 4 (Sept. 29, 2025 Swissdigital Resp. to Samsonite RFAs) at 9-11. The "intermingling of directors, [and] officers" here is thus a complete overlap. *In re Hand Held Prods*., 2014 WL 5136071, at *4. HK New Hunter is also the ***sole*** supplier for Swissdigital's products in the U.S. Ex. 2 (Mar. 14, 2025 Swissdigital 2nd Supp. Resp. to Samsonite Initial Interrogs.) at 9 (explaining Swissdigital buys "the bag and luggage products it sells from" HK New Hunter); Ex. 7 (importgenius printout) (showing Swissdigital is the only entity to which HK New Hunter exported products)—meaning HK New Hunter is at least involved in transactions forming part of this lawsuit (i.e., lost profits via Swissdigital's product sales). In short, Mr. Li, who commonly owns these entities, uses HK New Hunter as the manufacturing arm for the products, and uses Swissdigital to market and sell them in the United States. "[T]he nature of the transactional relationship" between Swissdigital and HK New Hunter strongly suggests that Swissdigital, through Mr. Li, has the ability to obtain relevant documents from HK New Hunter regarding the manufacture of the products HK New Hunter supplies to Swissdigital, including the costs of components thereof. *See Addamax Corp. v. Open Software Foundation, Inc.*, 148 F.R.D. 462, 467 (D. Mass. 1993).

Even if the relevant information were not in HK New Hunter's possession specifically, public information indicates that Mr. Li also controls several other related entities with unknown roles in the design, manufacture, marketing, and/or sales of Swissdigital's products. Ex. 5

---

arises in the ordinary course of business; and (5) the subsidiary was marketer and servicer of the parent's product in the United States. *In re Hand Held Prods., Inc.*, 2024 WL 5136071, at *4.

(hunterbags.com printout, China Wholesale) (stating "Mr. Hunter" set up the "great brand"); Ex. 6 (huterbags.com printout, Our Company) (listing HK New Hunter and other companies). If HK New Hunter does not have information regarding Swissdigital products' component costs, HK New Hunter or Mr. Li likely knows who does. In fact, information regarding Swissdigital's product components becomes even more relevant if Swissdigital did not design them or manufacture them itself, and instead sourced them from third parties, because those components could then be key invalidating prior art. At a minimum, even if every entity Mr. Li controls has no information about component costs, Mr. Li and Swissdigital know the link in the Swissdigital supply chain where the products or components are obtained from a third party. That information is solely in Mr. Li's and Swissdigital's control, and must be produced.

### 2. Information Regarding the Sales of Swissdigital's Bags Should be Produced.

The relevance of sales information for Swissdigital's products is two-fold. ***First***, the Court has found that three of the four Asserted Patents in this case were improperly labeled as continuations of the earliest-filed '071 patent, such that the '137, '138, and '009 patents are entitled only to a priority date of April 19, 2019. Dkt. No. 93 (Order re Claim Construction, MSJ) at 28-34. Swissdigital's sales of its own products practicing the claims of its Asserted Patents thus likely invalidate at least the asserted claims of those later-filed patents, as well as the asserted claims of the '071 patent if Swissdigital sold relevant products before 2014. ***Second***, Swissdigital seeks its alleged lost profits as damages in this litigation. Ex. 10 (Sept. 29, 2025 Swissdigital Resp. to Samsonite 2nd Interrogs.) at 12 (seeking lost profits and reasonable royalty). Under the *Panduit* factors, Swissdigital must establish "(1) demand for the patented product; (2) absence of acceptable non-infringing substitutes; (3) manufacturing and marketing capability to exploit the demand; and (4) the amount of the profit it would have made." *Rite-Hite Corp v. Kelley Co., Inc.*,

56 F.3d 1538, 1545 (Fed. Cir. 1995) (citing *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978)). Sales of Swissdigital's products in the years before its patents issued demonstrate demand for the patented product (or lack thereof) and whether Swissdigital has manufacturing and marketing capability to exploit that demand.

Swissdigital's production is deficient. Swissdigital produced sales spreadsheets containing data going back only to 2018, and did not provide the month or date of the sales. *See generally*, *e.g.*, Ex. 17 (SWISSDIGITAL001889). When asked for this information, Swissdigital claimed it only provided sales information "from 2018 to the present because that is what Samsonite specifically asked for." Ex. 11 (Nov. 14, 2025 Ltr fr Keyhani to Kovar) at 2. That is plainly incorrect. Ex. 10 (Sept. 29, 2025 Swissdigital Resp. to Samsonite 2nd Interrogs.) at 18 (requesting information regarding product sales from 2014 to the present), 25 (similar).

Nor can Swissdigital's boilerplate "overly broad and unduly burdensome" objection excuse its obligation to produce this relevant discovery. Ex. 11 (Nov. 14, 2025 Ltr fr Keyhani to Kovar) at 2. Any alleged burden to Swissdigital in producing this sales information is clearly outweighed by the relevance of this information to the invalidity of the Asserted Patents and to Swissdigital's lost profits claims. Indeed, it is unclear what burden Swissdigital even faces; Samsonite has requested Swissdigital's own sales records from Swissdigital. The exact dates of Swissdigital's product sales are necessary for Samsonite to test the validity of Swissdigital's Asserted Patents, and Swissdigital should be compelled to produce that information.

**B.**      **Swissdigital Should Be Orderd to Produce and Provide Information Regarding Its Corporate Structure and Related Entities.**

Swissdigital has failed to produce any information regarding its corporate structure, or the roles of related entities in designing, manufacturing, marketing, and selling Swissdigital's products. Swissdigital claims it does not have access to relevant component cost information for the very

products it sells. But there must be *some* entity that does know the costs of the USB components used in Swissdigital's products—for example, the entity from which the Mr. Li-controlled entities purchases the bags or components. That entity may be HK New Hunter, some other entity related to Swissdigital, HK New Hunter, and Mr. Li, or even an unknown third party. If not in Swissdigital or HK New Hunter's possession, then Samsonite must seek this relevant discovery from the entity that does have that information. But Samsonite has no way to know what entity that is; that information is solely in Swissdigital and its related entities' (and/or Mr. Li's) possession.

Swissdigital, however, has failed to identify the relevant entities. To date, Swissdigital has identified only one related entity, HK New Hunter, from which Swissdigital purchases its products wholly manufactured. Swissdigital has not identified *any* other entity involved with the design, manufacture, marketing, or sale of the bags it sells. Indeed, Swissdigital has flatly refused to answer Samsonite's interrogatory specifically requesting that Swissdigital explain Swissdigital, its related entities', and any third parties' roles in the "conception, research, development, manufacture, marketing, distribution, licensing, ownership and/or sale" of "products embodying the Asserted Patents." Ex. 9 (Sept. 5, 2025 Swissdigital Resp. to Samsonite 1st Interrogs.) at 14-15. As it stands, it is unclear even whether HK New Hunter manufactures the Swissdigital products itself, or whether HK New Hunter also purchases the products from some other unknown entity. If the former, then HK New Hunter must have component cost information in its possession; if the latter, then HK New hunter knows the identity of the other unknown entity.

Swissdigital offers no excuse for its failure to provide this basic information. Ex. 11 (Nov. 14, 2025 Ltr fr Keyhani to Kovar) at 2 (purporting to excuse its lack of production of component costs while not addressing its corporate structure). Nor could it; there is no meaningful burden to Swissdigital to produce this information. Swissdigital cannot credibly argue that it lacks access to

15

its own corporate structure, or which of its related entities are involved in product design, manufacture, marketing, and sales. The organizational structure of Swissdigital, HK New Hunter, and any other entities owned by Mr. Li is within Swissdigital and Mr. Li's control. Swissdigital knows that corporate structure is important; in fact, Swissdigital itself propounded a similar interrogatory, to which Samsonite responded in full. *See* Ex. 12 (Nov. 7, 2025 Samsonite Supp. Resp. to Swissdigital Interrogs.) at 12-14. This Information is vital to Samsonite's ability to obtain discovery from relevant entities, and must be produced.

**C.      Swissdigital Should Be Ordered to Produce and Provide Information Regarding Development and Sales of Its Prototypes.**

Information regarding the conception and reduction to practice of Swissdigital's Asserted Patents, and in particular any prototypes embodying Swissdigital's Asserted Patents, is plainly relevant to Samsonite's defenses. Depending on the dates Swissdigital created its prototypes, and the dates those prototypes were offered for sale, disclosed, or sold at, for example, trade shows, the claims of Swissdigital's Asserted Patents could be invalid over Swissdigital's own prototypes.

Swissdigital's failure to provide adequate information for what products it has sold, and when, has prejudiced and continues to prejudice Samsonite. The lack of disclosure in Swissdigital's discovery responses and production resulted in a partial denial of Samsonite's motion for summary judgment of invalidity of Swissdigital's patents. Dkt. No. 93 (CC, MSJ Order) at 35-36. Swissdigital argued in opposing Samsonite's motion that "[t]here is no evidence that the image from a confidential design specification of a prototype Defendants rely upon as prior art/on sale bar evidence"—images which came from the sole document Swissdigital has identified in response to Samsonite's interrogatories on this topic—"were in the public domain or that this specific design was included in the TSGH157[sic] product offered for sale." Dkt. No. 66 (Swissdigital Opp. to Samsonite MSJ) at 17-18. By Swissdigital's own admission, then, the

information it has provided in response to Samsonite's interrogatories is insufficient to establish what designs reflect what products, and when those products were sold. The only reason that information was not available for Samsonite's summary judgment motion is because that information is solely in Swissdigital's possession, and Swissdigital has not provided it.

Swissdigital's responses to Samsonite's discovery requests on this topic are deficient. In response to Samsonite's interrogatory requesting information about the "earliest conception, making, using, selling, offering for sale, and disclosure" of the subject matter of Swissdigital's Asserted Patents, Swissdigital provided no description of Mr. Li's (the inventor of the Asserted Patents) inventive process or the first instance of use, sale, offer for sale, or disclosure of any Swissdigital product embodying or practicing the Asserted Patents. Instead, Swissdigital identified a single document—SWISSDIGITAL001835—pursuant to Rule 33(d). Ex. 9 (Sept. 5, 2025 Swissdigital Resp. to Samsonite 1st Interrogs.) at 5-7.

But Swissdigital's reliance on Rule 33(d) in response to this interrogatory is improper. Rule 33(d) only allows Swissdigital to cite to documents in lieu of a substantive response "[i]f the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records . . . *and* if the ***burden of deriving or ascertaining the answer*** will be ***substantially the same for either party***." Fed. R. Civ. P. 33(d). That is clearly not the case here. SWISSDIGITAL001835 ███████████████████████

████████████████. *See generally* Ex. 19 (SWISSDIGITAL001835). ███████████

████████████████████████████████████████

████████████████████████ ███████████████████████

████████████████████████████████████████

████████████████████████ Samsonite attempted to decipher the document and used the

dates therein to support its summary judgment motion, but Swissdigital claimed Samsonite was incorrect. *See* Dkt. No. 66 (Swissdigital Opp. to Samsonite MSJ) at 17-18. The burden of deriving or ascertaining the answers from the cited document is clearly not the same for Samsonite as it is for Swissdigital; Swissdigital must provide the answers to these questions.

**D.     Swissdigital Should be Ordered to Produce the Requested Information by April 27 2026, or Fact Discovery Should Be Extended.**

Samsonite raised the above-described deficiencies in Swissdigital's production and interrogatory responses in early November 2025. Ex. 14 (Nov. 3, 2025 Ltr fr Kovar to Keyhani). Swissdigital responded two weeks later, refusing to provide relevant discovery on some issues, but promising to investigate and supplement its responses on others. Ex. 11 (Nov. 14, 2025 Ltr fr Keyhani to Kovar) at 2 (explaining Swissdigital investigate information relating to prototypes and supplement), 2 ("Swissdigital will supplement with a high-level response and fully address this topic during expert discovery"), 3 ("Swissdigital will supplement its responses as soon as possible"). To date, Swissdigital has provided *zero* additional interrogatory supplements or documents.

When Samsonite requested to meet and confer with Swissdigital regarding this motion under Local Rule 7.1(a)(2), Swissdigital's counsel's response indicated it only now—more than four months later—intended to begin discussing these issues with Swissdigital, and did not respond to Samsonite's request for a conference. *See* Ex. 18 (correspondence between counsel) at 1-2 (Apr. 3, 2026 Email fr Stephenson).[8]  Samsonite has also received no response to its corporate deposition

---

[8] To the extent Swissdigital relies on the Court's order granting the parties' joint motion to extend discovery deadlines for its delay, such reliance is unfounded. The motion, and the Court's order, only extended the deadlines to complete fact witness depositions and the close of fact discovery. Dkt. No. 86. Nothing in the parties' agreed motion or the Court's order excuses Swissdigital's complete failure to conduct any investigation into relevant information in its possession during the intervening time frame.

notice under Rule 30(b)(6), which was served months ago on December 16, 2025. Ex. 20 (Samsonite 30(b)(6) notice).[9]

For its part, Samsonite has gone above and beyond its obligations, providing product catalog information for every product Samsonite has sold in the United States, complete sales data for all accused products from the issuance of the Asserted Patents, design documentation for all of the Accused Products, and fulsome responses to all of Swissdigital's interrogatories.

Swissdigital should be compelled to supplement its deficient production and interrogatory responses at the latest by April 27, 2026. The parties must complete fact witness depositions in only six weeks. Samsonite needs time to review and digest any additional information and responses Swissdigital provides. Further, depending on the information Swissdigital provides—for example, identification of the entity from which HK New Hunter or another Swissdigital-related entity purchases the USB components at issue—Samsonite will need additional time to conduct relevant discovery, *e.g.*, to subpoena the entity for documents and/or a deposition. Samsonite submits that a complete supplementation and production by April 27, 2026, will allow sufficient time for Samsonite to adequately prepare its case. Although April 27 pre-dates the deadline for Swissdigital's opposition to this motion, Samsonite submits that automatic allowance of this motion is warranted due to Swissdigital's failure to comply with Local Rule 37.1. Alternatively, Samsonite requests that the Court move the fact witness deposition and fact discovery cutoff deadlines to 30 and 60 days following Swissdigital's actual production of responsive information in response to the Court's ruling on this motion, respectively, to allow sufficient time for review of relevant discovery from Swissdigital before depositions.

---

[9] Any argument by Swissdigital that it was not required to respond because there was no date provided in Samsonite 30(b)(6) notice fails. Samsonite set the deposition at "such date, time, and place as may be agreed upon by the parties" as a professional courtesy.

**E.** **This Motion Should Be Automatically Granted as a Sanction Against Swissdigital.**

Samsonite's counsel requested a meet-and-confer with Swissdigital's counsel on April 1, 2026, and again on April 3, 2026. Ex. 18 (correspondence between counsel) at 1, 2-3. Swissdigital's counsel never provided its availability, instead indicating that it needed time to begin investigating discovery issues raised back in November of 2025. *Id.* at 1-2. More than seven days have now passed since Samsonite's second request on April 3, 2026. Accordingly, Samsonite respectfully requests that the Court impose sanctions on Swissdigital under Local Rule 37.1(a) for failure to respond to a request for discovery conference, and automatically allow this motion. *See* Local Rule 37.1(a).

## V. CONCLUSION

For the foregoing reasons, Samsonite respectfully requests that the Court grant this motion and compel Swissdigital to produce documents and/or supplement its interrogatory responses to provide information regarding (1) the component costs and sales of Swissdigital's products; (2) Swissdigital's corporate structure; and (3) information regarding offers for sale, sales, and disclosures of Swissdigital's prototypes. Samsonite further requests that the Court order production of the relevant documents and interrogatory responses by April 27, 2026 or, alternatively, that the fact witness deposition and fact discovery deadlines be extended to 30 and 60 days after Swissdigital's actual responsive production of the requested information, respectively.

Dated: April 13, 2026

Respectfully submitted,

By: */s/ Adam J. Kessel*
    Adam J. Kessel
    Massachusetts Bar No. 661,211
    kessel@fr.com
    **FISH & RICHARDSON P.C.**
    One Marina Park Drive
    Boston, MA 02210
    Tel: (617) 542-5070
    Fax: (617) 542-8906

    Neil J. McNabnay (*Pro Hac Vice*)
    Texas Bar No. 24002583
    mcnabnay@fr.com
    **FISH & RICHARDSON P.C.**
    1717 Main Street, Suite 5000
    Dallas, TX 75201
    Tel: (214) 747-5070
    Fax: (214) 747-2091

    Bailey K. Benedict (*Pro Hac Vice* )
    Texas Bar No. 24083139
    benedict@fr.com
    Ethan K. Kovar (*Pro Hac Vice* )
    Texas Bar No. 24138134
    kovar@fr.com
    **FISH & RICHARDSON P.C.**
    909 Fannin Street, Suite 2100
    Houston, TX 77010
    Tel: (713) 654-5300
    Fax: (713) 652-0109

    Wonjoon Chung (*Pro Hac Vice* )
    Georgia Bar No. 396468
    chung@fr.com
    **FISH & RICHARDSON P.C.**
    1180 Peachtree Street NE
    21st Floor
    Atlanta, GA 30309
    Tel: (404) 892-5005
    Fax: (404) 892-5002

    ***Attorneys for Defendants***
    ***SAMSONITE GROUP S.A.; SAMSONITE***
    ***LLC; SAMSONITE COMPANY STORES,***
    ***LLC; and DIRECT MARKETING***
    ***VENTURES, LLC***

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2026, I caused the foregoing document to be served upon all counsel of record via electronic mail and the Court's CM/ECF system.

/s/ *Adam J. Kessel*
Adam J. Kessel