# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SWISSDIGITAL USA CO., LTD.,<br><br>Plaintiff,<br><br>v.<br><br>SAMSONITE GROUP S.A.; SAMSONITE LLC; SAMSONITE COMPANY STORES, LLC; and DIRECT MARKETING VENTURES, LLC,<br><br>Defendants. | Civil No. 1:24-cv-11636-JEK<br><br>**JURY TRIAL DEMANDED**<br><br>**FILED UNDER SEAL** |

### DEFENDANTS' RESPONSE TO PLAINTIFF
### <u>SWISSDIGITAL USA CO., LTD.'S MOTION TO COMPEL DISCOVERY (ECF No. 115)</u>

## TABLE OF CONTENTS

Table of Authorities ......................................................................................................................... ii

I.    Introduction ......................................................................................................................... 1

II.   Relevant Background ........................................................................................................... 1

     A.    Samsonite Has Been Diligent Throughout Discovery, and Has
          Produced Nearly All the Information Swissdigital Seeks ...................................... 2

     B.    Samsonite ███████████████████████████████████ , and
          Has Provided the Information Available from a Reasonable
          Investigation .......................................................................................................... 4

III.  Legal Standard ..................................................................................................................... 6

IV.   Argument .............................................................................................................................. 7

     A.    Samsonite Should Not Be Compelled to Create and Produce "Top
          20" Data ................................................................................................................. 8

          1.    Samsonite Cannot Produce What Does Not Exist. .................................... 8

          2.    Top-Selling Product Information for 2018-2021 Is of
              Marginal Relevance at Best. ...................................................................... 8

          3.    Top-Selling Product Information Is Disproportionately
              Burdensome. ............................................................................................. 12

     B.    Swissdigital's Demand for Documents and Communications
          Regarding Financial Data Compilation Is Moot. ................................................. 13

     C.    Swissdigital's Demands Regarding its Second Set of Requests for
          Production Is Moot. ............................................................................................. 15

     D.    Swissdigital's Demand for Amazon Vendor IDs is Likewise Moot .................... 16

V.    Conclusion ......................................................................................................................... 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abiomed, Inc. v. Enmodes GmbH*,
 No. 23-10087-DJC, 2024 WL 4028295 (D. Mass. Sep. 3, 2024)................................................7

*Airbus SAS et al. v. Anaconda, Inc.*,
 No. 1:25-cv-00178-CFC-SRF (D. Del. Mar. 10, 2026)...........................................................11

*Greenberg v. PATHS Program Holding, LLC (MA)*,
 No. 3:19-cv-30032-MGM, 2023 WL 3868318 (D. Mass. June 7, 2023) ..............................7, 8

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
 579 U.S. 93 (2016)...................................................................................................................11

*Mack v. Great Atl. and Pac. Tea Co., Inc.*,
 871 F.2d 179 (1st Cir. *1989)*....................................................................................................7

*Mentor Graphics Corp. v. EVE-USA, Inc.*,
 851 F.3d 1275 (Fed. Cir. 2017)............................................................................................9, 10

*Oppenheimer Fund, Inc. v. Sanders*,
 437 U.S. 340 (1978)....................................................................................................................7

*Panduit Corp. v. Stahlin Bros. Fibre Works*,
 575 F.2d 1152 (6th Cir. 1978) ...................................................................................................9

**Other Authorities**

Fed. R. Civ. P. 26........................................................................................................................6, 7

L.R. 37.1(b)(4) ...............................................................................................................................16

## I.    INTRODUCTION

Swissdigital largely seeks to compel discovery that Samsonite agreed to produce before Swissdigital even filed its motion. Samsonite has now produced everything promised, and this motion boils down to a single dispute: a disproportionately burdensome demand for "Top 20" data. Samsonite ███████████████████████████████████ nonetheless compiled and produced the information from 2022-2025 as a compromise, despite its (at best) tangential relevance. But as Samsonite has explained multiple times, top-selling product sales data prior to 2022 is disproportionately burdensome to collect, due to a 2022 change in the database used to store that information.

Because Swissdigital's motion is directed at information that doesn't exist, was already produced, or  would be unduly burdensome to create in light of its minimal relevance, the Court should deny this motion in full.

## II.    RELEVANT BACKGROUND

Swissdigital's claim that Samsonite "intend[s] to stall and evade while the deadline for fact discovery approaches" (Mot. to Compel, ECF No. 115 at 1) is belied by the record. Samsonite has diligently searched for and produced over 140,000 documents (and counting) compared to Swissdigital's production of a mere ***92 documents***.[1] Chung Decl. at ¶ 4. At the filing of this response, Samsonite has finished its collection and production of materials responsive to Swissdigital's discovery requests and motion.

---

[1] Swissdigital produced approximately 50 pages  in hard copy on the morning of Zhijian Li's deposition, but has, to date, still not produced those documents electronically. Chung Decl. at ¶ 4.

A.    **Samsonite Has Been Diligent Throughout Discovery, and Has Produced Nearly All the Information Swissdigital Seeks.**

The damages Swissdigital could plausibly seek for alleged infringement of its patents does not justify the cost of this litigation. Ex. 1 (Mar. 18, 2025 Hr'g Tr.) at 12:7-18. In an effort to impress that upon Swissdigital, Samsonite has been forthcoming in discovery. By February 3, 2025—more than a year ago—Samsonite completed its production of (1) design documentation in Samsonite's possession, custody, and control for all accused products identified in Swissdigital's then-current infringement contentions; (2) then-current sales information for those Accused Products from 2020 (the earliest possible damages); and (3) information sufficient for Swissdigital to determine any additional accused products, including production of Samsonite's entire marketing catalog database and identifying all products sold from 2020 to the present. Chung Decl. at ¶ 5; Ex. 2 (Samsonite 3rd Supp. Resp. to Swissdigital Initial Interrogs.) at 12-13 (Feb. 3, 2025 2nd Supp. Resp. to Interrog. No. 1) (identifying "a list of all products Samsonite has sold in the United States since 2020" and "catalog information for all of Samsonite's products"), 15 (Dec. 30, 2024 1st Supp. Resp. to Interrog. No. 2) (identifying sales data).

But Swissdigital, without basis, simply disbelieves Samsonite's financial production and sworn testimony. It represented to the Court that it wanted 30(b)(6) depositions to validate the numbers, stating it would "trust [Samsonite's] 30(b)(6) testimony more than [Samsonite's] records," because "somebody's under oath." Ex. 1 (Mar. 18, 2025 Hr'g Tr.) at 10:19-11:7. Samsonite thus produced two 30(b)(6) corporate deponents to testify on the veracity of the financial data, relying on Swissdigital's representation that it would not seek duplicative testimony later. By September 17, 2025, Samsonite also supplemented its design and financial information to cover additional products Swissdigital had newly accused (Chung Decl. at ¶¶ 6-7), and provided more information to assist Swissdigital with identification of relevant documents on that same

2

date. Ex. 3 (Sept. 17, 2025 Email fr Chung re Accused Prods.) at 1-2. Samsonite's diligence in providing information continued, including yet another update of sales data on December 17, 2025 to capture the passage of time. Chung Decl. at ¶ 6. Samsonite's production record speaks for itself; Swissdigital never raised any alleged deficiencies in Samsonite's production or discovery responses after September 17, 2025 until it raised the issues subject to this motion.

After more than half a year of silence, Swissdigital raised alleged deficiencies for the first time on April 22, 2026. Ex. 4 (2026-05-08 Email fr Chung re M&C) at 8-9 (Apr. 22, 2026 Email fr Draffin). At a subsequent April 30 conference between the parties, Swissdigital identified ***more than 40 new RFPs*** as ones where Samsonite's responsive production was allegedly deficient. *Id.* at 5 (Apr. 30, 2026 Email fr Draffin). Many of the RFPs Swissdigital identified were ones for which Samsonite had already produced information. *Id.* at 1 (May 8, 2026 Email fr Chung). In an attempt to moot the dispute, Samsonite nevertheless agreed to investigate and/or produce most of the materials Swissdigital raised, with the exception of Swissdigital's request for the 20 top-selling Samsonite products from 2018-2021. *Id.* at 1-2 (May 8, 2026 Email fr Chung).

Samsonite diligently investigated the requests Swissdigital raised at the April 30 conference, and produced responsive documents on May 21, May 29, and June 2. Chung Decl. at ¶ 8. With Samsonite's June 2, 2026 production—just over one month after Swissdigital initially raised these alleged deficiencies, and six days after Swissdigital filed its motion to compel— Samsonite completed its production of all information Swissdigital moved to compel, other than the top 20 selling products and Amazon IDs. Ex. 5 (June 8, 2026 Email fr Chung re M&C) at 6 (June 2, 2026 Email fr Chung) ("Samsonite's production with respect to the materials subject to Swissdigital's motion to compel is thus now complete"). On June 8, 2026, Samsonite provided all Amazon ID numbers uncovered from its investigation. *Id.* at 1.

3

In short, Samsonite's production of the most relevant information—sales, marketing, and financial information—was substantially complete more than a year before Swissdigital even raised the issues in its motion. For the remainder, Samsonite swiftly collected and produced the requested information soon after Swissdigital—following a months-long silence—initially raised the alleged deficiencies.

**B.      Samsonite ████████████████████████████████, and Has Provided the Information Available from a Reasonable Investigation.**

Data regarding Samsonite's top-selling products prior to 2022 is not reasonably obtainable. Samsonite cannot simply pull historical financial information for its 20 top-selling products, as Swissdigital apparently believes. ████████████████████████████████

██████████████████████████████████████████████████. Ex. 6 (Gomez Decl.) at ¶ 6. ████████████████████████████████

██████████████████████████████████████. *Id.* at ¶ 7. ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████. *Id.* at ¶¶ 8-9. ████████████████████████

██████████████████████████████████████. *Id.* at ¶ 10. ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████. *Id.* at ¶ 11. Performing these tasks would require Mr. Gomez—Samsonite's Senior Director of Finance for the Americas—to essentially forsake his regular job duties for approximately three weeks. *See id.* at ¶ 12.

Swissdigital previously raised the issue of Samsonite's "top 20" selling products on August 14, 2025, and ultimately agreed to forego pre-2022 information. Ex. 3 (Sept. 17, 2025 Email fr Chung re Accused Products) at 10-11. At the parties' August 20, 2025 conference, Samsonite informed Swissdigital that (1) top 20 selling product information for the years 2020 and 2021 would be unduly burdensome to obtain and produce, because ████████████████ ████████ ██ ████████████████████████████████; and (2) while Samsonite did not believe top 20 selling product information was relevant to any issue in the case, Samsonite was willing to provide information that was more easily accessible—*i.e.*, for the years 2022-2025—as a compromise. Ex. 4 (May 8, 2026 Email fr Chung re M&C) at 7-8 (April 23, 2025 Email fr Chung). Samsonite also informed Swissdigital at that time that figuring out what Samsonite's top 20 products were for years prior to 2022 would, in effect, require Samsonite to ████████████████████████ ████████████████████████████████████████████████ ████████████████████████. *Id.*. Swissdigital accepted Samsonite's proposal, and noted it was not looking for sales of every Samsonite product ever sold. *Id.* Relying on this representation, Samsonite compiled the top 20 selling product information for 2022-2025, and provided information regarding not only the top 20, but the top 50 selling products from those years. Ex. 7

---

[2] Specifically with respect to Swissdigital's request for production of documents responsive to RFP No. 82 ████████████████████████, Samsonite has completed its investigation and confirmed that there are no written documents describing ████████████████. Ex. 6 (Gomez Decl.) at ¶ 10.

(Samsonite 1st Supp. Resp. to Swissdigital 1st Interrogs.) at 40-42. That should have been the end of the matter.

When Swissdigital re-raised the "top 20" products issue nearly half a year later on April 22, Samsonite again reminded Swissdigital that such data would be unduly burdensome to collect because it would require ███████████████████████████████████████, and reminded Swissdigital of its prior acceptance of Samsonite's proposed compromise and representation that data for 2022-2025 would be sufficient. [3] Ex. 4 (2026-05-08 Email fr Chung re M&C) at 7-8 (Apr. 23, 2026 Email fr Chung). Swissdigital nevertheless reneged on the parties' compromise and continued to demand the top 20 selling product information for 2018-2021. *Id.* at 6-7 (Apr. 24, 2026 Email fr Draffin). Samsonite again reiterated to Swissdigital at the parties' April 30, 2026 conference and again via email on May 8, 2026 that the requested top 20 product information was not relevant to any claim or defense in the case, and unduly burdensome and not proportional in view of the needs of the case. *Id.* at 2 (May 8, 2026 Email fr Chung).

## III.    LEGAL STANDARD

Under Rule 26(b)(1), a party may obtain discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Discovery must therefore be both relevant and proportional. Proportionality is assessed against six factors: the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). Relevance is broad, but not unlimited. *See,*

---

[3] Samsonite understands Swissdigital now claims it never agreed to forego "top 20" information prior to 2022. Ex. 4 (May 8, 2026 Email fr Chung re M&C) at 7. Samsonite submits that Swissdigital's months-long silence after receiving the 2022-2025 information speaks for itself.

*e.g., Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351–52 (1978) ("[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries." (citation omitted)). Courts enjoy broad discretion to manage discovery, and to deny requests that impose burdens disproportionate to the marginal value of the information sought. *E.g., Mack v. Great Atl. and Pac. Tea Co., Inc.,* 871 F.2d 179, 186-87 (1st Cir. *1989)* .

Even where a moving party clears the relevance threshold, discovery must still be denied or limited when it is not proportional to the needs of the case. Indeed, "the court must limit the frequency or extent of discovery" where "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C)(iii). The moving party "bears the initial burden of showing that the discovery requested is relevant." *Abiomed, Inc. v. Enmodes GmbH*, No. 23-10087-DJC, 2024 WL 4028295, at *2 (D. Mass. Sep. 3, 2024) (citation omitted). Only then does the burden shift to the objecting party to show that the discovery request is improper. *Id.*

Importantly, "it is well-settled that a responding party's obligations under Rule 34 do not extend to non-existent materials." *Greenberg v. PATHS Program Holding, LLC (MA)*, No. 3:19-cv-30032-MGM, 2023 WL 3868318, at *3 (D. Mass. June 7, 2023) (citation and modification omitted).

## IV.   ARGUMENT

Samsonite does not track aggregate "top-selling" product data in the ordinary course of business, and thus cannot be required to create this "Top 20" report for production at Swissdigital's command. Regardless, Swissdigital's request for top selling product information is, at best, tangentially relevant to any claim or defense in the case. The burden to Samsonite of pulling and reconstructing this information substantially outweighs any likely benefit. Swissdigital identifies nothing in its motion that justifies imposing such a burden on Samsonite, and its request should be denied.

Otherwise, Swissdigital's motion is moot. Samsonite has completed its production of documents and information relating to policies for designating products with material keys, marketing and promotional materials, market analyses, and Amazon ID numbers. Swissdigital's motion should be denied in its entirety.

### A. Samsonite Should Not Be Compelled to Create and Produce "Top 20" Data

#### 1. Samsonite Cannot Produce What Does Not Exist.

Samsonite does not track its products by top-selling sales revenue in the aggregate for all divisions. Ex. 6 (Gomez Decl.) at ¶ 5. Samsonite "cannot be compelled to create, or cause to be prepared, new documents solely for their production," because the Federal Rules "only require[] a party to produce documents that are already in existence." *Greenberg*, 2023 WL 3868318, at *2-4 (denying motion to compel financial documents based on perceived "inconsistencies," where the opposing party "explained the inconsistency," and creating the document would have required "instruct[ing] [an] accountant to create documents"). ███████████████████

████████████████████████████████████████,

it should not be forced to create such a document. This is particularly true where, as here,  such information is only tangentially relevant to the issues in the case, and disproportionately burdensome to obtain.

#### 2. Top-Selling Product Information for 2018-2021 Is of Marginal Relevance at Best.

The metric that is most relevant to damages in a patent infringement case is sales and other financial information directly relating to the products accused of infringement. But Samsonite has already provided sales data for the Accused Products from 2020 to the present, and has agreed to provide it from 2018-2019 (despite that Swissdigital cannot seek damages from that time period). What Swissdigital seeks instead is far broader: a ranking of the top 20 best-selling products across

Samsonite's ***entire product catalog***, for a time period (2018-2021) that includes years before any Asserted Patent even existed (2018-2019) and predates any possibly infringing activity. That information has little relevance to the damages theories Swissdigital invokes, and has no logical connection to any claim or defense.

Swissdigital's relevance arguments fail for at least three reasons. First, the *Panduit* lost profits factors Swissdigital relies on focus on the ***Accused Products***, not on rankings of Samsonite's best-selling products generally. The first *Panduit* factor concerns "demand for the ***patented product***."[4] *Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1156 (6th Cir. 1978); *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1285 (Fed. Cir. 2017). While a ranking of Samsonite's 20 top-selling products may demonstrate demand for ***those*** products, Swissdigital has no evidence that any Accused Product would be in that ranking beyond conjecture. Further, even if one of the Accused Products was on the "Top 20" list for 2018 or 2019, it would be (minimally) relevant only to demand from before the patents even existed, and not to lost profits Swissdigital can recover during the actual damages period (after 2020). Nor can the presence or absence of an Accused Product from the "Top 20" list tend to prove or disprove demand for the Accused Products as a whole—particularly given Swissdigital's insistence (via its corporate representative) that ███████████████████████████████████ ██████████████████████ Ex. 8 (Li Tr.) at 35:24-37:10, 176:7-25. If true, Swissdigital's assertion renders any ranking of sales of Samsonite's entire product selection, the vast majority of which would not fall into this narrow market, utterly irrelevant.

A "Top 20" ranking also has no effect on the second factor, "absence of acceptable non-infringing alternatives." (Mot. to Compel, ECF No. 115 at 8).  A list of Samsonite's top-selling

---

[4] All emphasis herein has been added unless otherwise specified.

products for any time period has no bearing on the ***availability*** of non-infringing alternatives, which examines whether "there is a noninfringing alternative which any given purchaser would have found acceptable and bought," for example, "without the patented feature or with a different, non-infringing alternative to the patented feature." *E.g.*, *Mentor Graphics*, 851 F.3d at 1286. A non-infringing alternative can be entirely acceptable and available without being a commercial bestseller; commercial popularity and market availability are distinct inquiries.

Second, the *Georgia-Pacific* reasonable royalty factors Swissdigital relies on likewise focus on the profitability of the Accused Products, and not on a defendant's entire product offering... The profitability of the Accused Products (*i.e.*, the revenues minus the costs—information Samsonite has already produced) is the profitability of the Accused Products, regardless of what 20 products sold the best. The presence or absence of Accused Products in a "Top 20" ranking also has no logical effect on the sales of other, non-infringing products. In fact, ███████████████████████████████████████████████ (Ex. 8 (Li Tr.) at 35:24-37:10, 176:7-25), their sales are unlikely to influence sales of other products.

Swissdigital's attempts to attribute some relevance to the information it seeks are speculative at best. It is unclear how a ranking of the top-selling products in Samsonite's catalog would demonstrate that Samsonite "may have proactively reduced sales, prices, and marketing efforts after learning of their infringing activity."[5] (Mot. to Compel, ECF No. 115 at 7). But an identification of Samsonite's 20 top-selling products has no logical connection to any reduction in sales efforts. Samsonite learned of the Asserted Patents in November 2021, and Samsonite has provided sales information from 2020-2025, and agreed to provide information from 2018 and

---

[5] There is no evidence that Samsonite did so. *See* Ex. 10 (Samsonite 2nd Supp. Resp. to Swissdigital 2nd Interrogs.) at 23-24 (response to Interrog. No. 12).

2019 as well. To the extent Swissdigital wishes to investigate reduction in sales of the Accused Products post-patent awareness, it can compare sales prior to that date to sales after that date. Any impact of the COVID-19 pandemic (*id.* at 7-8) can be determined the same way.

Third, Swissdigital's demand for 2018-2020 "Top 20" data legally *cannot* bear on willful infringement. *See id.* Willful infringement is measured against the alleged infringer's knowledge "*at the time* of the challenged conduct," which here is when Samsonite actually learned of the Asserted Patents. *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 105 (2016). Even Swissdigital admits that the actual relevant inquiry is whether Samsonite changed its "efforts to market and sell the accused products *after gaining awareness of Swissdigital's patents*"—which Swissdigital recognizes did not occur until November 2021. (Mot. to Compel, ECF No. 115 at 7, 9). "Top 20" information from 2018-2020, prior to Samsonite's awareness of the Asserted Patents, *cannot* bear on Swissdigital's willfulness allegations.

Swissdigital's unsupported claims of relevance are further belied by the fact that Swissdigital *unilaterally cancelled the depositions of corporate witnesses Samsonite specifically designated on these topics*. Samsonite designated its corporate representatives to testify regarding topics related to "[d]emand for the Accused Products" or other products that "include[] a USB Port" (Ex. 9 (Samsonite, LLC Resp. to Swissdigital 30(b)(6) Notice)[6] at  14-16 (Topic No. 7)); and "actions and efforts, if any," relating to knowledge of the Asserted Patents, or to reduce or limit sales or liability after becoming aware of the Asserted Patents (*id.* at 18-21 (Topic Nos. 10-12)). If Swissdigital truly believed this information was relevant and necessary, it would have deposed Samsonite's corporate witnesses and learned this information. *Airbus SAS et al. v.*

---

[6] Swissdigital served a separate 30(b)(6) notice for each individual Defendant. Samsonite includes its objections and responses to the Samsonite, LLC as exemplary, but the other notices also contained similar or identical topics to those identified herein.

*Anaconda, Inc.*, No. 1:25-cv-00178-CFC-SRF (D. Del. Mar. 10, 2026), at ECF No. 312 (text order denying motion to compel discovery where the moving party "failed to depose a witness who could have" testified regarding the requested discovery, and "unilaterally cancelled the deposition").

### 3.    Top-Selling Product Information Is Disproportionately Burdensome.

Even if top-selling product information had some marginal relevance, the burden on Samsonite to collect and produce that information is entirely disproportionate to that demand. Samsonite has repeatedly explained to Swissdigital that because of the way Samsonite's data pre-2022 is kept, collecting data for "top 20" products is overly burdensome, including in response to Swissdigital's Interrogatory No. 13. Ex. 10 (Samsonite 2nd Supp. Resp. to Swissdigital 2nd Interrogs.) at 27 (2nd supplemental resp. to Interrog. No. 13). Indeed, determining Samsonite's "Top 20" products from 2018-2021 would require a significant amount of time and manual effort completely disproportionate to the relevance of such information. Ex. 6 (Gomez Decl.) at ¶¶ 11-13. There is no justification for imposing such an immense burden on Samsonite.

The entirety of Swissdigital's argument for proportionality is a baseless accusation that Samsonite is, effectively, lying: "concont[ing] a straw man argument" to "liken[] Swissdigital's request to a demand for all sales information for each and every product sold by Defendants." (Mot. to Compel, ECF No. 115 at 8-9). But Samsonite's explanation is not a strawman; it is simply fact. Swissdigital's unfounded refusal to accept the facts is not a basis for a motion to compel.

Swissdigital's sole basis for questioning Samsonite's representations is that "Defendants argue that no accused products were top-performing products prior to 2022." *Id.* at 9; *see also id.* at 8. But Defendants have never made such a representation. Samsonite provided information for the top *50* best-selling products from the years 2022-2025—████████████████ ████████████████████████—as a compromise. Ex. 7 (Samsonite 1st Supp. Resp.

to Swissdigital 1st Interrogs. at 40-42). Samsonite's statements reference the fact that ███████

███████████████████████████████. *See id.*

Stripped of baseless accusations, Swissdigital has no legitimate counterargument for the proportionality of imposing this undue burden on Samsonite. Nor could it; there can be no justification for requiring Samsonite to ████████████████████████████

███████████████████████████████████████████████

████████████ Ex. 6 (Gomez Decl.) at ¶ 9. Swissdigital's motion should thus be denied.

## B. Swissdigital's Demand for Documents and Communications Regarding Financial Data Compilation Is Moot.

Swissdigital's request for documents and communications relating to compilation of Samsonite's financial information is speculative, and moot. To start, Swissdigital's motion is entirely premised on the hypothetical assertion that, contrary to Samsonite's representation, non-privileged "documents or communications that are administrative or provide technical instructions on what information to pull" even exist. (Mot. to Compel, ECF No. 115 at 11.) Samsonite investigated and found no such emails. Indeed, Samsonite agreed to perform that investigation on May 1, before Swissdigital filed its motion. Ex. 4 (May 8, 2026 Email fr Chung re M&C) at 3-4 (May 1, 2026 Email fr Chung). On June 1, Samsonite informed Swissdigital that its investigation was complete, and that there were no non-privileged emails to provide. Ex. 5 (June 8, 2026 Email fr Chung re M&C) at 8 (June 1, 2026 Email fr Chung). There was never a dispute; Samsonite has since even agreed to produce a privilege log for the privileged emails it found. Swissdigital's motion is simply a fishing expedition, and nothing more. *See id.* at 10-11.

It bears noting that Swissdigital's assertion that "Defendants' financial spreadsheets are inconsistent with Defendants' publicly disclosed information" (Mot. to Compel, ECF No. 115 at 10) is incorrect. Ever since Samsonite first explained that the amount at stake in this case does not

justify the cost and burden of litigation, Swissdigital has been hunting for some basis to suggest that Samsonite has hid sales data. But that search is wholly in vain, as Samsonite has disclosed accurate information. Nonetheless, as part of its ongoing ploy to gin up uncertainty, Swissdigital first revealed its "inconsistency" theory at the 30(b)(6) deposition of Samsonite's representative for financial topics: because there are a certain number of Samsonite SKUs (product identifiers), and Swissdigital has accused about ▮▮ of that number, the revenue for the Accused Products should be ▮▮ of Samsonite's total revenue. Ex. 11 (Gomez Tr.) at 26:23-29:25 (Swissdigital counsel hypothesizing that because Swissdigital has accused approximately ▮▮ of Samsonite SKUs, Swissdigital "would expect" about ▮▮ in sales).

There is no inconsistency in Samsonite's sales data. Instead, Swissdigital draws an obviously incorrect conclusion drawn based on its own illogical assumption. Some products sell better than others; some may not sell at all; and each product has a different price. Apple's revenues for AirPods would not be expected to comprise one-fourth of its total revenue simply because Apple sells four different product families: AirPods, iPhones, iPads, and MacBooks. To take this analogy to an even more stark example: Apple has a "smart glasses" product called Apple Vision Pro which public data suggests have sold about 400,000–500,000 units. Meanwhile, more than 3 billion iPhones have sold. But under Swissdigital's logic, we should expect that one-fifth of Apple's revenue comes from smart glasses because it is one of five different product lines.

Samsonite's 30(b)(6) witness explained this during his deposition on this topic. Ex. 11 (Gomez Tr.) at 58:23-59:21 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. But despite representing to this court that it would believe testimony "under oath" (Ex. 1 (Mar. 18, 2025 Hr'g Tr.) at 10:19-11:7), Swissdigital persists in pursuing this theory. Swissdigital even went so far as to subpoena a former

14

Samsonite administrative employee who helped pull records from the database—her deposition revealed nothing hinting at manipulation of the data. Swissdigital has even subpoenaed Samsonite's customers for obviously redundant information about how much of the Accused Products they've purchased from Samsonite, presumably to check Samsonite's numbers that way. There is simply no nefarious data manipulation for Swissdigital to discover, and the Court should deny Swissdigital's motion.

    **C.    Swissdigital's Demands Regarding its Second Set of Requests for Production Is Moot.**

Swissdigital's request that the Court compel documents responsive to its second set of RFPs is likewise moot. Before the motion was filed, Samsonite agreed to investigate and produce the responsive documents and information Swissdigital seeks, and has already done so. Ex. 4 (May 8, 2026 Email fr Chung re M&C) at 1 (agreeing to produce (1) policy documents in response to RFP No. 31; (2) documents regarding efforts to affect sales of Accused Products in response to RFP Nos. 33 and 36; and (3) documents relating to consumer demand and market analyses in response to RFP Nos. 58, 60, 61, 67-71[7]). Samsonite completed its production of responsive documents on June 2. Ex. 5 (June 8, 2026 Email fr Chung re M&C) at 6 (June 2, 2026 Email fr Chung) ("Other than the pre-2022 'top 20 products' and Amazon ID issues . . . , Samsonite's production with respect to the materials subject to Swissdigital's motion to compel is thus now complete."). There is nothing, nor was there ever anything, for the Court to compel.

Swissdigital does not dispute that Samsonite agreed to produce documents in response to these RFPs. (Mot. to Compel, ECF No. 115 at 12) (admitting Samsonite "represent[ed] at various

---

[7] While the email states "68-71," this is a typographical error. As stated at the top of the email, Samsonite responded regarding all of the RFPs Swissdigital raised in its email and more, including RFP No. 67, regardless of whether Samsonite believed those RFPs were raised at the parties' meet and confer.

times that [Samsonite would investigate and produce]"). Swissdigital's sole motivation for filing this motion, then, appears to be that Samsonite did not produce responsive documents fast enough; yet Swissdigital's motion identifies no reason why it could not wait the *six days* it took for Samsonite to produce documents it represented it would produce all along. Swissdigital's motion should be denied.

**D.      Swissdigital's Demand for Amazon Vendor IDs is Likewise Moot.**

Swissdigital's motion to compel Amazon ID information is moot, because Samsonite already provided this information to Swissdigital. Ex. 5 (June 8, 2026 Email fr Chung re M&C). There was also never a dispute; Samsonite agreed to provide the requested information from the outset, and long before Swissdigital filed its motion. Ex. 12 (Apr. 16, 2026 Email fr Chung re Amazon IDs) ("We will look into the Amazon ID issue and let you know"). Even were that not the case, Swissdigital's effort to compel production of the Amazon Vendor IDs associated with the accused products fails because Swissdigital fails to identify any discovery request seeking that information. L.R. 37.1(b)(4) (requiring motions to compel to "state with particularity . . . [e]ach interrogatory, deposition question, request for production, request for admission or other discovery matter raising an issue to be decided by the court, and the response thereto"). That omission alone is fatal to Swissdigital's motion.

**V.      CONCLUSION**

For the foregoing reasons, Swissdigital's Motion to Compel should be denied.

Dated:  June 10, 2026

Respectfully submitted,

By:  */s/ Adam J. Kessel*
Adam J. Kessel
Massachusetts Bar No. 661,211
kessel@fr.com
**FISH & RICHARDSON P.C.**
One Marina Park Drive
Boston, MA 02210
Tel:  (617) 542-5070
Fax: (617) 542-8906

Neil J. McNabnay (*Pro Hac Vice*)
Texas Bar No. 24002583
mcnabnay@fr.com
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
Tel: (214) 747-5070
Fax: (214) 747-2091

Bailey K. Benedict (*Pro Hac Vice* )
Texas Bar No. 24083139
benedict@fr.com
Ethan K. Kovar (*Pro Hac Vice* )
Texas Bar No. 24138134
kovar@fr.com
Nicholas J. Valencia (*Pro Hac Vice*)
Texas Bar No. 24149774
valencia@fr.com
**FISH & RICHARDSON P.C.**
909 Fannin Street, Suite 2100
Houston, TX 77010
Tel: (713) 654-5300
Fax: (713) 652-0109

Wonjoon Chung (*Pro Hac Vice* )
Georgia Bar No. 396468
chung@fr.com
**FISH & RICHARDSON P.C.**
1180 Peachtree Street NE, 21st Floor
Atlanta, GA 30309
Tel: (404) 892-5005
Fax: (404) 892-5002

***Attorneys for Defendants***
***SAMSONITE GROUP S.A.; SAMSONITE***
***LLC; SAMSONITE COMPANY STORES,***
***LLC; and DIRECT MARKETING***
***VENTURES, LLC***

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 10, 2026, I caused the foregoing document to be served upon all counsel of record via the Court's CM/ECF system and electronic mail.

*/s/ Adam J. Kessel*
Adam J. Kessel

18