# EXHIBIT 1

1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


Swissdigital USA Co., Ltd.,    )
                Plaintiff,     )
                               )
                               )
vs.                            )    Case No. 24-cv-11636-JEK
                               )
                               )
Samsonite Group, S.A., et al.,)
                Defendants.    )


BEFORE:  The Honorable Magistrate Judge Paul G. Levenson


(FTR Digital)
Remote Motion Hearing/Status Conference




                              United States District Court
                              1 Courthouse Way
                              Boston, Massachusetts
                              March 18, 2025






                    Marianne Kusa-Ryll, RDR, CRR
                      Official Court Reporter
                    United States District Court
                    595 Main Street, Room 514A
                    Worcester, MA 01608-2093
                  508-929-3399 justicehill@aol.com
              Mechanical Steno - Transcript by Computer

APPEARANCES (remotely):

Keyhani LLC
Dariush Keyhani, Esquire
Scott Michael Draffin, Esquire
Frances Helen Stephenson, Esquire
1050 30th Street NW
Washington, D.C. 2007
on behalf of the Plaintiff

Sunstein LLP
Lisa M. Tittemore, Esquire
100 High Street, 20th Floor
Boston, Massachusetts 02110
On behalf of the Plaintiff

Fish & Richardson, P.C.
Adam J. Kessel, Esquire
One Marina Park Drive
Boston, Massachusetts 02210
On behalf of the Defendants

Fish & Richardson, P.C.
Bailey K. Benedict, Esquire
909 Fannin Street
Houston, Texas 77010
On behalf of the Defendants

Also present:

Ethan Kovar, Esquire

**Proceedings recorded by sound recording
and produced by computer-aided stenography**

all in this initial what I'm calling the lightning round, but the initial -- her idea was that if there was adequate financial information available on both sides, it might behoove both parties to explore whether a mediated resolution makes sense.  And at least her comments strongly suggest that she had in mind that these be quite limited and in -- I think she said I should specify why don't we say no more than five interrogatories on the initial round and no more than ten requests for production of documents on the initial round.  As nearly as I can tell that's as far as she went.  So she was ordering pretty limited discovery, and so it's hard for me to picture why you need testimony, as opposed to documents.  If what you're trying to figure out is how much money do these people make and -- and whether you've got some theory of attributing some portion of that money to the alleged infringing aspect of the product what is it that oral testimony in 30(b)(6) is going to give you the documents aren't?

MR. KEYHANI:  We want to understand how the revenue flows, who it flows from, how the profit flows.  Samsonite is a -- is a big corporation with many entities.  And as you might imagine, your Honor, or could imagine that they move money around and they -- they claim profit, and the way they claim profit and the way they claim costs, we can't derive all that information looking at the records that they've provided us without testimony.  That's why you would -- that's why in any

normal case you would -- in any regular situation you would depose 30(b)(6) witnesses on the financial records.

And -- and our client, because of our work, (indiscernible) with Samsonite, and our understand of our estimation of their revenue and costs and profit, it's not consistent with the financial records they've provided us.  So we really need to dig into it.  And -- the question is the Court is asking us, you know -- or Samsonite's asking us to enter into settlement negotiations.  We want them to be truthful.  If the position is that -- if then nobody's really interested in us getting to a settlement, then we don't need to do this.  We can just go conventional discovery.  It wasn't our idea.  We're saying that in order for us to get comfortable, sit at the table, we wanted to ask questions about these financial records that we question on a number of levels, and we don't think they're complete.  We don't think they're complete in terms of the products.  We don't think they're complete in terms of representing the actual revenue.

We've dealt with Samsonite for litigation over a year, and, I mean, in their own papers they contradict themselves multiple times, and we've raised this before in prior litigation in Texas; and so, frankly, we don't trust their records or their representation of what their records represent, and we want (indiscernible) --

THE COURT:  And you're going to trust their

30(b)(6) --

MR. KEYHANI:  Yes.

THE COURT:  -- testimony more than their records?

MR. KEYHANI:  Yes.

THE COURT:  I see.

MR. KEYHANI:  Yes, because somebody's under oath. Yes, your Honor.

THE COURT:  I see.

All right.  Mr. Kessel, I suspect -- I suspect I know what you think, but why don't you tell me a little bit.  I -- I understand the general litigating position that gosh, almighty, we don't typically like to agree to multiple depositions of a single witness.  It's wasteful, it's time-consuming, it's expensive, et cetera.  On the other hand, there is this question of what's an efficient way to make an exchange of information about financials that if folks are serious, and I don't know whether they are or are not, it does make some sense to me that shared understanding of the financial picture is a meaningful component of a potential settlement discussion.  I suspect that that -- I suspect that the parties have very differing views about either the value of the -- the claimed innovation or its importance to the product sales, but that's true in almost every patent case where one side says, you know, we discovered the wheel and the other side said, No, there were wheels all over the place and you managed to get a patent in

China for something that looked like an axle, and it's not worth much to us. I get that. That's a dynamic in all these cases, but what is the most efficient way to, in effect, create a workable relatively level playing field informationally about where's the money, how much of the money might be attributable depending on the parties' different theories.

MR. KESSEL: Yes, your Honor. You've identified the issue precisely. They're -- from our perspective -- just to set the table, the patent is about luggage with a USB port for charging. We believe our sales of those bags is a low number and then the amount attributable to the port is a lower number. They cost a few cents to make, but I'm not here to argue the merits of that.

We have been trying from the start to convey this information to the plaintiff so that the plaintiff can accurately assess the case and whether it's worth litigating, which led us to the scheduling conference in this sort of lightning round of discovery.

I have to say it takes some hutzpah to file a motion to compel a deposition and for attorneys' fees.

THE COURT: Let's -- let's move forward not back. I've -- I've already commented on the change of the parties pleadings. I'm not going to beat up on anybody any more.

What I want to know is how are we going to get information exchanged efficiently. What's the best way to do

C E R T I F I C A T E


I, Marianne Kusa-Ryll, RDR, CRR, do hereby certify that the foregoing transcript is a true and accurate transcription prepared to the best of my skill, knowledge, and ability from the official electronic sound recording of the proceedings before Magistrate Judge Paul G. Levenson in the above-entitled matter.


/s/ Marianne Kusa-Ryll                    4-25-2025

Marianne Kusa-Ryll, RDR, CRR                Date

Official Court Reporter